UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>BYRON PATTERSON MCDANIEL JR<br>AND LAURA PAIGE MCDANIEL<br><br>Joint Debtors<br><br>BYRON PATTERON MCDANIEL JR AND<br>LAURA PAIGE MCDANIEL<br>Plaintiffs<br><br>v.<br><br>NAVIENT SOLUTIONS LLC,<br>Defendant. | Case No. 09-37480 (KHT)<br>Chapter 13 |

**PLAINTIFFS' COMPLAINT**

Plaintiffs Byron Patterson McDaniel and Laura Paige McDaniel ("McDaniels" or "Plaintiffs"), by and through his undersigned counsel, hereby files this complaint upon personal knowledge as to those matters within his knowledge, and upon information and belief as to all other matters, as follows:

**I.**

**PRELIMINARY STATEMENT**

1. For the last ten years, Defendant has been engaged in a massive effort to defraud student debtors and subvert the orderly working of the bankruptcy courts.

Specifically, Navient (formerly known as Sallie Mae or SLM Corporation, collectively referred to as "Defendant") has been originating and servicing dischargeable consumer loans and disguising them as non-dischargeable student loans. Defendant has done this in order to discourage debtors from seeking their constitutional right to relief under Title 11 and to allow creditors to continue to collect on discharged loans after a debtor's bankruptcy. In order to effectuate this illegality, Defendant has appropriated a legal presumption for a class of debt that it knows is not entitled to that presumption, thereby using the authority of the bankruptcy courts to cloak its fraud in the color of law and escape detection. Defendant is willfully and maliciously engaged in a pattern and practice that it know defiles the proper workings of the bankruptcy process. Plaintiffs bring this action to enforce their rights under law.

## II.
## PARTIES

2. BYRON PATTERSON MCDANIEL is an individual and a resident of this district who filed for relief under Title 11 in this Court in 2009.

3. LAURA PAIGE MCDANIEL is an individual and a resident of this district who filed for relief under Title 11 in this Court in 2009.

4. NAVIENT SOLUTIONS, LLC is a business entity that in the ordinary course of business regularly, on behalf of itself or others, engages in the servicing and collection of consumer debt. NAVIENT SOLUTIONS, LLC is a national company with its principal place of business in Wilkes-Barre, Pennsylvania.

## III.
## JURISDICTION AND VENUE

5. This Adversary Proceeding is brought under Case Number 09-37480.

6. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b) and 1332. This is a core proceeding under Title 11 because it concerns a determination as to the dischargeability of a debt. Furthermore, this Court has supplemental jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1367 because the additional claims are related to the core proceeding.

7. This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), 15 U.S.C § 105 and Federal Rules of Bankruptcy Procedure Rule 7001(9).

8. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

IV.

**STATEMENT OF FACTS**

**A. Section 523(a)(8) Of The Bankruptcy Code.**

9. In 1978, there was a growing concern that students were taking advantage of the Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon after graduation. In response, Congress enacted section 523(a)(8) of the Bankruptcy Code to prohibit the discharge of federal student loans during the first five years of repayment (unless payment would constitute an undue hardship). Through a series of amendments, which first lengthened and then eliminated the five-year non-dischargeability time frame, it has become increasingly difficult for debtors to attain discharges of their student loan debts.

10. Although the rationale behind section 523(a)(8) has been questioned by many scholars,[1] the justification for excepting federal student loan debt from discharge was not without some merit. In fact, in the age of soaring tuition costs, the original

---

[1] *See* Rafel I. Pardo & Michelle R. Lacey, THE REAL STUDENT-LOAN SCANDAL: UNDUE

justification has become more compelling. Section 523(a)(8) serves not only to protect the taxpayers, but also to preserve the solvency of student lending programs for the next generation of students.

11. In 2005, after extensive lobbying, private education lenders and debt collectors won *limited* protection in bankruptcy *for some of their educational loan products*.[2] Specifically, Congress limited protection for private education loan instruments to the extent that such money supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools solely for tuition, room, board, and books ("Qualified Education Loans").

