# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 09-37480-KHT |
| BYRON PATTERSON McDANIEL JR. | ) | |
| AND LAURA PAIGE McDANIEL | ) | Chapter 13 |
| | ) | |
|      Debtors. | ) | |
| _____ | ) | |
| | ) | |
| BYRON PATTERSON McDANIEL JR. | ) | |
| AND LAURA PAIGE McDANIEL, | ) | |
| | ) | Adversary Proceeding No. 17-01274-KHT |
|      Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| NAVIENT SOLUTIONS, LLC, | ) | |
| | ) | |
|      Defendant. | ) | |

_____

## DEFENDANT NAVIENT SOLUTIONS, LLC'S MOTION TO DISMISS PLAINTIFFS' CLAIMS UNDER FED. R. CIV. P. 12(b)(6) AND MOTION TO STRIKE IMMATERIAL AND IMPERTINENT MATTER UNDER FED. R. CIV. P. 12(f)

_____

Active/46902711.1

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 1

FACTUAL BACKGROUND ............................................................................................... 6

STATEMENT IN COMPLIANCE WITH FED. R. BANKR. P. 7012(b) ................................ 10

LEGAL STANDARDS APPLICABLE TO NAVIENT'S MOTION ......................................... 10

    I.     Motion to Dismiss .................................................................................... 10

    II.    Motion to Strike ...................................................................................... 11

LEGAL ARGUMENT ..................................................................................................... 12

    I.     DEBTORS' CONFIRMED AMENDED PLAN PROVIDES THAT THEIR
        EDUCATIONAL LOANS ARE NON-DISCHARGEABLE, SO RES JUDICATA BARS
        THEIR COMPLAINT ................................................................................... 12

        A.    Res judicata bars Debtors' claims ......................................... 204

        B.    *Espinosa* controls this case ................................................... 15

            1.    *In* Espinosa*, the Supreme Court held that the treatment of
                student loans in a confirmed plan is binding* ............................... 15

            2.    Espinosa *applies here—in the opposite direction* ....................... 17

        C.    Debtors confuse the parties' respective burdens in dischargeability
            actions ................................................................................... 208

    II.    DEBTORS' EDUCATIONAL LOANS CONSTITUTE OBLIGATIONS TO REPAY
        FUNDS RECEIVED AS AN EDUCATIONAL BENEFIT THAT ARE EXCEPTED
        FROM DISCHARGE UNDER § 523(A)(8)(A)(II) ............................................. 20

        A.    Consistent with the plain language of the statute, the majority of
            judicial decisions nationwide holds that a private student loan is an
            "obligation to repay funds received as an educational benefit" that
            is presumptively non-dischargeable under § 523(a)(8)(A)(ii). .............. 20

        B.    The minority line of cases holding otherwise is wrongly decided
            and should not be followed. ..................................................... 23

            1.    *The minority position misapplies canons of statutory
                interpretation.* ........................................................................... 24

            2.    *Including student loans within the § 523(a)(8)(A)(ii)
                discharge exception doesn't render any other provision
                superfluous.* ............................................................................... 25

            3.    *Minority courts misapply the canon of noscitur a sociis by
                constricting its focus too narrowly.* ............................................. 27

# TABLE OF CONTENTS
### (continued)

**Page**

*4.     Selective partial recitation of purported "legislative history" is an illusory justification for ignoring the statute's plain meaning, and it supports Navient's position even if the Court were to consider it.* ........................................... 30

III.    DEBTORS' CLAIM FOR DAMAGES BASED ON NONEXISTENT VIOLATIONS OF THE DISCHARGE INJUNCTION IS A DEFECTIVE CONTEMPT OF COURT CLAIM THAT SHOULD BE DISMISSED ............................................................... 33

A.    Debtors must enforce the discharge injunction through a contempt proceeding ................................................................. 34

B.    The Court's general Discharge Order is not sufficiently specific to support a finding of contempt under these circumstances ...................... 35

IV.    THE COURT SHOULD STRIKE DEBTORS' IRRELEVANT ALLEGATIONS ABOUT A NONEXISTENT FRAUD CLAIM ............................................................. 37

CONCLUSION ................................................................................................. 38

CERTIFICATE OF SERVICE ........................................................................... 40

Active/46902711.1

# TABLE OF AUTHORITIES

PAGE(S)

**U.S. BANKRUPTCY COURT CASES**

*In re Baiocchi*,
  389 B.R. 828 (Bankr. E.D. Wis. 2008) ........................................................................3

*In re Beesley*,
  No. 12-24194-CMB, 2013 WL 5134404 (Bankr. W.D. Pa. Sept. 13, 2013)................3, 21, 23

*In re Belforte*,
  No. 10-22742-JNF, 2012 WL 4620987 (Bankr. D. Mass. 2012) ..............................................3

*In re Brown*,
  539 B.R. 853 (Bankr. S.D. Cal. 2015) ..................................................................3, 23, 26, 29

*In re Cardona*,
  No. 15-16365-BKC-LMI, 2015 WL 9459883 (Bankr. S.D. Fla. Dec. 23, 2015).....................3

*In re Carow*,
  No. 10-30264, 2011 WL 802847 (Bankr. D.N.D. Mar. 2, 2011) .................................3, 21, 22

*In re Corbin*,
  506 B.R. 287 (Bankr. W.D. Wash. 2014).........................................................3, 21, 23, 26, 29

*In re Decena*,
  549 B.R. 11 (Bankr. E.D.N.Y. 2016), *vacated sub nom. Citizens Bank v.
  Decena*, 562 B.R. 202 (E.D.N.Y. 2016) ...............................................................................24

*In re Distad*,
  2009 WL 1324037 (Bankr. D. Utah May 8, 2009).................................................................35

*In re Essangui*,
  No. 16–201–MMH, 2017 WL 4358755 (Bankr. D. Md. Oct. 2, 2017)...................................24

*In re Goldstein*,
  No. 11-81255-MGD, 2012 WL 7009707 (Bankr. N.D. Ga. Nov. 26, 2012)............................3

*In re Gray*,
  2017 WL 2484824 (Bankr. D. Kan. June 7, 2017) ................................................................35

*In re Greer*,
  498 B.R. 98 (Bankr. S.D. Miss. 2013)...................................................................................19

*In re Kashikar*,
  567 B.R. 160 (B.A.P. 9th Cir. 2017).......................................................................................24

Active/46902711.1

*In re Kinney*,
   456 B.R. 748 (Bankr. E.D.N.C. 2010) ...................................................................19

*In re Ledin*,
   2016 WL 1305060 (Bankr. D. Kan. March 31, 2016) ............................................35

*In re Lycoming Engines v. Sup. Air Parts, Inc.*,
   486 B.R. 728 (Bankr. N.D. Tex. 2012) ...................................................................2

*In re Maas*,
   497 B.R. 863 (Bankr. W.D. Mich. 2013) ..........................................................3, 30

*In re Meyer*,
   No. 15–13193, 2016 WL 3251622 (Bankr. N.D. Ohio June 6, 2016) ....................24

*In re Micko*,
   356 B.R. 210 (Bankr. D. Ariz. 2006) ................................................................3, 26

*In re Montano*,
   488 B.R. 695 (Bankr. D.N.M. 2013) .....................................................................35

*In re Nunez*,
   527 B.R. 410 (Bankr. D. Or. 2015)........................................................................24

*In re Otero*,
   498 B.R. 313 (Bankr. D.N.M. 2013) ...............................................................34, 35

*In re Ridley*,
   2017 WL 2372283 (Bankr. E.D. Okla. May 31, 2017) .........................................35

*In re Rizor*,
   553 B.R. 144 (Bankr. D. Alaska 2016) .............................................................3, 22

*In re Roy*,
   No. 08-33318, 2010 WL 1523996 (Bankr. D.N.J. Apr. 15, 2010) ....................3, 23

*In re Rumer*,
   469 B.R. 553 (Bankr. M.D. Pa. 2012) .............................................................3, 30

*In re Rust*,
   510 B.R. 562 (Bankr. E.D. Ky. 2014) .................................................3, 23, 26, 29

*In re Salina Speedway, Inc.*,
   210 B.R. 851 (B.A.P. 10th Cir. 1997), *abrogated on other grounds by In re
   CF & I Fabricators of Utah, Inc.*, 150 F.3d 1233 (10th Cir. 1998)........................14

*In re Sanchez*,
   545 B.R. 55 (Bankr. D.N.M. 2016) ................................................................34, 35

iv

*In re Schott*,
    282 B.R. 1 (B.A.P. 10th Cir. 2002) ........................................................................34

*Schultz v. Navient Solutions, LLC*,
    No. 16–3042 (Bankr. D. Minn. Dec. 13, 2016) .......................................................24

*In re Shaw*,
    No. 08-30319-H3-7, 2015 WL 1000213 (Bankr. S.D. Tex. Mar. 3, 2015) .......3, 13, 18, 19, 23

*In re Skipworth*,
    No. 09-83982-JAC-7, 2010 WL 1417964 (Bankr. N.D. Ala. Apr. 1, 2010) .......................3, 23

*In re Stevens*,
    2015 WL 8968036 (Bankr. E.D. Wisc. Dec. 14, 2015) ............................................19

*Matter of Swenson*,
    No. 16–10016, 2016 WL 4480719 (Bankr. W.D. Wis. Aug. 23, 2016) .................................24

*In re Van Winkle*,
    2017 WL 2729069 (Bankr. D.N.M. June 23, 2017) ................................................35

*In re Vasa*,
    No. 14-40109, 2014 WL 6607512 (Bankr. D.S.D. Nov. 19, 2014) ..........................................3

*In re Vogt*,
    257 B.R. 65 (Bankr. D. Colo. 2000) ......................................................................34

*In re White*,
    No. 07–4157, 2008 WL 5272508 (Bankr. E.D. Tex. Dec. 17, 2008) .....................................18

*In re Witty*,
    2017 WL 462517 (Bankr. N.D. Okla. Jan. 25, 2017) ..............................................35

*In re Wright*,
    444 B.R. 883 (Bankr. S.D. Ind. 2010) ...................................................................19

**OTHER FEDERAL CASES**

*Alderwoods Grp., Inc. v. Garcia*,
    682 F.3d 958 (11th Cir. 2012) ...............................................................................34

*Alvarado v. KOB-TV, LLC*,
    493 F.3d 1210 (10th Cir. 2007) ...............................................................................5

*Am. Mech. Sol., LLC v. Northland Process Piping, Inc.*,
    184 F.Supp.3d 1030 (D.N.M. 2016) ........................................................................2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .........................................................................................6, 11

v

*Matter of Baum*,
  606 F.2d 592 (5th Cir. 1979) ................................................................36

*Matter of Bayhi*,
  528 F.3d 393 (5th Cir. 2008) ................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................11

*Bessette v. Avco Fin. Srvs., Inc.*,
  230 F.3d 439 (1st Cir. 2000)................................................................35

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
  861 F.3d 1081 (10th Cir. 2017) .............................................................5

*In re Burks*,
  244 F.3d 1245 (11th Cir. 2001) ...........................................................30

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979).............................................................................32

*C.M. v. Burns*,
  No. 13-cv-01878, 2014 WL 1056414 (D. Colo. Mar. 19, 2014) ..........12, 37, 38, 39

*Conroy v. Aniskoff*,
  507 U.S. 511 (1993).............................................................................31

