```
 1                  UNITED STATES BANKRUPTCY COURT
                    WESTERN DISTRICT OF MICHIGAN
 2                      GRAND RAPIDS DIVISION

 3   IN RE:                     .  Case No. 07-02212-jtg
                                .  Chapter 7
 4   RYAN GOODACRE,             .
                                .  One Division Avenue North
 5                  Debtor.     .  Grand Rapids, MI  49503
                                .
 6                              .  November 8, 2017
     . . . . . . . . . . . . . .  .
 7                              .
     RYAN LANCASTER, formerly   .  Case No. 16-80315-jtg
 8   known as RYAN GOODACRE,    .  Adversary Proceeding
                                .
 9                  Plaintiff,  .
                                .
10      vs.                     .
                                .
11   EDUCATIONAL FINANCIAL      .
     SERVICES, a division of    .
12   WELLS FARGO BANK, N.A.,    .
                                .
13                  Defendant.  .
                                .
14   . . . . . . . . . . . . . .  .

15
           TRANSCRIPT OF TELEPHONIC BENCH OPINION
16         BEFORE THE HONORABLE JOHN T. GREGG
              UNITED STATES BANKRUPTCY JUDGE
17

18   APPEARANCES:

19   For the Plaintiff:         Smith Law Group
                                By:  Austin C. Smith
20                              Three Mitchell Place
                                Suite 5P
21                              New York, NY  10017
                                (917) 992-2121
22
     For Educational Financial  Miller Canfield Paddock &
23   Services, a division of      Stone, PLC
     Wells Fargo Bank, N.A.:    By:  Ronald A. Spinner
24                              150 West Jefferson
                                Suite 2500
25                              Detroit, MI  48226
                                (313) 496-7829
```

```
 1   Appearances continued:

 2   For Educational Financial      Miller Canfield Paddock &
     Services, a division of          Stone, PLC
 3   Wells Fargo Bank, N.A.:        By:  Emily C. Palacios
                                    101 North Main Street
 4                                  Seventh Floor
                                    Ann Arbor, MI  48104
 5                                  (734) 668-7784

 6   Also Present:                  Crystal Lee
                                    Ryan Lancaster
 7
     Court Recorder:                Clerk's Office
 8                                  U.S. Bankruptcy Court
                                    One Division Avenue North
 9                                  Grand Rapids, MI  49503
                                    (616) 456-2693
10
     Transcription Service:         APLST, Inc.
11                                  6307 Amie Lane
                                    Pearland, TX  77584-2601
12                                  (713) 637-8864

13   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
14

15

16

17

18

19

20

21

22

23

24

25
```

1                    (Time Not Noted)

2           THE COURT:  Good morning.  This is a telephonic

3    bench opinion in the case of Lancaster versus Educational

4    Financial Services, adversary proceeding number 16-80315.

5           A transcript will be available upon request to the

6    Clerk's Office.

7           Could I have the appearances, please?

8           MR. SPINNER:  Yes, Your Honor.  Ron Spinner from

9    Miller Canfield, for Educational Financial Services, a

10   division of Wells Fargo Bank.

11          MS. PALACIOS:  Yes, Your Honor.  Emily Palacios,

12   also appearing on behalf of Educational Financial Services, a

13   division of Wells Fargo Bank, N.A.

14          Also, Your Honor, so you may be aware, we have a

15   representative of Wells Fargo Bank on the line this morning,

16   as well.  It's Crystal Lee.

17          THE COURT:  Okay, thank you.

18          MR. SMITH:  Your Honor, Austin Smith for the

19   Plaintiff-Debtor, Ryan Lancaster, formerly known as Ryan

20   Goodacre.

21          MR. LANCASTER:  And Ryan Lancaster.  I'm here.

22          THE COURT:  Okay, thank you.  Before the Court is

23   a motion to dismiss the second amended complaint.

24          In the motion, the Defendant, Educational

25   Financial Services, a division of Wells Fargo Bank, National

1   Association, first contends that the complaint must be

2   dismissed under Federal Rule of Civil Procedure 12(b)(1),

3   because this Court lacks subject matter jurisdiction.

4          Second, even if the Court had subject matter

5   jurisdiction, the Defendant argues that the Plaintiff, Ryan

6   Lancaster, has failed to state a claim upon which relief can

7   be granted under Federal Rule of Civil Procedure 12(b)(6).

