# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>BYRON PATTERSON McDANIEL JR. and LAURA PAIGE McDANIEL,<br><br>    Debtors. | Case No. 09-37480 KHT<br><br>Chapter 13 |
| BYRON PATTERSON McDANIEL JR. and LAURA PAIGE McDANIEL,<br><br>    Plaintiff,<br>v.<br><br>NAVIENT SOLUTIONS, LLC,<br><br>    Defendant. | Adversary No. 17-01274 KHT |

## ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE

THIS MATTER comes before the Court on a Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6) and Motion to Strike Immaterial and Impertinent Matter Under Fed.R.Civ.P. 12(f) (the "Motion") (Docket #8) filed by Defendant Navient Solutions, LLC ("Navient"), the Response (Docket #10) filed by Debtors Byron Patterson McDaniel Jr. and Laura Paige McDaniel (together, "Plaintiffs" or "Debtors"), and Navient's Reply (Docket #14). The Court heard oral argument on March 20, 2018 and has considered the pleadings, arguments, and supplemental authorities submitted. For the reasons stated herein, the Court denies the Motion.

**I.   JURISDICTION**

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Navient consents to entry of final orders or judgments of the Bankruptcy Court in this matter.

## II. BACKGROUND

On December 24, 2009, Plaintiffs filed a voluntary Chapter 13 case and plan, using the standard form (Case No. 09-37480, Docket #2).

In their bankruptcy schedules, Plaintiffs listed debts to "Sallie Mae," described as "educational," and they also listed debts to "Great Lakes." (Case No. 09-37480, Docket #1). Nevertheless, Plaintiffs did not check the box in Section V.E. of the plan indicating they had student loans. The Chapter 13 Trustee objected to the plan on several grounds, including the plan "ma[de] no provision for debtor's non-dischargeable student loan." Case No. 09-37480, Docket #12.

On April 1, 2010, Plaintiffs filed an amended Chapter 13 plan (the "Plan"). This time, Plaintiffs indicated in Section V.E. of the Plan they had student loans and proposed to treat them "as an unsecured Class Four claim or as follows: deferred until end of plan." Case No. 09-37480, Docket #25. The Court confirmed the Plan on May 4, 2010. Case No. 09-37480, Docket #32.

A total of nine proofs of claim were filed by Sallie Mae entities and Great Lakes Higher Education Corp. Case No. 09-37480, Claims Register. The Great Lakes claims (Proofs of Claim Nos. 6 and 7) were subsequently assigned to Educational Credit Management Corp. and are based upon Federal Stafford Loans. At least five of the Sallie Mae claims (Proofs of Claim Nos. 25 through 29) were filed by or on behalf of Navient.

The Court entered an Order for Discharge of Plaintiffs on March 3, 2015, granting them a discharge under section 1328(a) of Title 11, United States Code ("Discharge Order"). Case No. 09-37480, Docket #54.

On June 30, 2017, the Court granted Plaintiffs' motion to reopen their Chapter 13 case. Thereafter, Plaintiffs filed this adversary proceeding against Navient, requesting a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Bankr.P. 7001(9) that certain "Tuition Answer Loans" held by Navient are not excepted from discharge under 11 U.S.C. § 523(a)(8) and were, therefore, discharged upon entry of the Discharge Order. They also seek damages for alleged willful violations of the discharge injunction by Navient pursuant to 11 U.S.C. §§ 105 and 524.

## III. PLAINTIFFS' CLAIMS

The Complaint contains general allegations concerning the history of changes to 11 U.S.C. § 523(a)(8) and Navient's alleged efforts to deceive "student debtors and subvert the orderly working of the bankruptcy courts . . . [by] originating

and servicing dischargeable consumer loans and disguising them as non-dischargeable student loans." Complaint, ¶1. Navient seeks to strike many of these general allegations.

Plaintiffs allege Section 523(a)(8)[1], as originally enacted in 1978, prohibited discharge of federal student loans during the first five years of repayment absent undue hardship but "[t]hrough a series of amendments, which first lengthened and then eliminated the five-year non-dischargeability time frame, it has become increasingly difficult for debtors to attain discharges of their student loan debts." Complaint, ¶9. Prior to BAPCPA[2], Section 523(a)(8) was "easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of 'undue hardship.' [However, t]his fueled the belief that all student loans are non-dischargeable." Complaint, ¶13.

In 2005, the enactment of BAPCPA afforded *limited* protection to some private educational loan products "to the extent that such [lending] supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools solely for tuition, room, board, and books ('Qualified Education Loans')." Complaint, ¶11.