12. But Defendant was not satisfied with the origination volume of Qualified Education Loans. The paperwork was burdensome, schools would not certify sums in excess of tuition, and it prevented lending to thousands of for-profit colleges and high schools that had not obtained Title IV accreditation. Thereafter, Defendant initiated new programs that lent money directly to students in excess of the "Cost of Attendance" ("Consumer Education Loans" or "Non-Qualified Education Loans"). Consumer Education Loans were much easier to originate because they bypassed the certification requirements codified in the Higher Education Act. These loans were not and are not Qualified Education Loans under the Tax Code or Bankruptcy Code. Like student credit card debt, they are simply unsecured consumer debts and are discharged automatically upon entry of a discharge injunction.

1. **The Application Of Section 523(a)(8).**

---

[2] Bankruptcy Abuse and Consumer Protection Act Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereinafter "BAPCPA").

13. Prior to 2005, section 523(a)(8) was easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of "undue hardship." This fueled the belief that all student loans are non-dischargeable. But Defendant and other private student lenders were only given *qualified* protection in 2005 such that section 523(a)(8)(B) only excepts *some* private education loans from discharge.[3] This created an opportunity for Defendant to exploit the application of section 523(a)(8) and deceive debtors into thinking that all private student loans, like their federal cousins, were excepted from discharge.

14. This problem was made worse because section 523(a)(8) is "self-executing" and thus its correct application relies on the good faith and honesty of creditors. When a debtor files a bankruptcy petition, the debtor includes all unsecured debts on a Schedule F form, listing only the amount of the debt, the name of the creditor, and the consideration received. After demonstrating compliance with the Bankruptcy Code, a court then issues an order discharging all pre-petition debts listed on the bankruptcy petition except for those listed in section 523(a).[4] Importantly, the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including "debts for most student loans."

---

[3] 11 U.S.C. § 523(a)(8)(B).

[4] 11 U.S.C.A. § 727(b) ("Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter.").

15. If a creditor believes that a debt they hold is excepted from discharge, it is their legal burden to prove that the debt is encompassed by section 523(a)(8).[5] Once the creditor proves the debt is presumptively non-dischargeable, the burden then shifts to the debtor to prove that repaying the debt would constitute an "undue hardship."[6] Absent an adversary proceeding, any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of law discharged upon entry of the discharge order.[7] Accordingly, it is left to the creditors to determine whether their particular educational loan is excepted from discharge by section 523(a)(8), and, where confusion exists, seek clarity from the court. The creditor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions.

2. **Defendant Manipulates The Application Of Section 523(a)(8) And Deceives Debtors Into Believing Their Non-Qualified Student Loans Were Not Discharged.**

16. Not content with the protections won from Congress in 2005, Defendant soon devised a scheme to manipulate this presumption of non-dischargeability and

---

[5] *In re Kashikar,* 567 B.R. 160, 168 (9th Cir.BAP 2017) ("[O]nce the question is put at issue by an appropriate party, '[u]nder § 523(a)(8), the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters . . . [t]he burden then shifts to the debtor to prove [undue hardship] by a preponderance of the evidence.'").

[6] *In re Haroon,* 313 B.R. 686, 689 (Bankr. E.D. Va. 2004) ("A student loan creditor is not required to seek a dischargeability determination during the pendency of the bankruptcy case. The failure to seek a dischargeability determination does not alter the fact that the debt is or is not discharged upon entry of the discharge order. It merely avoids a judicial declaration of that fact at that time . . . The parties' rights were fixed at that time and, if the debt was discharged, the creditor was barred from collecting it.")

[7] *In re Meyer,* No. 15-13193, 2016 WL 3251622, at *2 (Bankr. N.D. Ohio June 6, 2016) ("For the reasons stated in the debtor's motions and the *Decena* decision, the Court finds that the debtor's student loans were discharged on September 16, 2015, because they do not fall within 11 U.S.C. § 523(a)(8). The Court further finds that the student loan servicers violated the discharge injunction of § 524(a)(2) by attempting to collect on the student loan accounts after the date of the debtor's discharge.").

deceive debtors and the bankruptcy courts into thinking that all private student loans, both qualified and non-qualified, both accredited and unaccredited, were excepted from discharge. To effectuate this fraud, Defendant represented to student debtors that the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose.