*Cox v. Zale Del., Inc.*,
  239 F.3d 910 (7th Cir. 2001) ...............................................................35

*In re Desormes*,
  569 F. App'x 42 (2d Cir. 2014) ..............................................................3

*Duzer v. U.S. Bank, N.A.*,
  995 F. Supp. 2d 673 (S.D. Tex. 2014) ...................................................2

*Easterling v. Collecto, Inc.*,
  692 F.3d 229 (2d Cir. 2012)..................................................................19

*Exxon Mobile Corp. v. Allapatah Servs., Inc.*,
  545 U.S. 546 (2005)..............................................................................31

*In re Fina*,
  550 F. App'x 150 (4th Cir. 2014) .........................................................35

*Garfield v. Ocwen Loan Servicing, LLC*,
  811 F.3d 86 (2d Cir. 2016)....................................................................35

vi

*In re Gervin*,
    300 F. App'x 293 (5th Cir. 2008) ..................................................................37

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
    130 F.3d 1381 (10th Cir. 1997) ....................................................................5

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
    559 U.S. 280 (2010)......................................................................................29

*Jensen v. America's Wholesale Lender*,
    425 Fed. App'x 761 (10th Cir. 2011) ..........................................................39

*In re Joubert*,
    411 F.3d 452 (3d Cir. 2005)..........................................................................34

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) ....................................................................11

*Koons Buick Pontiac GMC, Inc. v. Nigh*,
    543 U.S. 50 (2004)........................................................................................31

*In re Logsdon*,
    32 F. App'x 427 (9th Cir. 2002) ..................................................................37

*MACTEC Inc. v. Gorelick*,
    427 F.3d 821 (10th Cir. 2005) ......................................................................14

*In re Mersmann*,
    505 F.3d 1033 (10th Cir. 2007) ..............................................................12, 14

*Miller v. Redwood Toxicology Lab., Inc.*,
    688 F.3d 928 (8th Cir. 2012) ........................................................................2

*Matter of Nat'l Gypsum Co.*,
    118 F.3d 1056 (5th Cir. 1997) ......................................................................35

*N.L.R.B. v. Health Care & Retirement Corp. of Am.*,
    511 U.S. 571 (1994)......................................................................................31

*In re Paul*,
    534 F.3d 1303 (10th Cir. 2008) ....................................................................34

*Penn Mut. Life Ins. Co. v. Lederer*,
    252 U.S. 523 (1920)......................................................................................32

*Purzel Video GmbH v. St. Pierre*,
    10 F. Supp. 3d 1158 (D. Colo. 2014).......................................................38, 39

*Reliance Ins. v. Mast Const. Co.*,
159 F.3d 1311 (10th. Cir. 1998) ........................................................................35

*In re Renshaw*,
222 F.3d 82 (2d Cir. 2000)...............................................................................21

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir. 2008) .........................................................................39

*In re Robinson*,
342 F. App'x 235 (8th Cir. 2009) .......................................................................37

*Safe Streets Alliance v. Hickenlooper*,
859 F.3d 865 (10th Cir. 2017) ...........................................................................11

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
563 U.S. 401, 409 (2011)............................................................................29, 30

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)..........................................................................................32

*Tenn. Student Assistance Corp. v. Hood*,
541 U.S. 440, 450 (2004)...........................................................13, 18, 19, 36

*United States v. Ahidley*,
486 F.3d 1184 (10th Cir. 2007) .........................................................................2

*United States v. 11843 Hannibal St., Commerce City, Colo.*,
No. 12-cv-01433, 2012 WL 5392497 (D. Colo. Nov. 5, 2012)..............................12

*United States v. Frederick*,
No. 10–13405, 2011 WL 379418 (E.D. Mich. Feb. 3, 2011) ................................18

*United States v. Stevens*,
559 U.S. 460 (2010)..........................................................................................25

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010)......................................................................... *passim*

*Walls v. Wells Fargo Bank, N.A.*,
276 F.3d 502 (9th Cir. 2002) .............................................................................34

*In re Wills*,
No. 08-80404-FJO-07, 2010 WL 1688221 (S.D. Ind. Apr. 23, 2010) .............26, 27

*Wis. Pub. Intervenor v. Mortier*,
501 U.S. 597 (1991)..........................................................................................31

Active/46902711.1

*Yates v. United States*,
   574 U.S. __, 135 S. Ct. 1074, 1085 (2015)...........................................................28

## STATUTES

11 U.S.C. § 523(a)(8)................................................................................... *passim*

11 U.S.C. § 523(a)(8)(A)(i) ..................................................................21, 22, 24, 26

11 U.S.C. § 523(a)(8)(A)(ii) ......................................................................... *passim*

11 U.S.C. 523(a)(8)(B) .................................................................................4, 5, 22, 30

11 U.S.C. § 523(c) ...............................................................................................18

26 U.S.C. § 22l (d)(l) ..........................................................................................21

## RULES

Fed. R. Bankr. P. 7012(b) .....................................................................................1

Fed. R. Civ. P. 7(a)(1).........................................................................................12

Fed. R. Civ. P. 12(f)...................................................................................1, 12, 37

Fed. R. Civ. P. 60............................................................................................16, 17

## OTHER AUTHORITIES

Abbe R. Gluck & Lisa Schultz Bressman, *Statutory Interpretation From the
   Inside—An Empirical Study of Congressional Drafting, Delegation, and the
   Canons: Part I*..........................................................................................28

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §
   1381 (3d. ed. 2017) ...................................................................................12

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
   1357 (3d ed. 2016) ....................................................................................11

*Hearing on P.L. 101–647 Before the H. Subcomm. On Econ. and Commercial
   Law of the H. Comm. on the Judiciary*, 101st.......................................32

John M. Golden, *Redundancy: When Law Repeats Itself*, 94 Tex. L. Rev. 629, 633
   (2016)......................................................................................................28

Kyle L. Grant, *Student Loans in Bankruptcy and the "Undue Hardship"
   Exception: Who Should Foot the Bill?*....................................................21

Active/46902711.1

Defendant Navient Solutions, LLC ("Navient"), respectfully moves this Court for an Order (1) under Fed. R. Civ. P. 12(b)(6), dismissing the Complaint[1] filed by Plaintiffs Byron Patterson McDaniel Jr. and Laura Paige McDaniel (collectively, "Debtors") for failure to state a claim upon which relief can be granted, and (2) under Fed. R. Civ. P. 12(f),[2] striking Debtors' immaterial, impertinent, and scandalous allegations in paragraphs 1 and 9-19 of the Complaint.

## INTRODUCTION AND SUMMARY OF ARGUMENT

It is rare for an adversary proceeding to be controlled by Supreme Court precedent that is directly on point. But this is that rare case. In *United Student Aid Funds, Inc. v. Espinosa*,[3] the Supreme Court held that the treatment of student loans in a confirmed Chapter 13 plan is binding—even where a valid legal basis might have existed to object to that treatment—and therefore rejected a lender's challenge to the improper discharge of a debtor's student loans where the lender did not object to plan confirmation.[4]

In this case, the fact situation from *Espinosa* may be reversed, but the *Espinosa* principle applies just the same. Debtors confirmed an Amended Chapter 13 Plan (the "Amended Plan")[5] which treated their student loans as nondischargeable and provided for continued payment to their student-loan lenders following completion of their plan payments to, and discharge from,

---

[1] *McDaniel v. Navient Solutions LLC*, United States Bankruptcy Court, District of Colorado Adv. Pro. No. 17-01274-KHT, Dkt. # 1 ("Complaint").

[2] Both Fed. R. Civ. P. 12(b)(6) and 12(f) are made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b).

[3] 559 U.S. 260, 269 (2010).

[4] *Id.* at 275–76.

[5] *In re McDaniel*, United States Bankruptcy Court, District of Colorado Case No. 09-37480-KHT ("Bankr. Case Dkt."), Dkt. ## 25 (Amended Plan), 32 (Order Confirming Amended Plan).

1

their other creditors.[6]  Debtors completed their Amended Plan, received a discharge of their other

debts, and made payments on their student loans for two years following the discharge.[7]  Yet,

they now assert that their student loans are dischargeable, and *were in fact discharged*, based

largely on the theory that a "loan"—per se and as a matter of law—is not an obligation to repay

funds received as an educational benefit as set forth in § 523(a)(8)(A)(ii) of the Bankruptcy

Code.[8]

Debtors' claims are barred by res judicata because their confirmed Amended Plan binds

them, just like the confirmed plan in *Espinosa*.  Debtors can no more overturn the non-discharge

of their student loans now, two years after the discharge of their other debts (and seven years

after their plan was confirmed), than the lender in *Espinosa* could overturn the discharge of its

claims three years after that debtor's discharge.[9]

---

[6] The Court may take judicial notice of documents filed in Debtors' bankruptcy case because the documents are in the public record of this case and concern matters that bear directly on the disposition of this motion.  *See U.S. v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *Am. Mech. Sol., LLC v. Northland Process Piping, Inc.*, 184 F.Supp.3d 1030, 1051 (D.N.M. 2016).  *Accord Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012); *Duzer v. U.S. Bank N.A.*, 995 F.Supp. 2d 673, 685 (S.D. Tex. 2014); *In re Lycoming Engines v. Sup. Air Parts, Inc.*, 486 B.R. 728, 732 n.1 (Bankr. N.D. Tex. 2012).

[7] Complaint, ¶¶ 29, 33.

[8] 11 U.S.C. § 523(a)(8)(A)(ii).  Unless otherwise specified, references to a "Section" or "§" shall designate a section of the United States Bankruptcy Code, Title 11 U.S.C.

[9] *Espinosa*, 559 U.S. at 265-66.  Navient's arguments throughout this motion concern Debtors' claim that their Educational Loans (as defined below) are categorically exempt from the exception to discharge that § 523(a)(8) of the Bankruptcy Code affords to student loans.  Navient does *not* argue in this motion that Debtors—should their circumstances change—cannot seek an undue hardship determination under the Bankruptcy Code and relevant precedent.  To be clear, though, Debtors never made any claim of "undue hardship" during their bankruptcy case, nor does such a contention appear anywhere in their Complaint.  If Debtors ever do make a future "undue hardship" claim, Navient reserves all rights and defenses with respect to it.

Even ignoring that Debtors' confirmed Amended Plan bars their claims, though, Debtors still can't successfully assert that their student loans are dischargeable.  Here, Debtors seek to avoid their obligations under six Tuition Answer Loans.[10]  Debtors used the proceeds of those loans for Laura Paige McDaniel to attend Lakeland College.  Debtors certified to Navient that "all of the loan proceeds" they received would be used "to pay expenses directly related to attending" Lakeland College.[11]  Debtors agreed that their Loans were contingent on Ms. McDaniel's enrollment at the school.[12]  And, to back up this covenant, Debtors acknowledged that they would "immediately repay" any loan proceeds that couldn't reasonably be attributed to meeting expenses related to attending Lakeland College.[13]   Thus, as the majority of courts to have considered the question hold,[14] Debtors' student loans constitute "obligation[s] to repay

---

[10] *See* Complaint, ¶¶ 20, 25, 36, 38.

[11] *Id.*, Ex. B at 6, 31, 38.

[12] *Id.* at 5, 31, 37.

[13] *Id.* at 6, 14, 31, 38.