8          The facts presented in the second amended

9   complaint are fairly straightforward.

10          The Plaintiff borrowed $10,500.00 from the Federal

11   government on May 17, 2004, to assist him with his education

12   at an on-line university.

13          Later that year, the Plaintiff borrowed $15,000.00

14   from Wells Fargo in the form of two private non-certified,

15   non-qualified, credit-based, direct-to-consumer loans.

16          The second amended complaint further states that

17   the loans from Wells Fargo had nothing to do with his

18   education at the on-line university, or anywhere else, for

19   that matter.

20          In March of 2007, the Plaintiff filed a Petition

21   for relief under Chapter 7 of the Bankruptcy Code in this

22   Court.

23          On Schedule F, the Plaintiff identified the

24   Defendant as having a general unsecured claim in the amount

25   of $9,892.00.

1         Schedule F further described the debt he owed to

2 the Defendant as a student loan, and "indicated that he was

3 indebted to Wells Fargo for educational loans."

4         The Defendant's claim was never liquidated or

5 otherwise adjudicated in the Plaintiff's bankruptcy, which

6 was a no-asset case.

7         Likewise, neither the Plaintiff nor the Defendant

8 commenced an adversary proceeding seeking a determination as

9 to the dischargeability of the debt under Section 523(a)(8)

10 during the pendency of the Plaintiff's bankruptcy case, or at

11 any other time, for that matter, until the commencement of

12 this adversary proceeding.

13         Less than a year after filing his bankruptcy

14 Petition, the Plaintiff received a discharge of his debts.

15         The order granting the Plaintiff a discharge

16 states that the Plaintiff is granted a discharge under

17 Section 727 of the Bankruptcy Code.  The discharge order

18 includes a rider entitled "explanation of bankruptcy

19 discharge in a Chapter 7 case."

20         Under a sub-heading entitled "debts that are not

21 discharged," the rider generally explains that "some of the

22 common types of debts which are not discharged" are "debts

23 for most student loans."

24         The discharge order makes no mention of the

25 specific debt owed to the Defendant, however.

1          In 2007, and after the entry of the discharge

2   order, the Defendant commenced a civil action against the

3   Plaintiff in Michigan State Court to collect the debt related

4   to the two loans.

5          According to the second amended complaint, the

6   State Court complaint made no mention of the Plaintiff's

7   previous bankruptcy or resulting discharge.

8          Neither the State Court complaint, nor any other

9   pre-judgment pleadings, are attached to the second amended

10  complaint in this adversary proceeding.

11         The second amended complaint states that "Wells

12  Fargo forced the Plaintiff into a consent judgment on October

13  23, 2008."

14         Moreover, the second amended complaint states that

15  "after inducing the Plaintiff into the consent judgment,

16  Wells Fargo then proceeded to collect on this discharged debt

17  in monthly installments of $150.00 for the next seven years."

18         In 2015, the Plaintiff "was forced to borrow

19  $8,000.00 to repay the consent judgment in full."

20         The Plaintiff alleges that because he is still

21  repaying this new debt today, he is "continuing to suffer

22  injury-in-fact resulting from Wells Fargo's actions."

23         The Plaintiff further alleges that he has suffered

24  harm from the illegal collection efforts of the Defendant.

25         On November 16, 2016, and after the Court re-

1 opened the underlying bankruptcy case, the Plaintiff

2 commenced this adversary proceeding against the Defendant and

3 Thomas Alward, the latter of whom has been voluntarily

4 dismissed.

5       The Court subsequently granted the Defendant's

6 motion to dismiss the first amended complaint on April 18,

7 2017, because the Plaintiff had failed to state a claim upon

8 which relief could be granted.

9       However, the Court granted the Plaintiff leave to

10 file an amended complaint.

11       In his second amended complaint, the Plaintiff

12 asserts two claims for declaratory judgment under one count.

13       First, at paragraph 64, the Plaintiff requests a

14 "declaratory judgment that the loans from Wells Fargo were

15 discharged by operation of law on November 29, 2007, because

16 the loans were not a student debt protected by any sub-

17 section of Section 523(a)(8)."

18       Alternatively, the Plaintiff requests "a

19 declaratory judgment that the loans are dischargeable because

20 they are not protected by any sub-section of Section

21 523(a)(8)."