Plaintiffs allege Navient (formerly known as Sallie Mae or SLM Corporation) was not satisfied with the loan origination volume and restrictions associated with Qualified Educational Loans. Complaint, ¶12. Therefore, Navient created new loan products that are in essence dischargeable consumer loans, deceiving student borrowers by representing to them that "the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose." Complaint, ¶16 and ¶12.[3]

The problem was made worse because Section 523(a)(8) is self-executing, and "thus its correct application relies on the good faith and honesty of creditors." Complaint, ¶14. "Importantly, the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including 'debts for most student loans.'" *Id*.

---

[1] All Sections referred to herein are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq*.

[2] Bankruptcy Abuse and Consumer Protection Act, Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereafter, "BAPCPA").

[3] While Navient was marketing these new loan products to student borrowers, Navient was also attempting to securitize the new loan products for sale on the secondary market. Plaintiffs allege to avoid securities violations, Navient disclosed to its potential (sophisticated) investors in student loan asset-backed securities prospectuses that "pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge." Complaint, ¶19.

Plaintiffs assert a creditor has the burden to prove its debt is encompassed by Section 523(a)(8) and is presumptively nondischargeable, then the burden shifts to the debtor to show undue hardship. Complaint, ¶15. "Absent an adversary proceeding, any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of law discharged upon entry of the discharge order. Accordingly, it is left to the creditors to determine whether their particular educational loan is excepted from discharge by Section 523(a)(8) and, where confusion exists, seek clarity from the court. The creditor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions." *Id.*

In the Complaint, Plaintiffs also make specific allegations regarding the Tuition Answer Loans held by Navient. Plaintiffs allege the Tuition Answer Program is a direct-to-consumer loan product outside the confines of the financial aid office and in excess of the school's published "Cost of Attendance" ("COA"). Complaint, ¶17. From 2004-2007, Plaintiffs borrowed $107,467 in six (6) Sallie Mae Tuition Answer Loans. Complaint, ¶20. The total balance of these Tuition Answer Loans is now $245,264, "despite consistent monthly payments of more than $2,000 for several years." Complaint, ¶21.

Plaintiff Laura Paige McDaniel attended Lakeland College from 2004 to 2007. Complaint, ¶22. Her COA for qualified tuition and related expenses for each year was: $5,340 in 2004, $10,650 in 2005, $6,450 in 2006, and $6,390 in 2007, as reflected on Tuition Statements issued by Lakeland College to Ms. McDaniel attached to the Complaint as Exhibit A. Complaint, ¶23. Ms. McDaniel borrowed the COA in the form of federal student loans, as reflected on Federal Stafford Loan documentation attached to the Complaint as Exhibit C. Complaint, ¶24.

Plaintiffs borrowed an additional $107,467 through the Tuition Answer Loans, "made outside the financial aid office and [not] for qualified education expenses." Complaint, ¶25. Attached as Exhibit B to the Complaint are copies of loan applications and promissory notes for the Tuition Answer Loans. *Id*. The Tuition Answer Loans were not made solely for the COA and accordingly, were not "qualified education loans" as defined in Section § 523(a)(8)(B). Complaint, ¶26.[4]

Debtors listed the Tuition Answer Loans on their Bankruptcy Schedule F. Complaint, ¶27. Debtors made payments totaling $26,782 on the Tuition Answer Loans during their Chapter 13 bankruptcy case. Complaint, ¶28.

---

[4] The Court notes, however, one of the loan documents in Exhibit B to the Complaint contains the following language: "this loan is a qualified education loan as described in Section 221(d)(1) of the Internal Revenue Code of 1986." Exhibit B to Complaint, p.14 of 40.

4

Navient was notified of the Discharge Order. Complaint, ¶30. Instead of charging the Tuition Answer Loans off, Navient demanded payments in violation of the Discharge Order and the Bankruptcy Code. Complaint, ¶32. Plaintiffs allege "owing to [Navient's] tactics, [P]laintiffs have repaid $37,460 on these discharged debts. These payments were not made 'voluntarily' but were made solely based on Defendant Navient's material misrepresentations regarding the legal status and character of the Tuition Answer Loans." Complaint, ¶33. Navient's "abusive, deceptive and harassing collection efforts" after entry of the Discharge Order "were made knowingly and willfully in violation of this Court's discharge orders and must be sanctioned." Complaint, ¶34.

## IV. NAVIENT'S MOTION

Navient requests dismissal of the Complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) (Fed.R.Bankr.P. 7012(b)). Navient also moves to strike certain allegations as immaterial and impertinent matter under Fed.R.Civ.P.12(f) (Fed.R.Bankr.P. 7012(b)).

Navient asserts the confirmed Plan distinguished the Tuition Answer Loans from Plaintiffs' other dischargeable unsecured debts in Class Four and treated them "as non-dischargeable." Motion, p.16; *see also* Motion, p.17 ("[i]nstead of filing an adversary proceeding to seek a discharge of their loans, Debtors amended their [P]lan to expressly provide that their [Tuition Answer] Loans would *not be discharged* along with their other unsecured claims") (emphasis in original). Accordingly, Navient argues principles of *res judicata* prohibit Plaintiffs from reversing their earlier position taken in the Plan, in light of the finality of the Plan confirmation order and the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).