17. Defendant provided Consumer Education Loans, *inter alia*, through the Tuition Answer loan program. This lending program was a "Direct-to-Consumer" loan program that originated money to consumers outside the confines of the financial office and were made in excess of the school's published "Cost of Attendance."

18. And so, a law that was originally designed to prevent students from taking advantage of the bankruptcy system enabled Defendant and other student loan creditors to take advantage of the bankruptcy system. These loans are disproportionately issued to low-income students who lack the resources and knowledge to seek relief in an adversary proceeding, which is an expensive and time-consuming undertaking. In fact, only one tenth of one percent (0.1%) of debtors in bankruptcy seek to discharge their student debts.[8] In the rare event a debtor has filed an adversary proceeding, creditors often settle or forgive student debts that were already legally discharged, thereby preventing courts from discovering that these debts were never entitled to a presumption of non-dischargeability in the first instance, and ensuring that they are able to continue collecting on 99.9% of other discharged debts without consequence.

---

[8] Jason Iuliano, AN EMPIRICAL ASSESSMENT OF STUDENT LOAN DISCHARGES AND THE UNDUE HARDSHIP STANDARD, 86 Am. Bankr. L.J. 495, 505 (2012) (stating that in 2007, at least, only .01% of all debtors in bankruptcy with student loans filed an adversary proceeding seeking discharge).

3. **Sallie Mae and Navient Reveal Their Bad Faith By Relaying Different Information To The SEC And Sophisticated Investors.**

19. During the same time, Defendant was securitizing these debts for sale on the secondary market. Defendant was rightfully concerned that if it represented to investors that all private student loans were non-dischargeable in bankruptcy, sophisticated investors would easily enough discover the misrepresentation (based on a plain reading of the statute), and Defendant would be liable for securities violations.[9] Defendant thereafter included in student loan asset-backed securities' prospectuses language warning investors that, pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge.[10]

B. **Plaintiffs Borrow More than $100,000 in Tuition Answer Loans And Seek Relief Under Title 11.**

20. From 2004-2007, Plaintiffs borrowed $107,467 in six (6) Sallie Mae Tuition Answer Loans.

21. The total balance of these loans now stands at $245,264 despite consistent monthly payments of more than $2,000 for several years.

22. Paige McDaniel attended Lakeland College from 2004-2007.

23. The "Cost of Attendance" ("COA") for qualified tuition and related expenses at Lake College for each year was as follows (See attached **Exhibit A**):

---

[9] *See, e.g.*, 15 U.S.C. § 78j.

[10] *See* SLM Loan Trust 2008-1 Prospectus Supplement dated January 10, 2008, at 33 ("Risk of Bankruptcy Discharge of Private Credit Student Loans: Private credit student loans **made for qualified education expenses** are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including their certification of the cost of attendance for their education. This process does not involve school certification as an additional control and, therefore, may be subject to some additional risk that **the loans are not used for qualified education expenses**. If you own any notes, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan to the extent the amount of the default is not covered by the trust's credit enhancement.") (emphasis added).

      a. In 2004, the COA was $5,340.

      b. In 2005, the COA was $10,650.

      c. In 2006, the COA was $6,450.

      d. In 2007, the COA was $6,390.

24. During this time, Paige borrowed the total "Cost of Attendance" in the form of federal student loans (see attached as **Exhibit C**).

25. In addition, between November 2005 and July 2007, Sallie Mae lent Paige McDaniel and her husband Byron McDaniel another $107,467 in six (6) "direct to consumer" Tuition Answer loans that were made outside the financial aid office and were not made for qualified education expenses (the "Tuition Answer Loans"). The six Tuition Answer Loans were originated as follows (See attached as **Exhibit B**):

    a) Loan ending 9878, originated on November 15, 2004 in the amount of $21,978 to Byron McDaniel;
    b) Loan ending 9886, originated on July 1, 2005 in the amount of $21,978 to Byron McDaniel;
    c) Loan ending 9894, originated on February 17, 2006, in the amount of $11,111 to Byron McDaniel;
    d) Loan ending 7857, originated on December 9, 2005, in the amount of $11,111 to Laura Paige McDaniel;
    e) Loan ending 7865, originated on July 25, 2006, in the amount of $31,200 to Laura Paige McDaniel;
    f) Loan ending 7873, originated on July 24, 2007, in the amount of $21,200 to Laura Paige McDaniel.