[14] *See, e.g.*, *In re Desormes*, 569 F. App'x 42 (2d Cir. 2014); *In re Rizor*, 553 B.R. 144 (Bankr. D. Alaska 2016); *In re Shaw*, No. 08-30319-H3-7, 2015 WL 1000213 (Bankr. S.D. Tex. Mar. 3, 2015); *In re Cardona*, No. 15-16365-BKC-LMI, 2015 WL 9459883 (Bankr. S.D. Fla. Dec. 23, 2015); *In re Brown*, 539 B.R. 853 (Bankr. S.D. Cal. 2015); *In re Rust*, 510 B.R. 562 (Bankr. E.D. Ky. 2014); *In re Corbin*, 506 B.R. 287 (Bankr. W.D. Wash. 2014); *In re Vasa*, No. 14-40109, 2014 WL 6607512 (Bankr. D.S.D. Nov. 19, 2014); *In re Beesley*, No. 12-24194-CMB, 2013 WL 5134404 (Bankr. W.D. Pa. Sept. 13, 2013); *In re Maas*, 497 B.R. 863 (Bankr. W.D. Mich. 2013); *In re Rumer*, 469 B.R. 553 (Bankr. M.D. Pa. 2012); *In re Belforte*, No. 10-22742-JNF, 2012 WL 4620987 (Bankr. D. Mass. 2012); *In re Goldstein*, No. 11-81255-MGD, 2012 WL 7009707 (Bankr. N.D. Ga. Nov. 26, 2012); *In re Carow*, No. 10-30264, 2011 WL 802847 (Bankr. D.N.D. Mar. 2, 2011); *In re Skipworth*, No. 09-83982-JAC-7, 2010 WL 1417964 (Bankr. N.D. Ala. Apr. 1, 2010); *In re Roy*, No. 08-33318, 2010 WL 1523996 (Bankr. D.N.J. Apr. 15, 2010); *In re Baiocchi*, 389 B.R. 828 (Bankr. E.D. Wis. 2008); *In re Micko*, 356 B.R. 210 (Bankr. D. Ariz. 2006).

funds received as an educational benefit" and are excepted from discharge under §

523(a)(8)(A)(ii) of the Bankruptcy Code.[15]

For these reasons, Navient couldn't have violated the discharge injunction applicable to

Debtors' other creditors: Navient's claims were never—nor could they have been—discharged.

Nor did Debtors ever take the action that the Supreme Court requires to discharge student loans

(in fact, they did the opposite through their Amended Plan).[16]

Nonetheless, Debtors' Complaint claims, first, that this Court actually discharged them

from Navient's educational loans in their bankruptcy case (Count I).  Second, as a result of the

supposed discharge, Debtors' Complaint seeks damages from Navient for allegedly violating the

Court's general discharge order that applied to their other creditors (Count II).

In addition to the insurmountable hurdles identified above, Debtors' claims also fail

because they fail to state a valid claim for contempt.  Specifically, Debtors seek damages for

alleged discharge injunction violations.[17]  But no private right of action exists for such a claim.

Rather, a debtor must enforce his or her discharge injunction through a proceeding for contempt.

Contempt, in turn, requires a court order that clearly and unmistakably delineates the prohibited

conduct.[18]

---

[15] Navient expressly reserves all rights, claims, arguments, and defenses not set forth herein.  This reservation includes, but is not limited to, the defense that Debtors' student loans are excepted from discharge as qualified education loans under § 523(a)(8)(B), which Navient will assert at the appropriate time if necessary and after sufficient time to conduct discovery.

[16] The burden rested with Debtors to initiate an adversary proceeding to seek a specific dischargeability determination regarding their Educational Loans.  Because Debtors never did that, their Educational Loans are presumptively excepted from discharge, even ignoring that their current claims are also barred by res judicata.  *See infra* at Argument § 1.

[17] Complaint, ¶¶ 34-37.

[18] *See infra* at Argument § III and footnotes 146-48.

Active/46902711.1

Here, the Debtors' general Discharge Order cannot support a finding of contempt under these circumstances. Indeed, it says nothing whatsoever about whether Debtors discharged their student-loan obligations to Navient. To the contrary, the bankruptcy form that accompanied Debtors' general Discharge Order stated that debts for most student loans are *not* discharged.[19]

As Navient explains in detail below, the Court should dismiss the Complaint in its entirety because:[20]

- Debtors' claims are barred by the Bankruptcy Code and principles of res judicata under the terms of their confirmed Amended Plan;

- Debtors' Complaint shows that their student loans are excepted from discharge as "an obligation to repay funds received as an educational benefit" under § 523(a)(8)(A)(ii); and

- Debtors' damages claim based on an alleged violation of the discharge injunction fails as an improper claim for civil contempt.

Finally, in the event that the Court doesn't dismiss Debtors' Complaint entirely, it should strike large portions of it. Far from admitting their own reversal of position, Debtors savagely

---

[19] *See infra* at Argument § III(B).

[20] When ruling on a motion to dismiss, the Court "'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). "When a complaint includes an attached exhibit, the exhibit's legal effect is to be determined by its terms rather than by the allegations of the pleader." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) (internal quotation omitted). As discussed in footnote 6 above, the Court can take judicial notice of documents filed in Debtors' bankruptcy case. Unlike non-dischargeability under § 523(a)(8)(B)—which is an alternative defense that Navient reserves the right to assert at the appropriate time if Debtors' claims are not dismissed—the completely dispositive issues presented in this Motion may be resolved as pure issues of law based on the allegations in the Complaint. Of course, should the Court determine that it must consider matters outside of the pleadings when ruling on Navient's Motion to Dismiss, it may convert the motion to one for summary judgment. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir. 1997) (collecting authorities).

Active/46902711.1

attack Navient for a supposed "massive effort to defraud student debtors"[21] (among other irrelevant allegations). Yet, Debtors allege no claim for fraud, exemplary damages, or anything else to which these allegations might pertain. The allegations in paragraphs 1 and 9-19 of the Complaint are therefore immaterial, impertinent, and scandalous, as well as facially irrelevant to any claim or defense in this case and unconnected with any possible act or omission by Navient relating to these Debtors, and should be stricken.

## FACTUAL BACKGROUND[22]

Between 2004 and July 2007, Debtors borrowed over $100,000 in six Sallie Mae Tuition Answer Loans (the "Educational Loans") for Laura Paige McDaniel to attend Lakeland College.[23] In their promissory notes, Debtors certified that "all of the loan proceeds are to pay expenses directly related to attending" Lakeland College.[24] Debtors also certified that they "must immediately repay any funds that [they] receive which cannot reasonably be attributed to meeting . . . educational expenses related to attendance at" Lakeland College.[25]

Debtors further agreed that any undisbursed funds obtained through the Educational Loans could be canceled if Ms. McDaniel "ceas[ed] to be enrolled at" Lakeland College."[26] And

---

[21] Complaint, ¶ 1.

[22] Consistent with the well-established standards for a motion to dismiss, the following facts are taken—solely for purposes of this motion—from Debtors' Complaint, Debtors' bankruptcy schedules, and documents of which this Court can take judicial notice. The Court need not—and should not—however, accept legal conclusions that are couched as factual allegations in Debtors' Complaint. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[23] Complaint, ¶¶ 20, 22, 25. 26. Navient is the current servicer for Debtors' Educational Loans. Debtors allege that the current balance of the Educational Loans is $245,264. *Id.* ¶ 21.

[24] Complaint, Ex. B at 6, 31, 38.

[25] *Id.* at 6, 14, 31, 38.

[26] *Id.* at 5, 31, 37.

6

in at least one promissory note Debtors certified that the relevant Educational Loan "is a qualified education loan as described in Section 221(d)(1) of the Internal Revenue Code of 1986 . . . and . . . therefore is not dischargeable in bankruptcy[.]"[27]

In December 2009, Debtors filed a voluntary Chapter 13 bankruptcy petition in this Court.[28]  Debtors listed eleven Navient loans in Schedule F of the petition.[29]  Six of the eleven scheduled loans had dates corresponding to the Educational Loans at issue in the Adversary Complaint.[30]  In their schedules—which they signed under penalty of perjury—Debtors labeled all of the Navient loans as "Educational."[31]  Debtors scheduled their obligations under all of their Educational Loans as noncontingent, liquidated, and undisputed.[32]

With their petition, Debtors also filed their original Chapter 13 plan (the "Original Plan").[33]  In their Original Plan, Debtors checked the box indicating they had "no student loans," despite listing eleven "Educational" loans in Schedule F.[34]

The Court established a claims bar date of May 3, 2010.[35]  Navient timely filed five proofs of claim encompassing all of the Educational Loans.[36]

---

[27] *Id.* at 14.

[28] *Id*. at ¶ 27.

[29] Bankr. Case Dkt. # 1, pp. 31-33.

[30] *Compare* Bankr. Case Dkt. # 1, pp. 31-33 *with* Complaint, ¶¶ 20, 25.

[31] Bankr. Case Dkt. # 1, pp. 31-33.

[32] *Id*.

[33] Bankr. Case Dkt. # 2, p. 7.

[34] *Id*.  *Compare* Bankr. Case Dkt. # 1, pp. 31-33.

[35] Bankr. Case Dkt. # 10.

7

In January 2010, the Chapter 13 Trustee filed an objection to confirmation of the Debtors' Original Plan and listed as her first basis for objection, "The plan makes no provision for debtor's [*sic*] non-dischargeable student loan [*sic*].  1322(b)(10) [*sic*]."[37]  Two months later, following a hearing on the Chapter 13 Trustee's objection, this Court sustained the objection and denied confirmation of the Original Plan and ordered Debtors to file a new plan.[38]

As the Court required, Debtors filed their Amended Plan on April 1, 2010.[39]  Rather than omitting their Educational Loans as they did in their Original Plan, in the Amended Plan Debtors checked the box for "Student Loans."[40]  Debtors expressly stated that their "student loans" would not be treated as "an unsecured Class Four claim,"[41] thereby distinguishing their Educational Loans from their other dischargeable "Class Four" unsecured claims.

Far from seeking to discharge their Educational Loans, Debtors drafted into their plan unique language providing that the Educational Loans would be "deferred until end of plan."[42]  Nothing in the Amended Plan indicated that Debtors sought to discharge any portion of the

---

[36] Bankr. Case Claims Register Dkt. ## 25-1, 26-1, 27-1, 28-1, 29-1.  Only five proofs of claim were filed because the Proof of Claim at Dkt. #25 pertained to two loans.  The claims were later amended to reflect Navient as the creditor due to a name change: before 2014, Navient was known as Sallie Mae Inc.  *See* Complaint, ¶ 1; Bankr. Case Claims Register Dkt. ## 25-2, 26-2, 27-2, 28-2, 29-2.

[37] Bankr. Case Dkt. # 12.

[38] Bankr. Case Dkt. # 18.

[39] Bankr. Case Dkt. # 25.

[40] *Id*. at 6.

[41] *Id.*

[42] *Id*.

Educational Loans.  To the contrary, *the Debtors expressly distinguished their Educational Loans from their other dischargeable Class Four unsecured claims*.