22       In lieu of an answer to the second amended

23 complaint, the Defendant filed its motion to dismiss, and

24 brief in support thereof.

25       The Defendant advances five arguments in its

1  motion:

2         First, the *Rooker-Feldman* doctrine deprives this

3  Court of jurisdiction.

4         Second, the adversary proceeding is moot because

5  there is no debt.

6         Third, the doctrine of *res judicata,* or claim

7  preclusion, bars any litigation as to the dischargeability of

8  the debt under Section 523(a)(8).

9         Fourth, the doctrine of laches bars further

10  pursuit of the claims.

11         Fifth, the second amended complaint fails to plead

12  a claim for which relief can be granted with respect to one

13  of the two loans from Wells Fargo.

14         In his response, the Plaintiff, of course,

15  disagrees with the Defendant's position on all issues, other

16  than perhaps the failure to state a claim regarding the first

17  loan.  The Plaintiff's response is silent in this regard.

18         The Defendant filed a reply brief, and thereafter

19  the Court held a hearing on the motion.

20         After carefully considering the parties'

21  arguments, the Court shall deny the motion to dismiss.

22         The Court shall first address the jurisdictional

23  issues.

24         Article III of the Constitution limits Federal

25  Court jurisdiction to actual cases and controversies.  *See*

1   *Chafin v. Chafin,* 133 S. Ct. 1017, at page 1023.

2           To invoke the jurisdiction of a Federal Court, a

3   litigant must have suffered or been threatened with an actual

4   injury traceable to the defendant, and likely to be redressed

5   by a favorable judicial decision.  *See Lewis v. Continental*

6   *Bank Corporation,* 494 U.S. Rptr. 472, at page 477, a decision

7   from the United States Supreme Court in 1990.

8           The case for controversy must exist through all

9   stages of the case, from the filing of the complaint in the

10  first instance, through final adjudication, and ultimately

11  through any review by an appellate tribunal.

12          Upon review of the allegations in the second

13  amended complaint, the Court concludes that this adversary

14  proceeding is not moot.  Although the debt has been

15  satisfied, the Plaintiff seeks a declaration that the

16  Defendant's actions were taken in violation of the discharge

17  injunction pursuant to Section 524(a), and that Section

18  523(a)(8) affords no relief to the Defendant.

19          The State Court determined that the Plaintiff is

20  liable to the Defendant for the repayment of the loans.  In

21  the second amended complaint, the Plaintiff argued that it

22  suffered an actual injury because the Defendant violated the

23  discharge, the scope of which has yet to be determined by

24  this Court or the State Court.

25          Simply put, if this Court finds that the discharge

1  has been violated because the loans were not student loans

2  under Section 523(a)(8), the Defendant will have been injured

3  by being forced to satisfy the State Court judgment

4  notwithstanding the discharged nature of the debt.

5          The Court, therefore, concludes that the adversary

6  proceeding is not moot at this time.

7          The Defendant also argues that the *Rooker-Feldman*

8  doctrine precludes this Court from exercising subject matter

9  jurisdiction.

10         As the Sixth Circuit Bankruptcy Appellate Panel

11  recently observed, the *Rooker-Feldman* doctrine frequently

12  raises thorny issues, particularly where the discharge

13  injunction is invoked. *See, In Re Isaacs,* 569 B.R. 135, at

14  page 142, a decision from the Bankruptcy Appellate Panel for

15  the Sixth Circuit in 2017.

16         The *Rooker-Feldman* doctrine is derived from two

17  decisions from the United States Supreme Court: *Rooker v.*

18  *Fidelity Trust Company,* 263 U.S. Rptr. 413, a decision in

19  1923; and *District of Columbia Court of Appeals v. Feldman,*

20  460 U.S. 462, a decision from the Supreme Court in 1983.

21         The doctrine involves a situation where the losing

22  party in State Court files a suit in Federal Court, after the

23  State Court proceedings have ended, complaining of an injury

24  caused by the State Court judgment, and seeking review in

25  rejection of that judgment. *See, ExxonMobil Corporation v.*

1   *Saudi Basic Industries Corporation,* 544 U.S. 280, at page

2   291, a decision from the United States Supreme Court in 2005.