Alternatively, Navient argues dismissal is warranted because the Complaint, on its face, establishes the Tuition Answer Loans are excepted from discharge as "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii). Through the Tuition Answer Loans, Ms. McDaniel "received the funds that allowed [her] to attend Lakeland College. Indeed, [Plaintiffs] certified to Navient 'all of the loan proceeds . . . are to pay expenses directly related to attending' Lakeland College." Motion, p.19 (*quoting* Complaint, Exhibit B, pp.6, 31, 38 of 40). Then, when they filed bankruptcy, Plaintiffs scheduled the debt as "educational" in nature. Motion, p.19. "By enabling Ms. McDaniel to enroll in and attend college and support her personal decision to improve her life through higher

5

education, the loans conferred 'educational benefits' on her and are therefore excepted from discharge in bankruptcy." Motion, p.20.

In support, Navient cites cases holding private student loans are "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii). Because the "Debtors do not, and cannot, allege that they used their [Tuition Answer] Loans for anything but educational purposes, nothing in Debtors' Complaint allows them to avoid the same result." Motion, pp.22-23. Navient contends the cases that hold otherwise are badly reasoned, and those courts misapply the principles of statutory interpretation they invoke.

Since the Tuition Answer Loans were not discharged, Navient asserts there can be no violation of the discharge injunction. In any case, Navient argues this claim should be dismissed because the discharge injunction is enforceable only through contempt proceedings and there is no private right of action for violation of the discharge injunction. Since Plaintiffs' claim must be construed as a claim for contempt, the order under which they seek contempt must be "clear and specific." The Discharge Order is not "clear and specific" but rather, provides most student loans are *not* dischargeable. Motion, p.35.

Navient also moves to strike paragraph 1 and paragraphs 9 through 19 of the Complaint because the allegations set forth in these twelve paragraphs constitute a "superfluous attack on [Navient's] character, inappropriate for a short and plain statement of the claim." Motion, p.37 (citations omitted). Navient contends the overblown and non-specific allegations in these paragraphs malign Navient, refer to "pervasive, systemic wrongdoing" and have no bearing on any issues in this case. Motion, p.38. Plaintiffs' "allegations of nonspecific fraud perpetrated by unnamed actors using unspecified means against unnamed victims are inflammatory, unnecessary, and irrelevant", and the Court should strike them as either a superfluous attack on character, or deficiently pleaded fraud claims. *Id.*

## V. DISCUSSION

### A. The Rule 12(b)(6) Motion to Dismiss.

Rule 8 notice pleading "requires a short and plan statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); Fed.R.Bankr.P. 7008. "[H]eightened fact pleading of specifics" is not required; rather, a party must assert "only enough facts to state a claim to relief that is plausible on its face . . . to nudg[e his] claims across the line from conceivable to plausible . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Failure to state a claim is a defense that may be presented by motion. Fed.R.Civ.P. 12(b)(6); Fed.R.Bankr.P. 7012(b). On a motion to dismiss, this Court must accept all well-pled facts in the Complaint as true and view them in the light most favorable to Plaintiff. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015) (citing *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City and Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citing *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (quotation omitted)).

The Court reviews Navient's Motion with the above principles in mind. Section 523(a)(8) provides a discharge under section 1328(b) does not discharge an individual debtor from any debt –

> (8) Unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –
>
> > (A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> >
> > (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . .

11 U.S.C. § 523(a)(8).

### 1. The Parties' Respective Burdens.

The parties agree Plaintiffs bear the burden of proving "undue hardship," but they disagree over who must bring an adversary proceeding to determine whether a student loan falls within the nondischargeable rubric of Section 523(a)(8) in the first place, as this section of the Bankruptcy Code is self-executing. This dispute

is academic; Plaintiffs did bring this adversary proceeding, and the Court finds it was not too late for them to do so. *Compare* Fed.R.Bankr.P. 4007(c) (complaints to determine dischargeability of a debt under Section 523(c) must be filed no later than 60 days after the first date set for the meeting of creditors) with *Gimbel v. U.S. Dep't of Educ. (In re Gimbel)*, Adv. No. 17-01048-j, 2018 WL 1229718, *4 (Bankr. D.N.M. March 8, 2018) ("there is no deadline expressly imposed by the Code or Rules for filing an adversary proceeding to determine whether a student loan debt should be excepted from the discharge under § 523(a)(8)").