26. These Tuition Answer Loans were not made solely for the "cost of attendance" accordingly were not "qualified education loans" as that term is defined in 11 U.S.C. § 523(a)(8)(B).

27. In December 24, 2009, the McDaniels sought relief under Title 11 in this Court in Case No. 09-37480, *In re McDaniel*. Plaintiffs properly scheduled the Tuition Answer Loans on Schedule F of their petition.

28. During the course of the chapter 13 bankruptcy, Plaintiffs paid $26,782 towards the Tuition Answer Loans.

29. On March 3, 2015, this Court ordered discharge of all Plaintiffs' properly scheduled pre-petition debt.

30. Defendant was duly notified of discharge.

31. Despite its legal burden, Defendant did not file an adversary proceeding to contest the dischargeability of the Tuition Answer Loans.

32. Instead of charging off the Tuition Answer Loans, Defendant Navient Solutions, LLC, demanded payments on these discharged debt in violation of this Court's Order and the Bankruptcy Code.

33. This conduct was extremely abusive and owing to Defendant's tactics, and Plaintiffs have repaid $37,460 on these discharged debts. These payments were not made "voluntarily" but were made solely based on Defendant Navient's material misrepresentations regarding the legal status and character of the Tuition Answer Loans.

34. Defendant's abusive, deceptive and harassing collection efforts after the Plaintiffs bankruptcy discharges were made knowingly and willfully in violation of this Court's discharge orders and must be sanctioned.

## VI.

## CLAIMS FOR RELIEF

**Count One: Declaratory Judgment**

35. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

36. Plaintiffs request declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that Plaintiffs Tuition Answer Loans are

not non-dischargeable student loans or qualified education loans, and were therefore discharged upon entry of the Plaintiffs' discharge order.

**Count Two: Violations Of The Discharge Orders**

37. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

38. The Tuition Answer Loans were discharged pursuant to the discharge Order entered by this Court because they were unsecured consumer loans and not non-dischargeable student loans under section 523(a)(8).

39. Defendant was notified of the Discharge Order pursuant to Federal Rule of Bankruptcy Procedure 4004(g).

40. Defendant nonetheless sought to collect on these debts, either directly or indirectly, by use of dunning letters, phone calls, negative reports made to the major credit bureaus, failure to update these credit reports, and commencing or continuing legal action to recover the discharged debts in violation of 11 U.S.C § 524.[11]

41. Plaintiffs request that Defendant be ordered to pay damages in an amount to be determined at trial for the willful violations of the discharge injunctions pursuant to 11 U.S.C § 105 and also request an award of attorneys' fees and costs.

**PRAYER**

42. In light of the foregoing, Plaintiffs request that Defendant be cited to appear and judgment be entered against Defendant for:

---

[11] *In re Vogt,* 257 B.R. 65, 69 (Bkrtcy.D.Colo. 2000) ("This Court believes that this is clearly the better view and that the same reasoning applies when section 524(a) has been violated. The Court adopts the reasoning of the court in *Molloy v. Primus Automotive Financial Services,* 247 B.R. 804, 816–20 (C.D.Cal.2000), finding that section 524 carries with it an 'implied private right of action.'").

**(1)** declaratory relief that Plaintiffs Tuition Answer Loans were discharged upon entry of the applicable discharge order;

**(2)** actual damages and monetary sanctions for violations of the discharge order;

**(3)** attorneys' fees and costs to the fullest extent permitted under the law;

**(4)** other such relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Austin Smith

Austin Smith, NY Bar. # 5377254
*Admitted in District of Colorado*
SMITH LAW GROUP
3 Mitchell Place
New York, New York 10017
Telephone: (917) 992-2121
Austin@acsmithlawgroup.com