The Amended Plan also provided that Debtors would make collective payments to all unsecured creditors, including Navient, totaling $40,134.10 during the five-year plan period.[43] Thus, the Amended Plan provided that all student-loan creditors would receive their *pro rata* share of plan payments as unsecured creditors during the plan payment period, deferring all other amounts to be paid under the terms of the respective non-discharged loans until  the "end of plan," at which time those loans would be paid in full according to their terms.[44]

That same day, Debtors served on Navient a copy of the Amended Plan.[45]  On May 4, 2010, the Court entered its Order confirming the Amended Plan (the "Confirmation Order").[46] Debtors allege they paid Navient $26,782 as its share of the $40,134.10 total paid to unsecured creditors during the five-year payment period under the Amended Plan.[47]

Five years after confirmation of the Amended Plan, Debtors certified to the Court that they completed all plan payments and requested a discharge.[48]  The Court issued its general discharge order (the "Discharge Order") on March 3, 2015.[49]  Official Form B18W attached to

---

[43] *Id*. at 6.

[44] *Id.* at 6, ¶ IV.D.2.a.

[45] Bankr. Case Dkt. # 26.

[46] Bankr. Case Dkt. #32.

[47] Complaint, ¶ 28.

[48] Bankr. Case Dkt. # 53.

[49] Bankr. Case Dkt. # 54.

Active/46902711.1

the Discharge Order stated that among "[d]ebts that are not [d]ischarged" are "[d]ebts for most student loans."[50]

For two years following their discharge from their other unsecured claims, Debtors allege they continued to make monthly payments to Navient on their Educational Loans, totaling $37,460.[51]  Only now, more than two years after the discharge of their other claims, more than seven years after they confirmed their Amended Plan, and nearly eight years after they filed for bankruptcy listing eleven "Educational" loans as undisputed debts—all the while remaining silent about any intent to seek to discharge their Educational Loans—Debtors sued Navient, contending their Educational Loans are dischargeable and were discharged by the general Discharge Order.[52]

## STATEMENT IN COMPLIANCE WITH FED. R. BANKR. P. 7012(b)

As required by Fed. R. Bankr. P. 7012(b), Navient states that it consents to the entry of final orders or judgments by the Bankruptcy Court in this matter.

## LEGAL STANDARDS APPLICABLE TO NAVIENT'S MOTION

### I.   MOTION TO DISMISS

When considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the nonmoving party.[53]  That

---

[50] *Id.* at 2.

[51] Complaint, ¶ 33.

[52] *Id.*, ¶¶ 35-41.

[53]  *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014)).

Active/46902711.1

standard, however, does not require a court to accept as true legal conclusions that the plaintiff couches as factual allegations.[54]

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.[55]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[56] Rather, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."[57]

## II.   MOTION TO STRIKE

The Federal Rules of Civil Procedure authorize the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."[58]  Further, the Court may take such an action *sua sponte* or at the request of a party before that party responds to a pleading, and has discretion to do so where the pleadings have "no possible bearing on the controversy" and where the moving party makes "a showing of prejudice."[59]  A motion to strike should be granted

---

[54] *Ashcroft*, 556 U.S. at 678; *Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012).  *See also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016) (collecting authorities holding that the court "is not bound by a pleading's . . . 'unsupported conclusions,' or its 'unwarranted inferences,' or its 'unwarranted deductions'").

[55] *Khalik*, 671 F.3d at 1190 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[56] *Ashcroft*, 556 U.S. at 678.

[57] *Twombly*, 550 U.S. at 555.

[58] Fed. R. Civ. P. 12(f); *see also* Fed. R. Civ. P. 7(a)(1) (defining a complaint as a pleading).

[59] Fed. R. Civ. P. 12(f)(1); *see, e.g.*, *C.M. v. Burns*, No. 13-cv-01878, 2014 WL 1056414, at *4 (D. Colo. Mar. 19, 2014) (quoting *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997)).

11

if it results in avoiding confusion of the issues in the case, saves time and money that would be spent litigating issues that will not affect the case's outcome, or otherwise streamlines the ultimate resolution of the action.[60]

## LEGAL ARGUMENT

**I.   DEBTORS' CONFIRMED AMENDED PLAN PROVIDES THAT THEIR EDUCATIONAL LOANS ARE NON-DISCHARGEABLE, SO RES JUDICATA BARS THEIR COMPLAINT**

In § 523(a)(8), "Congress evinced the unmistakable intent to make student loan debts **presumptively non-dischargeable** and to single them out for an individualized adjudication."[61] As the Supreme Court has held, § 523(a)(8) is "self-executing," and "unless the debtor affirmatively secures a [dischargeability] determination, the discharge order will not include a student loan."[62]

Debtors' Educational Loans—which Debtors themselves labeled as "educational"—are presumptively non-dischargeable.  Thus, if they wished to discharge their Educational Loans, Debtors had to affirmatively seek a discharge of their student loans through an adversary proceeding.[63]  Debtors not only failed to initiate an adversary proceeding seeking a determination of dischargeability of their Educational Loans, they never said *one word* about discharging their loans during their bankruptcy case.

---

[60] *See, e.g., U.S. v. 11843 Hannibal St., Commerce City, Colo.*, No. 12-cv-01433, 2012 WL 5392497, at *1 (D. Colo. Nov. 5, 2012); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1381 (3d. ed. 2017).

[61] *In re Mersmann*, 505 F.3d 1033, 1047-48 (10th Cir. 2007), *abrogated on other grounds by Espinosa*, 559 U.S. at 269 (holding that a confirmed plan including a discharge of student loan debts was final even if it violated the Bankruptcy Code and Rules) (emphasis added).

[62] *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004); *see also Shaw*, 2015 WL 1000213 at *3.

[63] *Espinosa*, 559 U.S. at 269.

Quite the contrary—Debtors proposed, confirmed, and completed their Amended Plan, which distinguished their Educational Loans from their other dischargeable unsecured debts in Class Four and provided that separate payments on their non-discharged Educational Loans would be "deferred until end of plan."[64]  Significantly, they added this unique language to their plan after the Chapter 13 Trustee objected to their Original Plan because it didn't address their non-dischargeable student loans and the Court denied confirmation of that plan.[65]

*Espinosa* controls this case: Debtors can't reverse the binding effect of their Amended Plan and the Confirmation Order, which—seven years ago—excepted their Educational Loans from discharge.[66]  Res judicata therefore bars their claims against Navient.

### A.    Res judicata bars Debtors' claims.

"Under Tenth Circuit law, claim preclusion [res judicata] applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."[67]  If a party demonstrates these elements, "res judicata is appropriate unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit."[68]  Res judicata plainly applies here.

---

[64] Bankr. Case Dkt. # 25, p. 6.

[65] Bankr. Case Dkt. ## 12, 25.

[66] *Espinosa*, 559 U.S. at 264.

[67] *MACTEC Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).

[68] *Id.*

13

First, the Bankruptcy Code provides that a confirmed plan binds the debtor and all creditors regardless of whether a creditor participated in the case.[69] The Debtors' Confirmation Order[70] is therefore a final judgment for purposes of res judicata."[71] Second, Debtors do not dispute the identity of the parties, as they allege that Navient (or its corporate predecessor) is the relevant creditor who participated in their bankruptcy case.[72] Third, as *Espinosa* instructs (as described below), the causes of action are the same. In their bankruptcy case Debtors tried, but failed, to impermissibly discharge their Educational Loans. They now seek in this adversary proceeding the same relief for the same loans from the same Court. Res judicata commands that they be deprived of that second bite at the apple.

Simply, throughout their bankruptcy case, Debtors had a full and fair opportunity to litigate whether their Educational Loans were dischargeable.[73] They elected not to do so, and should be held to their choice. The Chapter 13 Trustee alerted Debtors to the issue when she objected to their Original Plan because it failed to address their non-dischargeable student loans,

---

[69] 11 U.S.C. § 1327(a).

[70] Bankr. Case Dkt. # 32.

[71] *Espinosa*, 559 U.S. at 269; *see also Mersmann*, 505 F.3d at 1047 (There must be finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order); *In re Salina Speedway, Inc.*, 210 B.R. 851, 855 (B.A.P. 10th Cir. 1997) (and authorities cited therein) (in Chapter 11 context, it has long been held that an order confirming a plan constitutes a final judgment on the merits entitled to res judicata effect), *abrogated on other grounds by In re CF & I Fabricators of Utah, Inc.*, 150 F.3d 1233, 1240 (10th Cir. 1998).

[72] Complaint, ¶¶ 1, 25; Bankr. Case Dkt. ## 1, pp. 31-33; Bankr. Claims Register ## 25-29.

[73] *Id.*; *Espinosa*, 559 U.S. at 268-69 ("[T]he Bankruptcy Rules require a party seeking to determine the dischargeability of a student loan debt to commence an adversary proceeding by serving a summons and complaint on affected creditors.").

14

and the Court sustained that objection.[74]  Debtors then filed their Amended Plan expressly stating that their Educational Loans would not be discharged with their other unsecured claims, but were deferred until after the end of their plan payments.[75]  They cannot now avoid the terms of their confirmed and completed Amended Plan by re-litigating the matter.  Instead, res judicata applies to bar their Complaint.

   **B.**   ***Espinosa* controls this case.**

      **1.**   **In *Espinosa*, the Supreme Court held that the treatment of student loans in a confirmed plan is binding.**

In *Espinosa*, the debtor filed a Chapter 13 plan that proposed to (impermissibly) discharge a portion of his student loan debt.[76]  Although the debtor did not initiate the required adversary proceeding to obtain a dischargeability determination, the court confirmed his plan.[77]  Before confirmation, the lender didn't object to the plan's proposed discharge of part of the debtor's student loan.[78]

Years later, the lender sought to collect on its student loan and the debtor resisted on the basis of his confirmed plan.  Consequently, the lender sought to set aside the confirmation order as void under Federal Rule of Civil Procedure 60(b)(4) because, the creditor argued, the order violated the Bankruptcy Code and Rules due to the debtor's failure to commence an adversary proceeding and obtain a determination of dischargeability.[79]

---

[74] *See* Bankr. Case Dkt. # 12.

[75] *See* Bankr. Dkt. # 25, p. 6.

[76] 559 U.S. at 268-69

[77] *Id.*

[78] *Id.* at 265.

[79] *Id.*

The Supreme Court held, "[A] Chapter 13 plan that proposes to discharge a student loan debt without [a dischargeability determination] violates §§ 1328(a)(2) and 523(a)(8). Failure to comply with this self-executing requirement should prevent confirmation of the plan even if the creditor fails to object, or to appear in the proceeding at all. . . [T]o comply with § 523(a)(8)'s directive, the bankruptcy court must make an independent determination of [dischargeability] before a plan is confirmed, even if the creditor fails to object or appear in the adversary proceeding."[80]

The Court also held, however, that the lender's failure to object to confirmation or to take proper action required by Federal Rule of Civil Procedure 60 precluded relief from the bankruptcy court's improper confirmation order: "Given the Code's clear and self-executing requirement for [a dischargeability determination before a student loan debt can be discharged], the Bankruptcy Court's failure to make a [dischargeability determination] before confirming Espinosa's plan was a legal error. But the order remains enforceable and binding on [the lender] because [the lender] had notice of the error and failed to object or timely appeal."[81]

### 2.  *Espinosa applies here—in the opposite direction.*

*Espinosa* applies precisely to this case—in the opposite direction. Debtors are barred from reversing their earlier course, which was cemented in the Amended Plan and the Confirmation Order, treating their Educational Loans as non-dischargeable. After the Chapter 13 Trustee made an appropriate objection to Debtors' Original Plan, this Court denied confirmation

---

[80] *Id.* at 277-78 (internal quotations and citations omitted).