3         In other words, it prohibits cases brought by

4   State Court losers complaining of injuries caused by State

5   Court judgments.  *See, In Re Hamilton,* 540 F. 3d 367, at page

6   372, a decision from the Sixth Circuit Court of Appeals in

7   2008.

8         In a case favorably cited by *Isaccs,* the Seventh

9   Circuit Court of Appeals explained that:  "The *Rooker-Feldman*

10   doctrine asks:  Is the federal plaintiff seeking to set aside

11   a state court judgment, or does he present some independent

12   claim, albeit one that denies a legal conclusion that a state

13   court has reached in a case to which he was a party?  If the

14   former, then the district court lacks jurisdiction; if the

15   latter, then there is jurisdiction and state law determines

16   whether the defendant prevails under principles of

17   preclusion."  That's a cite to *Gash Associates v. The Village*

18   *of Rosemont, Illinois,* 995 F. 2d 726, at page 728, a decision

19   from the Seventh Circuit Court of Appeals in 1993.

20         The parties in this adversary proceeding devote

21   significant portions of their briefs to the *Rooker-Feldman*

22   doctrine, focusing, in large part, on the Sixth Circuit's

23   decision in *Hamilton.*

24         In *Hamilton,* after the debtor filed for

25   bankruptcy, the Bankruptcy Court held that the debtor's debt

1  to his ex-wife was dischargeable, and thus subject to the

2  discharge order.

3          Later, the ex-wife filed a third party complaint

4  against the debtor for indemnification relating to a debt

5  upon which they had been jointly liable.

6          For whatever reason, the debtor did not raise his

7  discharge in bankruptcy as an affirmative defense.

8          After the State Court entered a judgment against

9  the debtor, the debtor commenced an adversary proceeding in

10 the Bankruptcy Court to enjoin any collection attempts by his

11 ex-wife.

12         The Sixth Circuit held that although state courts

13 have jurisdiction to construe or interpret a discharge order,

14 they do not have jurisdiction to modify a discharge order by

15 construing it incorrectly.

16         According to the Sixth Circuit, the State Court

17 judgment improperly modified the discharge order, because it

18 awarded money damages on a pre-petition debt, even though the

19 discharge order had clearly extinguished the debtor's

20 personal liability for such debt.

21         In the instant matter, the Plaintiff argues that

22 the State Court impermissibly modified the discharge

23 injunction entered by this Court, because the loans from the

24 Defendant were not student loans.

25         As such, the Plaintiff asserts the debts of the

1   Plaintiff to the Defendant were discharged.

2          Defendant contends that the Plaintiff's failure to

3   raise Section 523(a)(8) and the discharge injunction in the

4   State Court resulted in an implicit determination by the

5   State Court that the debt was non-dischargeable.

6          The Defendant, therefore, posits that the State

7   Court did not modify the discharge order.  Instead, the State

8   Court implicitly construed the discharge order.

9          It is important to keep in mind what the discharge

10  order does and does not say.  It provides that certain debts

11  could be non-dischargeable, but makes no specific declaration

12  regarding any one debt in particular.

13         And because Section 523(a)(8) is self-executing, a

14  student loan debt is non-dischargeable absent a

15  determination.

16         However, the self-executing nature of Section

17  523(a)(8) is premised on the debt actually being one for a

18  student loan, a determination that was not previously made by

19  this Court or the State Court which had concurrent

20  jurisdiction to do so.

21         And although the Plaintiff's Schedules seemed to

22  indicate that the Plaintiff believed the loans were for

23  scholastic pursuits, the Schedules are matters of fact, not

24  law.

25         While the first amended complaint failed to state

1  a claim, the second amended complaint does not suffer from

2  the same defects.

3          It is clear that the primary issue is whether the

4  two loans are student loans for purposes of Section

5  523(a)(8).

6          In the State Court action, neither party requested

7  that the State Court affirmatively decide whether the debt

8  was subject to the discharge, including whether the debt was

9  even a student loan debt excepted from discharged under

10  Section 523(a)(8).

11          As a result, the State Court never considered the

12  issue.

13          According to *Hamilton,* if the State Court had made

14  such a determination, and assuming that the determination did

15  not conflict with the discharge injunction entered by this

16  Court in 2007, the *Rooker-Feldman* doctrine would apply to bar

17  the Court from considering whether the debt was subject to

18  discharge.