As to the burden of proof, it remains on the creditor to show its debt is excepted from discharge under Section 523. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). Thus Navient, "as a creditor, must prove, by a preponderance of the evidence, that a debt exists and the debt is the type excepted from discharge under § 523(a)(8)." *Hoffman v. Educ. Credit Mgmt. Corp. (In re Hoffman)*, 557 B.R. 177, 184 (Bankr. D. Colo. 2016) (citations omitted).

### 2. Principles of Res Judicata and *Espinosa*.

*Res judicata* applies when the following three elements exist: "(1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002) (as amended Jan. 14, 2003) (quoting *King v. Union Oil Co.*, 117 F.2d 443, 445 (10th Cir. 1997)).

Navient's *res judicata* argument suffers from a fatal flaw: the Plan does not say what Navient says it does. It is true the confirmed Plan is final and binds Plaintiffs and all of their creditors, including Navient. But the Plan did not specify one way or the other whether the Tuition Answer Loans were – or were not – discharged; the Plan is simply not instructive on this point. Section V.E. of the Plan only specifies Plaintiffs' student loans – of which they had several, including Federal Stafford Loans owing to Great Lakes or its assigns – were "to be treated as an unsecured Class Four claim or as follows: deferred until end of plan." Case No. 09-37480, Docket #25. The Plan is silent as to the dischargeability or non-dischargeability of the Tuition Answer Loans vis-à-vis Plaintiffs' other educational loans, or other unsecured debts. Nowhere in the Plan does it state the Tuition Answer Loans, or *any* of Plaintiffs' student loans, were nondischargeable; Navient relies upon a mischaracterization of the terms of the Plan.

Nor does Plaintiffs' description of Navient's debt on their Bankruptcy Schedules as "educational" influence its dischargeability. "Educational" loans, or "student" loans, are not nondischargeable simply because they are labeled as such; they must meet one or more of the criteria set forth in Section 523(a)(8). "A construction so broad would be incompatible with the 'well-known' guide that

exceptions to discharge 'should be confined to those plainly expressed.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (quoting *Gleason v. Thaw,* 236 U.S. 558, 562 (1915)).

In *Espinosa*, the Supreme Court held the lender was bound by the terms of the debtors' confirmed plan even though confirmation of that plan was legal error. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010). The Chapter 13 plan in *Espinosa* expressly provided the debtors' student loans were discharged for undue hardship, and the creditor had actual notice of the plan and did not object. *Id*. at 264-265.

Navient contends *Espinosa* applies in the reverse and mandates the conclusion Plaintiffs' claims are barred on account of their confirmed Plan. But the true reverse of *Espinosa* would be a plan that expressly provided the Tuition Answer Loans, or any of Plaintiffs' student loans, were *not* dischargeable. Here, the Plan contains no explicit statement or determination as to the dischargeability of any of Plaintiffs' student loans. Navient's reliance upon *Espinosa* as controlling authority over the outcome of this case is misplaced.

Because the confirmed Plan is not a final determination on the merits, the Court will not dismiss Plaintiffs' Section 523(a)(8) claim on the basis of *res judicata* or application of *Espinosa*.

### 3. Section 523(a)(8)(A)(ii).

Absent undue hardship, Section 523(a)(8)(A)(ii) excepts from discharge "an obligation to repay funds received as an educational benefit, scholarship or stipend." 11 U.S.C. 523(a)(8)(A)(ii). The crux of the dispute is whether the Tuition Answer Loans fall within the ambit of this subsection as a matter of law. Courts in other jurisdictions are divided on the issue, with some courts holding private loans that provide an educational benefit to the borrower fit within Section 523(a)(8)(A)(ii) (the view espoused by Navient), and other courts embracing a much narrower view, holding such educational loans are not included within this particular subsection (Plaintiffs' position).[5] There is no controlling authority on point within the Tenth Circuit.

The Court's inquiry "begins where all such inquiries must begin: with the language of the statute itself." *Unites States v. Ron Pair Enterprises, Inc.*, 489

---

[5] While the parties dispute whose side is in the majority, the recent trend is clearly in favor of Plaintiffs' position. In their Response, Plaintiffs indicate there are 18 cases that support Navient's position, and cite 18 cases that support their own position, including 8 of the last 9 cases decided since 2016. Since the time the parties' briefs were submitted, additional decisions have been rendered in other districts also supporting Plaintiffs' view of Section 523(a)(8)(A)(ii).

9

U.S. 235, 241 (1989). If the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Id.* (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

"When interpreting statutory language, this court 'must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.'" *Office of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)*, 236 F.3d 1246, 1252 (10th Cir. 2001) (citing *True Oil Co. v. Comm'r of Internal Revenue,* 170 F.3d 1294, 1299 (10th Cir.1999) (quotation marks and citation omitted)). Section 523(a)(8)(A)(ii) cannot be read in isolation; it is necessary to read Section 523(a)(8) as a whole. "The meaning – or ambiguity – of certain words or phrases may only become evident when placed in context." *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 54 (Bankr. E.D.N.Y. 2016) (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994)).