[81] *Id.* at 275 (internal citation omitted).

16

of Debtors' Original Plan, in part because it made "no provision for [Debtors'] non-dischargeable student loan[s]."[82]

Instead of filing an adversary proceeding to seek a discharge of their loans, Debtors amended their plan to expressly provide that their Educational Loans would *not be discharged* along with their other unsecured claims.[83]  After the Amended Plan was confirmed, Debtors finished their payments under the plan, and the Court granted Debtors a discharge of their other debts.  Debtors acted in accordance with the non-discharge of their Educational Loans by continuing to make payments to Navient for over two years after their discharge.

During their bankruptcy case, Debtors could have complied—but elected not to do so—with the Supreme Court's instructions and the Bankruptcy Rules by initiating an adversary proceeding to obtain a determination that their Educational Loans were dischargeable (for any reason).[84]  In short, they could have brought then the Complaint that they brought now.

## C.    Debtors confuse the parties' respective burdens in dischargeability actions.

Debtors state in their Complaint that, "If a creditor believes that a debt they [*sic*] hold is excepted from discharge, it is their legal burden to prove that the debt is encompassed by section 523(a)(8)."[85]  This statement misses the point entirely.  Burden of proof is not the issue.  Rather, because § 523(a)(8) is self-executing, the Supreme Court has repeatedly instructed that debtors

---

[82] Bankr. Case Dkt. # 12.

[83] Bankr. Case Dkt. # 25, p. 6.

[84] *Espinosa*, 559 U.S. at 264, 268-69.

[85] Complaint, ¶ 15

Active/46902711.1

bear the burden of commencing an adversary proceeding to obtain a determination of

dischargeability if they contend that their student loans are dischargeable.[86]

In addition to caselaw from the Supreme Court, this result is clear from the face of the

Bankruptcy Code:  § 523(c) places the burden on creditors to seek a determination regarding

debts under subsections 523(a)(2), (4), or (6) only.[87]  The exemption of educational debt from

discharge under § 523(a)(8), on the other hand, is "self-executing."[88]  Thus, when a debtor

asserts that a student loan is non-dischargeable, he or she bears the burden to commence an

action seeking a determination of dischargeability.  No less than the Supreme Court has

instructed that the essential "self-executing" nature of § 523(a)(8) means, "Unless the debtor

affirmatively secures a [determination of dischargeability], the discharge order will not include a

student loan debt."[89]  Accordingly, under *Espinosa* (as discussed above), the Amended Plan and

Confirmation Order are final, valid, and binding.[90]  Debtors improperly tried to circumvent the

---

[86] *Espinosa*, 559 U.S. at 269, 275; *Hood*, 541 U.S. at 450; *see also Shaw*, 2015 WL 1000213 at *3.

[87] 11 U.S.C. § 523(c)(1).

[88] *See Espinosa*, 559 U.S. at 268–69; *Hood.*, 541 U.S. at 450; *Easterling v. Collecto, Inc.*, 692 F.3d 229, 231–32 (2d Cir. 2012); *United States v. Frederick*, No. 10–13405, 2011 WL 379418, at *2 (E.D. Mich. Feb. 3, 2011); *In re White*, No. 07–4157, 2008 WL 5272508, at *1 n.2 (Bankr. E.D. Tex. Dec. 17, 2008); *see also Matter of Bayhi*, 528 F.3d 393, 399, 402, 408 (5th Cir. 2008) (noting that the debtor's student loan was "*per se*" and "automatically non-dischargeable") and *Shaw*, 2015 WL 1000213 at *3 (stating that "Section 523(a)(8) is 'self-executing' . . . Thus, a student loan debt remains due until there is a determination that the loan is dischargeable.  The ultimate burden is on the Debtor to seek a determination of dischargeability" and holding that a debtor bears that burden even when asserting that a student loan is outside the scope of § 523(a)(8)).

[89] *Hood*, 541 U.S. at 450.

[90] 559 U.S. at 269, 275.  *See also In re Greer*, 498 B.R. 98, 111 (Bankr. S.D. Miss. 2013) (a defective confirmed plan that fails to meet the due process requirements of *Espinosa* does not discharge student loan debt without an adversary proceeding)*; In re Kinney*, 456 B.R. 748, 752 (Bankr. E.D.N.C. 2010) (denying confirmation for a plan discharging student debt without an

Supreme Court's requirements through their Original Plan, and they are now bound by this Court's Confirmation Order for their Amended Plan, excepting their Educational Loans from discharge.

In light of the finality of the Confirmation Order and the Supreme Court's binding *Espinosa* opinion, traditional principles of res judicata bar Debtors' claims for a declaration of dischargeability and damages for violation of the discharge injunction.

## II. DEBTORS' EDUCATIONAL LOANS CONSTITUTE OBLIGATIONS TO REPAY FUNDS RECEIVED AS AN EDUCATIONAL BENEFIT THAT ARE EXCEPTED FROM DISCHARGE UNDER SECTION 523(a)(8)(A)(ii)

Through their Educational Loans, Debtors received the funds that allowed Laura Paige McDaniel to attend Lakeland College.[91]  Indeed, Debtors certified to Navient that "all of the loan proceeds [from the Educational Loans] are to pay expenses directly related to attending" Lakeland College.[92]  Then, when they filed for bankruptcy, Debtors stated under penalty of perjury in their bankruptcy schedules that all of their loans from Navient were "educational" in

---

adversary proceeding, based on *Espinosa*).  *Cf. In re Stevens*, 2015 WL 8968036, at *4 (Bankr. E.D. Wisc. Dec. 14, 2015) (relieving a student loan creditor from a confirmation order when creditor challenged defective plan within one year of the order as required by Rule 60(c)(1), unlike the creditor in *Espinoza*).  *But see In re Wright*, 444 B.R. 883, 886 (Bankr. S.D. Ind. 2010) (following *Espinosa* and permitting discharge under plan when creditor mistakenly failed to object to lack of adversary hearing, though court chastised debtors for tactics that verged on bad faith).

[91] Complaint, ¶¶ 20-22, Ex. B at 1, 6, 7, 14, 17, 27, 31, 33, 37, 39.

[92] *Id.*, Ex. B at 6, 31, 38.

19

nature.[93]  By enabling Ms. McDaniel to enroll in and attend college and support her personal

decision to improve her life through higher education, the loans conferred "educational benefits"

on her and are therefore excepted from discharge in bankruptcy.  As explained below, this

conclusion is supported by the plain language of § 523(a)(8).  It is also confirmed by the majority

of courts that have considered the question.  Thus, even leaving aside the res judicata bar,

Debtors have no viable claim to discharge the Educational Loans under § 523(a)(8).

> **A.**     **Consistent with the plain language of the statute, the majority of judicial decisions nationwide hold that a private student loan is an "obligation to repay funds received as an educational benefit" that is presumptively non-dischargeable under § 523(a)(8)(A)(ii).**

To ensure "that students [could not] take advantage of the bankruptcy system by

incurring large amounts of student debt [and] obtain a discharge of the debt on the eve of

lucrative careers," Congress added § 523(a)(8) to the Bankruptcy Code in the late 1970s to

exempt student-loan debt from discharge in bankruptcy (unless doing so would cause the debtor

undue hardship).[94]  Since then, Congress's every action on the subject has been to

comprehensively expand the scope of *non-dischargeability* of student loans—most recently in

2005 as part of the BAPCPA amendments.[95]

Three types of educational debts are now exempt from discharge under § 523(a)(8):

- "An educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any

---

[93] Bankr. Case Dkt. #1, pp. 31-33.

[94] *See* Kyle L. Grant, *Student Loans in Bankruptcy and the "Undue Hardship" Exception: Who Should Foot the Bill?*, 2011 Brigham Young U. L. Rev. 819, 827.  *See also Renshaw*, 222 F.3d at 86–87.

[95] *Renshaw*, 222 F.3d at 87–88.  *See, e.g., Corbin*, 506 B.R. at 296; *Beesley*, 2013 WL 5134404 at *4 (collecting authorities); *Carow*, 2011 WL 802847 at *4–5 (noting that "Congress has expanded the scope of section 523(a)(8) through successive amendments").

program funded in whole or in part by a governmental unit or nonprofit institution";[96]

- "[O]bligation[s] to repay funds received as an educational benefit, scholarship or stipend";[97] and

- "[Q]ualified educational loan[s]" as defined in 26 U.S.C. § 22l (d)(l).[98]

Faced with dischargeability claims similar to Debtors', most courts nationwide have found that private educational loans cannot be discharged in bankruptcy. For example, in *In re Carow*, a debtor obtained four private loans related to her attendance at two colleges.[99] In doing so, the debtor certified—as Debtors did here—that the proceeds of her loans would be used for educational purposes and that she would "repay any funds . . . received which cannot reasonably be attributed to meeting [her] educational expenses related to attendance at" college.[100] The debtor argued that she discharged these loans in bankruptcy, but the court rejected that position. The court found that the debtor "failed to establish that the debt to [the private lender] is not an obligation to repay funds received as an 'educational benefit.'"[101]

Similarly, the court in *In re Edwards* found that "[t]here [was] no dispute" that Tuition Answer Loans—the same loan program at issue here—used to obtain a bachelor's degree were

---

[96] 11 U.S.C. § 523(a)(8)(A)(i).

[97] *Id.* § 523(a)(8)(A)(ii).

[98] *Id.* § 523(a)(8)(B). This Motion to Dismiss addresses only § 523(a)(8)(A)(ii). As discussed in footnote 15 above, Navient reserves the right to assert, among other things, that Debtors' student loans are also excepted from discharge as qualified educational loans under § 523(a)(8)(B). Navient will brief this argument in full at the appropriate time after discovery, should this motion be denied.

[99] 2011 WL 802847 at *1-2.

[100] *Id.* at *2. *Compare* Complaint, Ex. B at 6, 14, 31, 38.

[101] *Id.* at *4.

excepted from discharge under § 523(a)(8)(A)(i), (ii).[102]  Likewise, the court in *In re Rizor* found that private loans used to fund a debtor's attendance at veterinary school "easily fit within the description of § 523(a)(8)(A)(ii)."[103]

The decision in *In re Shaw* is also particularly instructive.[104]  There, a debtor consolidated two student loans into a single $104,405.98 loan before she filed her chapter 7 case. The debtor neither objected to the lender's proof of claim nor filed an adversary proceeding to determine whether the debt could be discharged.  After the lender obtained a post-discharge default judgment on the consolidated loan in state court, the debtor reopened her bankruptcy case to seek a determination whether that debt was dischargeable.[105] The court rejected the debtor's arguments and found that the lender's consolidated loan was exempt from discharge "under section 523(a)(8)(A)(ii) as it is an obligation to repay funds received as an educational benefit."[106]

These opinions are not anomalous.  Indeed, the majority of courts across the country have concluded that a private student loan qualifies as an "obligation to repay funds received as an educational benefit" under § 523(a)(8)(A)(ii).[107]  Because Debtors do not, and cannot, allege that

---

[102] 561 B.R. at 855 n.11.

[103] 553 B.R. at 150.

[104] 2015 WL 1000213 at *1.

[105] *Id.*

[106] *Id.* at *2.