19          But that is not the case here.  As previously

20  noted, when a State Court construes a discharge, the State

21  Court must do so correctly.

22          Here, the State Court did not construe the

23  discharge correctly, nor did it construe the discharge

24  incorrectly.  Instead, it simply made no determination on the

25  claim of non-dischargeability or the affirmative defense of

1    the discharge under Section 524(a).

2             Because the issue has yet to be decided, this

3    Court is now tasked with determining whether the debt was

4    subject to the discharge, or was otherwise non-dischargeable.

5             *Hamilton* and the decisions cited therein recognize

6    as much.  *Hamilton* places great emphasis on the inability of

7    a debtor to waive the discharge.

8             In the event that this Court concluded that the

9    *Rooker-Feldman* doctrine applies, such a decision would be

10   tantamount to endorsing a waiver of the discharge.  By doing

11   so, creditors like the Defendant would be incentivized to

12   commence suit in State Court to circumvent *Hamilton's*

13   holding.

14            *Hamilton* relies in part on, and the Defendant

15   cites favorably to, a decision from the Bankruptcy Appellate

16   Panel for the Ninth Circuit.  *See In Re Pavelich,* 229 B.R.

17   777, again a decision from the Ninth Circuit Bankruptcy

18   Appellate Panel in 1999.

19            In *Pavelich,* the Court explained the concept of

20   construing the discharge only to the extent that it is

21   construed correctly.

22            As noted by the Defendant in its brief, *Pavelich*

23   held:  "*Rooker-Feldman* applies to exceptions to discharge

24   that are determined by state courts that have concurrent

25   jurisdiction over the specific non-dischargeability issue."

1       The key is that the exception to discharge must be

2 determined, which, as previously noted, was not in this

3 adversary proceeding.

4       The Defendant improperly attempts to stretch

5 *Pavelich's* pronouncements regarding concurrent jurisdiction

6 to situations where the State Court has not determined, but

7 is instead silent on, whether a specific debt was discharged.

8       According to the Defendant, silence on the issue

9 is tantamount to an implicit determination that the debt is

10 non-dischargeable.

11       The Court disagrees.

12       It is clear from *Pavelich* that it is not enough

13 for the State Court to remain silent.  It must make an actual

14 determination regarding the discharge; something lacking in

15 the present adversary proceeding.

16       A review of *Singleton,* another decision relied on

17 by *Hamilton,* yields the same conclusion.  *See In Re*

18 *Singleton,* 230 B.R. 533, a decision from the Bankruptcy

19 Appellate Panel for the Sixth Circuit in 1999.

20       In *Singleton,* a state court decided that the

21 automatic stay did not apply to the sale of certain real

22 estate because it was property of a third party, not the

23 debtor.

24       On appeal by the debtor, after the adversary

25 proceeding was dismissed for failure to state a claim, the

1  Bankruptcy Appellate Panel for the Sixth Circuit held that

2  the *Rooker-Feldman* doctrine barred review of the State

3  Court's decision.

4          Paramount to the Panel's decision was the fact

5  that the State Court actually considered whether the

6  automatic stay applied to the sale, and did so correctly.

7          Again, the facts here are significantly different,

8  because the State Court never made any such determination.

9          In sum, because neither the Bankruptcy Court nor

10 the State Court ever affirmatively determined whether the

11 loans were subject to the discharge, the *Rooker-Feldman*

12 doctrine does not apply.

13         Although the claims in this Court might

14 effectively deny a legal conclusion of the State Court, *i.e.,*

15 an award of damages for breach of contract, they are

16 nonetheless independent from the State Court judgment.

17         This Court, therefore, has subject matter

18 jurisdiction to consider whether the two loans were non-

19 dischargeable under Section 523(a)(8), or subject to the

20 discharge under Section 524(a).

21         Having disposed of the jurisdictional issues, the

22 Court turns to the Plaintiff's arguments that the second

23 amended complaint fails to state -- excuse me, the

24 Defendant's arguments that the second amended complaint fails

25 to state a claim upon which relief can be granted.

1        This Court has previously set forth the standard

2   for a motion to dismiss in *In Re Perkins,* 533 B.R. 242, at

3   page 252, a decision, again, from this Court in 2015, which

4   the Court shall incorporate by reference into this Bench

5   Opinion.

6        The Court turns to the Defendant's argument that

7   *res judicata,* or claim preclusion, precludes the Plaintiff

8   from pursuing its claims.