Section 523(a)(8)(A)(ii) is sandwiched in between Sections 523(a)(8)(A)(i) and (B). Notably absent from Section 523(a)(8)(A)(ii) is the word "loan" which is used in both Sections 523(a)(8)(A)(i) and 523(a)(8)(B). In Section 523(a)(8)(A)(i), Congress excepted from discharge "an educational benefit overpayment *or* loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution". 11 U.S.C. § 523(a)(8)(A)(i) (emphasis added). The disjunctive "or" in Section 523(a)(8)(A)(i) is significant, because it distinguishes an "educational benefit overpayment" from a "loan." *See, e.g., Loughrin v. United States*, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (in reviewing the language of the federal bank fraud statute in which elements of the crime were separated by the word "or," the Supreme Court considered what "or" customarily means: "th[e] term's 'ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings'") (quoting *United States v. Woods,* 571 U.S. 31, 45 (2013)).

The word "loan" is also used in Section 523(a)(8)(B), which excepts from discharge "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual". 11 U.S.C. 523(a)(8)(B).

Navient argues the fact Congress did not use the word "loan" in Section 523(a)(8)(A)(ii) does not matter because an "obligation to repay funds received" *is* a loan; this phrase could not possibly fail to include loans – it is just more inclusive and expansive. Motion, pp.29-30. But given the specific language employed by Congress in Sections 523(a)(8)(A)(i) and (B) and the absence of the word "loan" from Section 523(a)(8)(A)(ii), the Court concludes "an obligation to repay funds received as an educational benefit, scholarship or stipend" does not include a loan. "[W]hen 'Congress includes particular language in one section of a statute but

omits it in another' — *let alone in the very next provision* — this Court 'presume[s]' that Congress intended a difference in meaning." *Loughrin v. United States*, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (emphasis added) (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983) (further citation omitted)).

Moreover, another critical little word appearing in Section 523(a)(8)(A)(ii) is the word "*as.*" "As" is a qualifier; it denotes how the funds were received. In a recent decision, the Bankruptcy Court for the Southern District of Texas examined the word "as" in Section 523(a)(8)(A)(ii):

> The use of the word "as" denotes "in the character or under the name of." [T]o the contrary, "for" denotes "in consideration for . . . in exchange for." [T]he Court concludes that 523(a)(8)(A)(ii) created a new category of nondischargeable debts specifically tailored to address a perceived need. That need did not include all loans that were in some way used by a debtor for education.

*Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830, 836 (Bankr. S.D. Tex. 2018) (quoting Black's Law Dictionary (6th ed. 1990)). This Court agrees. The language of the statute sets an educational benefit apart from a loan, and excepts from discharge a category of obligations in Section 523(a)(8)(A)(ii) that does not include loans but rather, "educational benefit[s]", "scholarship[s]", and "stipend[s]."[6]

If Navient's interpretation of Section 523(a)(8)(A)(ii) is correct – i.e., obligations that confer educational benefits are excepted from discharge – there would be no need for a separate provision excepting from discharge benefit overpayments or loans made, insured, or guaranteed by governmental units, or under programs funded by governmental units or nonprofit institutions (Section 523(a)(8)(A)(i)). Nor would there be any need for a separate provision excepting from discharge "qualified education loans" (Section 523(a)(8)(B)). Navient's interpretation offends a "cardinal principle" of statutory construction, that courts have a "duty to give effect, if possible, to every clause and word of a statute." *United States v. Smith*, 756 F.3d 1179, 1187 (10th Cir. 2014) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks and brackets omitted)).

---

[6] Like the court in *Campbell*, it is not necessary for this Court to decide whether the educational benefits, scholarships, and stipends referred to in Section 523(a)(8)(A)(ii) include only those made insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; the crux of the issue here is whether an "educational benefit" in Section 523(a)(8)(A)(ii) encompasses a private loan such as the Tuition Answer Loans. *See Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 59 (Bankr. E.D.N.Y. 2016) (comparing *Sensient Technologies Corp. v. Baiocchi (In re Baiocchi)*, 389 B.R. 828, 831–32 (Bankr. E.D. Wis. 2008) with *In re Nunez,* 527 B.R. 410, 415 (Bankr. D. Or. 2015)).

In *Campbell*, decided in 2016, the Bankruptcy Court for the Eastern District of New York denied a lender's motion to dismiss debtor's complaint to determine dischargeability of a private bar study loan, holding Section 523(a)(8)(A)(ii) did not encompass such a loan. *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016). The *Campbell* court reasoned that if Section 523(a)(8)(A)(ii) applied to loans, it would "swallow" the other sections of 523(a)(8). *In re Campbell*, 547 B.R. at 55.