[107] *See, e.g.*, *Brown*, 539 B.R. at 859 ("The court . . . concludes that § 523(a)(8)(A)(ii) should be interpreted broadly to include a bar examination loan under the definition of 'educational benefit.'"); *Corbin*, 506 B.R. at 296 ("Section 523(a)(8) was amended in 2005 by Congress to make a broader range of student loan debt non-dischargeable, regardless of the nature of the lender.  Section 523(a)(8)(A)(ii) was added [to the Bankruptcy Code],[107] covering loans made by nongovernmental and profit-making organizations, and making non-dischargeable

they used their Educational Loans for anything but educational purposes, nothing in Debtors' Complaint allows them to avoid the same result here.

### B.   The minority line of cases holding otherwise is wrongly decided and should not be followed.

Although the weight of authority holds that private student loans are excepted from discharge under § 523(a)(8)(A)(ii), decisions are not unanimous and a minority position exists. The minority line of cases is largely derived from *In re Campbell* and usually follows the same three-part rationale.[108]  But *Campbell* (which is the quintessence of Debtors' Complaint) and the minority line misapply the three principles of statutory interpretation that they invoke: (1) the canon against superfluities; (2) the canon of *noscitur a sociis*; and (3) reliance on legislative history.  *Campbell* was wrongly decided, and the Court should not follow it or the minority line of cases that follows the same errant path.[109]

---

'an obligation to repay funds received as an educational benefit, scholarship or stipend.'"); *Rust*, 510 B.R. at 567, 571–72 (noting that "a loan qualifies as an 'educational benefit'" and collecting authorities that held similarly); *Beesley*, 2013 WL 5134404 at *4  (describing authorities that have interpreted "funds received as an educational benefit" to include loans."); *Roy*, 2010 WL 1523996 at *1 (finding that loan extended for tutoring provided an educational benefit and was not dischargeable under section 523(a)(8)(A)(ii)); *Skipworth*, 2010 WL 1417964 at *2 ("The Court thus finds that the debtor's obligation to Citibank is clearly 'an obligation to repay funds received as an educational benefit' for purposes of § 523(a)(8)(A)(ii) in that Citibank loaned funds to the debtor to assist the debtor with his educational expenses, i.e. the debtor's bar review course.").

[108] 547 B.R. 49 (Bankr. E.D.N.Y. 2016).

[109] Because *Campbell* was wrongly decided, so too are the other cases that cite the decision or otherwise apply the same reasoning.  *See, e.g.*, *In re Essangui*, NO. 16–201–MMH, 2017 WL 4358755 at *1 (Bankr. D. Md. Oct. 2, 2017); *In re Kashikar*, 567 B.R. 160, 166 (B.A.P. 9th Cir. 2017) (block quoting *In re Christoff*, 527 B.R. 624, 632 (B.A.P. 9th Cir. 2015) to conclude that medical school debt was not excepted from discharge); *Schultz v. Navient Solutions, LLC*, No. 16–3042 (Bankr. D. Minn. Dec. 13, 2016) (an interlocutory oral ruling never reduced to an order, which became a nullity when the case settled before final judgment); *In re Decena*, 549 B.R. 11 (Bankr. E.D.N.Y. 2016), *vacated sub nom. Citizens Bank v. Decena*, 562 B.R. 202 (E.D.N.Y. 2016); *Matter of Swenson*, No. 16–10016, 2016 WL 4480719 (Bankr. W.D. Wis. Aug. 23, 2016); *In re Meyer*, No. 15–13193, 2016 WL 3251622 (Bankr. N.D. Ohio June 6,

23

1.      *The minority position misapplies canons of statutory interpretation.*

In *Campbell*, the court addressed a debtor's complaint for a dischargeability determination as well as for damages, violations of consumer-protection statutes, and equitable remedies.[110]  The allegations concerned a bar-study loan that the debtor obtained from a private lender.  The sole question before the court was whether the loan was "excepted from discharge under § 523(a)(8)(A)(ii)."[111]

Rejecting the well-established line of decisions that preceded it, the *Campbell* court first found that interpreting § 523(a)(8)(A)(ii) to include "any loan which relates in some way to education . . . would render superfluous most of the other provisions of § 523(a)(8)."[112]  The court next found that the canon of *noscitur a sociis* indicated that the phrase "educational benefit" must be interpreted to mean something like "scholarship" or "stipend," such that "'educational benefit' must be understood to refer to something other than a loan[.]"[113]  The court last looked to what it described as "legislative history" to bolster its analysis of the statutory text.[114]  Misapplying and misconstruing these tools of interpretation, the *Campbell* court concluded that the debtor *had* discharged her bar-study loan in bankruptcy.

---

2016); *In re Nunez*, 527 B.R. 410 (Bankr. D. Or. 2015) (which misinterpreted § 523(a)(8) by finding that a debt that otherwise satisfies § 523(a)(8)(A)(ii) must also satisfy § 523(a)(8)(A)(i) to qualify for a discharge exemption).

[110] *Id.* at 52.

[111] *Id.* at 54.

[112] *Id.* at 54-55.

[113] *Id.* at 55.

[114] 547 B.R. 49, 56-57.

Any exercise in statutory interpretation begins with the language of the statute itself.[115] Because the text of § 523(a)(8)(A)(ii) is clear and unambiguous, *Campbell* didn't need to resort to—and shouldn't have resorted to—any canons of interpretation.[116]  Simply, § 523(a)(8)(A)(ii) applies to *all* obligations to repay funds received as educational benefits regardless of whether the lender is a governmental, non-profit, or for-profit entity and regardless of the form of the obligation to repay.[117]  However, the *Campbell* court decided to overlook the Bankruptcy Code's plain language and go in a different direction from the majority of courts.  For the following reasons, *Campbell* and its followers got it wrong.

### 2.      *Including student loans within the § 523(a)(8)(A)(ii) discharge exception doesn't render any other provision superfluous.*

The *Campbell* court reasoned that if § 523(a)(8)(A)(ii) applied to loans, it would "swallow" the other subsections of § 523(a)(8).  That position is not only incorrect, it is also hyperbolic.  Correctly construing § 523(a)(8)(A)(ii) to encompass private student loans does not render any other portion of the statute superfluous .

While there may be some overlap under certain scenarios, § 523(a)(8)(A)(ii)'s application to private student loans catches instances of non-dischargeability that the other subparts of § 523(a)(8) miss.  For example, unlike the other subsections, § 523(a)(8)(A)(ii) requires funds to be received—a requirement that defeats any argument that it is a "catch-all" provision.  For example, both a private bar-study loan and  a judgment debt to a co-signer on a defaulted

---

[115] *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).

[116] *Id.* (collecting authorities); *United States v. Stevens*, 559 U.S. 460, 474 (2010).  *See Corbin*, 506 B.R. at 296 (characterizing the wording of § 523(a)(8)(A)(ii) as "plain language"); *Rust*, 510 B.R. at 572 (the same); *Brown*, 539 B.R. at 858 (the same).

[117] *See Micko*, 356 B.R. at 216.

Active/46902711.1

government-backed university loan that the co-signer paid in full would be exempt from discharge under § 523(a)(8)(A)(ii) but not § 523(a)(8)(A)(i) or (B), respectively.

The case of *In re Wills* provides another concrete illustration.[118]  There, a grandfather took out an educational loan for his grandson to attend a Title-IV technical school.[119]  The grandson withdrew from school and did not graduate.  When the grandfather tried to discharge the educational loan in bankruptcy, the court ruled that he could not, absent a showing of undue hardship.[120]  The court held that this loan, which covered tuition at a Title-IV school but which did not confer an educational benefit on the borrower, falls under the discharge exemption of § 523(a)(8)(B) but not § 523(a)(8)(A)(ii).[121]

Put another way, §§ 523(a)(8)(A)(ii) and (B) together reinforce the broad scope of the discharge exception for student loans by making clear that: (1) costs of attendance at qualified educational institutions are exempt from discharge without regard to how or whether the funds were "received" as an "educational benefit"; (2) "funds received as educational benefits" may be provided in numerous forms; and (3) "educational benefits" may be received other than at qualified educational institutions.

The Supreme Court has rejected the knee-jerk argument that any interpretation creating potential overlap between discharge exemptions is automatically improper, because overlap in § 523 is "inevitable."  In *Husky*, the Supreme Court held that interpreting "actual fraud" in § 523(a)(2)(A) to encompass "forms of fraud, like fraudulent conveyance schemes, that can be

---

[118] *In re Wills*, No. 08-80404-FJO-07, 2010 WL 1688221 (S.D. Ind. Apr. 23, 2010).

[119] *Id.* at *1.

[120] *Id.* at *4–7.

[121] *See id.* at *7.

26

effected without a false representation" did not render duplicative the use of "actual fraud" in § 523(a)(4) and (6).  Among other things, the Court wrote that it saw "no reason to craft an artificial definition of 'actual fraud' merely to avoid narrow redundancies in § 523 that appear unavoidable."[122]

Consistent with *Husky*, the three subsections of 523(a)(8) provide partially overlapping coverage where, under some circumstances, a particular student debt may be exempt from discharge under multiple subsections.  But that "inevitab[ility]" does not render any portion of § 523(a)(8) "redundant"[123] where all subparts of the statute serve different functions.  The Supreme Court instructed that potential redundancy is not the specter that *Campbell* claims.  Rather, in the interest of comprehensive coverage, "recognition of the desirability of redundancy to protect against human limitations pervades the law."[124]  The *Campbell* court and other courts sharing its minority view were wrong to find otherwise.

### 3. Minority courts misapply the canon of noscitur a sociis by constricting its focus too narrowly.

*Noscitur a sociis* is a canon of statutory interpretation instructing that "a word is known by the company it keeps[.]"[125]  *Campbell* misapplied *noscitur a sociis* to conclude that the use of

---

[122] *Id.* at 1588 (the Court found that the same act could be non-dischargeable under multiple subsections of § 523(a) and gave hypothetical examples of those scenarios).

[123] *Id.* at 1588.

[124] John M. Golden, *Redundancy: When Law Repeats Itself*, 94 Tex. L. Rev. 629, 633 (2016).  Recent research has determined that legislators *do not* draft statutes with the rule against superfluities in mind.  To the contrary, they generally note that "drafters intentionally err on the side of redundancy to 'capture the universe'" and that "the *political interests* of [their] audience[s] often demand redundancy."  Abbe R. Gluck & Lisa Schultz Bressman, *Statutory Interpretation From the Inside—An Empirical Study of Congressional Drafting, Delegation, and the Canons: Part I*, 65 Stanford L. Rev. 901, 934 (May 2013) (emphasis in original).  It is easy to see that intent manifested in § 523(a)(8).

[125] *Yates v. United States*, 574 U.S. __, 135 S. Ct. 1074, 1085 (2015).

"obligation to repay funds received as an educational benefit" in § 523(a)(8)(A)(ii) should have a meaning similar to "scholarship or stipend"—*i.e.*, that it means only items in the nature of conditional grants. *Campbell* further takes the canon to an absurd extreme by holding that the phrase "obligation to repay funds received as an educational benefit, scholarship or stipend" can refer only to items that are *not* generally required to be repaid.[126]  For at least three reasons, neither the statute's text nor Supreme Court precedent allows that construction.