9        In *ExxonMobil,* the United States Supreme Court

10  explained that *Rooker-Feldman* does not otherwise override or

11  supplant preclusion doctrine or augment the circumscribed

12  doctrines that allow Federal Courts to stay or dismiss

13  proceedings in deference to State Court actions.

14       If a federal plaintiff presents some independent

15  claim, albeit one that denies a legal conclusion that a state

16  court has reached in a case to which he was a party, then

17  there is jurisdiction, and state law determines whether the

18  defendant prevails under principles of preclusion.  That is,

19  again, a quote from *In Re ExxonMobil,* which has previously

20  been cited.

21       As such, even though *Rooker-Feldman* does not apply

22  in this adversary proceeding, such a determination does not

23  foreclose application of principles of preclusion, such as

24  *res judicata.*

25       Pursuant to the United States Constitution and

1  Federal Statute, each state must give full faith and credit

2  to the judicial proceedings of every other state; *citing*

3  United States Constitution, Article IV, Section I, as well as

4  28 U.S.C. sec. 1738.

5        Thus, a Federal Court must give a State Court

6  judgment the same preclusive effect as would be given that

7  judgment under the law of the state in which the judgment was

8  rendered.  *See In Re Bursack,* 65 F. 3d 51, a decision from

9  the Sixth Circuit Court of Appeals in 1995.

10       Under Michigan law, *res judicata* precludes

11  multiple suits alleging the same cause of action.  *See Adair*

12  *v. State of Michigan,* 470 Mich. Rptr. 105, at page 121, a

13  decision from the Michigan Supreme Court in 2004.

14       The doctrine bars a second subsequent action where

15  the prior action was decided on the merits, both actions

16  involved the same parties or their privies, and the matter in

17  the second case was, or could have been, resolved in the

18  first.

19       To be accorded the conclusive effect of *res*

20  *judicata,* the judgment must ordinarily be a firm and stable

21  one, the last word of the rendering court.  *See Kosiel v.*

22  *Arrow Liquors Corporation,* 446 Mich. Rptr. 374, at page 381,

23  a decision from the Michigan Supreme Court in 1994.

24       Michigan Courts have applied the doctrine of *res*

25  *judicata* broadly, prohibiting not only claims already

1  litigated, but every claim arising from the same transaction

2  that the parties exercising reasonable diligence could have

3  raised, but did not.  *See Sewell v. Clean Cut Management,*

4  *Inc.,* 463 Mich. Rptr. 569, at page 575, a decision from the

5  Michigan Supreme Court in 2001.

6       It is well established in Michigan that *res*

7  *judicata* applies to consent judgments.  *See, e.g., Barraga*

8  *Company v. State Tax Commission,* 243 Mich. Ct. App. Rptr.

9  452, at pages 455 through 456, a decision from the year 2000.

10      In this case, the State Court action was decided

11  on the merits, and the parties were the same.

12      However, the Defendant argues that because the

13  Plaintiff did not raise the discharge in State Court, he is

14  now barred from doing so.  This Court must disagree.

15      As the Sixth Circuit noted in *Hamilton,* Section

16  524(a)(2) makes it wholly unnecessary to assert the discharge

17  injunction as an affirmative defense in a subsequent State

18  Court action.

19      Here, that is precisely what the Defendant was

20  arguing the Plaintiff was required to do.

21      Although *res judicata* could generally apply where

22  a party has failed to raise an issue that could have been

23  litigated, *Hamilton* recognizes an exception when the effect

24  would be a waiver in contravention of Section 524(a).

25      The Court next considers whether the second

1  amended complaint fails to state a claim upon which relief

2  can be granted for the first of the two loans.

3            As the Defendant notes in its motion, the second

4  amended complaint states that the first of two loans from the

5  Defendant to the Plaintiff occurred prior to the loan from

6  the Federal government.

7            Taken in isolation, the second amended complaint

8  might be viewed as not stating a claim, because the

9  allegations are inconsistent with the documents attached to

10 the complaint.

11            However, the second amended complaint also states

12 that both loans were not for any educational purpose, and

13 were thus not student loans that could be deemed non-

14 dischargeable.

15            Taking the allegations in the complaint as true

16 for purposes of a motion to dismiss under 12(b)(6), the

17 second amended complaint plausibly states a claim upon which

18 relief can be granted.  *See Bell Atlantic Corporation v.*

19 *Twombly,* 550 U.S. 544, at page 570, a decision from the U.S.