Navient argues *Campbell* was wrongly decided; Section 523(a)(8)(A)(ii) does not render other provisions of Section 523 superfluous but rather, that subsection provides "limited overlapping coverage" consistent with Supreme Court precedent, *In Husky Int'l Elec., Inc. v. Ritz*, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016) (concluding some overlap in coverage regarding the definition of "actual fraud" did not render Section 523(a) redundant). Reply, p.24. In other words, Section 523(a)(8)(A)(ii) catches instances of nondischargeability that other subparts of 523(a)(8) might miss, "reinforc[ing] the broad scope of the discharge exception for student loans." Motion, p.26. Unlike other subsections, Navient points out that Section 523(a)(8)(A)(ii) requires funds to be "received," so "both a private bar-study loan and a judgment debt to a co-signor on a defaulted government-backed university loan that the co-signor paid in full would be exempt from discharge under 523(a)(8)(A)(ii) but not § 523(a)(8)(A)(i) or (B), respectively." Motion, pp.25-26. The Court is not persuaded by this somewhat circular argument. If the legislature intended Section 523(a)(8)(A)(ii) to address potential liability to a co-signor, it could have done so explicitly; for example, Section 523 expressly includes separate categories of nondischargeable debt "incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1)" and "incurred to pay a tax to a governmental unit, other than the United States, that would be nondischargeable under paragraph (1)." 11 U.S.C. 523(a)(14), (14A).

Accordingly, based upon the plain language of the statute, this Court embraces the trending narrower view of Section 523(a)(8)(A)(ii) espoused in *Campbell*. *See, e.g.*, *Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830 (Bankr. S.D. Tex. 2018); *Nypaver v. Nypaver (In re Nypaver)*, 581 B.R. 431 (Bankr. W.D. Pa. 2018); *Essangui v. SLF V-2015 Trust (In re Essangui)*, 573 B.R. 614 (Bankr. D. Md. 2017); *Dufrane v. Navient Solutions, Inc. (In re Dufrane)*, 566 B.R. 28 (Bankr. C.D. Ca. 2017); *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016).

To the extent there is any ambiguity in Section 523(a)(8)(A)(ii), the doctrine of *noscitur a sociis* and the legislative history both support the narrower view. Employing the doctrine of *noscitur a sociis*, the *Campbell* court considered the meaning of "educational benefit" in the context of its surrounding words:

"scholarship" and "stipend." *In re Campbell*, 547 B.R. at 55. Under this doctrine, "when a statute contains a list, each word in that list presumptively has a 'similar' meaning." *Id.* (citing *Yates v. United States*, 135 S.Ct. 1074, 1089, 191 L.Ed.2d 64 (2015) (Alito, J., concurring in the judgment) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 576 (1995)). The *Campbell* court noted "'[s]cholarship' and 'stipend' both refer to funds which are not generally required to be repaid by the recipient" and concluded "educational benefit" may be understood the same way; they are all forms of conditional grants, not loans. *In re Campbell*, 547 B.R. at 55. This Court agrees. A "scholarship" is a "grant of financial aid to a student." The American Heritage College Dictionary, 1220 (3$^d$ ed. 1997). A "stipend" is a "fixed and regular payment, such as a salary." *Id.*, at 1335. A "benefit" is a "payment made or an entitlement available in accordance with a wage agreement, an insurance policy, or a public assistance program." *Id.*, at 127. These words all signify granting, not borrowing.[7]

Navient argues *noscitur a sociis* was misapplied in *Campbell*, given the broader context of Section 523(a)(8). But in this Court's opinion, as discussed above, the broader context of Section 523(a)(8) – in which the words "loan" and "or" appear in its neighboring subsections – supports a narrow construction of Section 523(a)(8)(A)(ii). Navient's argument that a loan used for educational purposes confers an educational benefit on the borrower, just like scholarships and stipends do, strays from both the text of the statute and the context in which it was enacted.

As to the context, Section 523(a)(8) was enacted to safeguard "the solvency of government education loan programs" for "future students". *In re Campbell*, 547 B.R. at 59-60 (citing *In re Pelkowski*, 990 F.2d 737, 742 (3rd Cir. 1993) (quoting 124 Cong. Rec. 1791-9 Representative Ertel) (further citations omitted)). Section 523(a)(8) of the Bankruptcy Reform Act of 1978 excepted from discharge any debt –

> to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless –

---

[7] Navient complains a list of three items is insufficient to employ the doctrine, citing *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 288 (2010). But in that case, unlike here, the Supreme Court declined to employ *noscitur a sociis* to a list of three *disparate* terms: "congressional," "administrative," and "Governmental Accounting Office." *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. at 288 (finding each of the three terms "*quite distinct from the other no matter how construed*") (emphasis added).