First, as used in § 523(a)(8)(A)(ii), an "obligation to repay funds received as an educational benefit" does not keep company only with "scholarship or stipend."  *Campbell* cherry-picks language from one subsection (§ 523(a)(8)(A)(ii)) while neglecting to consider the context in which it appears: sandwiched between two other subsections (§ 523(a)(8)(A)(i) and (B)) that unquestionably apply to student loans and that are located in a statute that *was enacted specifically to address student loans*.  The Supreme Court has reversed decisions that misapplied *noscitur a sociis* in such a manner.[127]  It has also found a list of three items insufficient to support an inference of Congressional intent.[128]

---

[126] 547 B.R. at 55.  This flawed reading of the statute also implicitly, and without any textual support, introduces considerations regarding the motives of the entity to whom educational debts are owed by restricting exemption from discharge to scholarships, stipends, and grants.  The result is that *Campbell*'s interpretation would suggest that Congress intended to protect only altruistic lenders when it enacted BAPCPA, which is plainly wrong.

[127] *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 409 (2011) (reversing statutory interpretation that "applied the *noscitur a sociis* canon only to the immediately surrounding words, to the exclusion of the rest of the statute").

[128] *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 288 (2010) ("A list of three items . . . is too short to be particularly illuminating.").

Active/46902711.1

Second, courts have consistently found that a loan used for educational purposes confers an educational benefit on the borrower.[129]  When a loan has an educational purpose, it *is* similar to a scholarship or stipend: it assists the borrower with meeting the costs of education.  Thus, this interpretation comports with longstanding caselaw, which considers a debtor's purpose in incurring an obligation to be determinative under § 523.[130]  Moreover, loans, scholarships, and stipends must all be repaid in various ways.  With a loan, repayment is monetary.  Scholarships and stipends are usually repaid by academic means—e.g., maintaining a certain grade-point average or teaching assistance—but repayment can be monetary if the customary terms of repayment are breached.[131]

Finally, that Congress didn't use the word "loan" in § 523(a)(8)(A)(ii) is of no moment.[132]  The term that Congress did use—an "obligation to repay funds received"—is the functional equivalent of a loan.  Indeed, what else is a loan if not an "obligation to repay funds"?  Logically, combining the words "obligation" and "repay" *could not fail to include loans*.  It is also consistent with Congress's ever-broadening scope of the § 523(a)(8) exemption, because an

---

[129] *See, e.g.*, *Corbin*, 506 B.R. at 296; *Brown*, 539 B.R. at 858; *Rust*, 510 B.R. at 567 ("[A] majority of courts determine whether a loan qualifies as an 'educational benefit' by focusing on *the stated purpose for the loan when it was obtained*, rather than on how the loan proceeds were actually used.") (emphasis in original); *Maas*, 497 B.R. at 869 (the same).  *See also Murphy*, 282 F.3d at 871 ("[N]o court has suggested that the word 'benefit' should reduce the scope of covered loans.").

[130] *See, e.g.*, *Murphy*, 282 F.3d at 870; *In re Maas*, 497 B.R. 863, 869–70 (Bankr. W.D. Mich. 2013) (collecting authorities); *In re Rumer*, 469 B.R. 553, 562 (Bankr. M.D. Pa. 2012) (the same).

[131] *Cf. In re Burks*, 244 F.3d 1245, 1246–47 (11th Cir. 2001) (collecting examples of educational loans that are primarily repaid through non-monetary means, but must be repaid by monetary means if the borrower breaches a condition of repayment).

[132] *See Schindler Elevator Corp*, 563 U.S. at 409.

"obligation to repay funds as an educational benefit" is more *expansive* than the term "loan," not more *restrictive*.

Given the context in which it occurs—a subpart of § 523 that was enacted to specifically address student loans—an "obligation to repay funds as an educational benefit" must include loans. The text confirms this: § 523(a)(8)(B) refers to "*other* educational loans." (Emphasis added.) This language indicates that the previous subsection, 523(a)(8)(A), *must also* cover educational loans. Nothing in the statute excludes educational loans from subsection 523(a)(8)(A)(ii), and Congress's language in subsection (B) shows just the opposite.

> **4.      Selective partial recitation of purported "legislative history" is an illusory justification for ignoring the statute's plain meaning, and it supports Navient's position even if the Court were to consider it.**

The Supreme Court has repeatedly cautioned that legislative history is an unreliable indicator of legislative intent.[133] One Justice memorably described combing through legislative history for support as "the equivalent of entering a crowded cocktail party and looking over the heads of guests for one's friends."[134] That "selective recognition" principle applies here, where the primary piece of "legislative history" that *Campbell* invoked is a lone statement from the U.S. Attorney for the Eastern District of Texas—not a member of Congress—from a superseded version of the statute at issue.[135] Specifically, *Campbell* quotes the attorney's hearing testimony for the point that the 1990 amendments to § 523(a)(8) added "educational funds received in the

---

[133] *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) and *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 617 (1991).

[134] *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring).

[135] *Cf. Chrysler Corp.*, 441 U.S. at 311 ("The remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history.").

form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends."[136]

*Campbell's* resort to legislative history thus "lends itself to a kind of ventriloquism" by making "words appear to come from Congress's mouth which were spoken or written by others[.]"[137]  Indeed, by citing (a) a single remark (b) made by a non-legislator (c) regarding a prior version of the statute (d) passed fifteen years before (e) the current, substantially different version, *Campbell* accomplished the seemingly Herculean feat of uniting Justices Brandeis, Rehnquist, Scalia, and Kennedy: All four have authored notable opinions for the Supreme Court rejecting such a use of legislative history.[138]  Indeed, the Supreme Court found no need to resort to legislative history in *Husky* when it held that its interpretation of one subsection of § 523 wasn't improper even if it rendered other subsections partially superfluous.[139]

Setting aside the Supreme Court's admonishments that this Court should not allow itself to be guided by a statement from a non-legislator in relation to a superseded version of §

---

[136] 547 B.R. at 56.

[137] *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 73 (2004) (Scalia, J., dissenting).

[138] *See, e.g.*, *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 403–05 (2010) (Scalia, J.) (legislative history did not persuade the Supreme Court that a New York statute provided a substantive, rather than procedural, right for purposes of *Erie* analysis); *N.L.R.B. v. Health Care & Retirement Corp. of Am.*, 511 U.S. 571, 582 (1994) (Kennedy, J.) (Court rejected the National Labor Relation Board's citations to legislative history in advocating for a particular interpretation of statutory language); *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979) (Rehnquist, J.) ("The remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history."); *Penn Mut. Life Ins. Co. v. Lederer*, 252 U.S. 523, 538 (1920) (Brandeis, J.) (Supreme Court declined to consider the legislative history of different iterations of the Revenue Act, ruling that "no aid could possibly be derived from the legislative history of another act passed nearly six years after the one in question" and that such a use of legislative history would be "inappropriate.").

[139] *See generally* 136 S.Ct. at 1585-90.

31

523(a)(8), the purported legislative history actually supports Navient's interpretation of subsection 523(a)(8)(A)(ii).  That is, the purported legislative history that *Campbell* quoted states that "benefits . . . scholarships . . . and stipends" should "receive *the same treatment as a 'student' loan* with regard to restriction on dischargeability in bankruptcy."[140]  Thus, if this statement were indicative of Congress's intent with regard to all future versions of the statute, it would show that when Congress used "scholarships and stipends" in § 523(a)(8), it intended the phrase to take meaning from and receive the same protections as student loans.

This piece of purported legislative history goes on to "recommend" that "subsection (8) [of § 523(a)] be amended by adding the following after 'educational benefit, scholarship or stipend': '(other than a loan made under subpart I of part C of title VII of the Public Health Service Act or an obligation for payment of damages arising under section 338E of such Act)'."[141]  By recommending that Congress omit one particular type of loan from § 523(a)(8)'s discharge exemption, the legislative history demonstrates that the phrase "obligation to repay funds received as an educational benefit, scholarship or stipend" *was always considered to encompass student loans*.  In other words, if the language that now appears in § 523(a)(8)(A)(ii) did *not* encompass loans, Congress would have had no need to exclude by explicit reference any particular loan type that it wanted to omit from the discharge exemption.  The *Campbell* court ignored these additional portions of the purported legislative history.

---

[140] *Federal Debt Collection Procedures of 1990: Hearing on P.L. 101–647 Before the H. Subcomm. On Econ. and Commercial Law of the H. Comm. on the Judiciary*, 101st Cong. 74–75 (1990) (Mr. Brooks's Questions for the Record for Mr. Wortham) [hereinafter "*Federal Debt Collection Procedures of 1990*"]) (emphasis added)

[141] *Id.* at 75 (Mr. Brooks's Questions for the Record for Mr. Wortham).

Thus, Debtors' Educational Loans are exempt from discharge as "obligations to repay funds received as educational benefits" under § 523(a)(8)(A)(ii).  Those loans could not have been, and were not, discharged.

III. **DEBTORS' CLAIM FOR DAMAGES BASED ON NONEXISTENT VIOLATIONS OF THE DISCHARGE INJUNCTION IS A DEFECTIVE CONTEMPT OF COURT CLAIM THAT SHOULD BE DISMISSED**

Debtors' second claim seeks an award of damages against Navient for alleged violations of the discharge injunction.  This claim fails for the reasons described above—namely, that Debtors' claims are barred by res judicata, and because their obligations to Navient weren't discharged in any event.  But Debtors' second claim is also invalid because they can recover damages for violation of the discharge injunction through only a contempt of court claim (like any other injunction).  Debtors, however, do not plead a valid contempt claim.  And even if they had, the Court's general Discharge Order is not sufficiently specific to support a finding of contempt.

A. **Debtors must enforce the discharge injunction through a contempt proceeding.**

The discharge injunction is a court order.[142]  That order is enforceable only through contempt proceedings.[143]  Outside of a contempt proceeding, the Bankruptcy Code does not provide a private right of action for violation of a discharge injunction.[144]

---

[142] *In re Schott*, 282 B.R. 1, 5 (B.A.P. 10th Cir. 2002).

[143] *Id*. at 5-6.  In their Complaint, Debtors cite an older case from this Court that found an implied right of action under § 524(a) for a violation of the discharge injunction exists.  *In re Vogt*, 257 B.R. 65, 69 (Bankr. D. Colo. 2000) (cited at Complaint, p. 11 n. 11).  The Tenth Circuit, however, has implicitly overruled *Vogt*.  *In re Paul*, 534 F.3d 1303, 1310-11 (10th Cir. 2008).  In *Paul*, the debtors brought an adversary proceeding claiming that a creditor violated the discharge injunction.  *Id*. at 1304-05.  On appeal, the Tenth Circuit characterized the debtors' claims as a contempt proceeding under § 524(a)(2).  *Id*. at 1310-11.  Then, in defining a bankruptcy court's power to enforce the discharge injunction, the *Paul* court cited only decisions

Indeed, bankruptcy courts in the Tenth Circuit hold there is no private right of action for a violation of a discharge injunction and that the *sole remedy* for such a violation is through a contempt proceeding.[145]  Accordingly, Debtors' second claim must be construed as a claim for contempt.

### B.    The Court's general Discharge Order is not sufficiently specific to support a finding of contempt under these circumstances.

---

from sister circuits that characterized such an enforcement proceeding as one for contempt.  *Id.* at 1306-07 (citing *Walls*, *Bessette*, and *Cox*, listed in footnote 144, *infra*).