20 Supreme Court in 2007; as well as *Ashcroft v. Iqbal,* 556 U.S.

21 662, at page 678, a decision from the Supreme Court in 2009.

22            Ultimately, of course, the Court may determine

23 that the facts do not support the allegations that form the

24 basis for the cause of action.  However, on its face, the

25 complaint properly alleges a cause of action for non-

1  dischargeability in violation of the discharge, regardless of

2  whether it involves the first or the second loan.

3          Finally, the Defendant argues that the doctrine of

4  laches provides an equitable defense to the Plaintiff's

5  claims.

6          The Sixth Circuit has described laches as "a

7  negligent and unintentional failure to protect one's rights."

8  *See Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.,*

9  936 F. 2d 889, at page 894, again a decision from the Sixth

10 Circuit in 1991.

11         A party asserting laches must show lack of

12 diligence by the party against whom the defense is asserted,

13 and prejudice to the party asserting it.  *See Herman Miller,*

14 *Inc. v. Palazzetti Imports and Exports, Inc.,* 270 F. 3d 298,

15 at page 320, a decision from the Sixth Circuit in 2001.

16         The Sixth Circuit has further explained that

17 "laches does not result from a mere lapse of time, but from

18 the fact that during the lapse of time changed circumstances

19 inequitably worked to the disadvantage or prejudice of

20 another, if the claim is now to be enforced."

21         "By his negligent delay, the Plaintiff may have

22 misled the Defendant, or others, into acting on the

23 assumption that the Plaintiff has abandoned his claim, or

24 that he acquiesces in the situation, or changed circumstances

25 may make it more difficult to defend against the claim."  *See*

1   *Chirco v. Crosswinds Communities, Inc.,* 474 F. 3d 227, at

2   page 231, a decision from the Sixth Circuit in 2007.

3          The Court can consider an affirmative defense as

4   part of a motion to dismiss, including the affirmative

5   defense of laches.  *See, e.g., Stein v. Regions Morgan Keegan*

6   *Select High Income Fund,* 821 F. 3d 780, at page 786, a

7   decision from the Sixth Circuit in 2016, where the Court

8   noted that the basis for the defense must be shown by the

9   facts in the complaint.

10          *See also Lennon v. Seaman,* 63 F. Supp. 2d 428, at

11   page 439, a decision from the District Court for the Southern

12   District of New York in 1999, where the Court required laches

13   to be clear on the face of the complaint, and found that the

14   plaintiff could not demonstrate any facts to counter the

15   defense.

16          In the instant matter, the Defendant contends that

17   laches should apply because the Defendant incurred legal fees

18   and other administrative costs after entry of the State Court

19   judgment, that record retention, witness availability issues,

20   are a concern, as well.

21          As the Defendant concedes in its motion, however,

22   none of these facts are addressed in the complaint.

23   Therefore, insofar as the Defendant seeks dismissal due to

24   laches, the motion is denied.

25          Of course, the Defendant may raise laches at

1 another stage of this proceeding where the facts are in

2 issue.

3           For the foregoing reasons, the Court shall deny

4 the motion to dismiss.

5           The Court shall enter an order consistent with its

6 decision, providing the Defendant with 14 days to answer the

7 second amended complaint.

8           I appreciate everyone dialing in this morning.

9           Are there any questions from the parties on a

10 procedural nature with respect to the ruling?

11           MR. SPINNER:  Ron Spinner here.  No, Your Honor.

12           MR. SMITH:  Austin Smith, Your Honor.  No, Your

13 Honor.  Thank you.

14           THE COURT:  Okay, very good.  Thank you,

15 gentlemen, and Ms. Palacios.

16           MS. PALACIOS:  Thank you, Your Honor.

17           MR. SPINNER:  Thank you, Your Honor.

18                     (Time Not Noted)

19                       *  *  *  *  *

20

21

22

23

24

25

```
 1                          CERTIFICATE
 2         I, RANDEL RAISON, certify that the foregoing is a
 3    correct transcript from the official electronic sound
 4    recording of the proceedings in the above-entitled matter, to
 5    the best of my ability.
 6
 7
 8    _____          November 10, 2017
 9    Randel Raison
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```