> (A) such loan first became due before five years before the date of the filing of the petition; or
>
> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

Bankruptcy Reform Act of 1978, Pub. L. No. 95–598 § 523(a)(8) (H.R. 8200), Nov. 6, 1978, 92 Stat. 2549, 2591 (1978).

The term "educational benefit" first appeared in Section 523(a)(8) in 1990, when the statute was amended to except from discharge any debt:

> for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend . . .

Crime Control Act of 1990, Pub. L. No. 101-647 § 3621(1), 104 Stat. 4789, 4965 (1990). The amendment to Section 523(a)(8) by the Crime Control Act also extended the period of repayment in Section 523(a)(8)(A) to seven years. *Id.*

The *Campbell* court examined the sparse legislative history and hearing testimony behind the 1990 amendments to Section 523(a)(8). *In re Campbell*, 547 B.R. at 55. At the hearing, Bob Wortham, a United States attorney from the Eastern District of Texas, explained the amendments to Section 523(a)(8) added "to the list of non-dischargeable debts, obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends", citing *U.S. Dep't of Health and Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986) in his statement. *See In re Campbell*, 547 B.R. at 55 (citing Federal Debt Collection Procedures of 1990: Hearing on P.L. 101-647 before the H. Subcomm. on Econ. and Commercial Law, H. Judiciary Committee 101st Cong. 74-75 (June 14, 1990) (Mr. Brooks' Questions for the Record for Mr. Wortham)).

In *Smith*, the Eighth Circuit held the pre-1990 version of Section 523(a)(8) encompassed a federal tuition assistance grant to a medical student who had defaulted on its conditions. *U.S. Dep't of Health and Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986). In reaching its decision, the Eighth Circuit was mindful of the "background and purpose of 523(a)(8) of the Bankruptcy Code" to correct a significant problem "[u]nder the Bankruptcy Act, [i.e.,] educational loans were

14

dischargeable resulting in millions of dollars in *federally guaranteed loans* defaulted upon annually." Smith, 807 F.2d at 126 (emphasis added) (quoting *In re Shipman*, 33 B.R. 80, 82 (Bankr. W.D. Mo. 1983)).

Navient points out the sparse legislative history examined in *Campbell* is a single remark, not made by a legislator, regarding a prior version of the statute. Motion, p.31. However, that selfsame sparsity of legislative history regarding the addition of "educational benefit" to Section 523(a)(8) suggests the legislature did not intend to extensively expand nondischargeability to private educational loans. A subsequent amendment to the statute supports this conclusion. With the enactment of BAPCPA in 2005, subsection (B) was added to Section 523(a)(8), including as nondischargeable "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual". Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, S. 256, 109th Cong., § 220, 119 Stat. 23, 59 (2005). BAPCPA also separated subsection (A) into two subsections, (A)(i) and (A)(ii), without any changes to the text. If Section 523(a)(8)(A)(ii) expanded the statute to include all loans that confer educational benefits, subsection (B) – adding "qualified education loans" under 26 U.S.C. § 221(d)(1) as nondischargeable – would have been wholly unnecessary.

Even if this Court were to agree with Navient, it would be premature to dismiss Plaintiffs' Complaint under Section 523(a)(8)(A)(ii); at this stage in the litigation, the underlying facts are not sufficiently developed. But the Court is persuaded by Plaintiffs' view that Section 523(a)(8)(A)(ii) does not encompass the Tuition Answer Loans, based upon the plain language of the statute, and in addition, applicable canons of statutory interpretation and the legislative history.

### 4. Claim for Violation of the Discharge Injunction.

The Discharge Order granted Plaintiffs a discharge under Section 1328(a). Section 1328(a) specifies that the bankruptcy discharge for Chapter 13 debtors is as to "*all debts* provided for by the plan or disallowed under section 502 of this title, except any debt – . . . of the kind specified in . . . [section 523(a)(8)]." 11 U.S.C. § 1328(a)(2) (emphasis added). Pursuant to the Bankruptcy Code, the Discharge Order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived". 11 U.S.C. § 524(a)(2).

Navient argues Plaintiffs' claim for violation of the discharge injunction is defective because there is no private right of action for such claim, and the Discharge Order was not specific enough to be enforced against Navient on

contempt grounds; the Discharge Order did not clearly identify prohibited conduct as the Order "lacked such a statement about their [Tuition Answer] Loans". Reply, p.29.

While the Tenth Circuit has not determined whether there is a private right of action under Section 524(a)(2), it is clear the Court's equitable powers under Section 105(a) extend to decide claims "to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in 524(a)(2)." *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1306 (10th Cir. 2008) (citations omitted).[8] Thus, "Section 524(a)(2) operates as 'an equitable remedy precluding the creditor, on pain of contempt, from taking *any* actions to enforce the discharged debt.'" *Gray v. Nussbeck (In re Gray)*, 586 B.R. 347, 353 (Bankr. D. Kan. 2018) (quoting *Espinosa v. United States Aid Funds, Inc.*, 553 F.3d 1193, 1200 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010) (emphasis in original)).