[144] *In re Sanchez*, 545 B.R. 55, 59 (Bankr. D.N.M. 2016); *In re Otero*, 498 B.R. 313, 319 (Bankr. D.N.M. 2013).  Nearly every circuit to have considered the question has required a debtor to enforce discharge orders through contempt and has held that no private right of action for discharge violations exists.  *See, e.g.*, *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 966, 970 (11th Cir. 2012); *In re Joubert*, 411 F.3d 452, 456 (3d Cir. 2005); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002); *Cox v. Zale Del., Inc.*, 239 F.3d 910, 915 (7th Cir. 2001) (Posner, J.); *Bessette v. Avco Fin. Srvs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000); *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86, 90 n.6, 92 n.7 (2d Cir. 2016) (citing *Yaghobi v. Robinson*, 145 F. App'x 697 (2d Cir. 2005) and noting that a discharge injunction violation creates a cause of action for contempt); *In re Fina*, 550 F. App'x 150, 154 (4th Cir. 2014) (noting that § 105 authorizes the imposition of contempt sanctions for violations of § 524).  *See also Matter of Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997) (stating that a discharge injunction is "often enforced by a motion for contempt" but may also be "enforceable through a declaratory judgment action").

[145] *In re Otero*, 498 B.R. at 319 (collecting cases); *In re Van Winkle*, 2017 WL 2729069, at *3 (Bankr. D.N.M. June 23, 2017) ("There is no private right of action under § 524(a)(2) when a creditor violates the discharge injunction.  The remedy lies in a contempt proceeding, pursuant to which the Court may assess sanctions.") (citing *Paul* and *Otero*); *In re Sanchez*, 545 B.R. at 59; *In re Montano*, 488 B.R. 695, 710 (Bankr. D.N.M. 2013); *In re Distad*, No. 07-2047, 2009 WL 1324037, at *4 (Bankr. D. Utah May 8, 2009) ("Section 524 does not create a cause of action for damages itself.  Violations of § 524 are treated as civil contempt.") (citing *Paul*); *In re Gray*, —B.R.—, 2017 WL 2484824, at *8 (Bankr. D. Kan. June 7, 2017) (violation of the discharge injunction is punishable by the bankruptcy court's contempt power); *In re Ledin*, 2016 WL 1305060, at *3 (Bankr. D. Kan. March 31, 2016) (violation of the discharge injunction "would be punishable as civil contempt"); *In re Ridley*, 2017 WL 2372283, at *6 (Bankr. E.D. Okla. May 31, 2017) (to remedy a violation of the discharge injunction "debtors appeal to the contempt powers of the court"); *In re Witty*, 2017 WL 462517, at *3 (Bankr. N.D. Okla. Jan. 25, 2017) (to plead a violation of the discharge injunction, a debtor must state a claim for contempt).

To be enforceable in contempt proceedings, a discharge order, just like any other order, must be clear and specific.[146]  Otherwise, a party would be left "open to the hazard of conducting business in the mistaken belief that it is not prohibited by the injunction and thus make [the party] vulnerable to prosecution for contempt."[147]  To support a contempt claim sufficient to justify damages, "[T]he court's order 'must set forth in specific detail an unequivocal command.'"[148]

Here, the Discharge Order did not contain *any statement whatsoever*, let alone a clear and specific order or "unequivocal command," that Debtors' Educational Loans were discharged and that Navient could not collect them.[149]  To the contrary, the Discharge Order and Official Form B18W stated that most student loans are *not* dischargeable.[150]  The Court never made any finding—and Debtors never sought one—that the Educational Loans were discharged.  Thus, this Court's general Discharge Order cannot support contempt sanctions against Navient before any

---

[146] *Reliance Ins. v. Mast Const. Co.*, 159 F.3d 1311, 1315-16 (10th. Cir. 1998).  *See also Williams v. U.S.*, 402 F.2d 47, 48 (10th Cir. 1967).

[147] *Williams*, 402 F.2d at 48.

[148] *Matter of Baum*, 606 F.2d 592, 593 (5th Cir. 1979) (quoting *H.K. Porter Co. v. Nat'l Friction Products Corp.*, 568 F.2d 24, 27 (7th Cir. 1977)).

[149] *See* Bankr. Case Dkt. ## 25, 53.

[150] *See* Bankr. Case Dkt. ## 25 (providing student loans are "deferred until end of plan") and 53 (noting "[d]ebts for most student loans" were not discharged).  To be clear, Navient is not suggesting that Debtors' general Discharge Order, which is based on a national form, is deficient or that bankruptcy courts ought to draft individual discharge orders for each case. Rather, Navient asserts that the general Discharge Order at issue here cannot support contempt damages for actions taken prior to any determination (required by the Supreme Court, and unsought by Debtors in their bankruptcy case) of whether or which of Debtors' Educational Loans were discharged.

Case:17-01274-KHT   Doc#:8   Filed:10/10/17   Entered:10/10/17 14:06:41   Page46 of 50

court makes the Supreme Court-required determination that the Educational Loans were dischargeable.[151]

Debtors effectively concede this point by requesting in this adversary proceeding a declaratory judgment on their allegedly unresolved, justiciable claim that their "Tuition Answer Loans are not non-dischargeable student loans or qualified educational loans, and were therefore discharged upon entry of the [Debtors'] discharge injunction."[152]  As applied to Debtors' Educational Loans, the general Discharge Order is just that: a *general* order that provides no guidance to Navient on what conduct is prohibited with respect to its claims.  In other words, with respect to whether Debtors discharged their obligations on their Educational Loans, the Discharge Order merely "contains only an abstract conclusion of law, not an operative command capable of 'enforcement'" that could support a finding of contempt.[153]

For these reasons, there is no specific, clear, unequivocal command directed toward Navient regarding the Educational Loans that could support a finding of contempt sufficient to justify the award of damages that Debtors seek.  Accordingly, Debtors' second claim is an invalid contempt claim and should be dismissed.[154]

---

[151] *Hood*, 541 U.S. at 450.

[152] Complaint, ¶ 36.

[153] *Int'l Longshoreman's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 74, 76 (1967).

[154] *See, e.g.*, *Int'l Longshoreman's Ass'n*, 389 U.S. at 74, 76 (finding an order that "did not state in specific . . . terms the acts that it required or prohibited" to be an "unintelligible . . . command that defies comprehension" and could not support contempt); *In re Robinson*, 342 F. App'x 235, 236 (8th Cir. 2009) (reversing imposition of contempt sanctions for violations of "a bankruptcy court order that enjoined [the defendant] from taking any actions to interfere in any way with the administration of [ ] jointly administered bankruptcies because the bankruptcy court's order was neither sufficiently specific to be enforceable, nor clear and unambiguous"); *In re Gervin*, 300 F. App'x 293, 300-01 (5th Cir. 2008) (affirming reversal of contempt finding where bankruptcy court order was not specific and unequivocal); *In re Logsdon*, 32 F. App'x 427, 428-29 (9th Cir.

IV.  **THE COURT SHOULD STRIKE DEBTORS' IRRELEVANT ALLEGATIONS ABOUT A NONEXISTENT FRAUD CLAIM**

Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  Under the District of Colorado's interpretation of this rule, the court should strike Paragraphs 1 and 9-19[155] of the Complaint as a "superfluous attack on [Navient's] character, inappropriate for a short and plain statement of the claim."[156]

In those paragraphs, Debtors allege that, for ten years, Navient "has been engaged in a massive effort to defraud student debtors and subvert the ordinary working of the bankruptcy courts."[157]  Debtors also make similar non-specific allegations that Navient engaged in a "scheme to manipulate [the] presumption of non-dischargeability and deceive [unnamed] debtors and the bankruptcy courts" and that Navient made other misrepresentations to various, unnamed student debtors.[158]  Debtors then make numerous allegations concerning the history of § 523(a)(8), taking particular pains to malign the incentives of unidentified lenders who lobbied for the 2005 amendments to § 523(a)(8) and to decry general educational lending practices.[159]

---

2002) ("We reverse because the Dischargeability Order upon which the Contempt Order was founded was not sufficiently specific and clear to give rise to contempt.").

[155] Complaint, ¶¶ 1, 9-19.

[156] *See, e.g., C.M.*, 2014 WL 1056414 at *4 (striking allegations amounting to a "superfluous attack on [defendant's] character, inappropriate for a short and plain statement of the claim"); *Purzel Video GmbH v. St. Pierre*, 10 F. Supp. 3d 1158, 1168 (D. Colo. 2014).

[157] Complaint, ¶ 1.

[158] *Id*. at ¶ 16.

[159] *Id*. at ¶¶ 11-12.

Active/46902711.1

Yet, Debtors do not have a fraud claim in this case to which their allegations might pertain. Their overblown allegations of pervasive, systemic wrongdoing against unnamed debtors therefore do not bear on any issues in this case. Rather than enabling Navient to respond to Debtors' claims and narrow the issues, these allegations have "no possible bearing on the controversy"[160] at hand and serve only to confuse matters. Similarly, Debtors' allegations of nonspecific fraud perpetrated by unnamed actors using unspecified means against unnamed victims are inflammatory, unnecessary, and irrelevant.[161]

The Court should therefore strike Paragraphs 1 and 9-19 of the Debtors' Complaint as a "superfluous attack on [Navient's] character, inappropriate for a short and plain statement of the claim."[162] Alternatively, the Court should strike these paragraphs as deficiently pleaded fraud claims, which must "make clear exactly *who* is alleged to have done *what* to *whom*."[163]

## CONCLUSION

WHEREFORE, Navient respectfully requests that this Court enter an order dismissing both of Debtors' claims for relief for failure to state a claim upon which relief can be granted and striking paragraphs 1 and 9 through 19 of the Complaint.

---

[160] *C.M.*, 2014 WL 1056414 at *4.

[161] *See Jensen v. America's Wholesale Lender*, 425 Fed. App'x 761, 763-64 (10th Cir. 2011); *cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (pleading nonspecific group wrongdoing is insufficient for the purpose of *Twombly*).

[162] *See, e.g., C.M.*, 2014 WL 1056414 at *4 (striking allegations amounting to a "superfluous attack on [defendant's] character, inappropriate for a short and plain statement of the claim"); *Purzel Video GmbH v. St. Pierre*, 10 F. Supp. 3d 1158, 1168 (D. Colo. 2014).

[163] *Robbins*, 519 F.3d at 1249 (emphasis in original).

Active/46902711.1

Dated this 10th day of October, 2017.

SHERMAN & HOWARD L.L.C.


*/s/ Eric E. Johnson*
Eric E. Johnson
Carla R. Martin
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 297-2900
E-Mail:  ejohnson@shermanhoward.com
          cmartin@shermanhoward.com

*Attorneys for Navient Solutions, LLC*

Active/46902711.1

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this 10th day of October, 2017 a true and correct copy of the foregoing **DEFENDANT NAVIENT SOLUTIONS, LLC'S MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR RELIEF UNDER FED.R.CIV.P. 12(b)(6) AND MOTION TO STRIKE IMMATERIAL AND IMPERTINENT MATTER UNDER FED.R.CIV.P. 12(f)** was served by depositing the same in the U.S. mail, postage prepaid, as follows:

Austin Smith
Smith Law Group
3 Mitchell Place
New York, New York 10017


*/s/ Roberta Neal*
Roberta Neal

Active/46902711.1