To be held in contempt, a court must find (1) the party violated a specific and definite order; (2) the party had notice of the order; and (3) the party did in fact violate the order. *Lucre Mgmt. Grp., LLC v. Schempp Real Estate, LLC (In re Lucre Mgmt. Grp., LLC)*, 365 F. 3d 874, 875 (10th Cir. 2004). In order to prevail in a civil contempt proceeding, Plaintiffs' burden is high; they must prove the alleged violation by clear and convincing evidence. *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998).

The Court concludes Plaintiffs have stated a valid claim for contempt. The Discharge Order and the statutory bases for its issuance and enforcement (Sections 1328 and 524(a)(2)) are broad and unequivocal. *All* debts were discharged, except those enumerated in Section 1328(a). There is no such thing as a personalized discharge order addressed to each creditor in a given bankruptcy case. That neither party sought to determine the dischargeability of the Tuition Answer Loans until now does not alter whether or not the debts were discharged under Section 523(a)(8) at the time the Discharge Order was entered; thereafter they both proceeded at their own risk. Any ambiguity in the law, or uncertainty as to the injunction's applicability to the Tuition Answer Loans, is relevant to the inquiry as to whether any contempt violation, if proven, was willful. Accordingly, the Court will not dismiss the claim on that basis. Whether or not the evidence at trial will support the claim is a matter for another day.

---

[8] The Court rejects the notion Plaintiff's claim would need to be dismissed on procedural grounds for failure to file a motion for contempt in the main bankruptcy case, as that requirement would elevate form over substance. *See, e.g., Gray v. Nussbeck (In re Gray)*, 586 B.R. 347, n.19 (Bankr. D. Kan. 2018); *Montano v. First Light Fed. Credit Union (In re Montano)*, 398 B.R. 47, 55-56 (Bankr. D.N.M. 2008).

### B. The Rule 12(f) Motion to Strike.

Rule 12(f) allows a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f); Fed.R.Bankr.P. 7012(b). But "[s]triking a portion of a pleading is a drastic remedy; the federal courts generally view motions to strike with disfavor and infrequently grant such requests." *Purzel Video GmbH v. Smoak*, 11 F.Supp.3d 1020, 1029 (D. Colo. 2014) (citing 5C Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1380 (3d ed. 2011)).

The purpose of Rule 12(f) "is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case." *Sierra Club v. Tri–State Generation & Transmission Ass'n,* 173 F.R.D. 275, 285 (D. Colo.1997) (citing *United States v. Smuggler–Durant Mining Corp.,* 823 F.Supp. 873, 875 (D. Colo.1993)). Accordingly, courts deny motions to strike immaterial and impertinent matter "unless it can be shown that no evidence in support of the allegation[s] would be admissible." *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1085 (D. Colo. 1985) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). "Only allegations 'so unrelated to plaintiff's claims as to be unworthy of any consideration' should be stricken." *Id.* (quoting *EEOC v. Ford Motor Co.*, 529 F.Supp. 643, 644 (D. Colo. 1982)). Further, "[i]rrelevant allegations will be stricken as scandalous only if they degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court." *Sierra Club*, 173 F.R.D. at 285 (citing *Nault's Auto. Sales v. American Honda Motor Co.,* 148 F.R.D. 25, 30 (D.N.H.1993) (further citation omitted)).

"Even where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike." *Sierra Club*, 173 F.R.D. at 285. "Inappropriately hyperbolic allegations, ill-conceived attempts at levity, and other similar manifestations of bad judgment in drafting pleadings, by themselves, fall short of the threshold that Rule 12(f) contemplates." *Saylavee LLC v. Hockler,* 228 F.R.D. 425, 426 (D. Conn. 2005).

It is important to keep in mind Plaintiffs' allegations are made against a corporate entity in a matter that will be tried to the Court. Although Plaintiffs' allegations in paragraphs 1 and 9 through 19 may be hyperbolic, they are not so unrelated to Plaintiffs' claims as to be unworthy of any consideration. To the contrary, the allegations are relevant to Plaintiffs' claim for violation of the discharge injunction. The Court, therefore, denies Navient's motion to strike the allegations.

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

## VI. CONCLUSION

For the reasons stated herein, the Court DENIES the Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6) and Motion to Strike Immaterial and Impertinent Matter Under Fed.R.Civ.P. 12(f) filed by Defendant Navient Solutions, LLC.

Dated: September 24, 2018.

BY THE COURT:

_____
Kimberley H. Tyson
United States Bankruptcy Judge