**APLBAP, DirApl**

# U.S. Bankruptcy Court
## District of Colorado (Denver)
## Adversary Proceeding #: 17–01274–KHT

*Assigned to:* Kimberley H. Tyson                    *Date Filed:* 07/12/17
*Lead BK Case:* 09–37480
*Lead BK Title:* Byron Patterson McDaniel, JR and Laura Paige
McDaniel
*Lead BK Chapter:* 13
*Demand:* $50000
  *Nature[s] of Suit:*  63 Dischargeability – 523(a)(8), student loan
                 11 Recovery of money/property – 542 turnover of property

*Plaintiff*
–––––––––––––––––––––––
**Byron Patterson McDaniel, JR**          represented by **Austin C. Smith**
20349 Vista Circle                          3 Mitchell Place, Ste. 5
Parker, CO 80138                            New York, NY 10017
SSN / ITIN: xxx–xx–4055                     917–992–2121
                                            Email: austin@acsmithlawgroup.com
                                            *LEAD ATTORNEY*

*Plaintiff*
–––––––––––––––––––––––
**Laura Paige McDaniel**                  represented by **Austin C. Smith**
20349 Vista Circle                          (See above for address)
Parker, CO 80138
SSN / ITIN: xxx–xx–1580

V.

*Defendant*
–––––––––––––––––––––––
**Navient Solutions Inc.**                represented by **Eric E. Johnson**
                                            633 17th St.
                                            Ste. 3000
                                            Denver, CO 80202
                                            303–297–2900
                                            Fax : 303–298–0940
                                            Email: ejohnson@shermanhoward.com

                                            **Carla Martin**
                                            633 17th St.
                                            Ste. 3000
                                            Denver, CO 80202
                                            303–297–2900
                                            Fax : 303–298–0940
                                            Email: cmartin@shermanhoward.com

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 07/12/2017 | | 1 | Adversary case 17–01274. Complaint by Byron Patterson McDaniel JR, Laura Paige McDaniel against Navient Solutions Inc.. The Plaintiff in this adversary proceeding is either the debtor in an underlying chapter 7 or 13 case, or the United States other than the U.S. Trustee acting as a trustee in the underlying bankruptcy case. Pursuant to paragraph (6) of the Bankruptcy Court Miscellaneous Fee Schedule, there is no fee to file an adversary proceeding when the plaintiff is the United States, other than a U.S. Trustee acting as a trustee in a case, or the debtor in a chapter 7 or 13 case. Accordingly, this adversary proceeding shall be commenced without payment of the filing fee.. Adversary Status Deadline 11/9/2017 (Attachments: # 1 Exhibit Exhibit A # 2 Exhibit B # 3 Exhibit Exhibit C # 4 Other AP Cover Sheet) (63 (Dischargeability – 523(a)(8), student loan)),(11 (Recovery of money/property – 542 turnover of property)) (Smith, Austin) (Entered: 07/12/2017) |
| 07/12/2017 | | 2 | Summons Issued on Navient Solutions Inc. Answer Due 08/11/2017. Government Agencies Are Allowed 35 Days From Service Of The Summons To Answer This Complaint. Notice To Litigants required to be served with Summons per General Procedure Order. (Smith, Austin) (Entered: 07/12/2017) |
| 07/18/2017 | | 3 | Summons Service Executed On: Navient Solutions LLC on July 15, 2017 Filed by Austin C. Smith on behalf of Byron Patterson McDaniel JR, Laura Paige McDaniel. (Smith, Austin) (Entered: 07/18/2017) |
| 08/09/2017 | | 4 | Unopposed Motion to Extend Time To File Answer to Complaint Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s):1 Complaint). (Attachments: # 1 Proposed/Unsigned Order) (Johnson, Eric) (Entered: 08/09/2017) |
| 08/15/2017 | | 5 | Amended Motion to Extend Time To File Answer to Complaint Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s):1 Complaint). (Attachments: # 1 Proposed/Unsigned Order) (Johnson, Eric) (Entered: 08/15/2017) |
| 08/15/2017 | | 6 | Order Granting Motion to Extend Time To File Answer to Complaint Navient Solutions Inc. Answer Due 10/10/2017 (related document(s):4 Motion to Extend Time To File Answer to Complaint, 5 Motion to Extend Time To File Answer to Complaint). (mcs) (Entered: 08/15/2017) |
| 08/17/2017 | | 7 | Courts Notice or Order and BNC Certificate of Mailing (related document(s)6 Order on Motion to Extend Time To File Answer to Complaint). No. of Notices: 5. Notice Date 08/17/2017. (Admin.) (Entered: 08/17/2017) |
| 10/10/2017 | | 8 | Motion to Dismiss Adversary Proceeding Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s):1 Complaint). (Attachments: # 1 Proposed/Unsigned Order) (Johnson, Eric) (Entered: 10/10/2017) |
| 10/11/2017 | | 9 | Notice of Appearance and Request for Notice Filed by Carla Martin on behalf of Navient Solutions Inc.. (Martin, Carla) (Entered: 10/11/2017) |
| 10/24/2017 | | 10 | Response Filed by Austin C. Smith on behalf of Byron Patterson McDaniel JR, Laura Paige McDaniel (related document(s):8 Motion to Dismiss Adversary Proceeding). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) (Smith, Austin) (Entered: 10/24/2017) |

| | | | |
|---|---|---|---|
| 10/26/2017 | | 11 | Unopposed Motion for Leave to File Reply in Support of Its Motion to Dismiss Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s):8 Motion to Dismiss Adversary Proceeding, 10 Response). (Attachments: # 1 Proposed/Unsigned Order) (Johnson, Eric) (Entered: 10/26/2017) |
| 10/27/2017 | | 12 | ORDER GRANTING DEFENDANT NAVIENT SOLUTIONS, LLCS UNOPPOSEDMOTION UNDER L.B.R. 7007–1 FOR LEAVE TO FILE A REPLY IN SUPPORT OF ITSMOTION TO DISMISS PLAINTIFFS CLAIMS UNDER FED. R. CIV. P. 12(b)(6) ANDMOTION TO STRIKE IMMATERIAL AND IMPERTINENTMATTER UNDER FED. R. CIV. P. 12(f) (related document(s):11 Motion for Leave to File). (mcs) (Entered: 10/27/2017) |
| 10/29/2017 | | 13 | Courts Notice or Order and BNC Certificate of Mailing (related document(s)12 Order on Motion For Leave to File). No. of Notices: 5. Notice Date 10/29/2017. (Admin.) (Entered: 10/29/2017) |
| 11/14/2017 | | 14 | Reply Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s):8 Motion to Dismiss Adversary Proceeding, 10 Response). (Johnson, Eric) (Entered: 11/14/2017) |
| 01/18/2018 | | 15 | Motion For Supplemental Authority Filed by Austin C. Smith on behalf of Byron Patterson McDaniel JR, Laura Paige McDaniel. (Attachments: # 1 Exhibit # 2 Exhibit Exhibit B # 3 Exhibit C) (Smith, Austin) (Entered: 01/18/2018) |
| 02/20/2018 | | 16 | ORDER SETTING ORAL ARGUMENT. (related document(s)8 Motion to Dismiss Adversary Proceeding, 10 Response, 14 Reply, 15 Other Motion). Hearing to be held on 3/20/2018 at 09:30 AM Courtroom D for 10 and for 15 and for 8 and for 14, . (bel) (Entered: 02/21/2018) |
| 02/23/2018 | | 17 | Courts Notice or Order and BNC Certificate of Mailing (related document(s)16 Order Setting Hearing). No. of Notices: 4. Notice Date 02/23/2018. (Admin.) (Entered: 02/23/2018) |
| 02/27/2018 | | 18 | Notice Re: Supplemental Authority in Support of Motion to Dismiss Plaintiffs Claims Under Fed. R. Civ. P. 12(b)(6) and Motion to Strike Immaterial and Impertinent Matter Under Fed. R. Civ. P. 12(f). Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s)14 Reply). (Attachments: # 1 Exhibit A to I)(Johnson, Eric) (Entered: 02/27/2018) |
| 03/20/2018 | | 21 | Minutes of Proceedings. Oral argument held. The Court took the matter under advisement. (related document(s)8 Motion to Dismiss Adversary Proceeding, 10 Response, 14 Reply, 15 Other Motion). Matter Under Advisement Until 5/21/2018 for 10 and for 15 and for 8 and for 14, (bel) (Entered: 03/27/2018) |
| 03/26/2018 | | 19 | Motion For Supp Authority Filed by Austin C. Smith on behalf of Byron Patterson McDaniel JR, Laura Paige McDaniel. (Attachments: # 1 Exhibit A) (Smith, Austin) (Entered: 03/26/2018) |
| 03/27/2018 | | 20 | Notice Re: Supplemental Authority in Support of Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6). Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s)14 Reply). (Johnson, Eric) (Entered: 03/27/2018) |

| | | | |
|---|---|---|---|
| 03/29/2018 | | 22 | Courts Notice or Order and BNC Certificate of Mailing (related document(s)21 Minutes of Proceedings/Minute Order). No. of Notices: 4. Notice Date 03/29/2018. (Admin.) (Entered: 03/29/2018) |
| 03/30/2018 | | 23 | Transcript of Hearing Held on ORAL ARGUMENT ON DEFENDANT'S MOTION TO DISMISS. Date Of Hearing: TUESDAY, MARCH 20, 2018, 9:22 A.M. before Judge HONORABLE KIMBERLEY H. TYSON. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING, TRANSCRIPT RELEASE DATE IS 6/28/2018. Until that time the transcript may be viewed at the Bankruptcy Court or a copy may be obtained from the official court transcriber. Requested by SHERMAN HOWARD, L.L.C. on MARCH 29, 2018. Transcribed and filed by Agren Blando Court Reporting & Video, Inc. Total cost of Transcript $598.95 (RE: related document(s) 21 Minutes of Proceedings/Minute Order). Notice of Intent to Request Redaction Deadline Due By 4/6/2018. Redaction Request Due By 4/20/2018. Redacted Transcript Submission Due By 4/30/2018. Transcript Access Will Be Restricted Through 6/28/2018. (leg) (Entered: 03/30/2018) |
| 03/30/2018 | | 24 | Notice of Filing of Official Transcript. Notice is hereby given that an official transcript of the Oral Argument on Defendant's Motion to Dismiss held on March 20, 2018 has been filed. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the clerk's office or may be purchased from the court transcriber for a 90 day period. (related document(s)23 Transcript). (leg) (Entered: 03/30/2018) |
| 04/01/2018 | | 25 | Courts Notice or Order and BNC Certificate of Mailing (related document(s)24 Notice of Filing of Official Transcript). No. of Notices: 4. Notice Date 04/01/2018. (Admin.) (Entered: 04/01/2018) |
| 04/06/2018 | | 26 | Notice Re: Supp Authority. Filed by Austin C. Smith on behalf of Laura Paige McDaniel. (Attachments: # 1 Exhibit A # 2 Exhibit B)(Smith, Austin) (Entered: 04/06/2018) |
| 04/24/2018 | | 27 | Notice Re: Supplemental Authority in Support of Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6). Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s)14 Reply). (Johnson, Eric) (Entered: 04/24/2018) |
| 06/15/2018 | | 28 | Notice Re: Supplemental Authority in Support of Motionto Dismiss Plaintiffs'Claims. Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s): 14 Reply)... (Johnson, Eric) (Entered: 06/15/2018) |
| 09/19/2018 | | 29 | Notice Re: Supplemental Authority in Support of Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6). Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s)14 Reply). (Johnson, Eric) (Entered: 09/19/2018) |
| 09/24/2018 | | 30 | ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE (related document(s):8 Motion to Dismiss Adversary Proceeding). (mcs) (Entered: 09/24/2018) |
| 09/26/2018 | | 31 | Courts Notice or Order and BNC Certificate of Mailing (related document(s)30 Order on Motion to Dismiss Adversary Proceeding). No. of Notices: 4. Notice Date 09/26/2018. (Admin.) (Entered: 09/26/2018) |

| | | | |
|---|---|---|---|
| 10/09/2018 | | 32 | Notice of Appeal and Statement of Election to BAP Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s)30 Order on Motion to Dismiss Adversary Proceeding). New Appeal Status Deadline 10/23/2018. (Attachments: # 1 Exhibit A)(Johnson, Eric) (Entered: 10/09/2018) |
| 10/09/2018 | | 33 | Receipt of Notice of Appeal and Statement of Election(17–01274–KHT) [appeal,ntcaplea] ( 298.00) Filing Fee. Receipt number 26493241. Fee amount 298.00 (U.S. Treasury) (Entered: 10/09/2018) |
| 10/09/2018 | | 34 | Joint Certification of Direct Appeal to Court of Appeals Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s)32 Notice of Appeal and Statement of Election). (Johnson, Eric) (Entered: 10/09/2018) |
| 10/09/2018 | | 35 | Unopposed Motion for Leave to Appeal RE:Order Denying Motion to Dismiss Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s):30 Order on Motion to Dismiss Adversary Proceeding). (Attachments: # 1 Exhibit A # 2 Exhibit B) (Johnson, Eric) (Entered: 10/09/2018) |
| 10/09/2018 | | 36 | Unopposed Motion To Stay Pending Appeal Filed by Eric E. Johnson on behalf of Navient Solutions Inc. (related document(s):30 Order on Motion to Dismiss Adversary Proceeding). (Attachments: # 1 Exhibit A # 2 Proposed/Unsigned Order) (Johnson, Eric) (Entered: 10/09/2018) |
| 10/10/2018 | | 37 | This Appeal Has Been Accepted by the BAP and Assigned **Case No. 18–090** (related document(s)32 Notice of Appeal and Statement of Election). (rjr) (Entered: 10/10/2018) |
| 10/11/2018 | | 38 | Order Granting Unopposed Motion To Stay Adversary Proceeding Pending Interlocutory Appeal (related document(s):36 Motion To Stay Pending Appeal). (mlr) (Entered: 10/11/2018) |
| 10/11/2018 | | 39 | Certification Pursuant to 28 U.S.C. §158(d)(2) (related document(s)30 Order on Motion to Dismiss Adversary Proceeding, 32 Notice of Appeal and Statement of Election, 34 Certification of Direct Appeal). (mlr) (Entered: 10/11/2018) |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | |
| BYRON PATTERSON McDANIEL JR. and LAURA PAIGE McDANIEL, | Case No. 09-37480 KHT |
| Debtors. | Chapter 13 |
| BYRON PATTERSON McDANIEL JR. and LAURA PAIGE McDANIEL, | Adversary No. 17-01274 KHT |
| Plaintiff, v. | |
| NAVIENT SOLUTIONS, LLC, | |
| Defendant. | |

## ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE

THIS MATTER comes before the Court on a Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6) and Motion to Strike Immaterial and Impertinent Matter Under Fed.R.Civ.P. 12(f) (the "Motion") (Docket #8) filed by Defendant Navient Solutions, LLC ("Navient"), the Response (Docket #10) filed by Debtors Byron Patterson McDaniel Jr. and Laura Paige McDaniel (together, "Plaintiffs" or "Debtors"), and Navient's Reply (Docket #14). The Court heard oral argument on March 20, 2018 and has considered the pleadings, arguments, and supplemental authorities submitted. For the reasons stated herein, the Court denies the Motion.

## I.    JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Navient consents to entry of final orders or judgments of the Bankruptcy Court in this matter.

## II.    BACKGROUND

On December 24, 2009, Plaintiffs filed a voluntary Chapter 13 case and plan, using the standard form (Case No. 09-37480, Docket #2).

In their bankruptcy schedules, Plaintiffs listed debts to "Sallie Mae," described as "educational," and they also listed debts to "Great Lakes." (Case No. 09-37480, Docket #1). Nevertheless, Plaintiffs did not check the box in Section V.E. of the plan indicating they had student loans. The Chapter 13 Trustee objected to the plan on several grounds, including the plan "ma[de] no provision for debtor's non-dischargeable student loan." Case No. 09-37480, Docket #12.

On April 1, 2010, Plaintiffs filed an amended Chapter 13 plan (the "Plan"). This time, Plaintiffs indicated in Section V.E. of the Plan they had student loans and proposed to treat them "as an unsecured Class Four claim or as follows: deferred until end of plan." Case No. 09-37480, Docket #25. The Court confirmed the Plan on May 4, 2010. Case No. 09-37480, Docket #32.

A total of nine proofs of claim were filed by Sallie Mae entities and Great Lakes Higher Education Corp. Case No. 09-37480, Claims Register. The Great Lakes claims (Proofs of Claim Nos. 6 and 7) were subsequently assigned to Educational Credit Management Corp. and are based upon Federal Stafford Loans. At least five of the Sallie Mae claims (Proofs of Claim Nos. 25 through 29) were filed by or on behalf of Navient.

The Court entered an Order for Discharge of Plaintiffs on March 3, 2015, granting them a discharge under section 1328(a) of Title 11, United States Code ("Discharge Order"). Case No. 09-37480, Docket #54.

On June 30, 2017, the Court granted Plaintiffs' motion to reopen their Chapter 13 case. Thereafter, Plaintiffs filed this adversary proceeding against Navient, requesting a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Bankr.P. 7001(9) that certain "Tuition Answer Loans" held by Navient are not excepted from discharge under 11 U.S.C. § 523(a)(8) and were, therefore, discharged upon entry of the Discharge Order. They also seek damages for alleged willful violations of the discharge injunction by Navient pursuant to 11 U.S.C. §§ 105 and 524.

## III.    PLAINTIFFS' CLAIMS

The Complaint contains general allegations concerning the history of changes to 11 U.S.C. § 523(a)(8) and Navient's alleged efforts to deceive "student debtors and subvert the orderly working of the bankruptcy courts . . . [by] originating

USBC 7

and servicing dischargeable consumer loans and disguising them as non-dischargeable student loans." Complaint, ¶1. Navient seeks to strike many of these general allegations.

Plaintiffs allege Section 523(a)(8)[1], as originally enacted in 1978, prohibited discharge of federal student loans during the first five years of repayment absent undue hardship but "[t]hrough a series of amendments, which first lengthened and then eliminated the five-year non-dischargeability time frame, it has become increasingly difficult for debtors to attain discharges of their student loan debts." Complaint, ¶9. Prior to BAPCPA[2], Section 523(a)(8) was "easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of 'undue hardship.' [However, t]his fueled the belief that all student loans are non-dischargeable." Complaint, ¶13.

In 2005, the enactment of BAPCPA afforded *limited* protection to some private educational loan products "to the extent that such [lending] supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools solely for tuition, room, board, and books ('Qualified Education Loans')." Complaint, ¶11.

Plaintiffs allege Navient (formerly known as Sallie Mae or SLM Corporation) was not satisfied with the loan origination volume and restrictions associated with Qualified Educational Loans. Complaint, ¶12. Therefore, Navient created new loan products that are in essence dischargeable consumer loans, deceiving student borrowers by representing to them that "the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose." Complaint, ¶16 and ¶12.[3]

The problem was made worse because Section 523(a)(8) is self-executing, and "thus its correct application relies on the good faith and honesty of creditors." Complaint, ¶14. "Importantly, the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including 'debts for most student loans.'" *Id.*

---

[1] All Sections referred to herein are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

[2] Bankruptcy Abuse and Consumer Protection Act, Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereafter, "BAPCPA").

[3] While Navient was marketing these new loan products to student borrowers, Navient was also attempting to securitize the new loan products for sale on the secondary market. Plaintiffs allege to avoid securities violations, Navient disclosed to its potential (sophisticated) investors in student loan asset-backed securities prospectuses that "pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge." Complaint, ¶19.

Plaintiffs assert a creditor has the burden to prove its debt is encompassed by Section 523(a)(8) and is presumptively nondischargeable, then the burden shifts to the debtor to show undue hardship. Complaint, ¶15. "Absent an adversary proceeding, any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of law discharged upon entry of the discharge order. Accordingly, it is left to the creditors to determine whether their particular educational loan is excepted from discharge by Section 523(a)(8) and, where confusion exists, seek clarity from the court. The creditor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions." *Id.*

In the Complaint, Plaintiffs also make specific allegations regarding the Tuition Answer Loans held by Navient. Plaintiffs allege the Tuition Answer Program is a direct-to-consumer loan product outside the confines of the financial aid office and in excess of the school's published "Cost of Attendance" ("COA"). Complaint, ¶17. From 2004-2007, Plaintiffs borrowed $107,467 in six (6) Sallie Mae Tuition Answer Loans. Complaint, ¶20. The total balance of these Tuition Answer Loans is now $245,264, "despite consistent monthly payments of more than $2,000 for several years." Complaint, ¶21.

Plaintiff Laura Paige McDaniel attended Lakeland College from 2004 to 2007. Complaint, ¶22. Her COA for qualified tuition and related expenses for each year was: $5,340 in 2004, $10,650 in 2005, $6,450 in 2006, and $6,390 in 2007, as reflected on Tuition Statements issued by Lakeland College to Ms. McDaniel attached to the Complaint as Exhibit A. Complaint, ¶23. Ms. McDaniel borrowed the COA in the form of federal student loans, as reflected on Federal Stafford Loan documentation attached to the Complaint as Exhibit C. Complaint, ¶24.

Plaintiffs borrowed an additional $107,467 through the Tuition Answer Loans, "made outside the financial aid office and [not] for qualified education expenses." Complaint, ¶25. Attached as Exhibit B to the Complaint are copies of loan applications and promissory notes for the Tuition Answer Loans. *Id.* The Tuition Answer Loans were not made solely for the COA and accordingly, were not "qualified education loans" as defined in Section § 523(a)(8)(B). Complaint, ¶26.[4]

Debtors listed the Tuition Answer Loans on their Bankruptcy Schedule F. Complaint, ¶27. Debtors made payments totaling $26,782 on the Tuition Answer Loans during their Chapter 13 bankruptcy case. Complaint, ¶28.

---

[4] The Court notes, however, one of the loan documents in Exhibit B to the Complaint contains the following language: "this loan is a qualified education loan as described in Section 221(d)(1) of the Internal Revenue Code of 1986." Exhibit B to Complaint, p.14 of 40.

Navient was notified of the Discharge Order.  Complaint, ¶30.  Instead of charging the Tuition Answer Loans off, Navient demanded payments in violation of the Discharge Order and the Bankruptcy Code.  Complaint, ¶32.  Plaintiffs allege "owing to [Navient's] tactics, [P]laintiffs have repaid $37,460 on these discharged debts.  These payments were not made 'voluntarily' but were made solely based on Defendant Navient's material misrepresentations regarding the legal status and character of the Tuition Answer Loans."  Complaint, ¶33.  Navient's "abusive, deceptive and harassing collection efforts" after entry of the Discharge Order "were made knowingly and willfully in violation of this Court's discharge orders and must be sanctioned."  Complaint, ¶34.

## IV.  NAVIENT'S MOTION

Navient requests dismissal of the Complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) (Fed.R.Bankr.P. 7012(b)).  Navient also moves to strike certain allegations as immaterial and impertinent matter under Fed.R.Civ.P.12(f) (Fed.R.Bankr.P. 7012(b)).

Navient asserts the confirmed Plan distinguished the Tuition Answer Loans from Plaintiffs' other dischargeable unsecured debts in Class Four and treated them "as non-dischargeable."  Motion, p.16; *see also* Motion, p.17 ("[i]nstead of filing an adversary proceeding to seek a discharge of their loans, Debtors amended their [P]lan to expressly provide that their [Tuition Answer] Loans would *not be discharged* along with their other unsecured claims") (emphasis in original).  Accordingly, Navient argues principles of *res judicata* prohibit Plaintiffs from reversing their earlier position taken in the Plan, in light of the finality of the Plan confirmation order and the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).

Alternatively, Navient argues dismissal is warranted because the Complaint, on its face, establishes the Tuition Answer Loans are excepted from discharge as "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii).  Through the Tuition Answer Loans, Ms. McDaniel "received the funds that allowed [her] to attend Lakeland College.  Indeed, [Plaintiffs] certified to Navient 'all of the loan proceeds . . . are to pay expenses directly related to attending' Lakeland College."  Motion, p.19 (*quoting* Complaint, Exhibit B, pp.6, 31, 38 of 40).  Then, when they filed bankruptcy, Plaintiffs scheduled the debt as "educational" in nature.  Motion, p.19.  "By enabling Ms. McDaniel to enroll in and attend college and support her personal decision to improve her life through higher

education, the loans conferred 'educational benefits' on her and are therefore excepted from discharge in bankruptcy." Motion, p.20.

In support, Navient cites cases holding private student loans are "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii). Because the "Debtors do not, and cannot, allege that they used their [Tuition Answer] Loans for anything but educational purposes, nothing in Debtors' Complaint allows them to avoid the same result." Motion, pp.22-23. Navient contends the cases that hold otherwise are badly reasoned, and those courts misapply the principles of statutory interpretation they invoke.

Since the Tuition Answer Loans were not discharged, Navient asserts there can be no violation of the discharge injunction. In any case, Navient argues this claim should be dismissed because the discharge injunction is enforceable only through contempt proceedings and there is no private right of action for violation of the discharge injunction. Since Plaintiffs' claim must be construed as a claim for contempt, the order under which they seek contempt must be "clear and specific." The Discharge Order is not "clear and specific" but rather, provides most student loans are *not* dischargeable. Motion, p.35.

Navient also moves to strike paragraph 1 and paragraphs 9 through 19 of the Complaint because the allegations set forth in these twelve paragraphs constitute a "superfluous attack on [Navient's] character, inappropriate for a short and plain statement of the claim." Motion, p.37 (citations omitted). Navient contends the overblown and non-specific allegations in these paragraphs malign Navient, refer to "pervasive, systemic wrongdoing" and have no bearing on any issues in this case. Motion, p.38. Plaintiffs' "allegations of nonspecific fraud perpetrated by unnamed actors using unspecified means against unnamed victims are inflammatory, unnecessary, and irrelevant", and the Court should strike them as either a superfluous attack on character, or deficiently pleaded fraud claims. *Id.*

## V.   DISCUSSION

### A.   The Rule 12(b)(6) Motion to Dismiss.

Rule 8 notice pleading "requires a short and plan statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); Fed.R.Bankr.P. 7008. "[H]eightened fact pleading of specifics" is not required; rather, a party must assert "only enough facts to state a claim to relief that is plausible on its face . . . to nudg[e his] claims across the line from conceivable to plausible . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Failure to state a claim is a defense that may be presented by motion. Fed.R.Civ.P. 12(b)(6); Fed.R.Bankr.P. 7012(b).  On a motion to dismiss, this Court must accept all well-pled facts in the Complaint as true and view them in the light most favorable to Plaintiff.  *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015) (citing *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City and Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citing *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (quotation omitted)).

The Court reviews Navient's Motion with the above principles in mind. Section 523(a)(8) provides a discharge under section 1328(b) does not discharge an individual debtor from any debt –

> (8)  Unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –
>
>> (A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>>
>>> (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or
>>
>> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . .

11 U.S.C. § 523(a)(8).

## 1.   The Parties' Respective Burdens.

The parties agree Plaintiffs bear the burden of proving "undue hardship," but they disagree over who must bring an adversary proceeding to determine whether a student loan falls within the nondischargeable rubric of Section 523(a)(8) in the first place, as this section of the Bankruptcy Code is self-executing.  This dispute

is academic; Plaintiffs did bring this adversary proceeding, and the Court finds it
was not too late for them to do so. *Compare* Fed.R.Bankr.P. 4007(c) (complaints
to determine dischargeability of a debt under Section 523(c) must be filed no later
than 60 days after the first date set for the meeting of creditors) with *Gimbel v. U.S.
Dep't of Educ. (In re Gimbel)*, Adv. No. 17-01048-j, 2018 WL 1229718, *4 (Bankr.
D.N.M. March 8, 2018) ("there is no deadline expressly imposed by the Code or
Rules for filing an adversary proceeding to determine whether a student loan debt
should be excepted from the discharge under § 523(a)(8)").

As to the burden of proof, it remains on the creditor to show its debt is
excepted from discharge under Section 523. *Grogan v. Garner*, 498 U.S. 279, 287
(1991). Thus Navient, "as a creditor, must prove, by a preponderance of the
evidence, that a debt exists and the debt is the type excepted from discharge under
§ 523(a)(8)." *Hoffman v. Educ. Credit Mgmt. Corp. (In re Hoffman)*, 557 B.R. 177,
184 (Bankr. D. Colo. 2016) (citations omitted).

## 2. Principles of Res Judicata and *Espinosa*.

*Res judicata* applies when the following three elements exist: "(1) a [final]
judgment on the merits in an earlier action; (2) identity of parties or privies in the
two suits; and (3) identity of the cause of action in both suits." *Wilkes v. Wyo. Dep't
of Emp't Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002) (as amended
Jan. 14, 2003) (quoting *King v. Union Oil Co.*, 117 F.2d 443, 445 (10th Cir. 1997)).

Navient's *res judicata* argument suffers from a fatal flaw: the Plan does not
say what Navient says it does. It is true the confirmed Plan is final and binds
Plaintiffs and all of their creditors, including Navient. But the Plan did not specify
one way or the other whether the Tuition Answer Loans were – or were not –
discharged; the Plan is simply not instructive on this point. Section V.E. of the Plan
only specifies Plaintiffs' student loans – of which they had several, including
Federal Stafford Loans owing to Great Lakes or its assigns – were "to be treated
as an unsecured Class Four claim or as follows: deferred until end of plan." Case
No. 09-37480, Docket #25. The Plan is silent as to the dischargeability or non-
dischargeability of the Tuition Answer Loans vis-à-vis Plaintiffs' other educational
loans, or other unsecured debts. Nowhere in the Plan does it state the Tuition
Answer Loans, or *any* of Plaintiffs' student loans, were nondischargeable; Navient
relies upon a mischaracterization of the terms of the Plan.

Nor does Plaintiffs' description of Navient's debt on their Bankruptcy
Schedules as "educational" influence its dischargeability. "Educational" loans, or
"student" loans, are not nondischargeable simply because they are labeled as
such; they must meet one or more of the criteria set forth in Section 523(a)(8). "A
construction so broad would be incompatible with the 'well-known' guide that

USBC 13

exceptions to discharge 'should be confined to those plainly expressed.'"
*Kawaauhau v. Geiger,* 523 U.S. 57, 62 (1998) (quoting *Gleason v. Thaw,* 236 U.S.
558, 562 (1915)).

In *Espinosa*, the Supreme Court held the lender was bound by the terms of
the debtors' confirmed plan even though confirmation of that plan was legal error.
*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010).  The
Chapter 13 plan in *Espinosa* expressly provided the debtors' student loans were
discharged for undue hardship, and the creditor had actual notice of the plan and
did not object.  *Id.* at 264-265.

Navient contends *Espinosa* applies in the reverse and mandates the
conclusion Plaintiffs' claims are barred on account of their confirmed Plan.  But the
true reverse of *Espinosa* would be a plan that expressly provided the Tuition
Answer Loans, or any of Plaintiffs' student loans, were *not* dischargeable.  Here,
the Plan contains no explicit statement or determination as to the dischargeability
of any of Plaintiffs' student loans.  Navient's reliance upon *Espinosa* as controlling
authority over the outcome of this case is misplaced.

Because the confirmed Plan is not a final determination on the merits, the
Court will not dismiss Plaintiffs' Section 523(a)(8) claim on the basis of *res judicata*
or application of *Espinosa*.

### 3.    Section 523(a)(8)(A)(ii).

Absent undue hardship, Section 523(a)(8)(A)(ii) excepts from discharge "an
obligation to repay funds received as an educational benefit, scholarship or
stipend." 11 U.S.C. 523(a)(8)(A)(ii).  The crux of the dispute is whether the Tuition
Answer Loans fall within the ambit of this subsection as a matter of law.  Courts in
other jurisdictions are divided on the issue, with some courts holding private loans
that provide an educational benefit to the borrower fit within Section 523(a)(8)(A)(ii)
(the view espoused by Navient), and other courts embracing a much narrower
view, holding such educational loans are not included within this particular
subsection (Plaintiffs' position).[5]  There is no controlling authority on point within
the Tenth Circuit.

The Court's inquiry "begins where all such inquiries must begin:  with the
language of the statute itself."  *Unites States v. Ron Pair Enterprises, Inc.*, 489

---

[5] While the parties dispute whose side is in the majority, the recent trend is clearly in favor of
Plaintiffs' position.  In their Response, Plaintiffs indicate there are 18 cases that support Navient's
position, and cite 18 cases that support their own position, including 8 of the last 9 cases decided
since 2016.  Since the time the parties' briefs were submitted, additional decisions have been
rendered in other districts also supporting Plaintiffs' view of Section 523(a)(8)(A)(ii).

U.S. 235, 241 (1989). If the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Id.* (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

"When interpreting statutory language, this court 'must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.'" *Office of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)*, 236 F.3d 1246, 1252 (10th Cir. 2001) (citing *True Oil Co. v. Comm'r of Internal Revenue*, 170 F.3d 1294, 1299 (10th Cir.1999) (quotation marks and citation omitted)). Section 523(a)(8)(A)(ii) cannot be read in isolation; it is necessary to read Section 523(a)(8) as a whole. "The meaning – or ambiguity – of certain words or phrases may only become evident when placed in context." *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 54 (Bankr. E.D.N.Y. 2016) (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994)).

Section 523(a)(8)(A)(ii) is sandwiched in between Sections 523(a)(8)(A)(i) and (B). Notably absent from Section 523(a)(8)(A)(ii) is the word "loan" which is used in both Sections 523(a)(8)(A)(i) and 523(a)(8)(B). In Section 523(a)(8)(A)(i), Congress excepted from discharge "an educational benefit overpayment *or* loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution". 11 U.S.C. § 523(a)(8)(A)(i) (emphasis added). The disjunctive "or" in Section 523(a)(8)(A)(i) is significant, because it distinguishes an "educational benefit overpayment" from a "loan." *See, e.g., Loughrin v. United States*, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (in reviewing the language of the federal bank fraud statute in which elements of the crime were separated by the word "or," the Supreme Court considered what "or" customarily means: "th[e] term's 'ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings'") (quoting *United States v. Woods,* 571 U.S. 31, 45 (2013)).

The word "loan" is also used in Section 523(a)(8)(B), which excepts from discharge "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual". 11 U.S.C. 523(a)(8)(B).

Navient argues the fact Congress did not use the word "loan" in Section 523(a)(8)(A)(ii) does not matter because an "obligation to repay funds received" *is* a loan; this phrase could not possibly fail to include loans – it is just more inclusive and expansive. Motion, pp.29-30. But given the specific language employed by Congress in Sections 523(a)(8)(A)(i) and (B) and the absence of the word "loan" from Section 523(a)(8)(A)(ii), the Court concludes "an obligation to repay funds received as an educational benefit, scholarship or stipend" does not include a loan. "[W]hen 'Congress includes particular language in one section of a statute but

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

omits it in another' — *let alone in the very next provision* — this Court 'presume[s]' that Congress intended a difference in meaning." *Loughrin v. United States*, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (emphasis added) (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983) (further citation omitted)).

Moreover, another critical little word appearing in Section 523(a)(8)(A)(ii) is the word "*as.*" "As" is a qualifier; it denotes how the funds were received. In a recent decision, the Bankruptcy Court for the Southern District of Texas examined the word "as" in Section 523(a)(8)(A)(ii):

> The use of the word "as" denotes "in the character or under the name of." [T]o the contrary, "for" denotes "in consideration for . . . in exchange for." [T]he Court concludes that 523(a)(8)(A)(ii) created a new category of nondischargeable debts specifically tailored to address a perceived need. That need did not include all loans that were in some way used by a debtor for education.

*Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830, 836 (Bankr. S.D. Tex. 2018) (quoting Black's Law Dictionary (6th ed. 1990)). This Court agrees. The language of the statute sets an educational benefit apart from a loan, and excepts from discharge a category of obligations in Section 523(a)(8)(A)(ii) that does not include loans but rather, "educational benefit[s]", "scholarship[s]", and "stipend[s]."[6]

If Navient's interpretation of Section 523(a)(8)(A)(ii) is correct – i.e., obligations that confer educational benefits are excepted from discharge – there would be no need for a separate provision excepting from discharge benefit overpayments or loans made, insured, or guaranteed by governmental units, or under programs funded by governmental units or nonprofit institutions (Section 523(a)(8)(A)(i)). Nor would there be any need for a separate provision excepting from discharge "qualified education loans" (Section 523(a)(8)(B)). Navient's interpretation offends a "cardinal principle" of statutory construction, that courts have a "duty to give effect, if possible, to every clause and word of a statute." *United States v. Smith*, 756 F.3d 1179, 1187 (10th Cir. 2014) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks and brackets omitted)).

---

[6] Like the court in *Campbell*, it is not necessary for this Court to decide whether the educational benefits, scholarships, and stipends referred to in Section 523(a)(8)(A)(ii) include only those made insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; the crux of the issue here is whether an "educational benefit" in Section 523(a)(8)(A)(ii) encompasses a private loan such as the Tuition Answer Loans. *See Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 59 (Bankr. E.D.N.Y. 2016) (comparing *Sensient Technologies Corp. v. Baiocchi (In re Baiocchi),* 389 B.R. 828, 831–32 (Bankr. E.D. Wis. 2008) with *In re Nunez*, 527 B.R. 410, 415 (Bankr. D. Or. 2015)).

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

In *Campbell*, decided in 2016, the Bankruptcy Court for the Eastern District of New York denied a lender's motion to dismiss debtor's complaint to determine dischargeability of a private bar study loan, holding Section 523(a)(8)(A)(ii) did not encompass such a loan. *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016). The *Campbell* court reasoned that if Section 523(a)(8)(A)(ii) applied to loans, it would "swallow" the other sections of 523(a)(8). *In re Campbell*, 547 B.R. at 55.

Navient argues *Campbell* was wrongly decided; Section 523(a)(8)(A)(ii) does not render other provisions of Section 523 superfluous but rather, that subsection provides "limited overlapping coverage" consistent with Supreme Court precedent, *In Husky Int'l Elec., Inc. v. Ritz*, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016) (concluding some overlap in coverage regarding the definition of "actual fraud" did not render Section 523(a) redundant). Reply, p.24. In other words, Section 523(a)(8)(A)(ii) catches instances of nondischargeability that other subparts of 523(a)(8) might miss, "reinforc[ing] the broad scope of the discharge exception for student loans." Motion, p.26. Unlike other subsections, Navient points out that Section 523(a)(8)(A)(ii) requires funds to be "received," so "both a private bar-study loan and a judgment debt to a co-signor on a defaulted government-backed university loan that the co-signor paid in full would be exempt from discharge under 523(a)(8)(A)(ii) but not § 523(a)(8)(A)(i) or (B), respectively." Motion, pp.25-26. The Court is not persuaded by this somewhat circular argument. If the legislature intended Section 523(a)(8)(A)(ii) to address potential liability to a co-signor, it could have done so explicitly; for example, Section 523 expressly includes separate categories of nondischargeable debt "incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1)" and "incurred to pay a tax to a governmental unit, other than the United States, that would be nondischargeable under paragraph (1)." 11 U.S.C. 523(a)(14), (14A).

Accordingly, based upon the plain language of the statute, this Court embraces the trending narrower view of Section 523(a)(8)(A)(ii) espoused in *Campbell*. *See, e.g.*, *Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830 (Bankr. S.D. Tex. 2018); *Nypaver v. Nypaver (In re Nypaver)*, 581 B.R. 431 (Bankr. W.D. Pa. 2018); *Essangui v. SLF V-2015 Trust (In re Essangui)*, 573 B.R. 614 (Bankr. D. Md. 2017); *Dufrane v. Navient Solutions, Inc. (In re Dufrane)*, 566 B.R. 28 (Bankr. C.D. Ca. 2017); *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016).

To the extent there is any ambiguity in Section 523(a)(8)(A)(ii), the doctrine of *noscitur a sociis* and the legislative history both support the narrower view. Employing the doctrine of *noscitur a sociis*, the *Campbell* court considered the meaning of "educational benefit" in the context of its surrounding words:

"scholarship" and "stipend." *In re Campbell*, 547 B.R. at 55. Under this doctrine, "when a statute contains a list, each word in that list presumptively has a 'similar' meaning." *Id.* (citing *Yates v. United States*, 135 S.Ct. 1074, 1089, 191 L.Ed.2d 64 (2015) (Alito, J., concurring in the judgment) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 576 (1995)). The *Campbell* court noted "'[s]cholarship' and 'stipend' both refer to funds which are not generally required to be repaid by the recipient" and concluded "educational benefit" may be understood the same way; they are all forms of conditional grants, not loans. *In re Campbell*, 547 B.R. at 55. This Court agrees. A "scholarship" is a "grant of financial aid to a student." The American Heritage College Dictionary, 1220 (3ᵈ ed. 1997). A "stipend" is a "fixed and regular payment, such as a salary." *Id.*, at 1335. A "benefit" is a "payment made or an entitlement available in accordance with a wage agreement, an insurance policy, or a public assistance program." *Id.*, at 127. These words all signify granting, not borrowing.[7]

Navient argues *noscitur a sociis* was misapplied in *Campbell*, given the broader context of Section 523(a)(8). But in this Court's opinion, as discussed above, the broader context of Section 523(a)(8) – in which the words "loan" and "or" appear in its neighboring subsections – supports a narrow construction of Section 523(a)(8)(A)(ii). Navient's argument that a loan used for educational purposes confers an educational benefit on the borrower, just like scholarships and stipends do, strays from both the text of the statute and the context in which it was enacted.

As to the context, Section 523(a)(8) was enacted to safeguard "the solvency of government education loan programs" for "future students". *In re Campbell*, 547 B.R. at 59-60 (citing *In re Pelkowski*, 990 F.2d 737, 742 (3ʳᵈ Cir. 1993) (quoting 124 Cong. Rec. 1791-9 Representative Ertel) (further citations omitted)). Section 523(a)(8) of the Bankruptcy Reform Act of 1978 excepted from discharge any debt –

> to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless –

---

[7] Navient complains a list of three items is insufficient to employ the doctrine, citing *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 288 (2010). But in that case, unlike here, the Supreme Court declined to employ *noscitur a sociis* to a list of three *disparate* terms: "congressional," "administrative," and "Governmental Accounting Office." *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. at 288 (finding each of the three terms "*quite distinct from the other no matter how construed*) (emphasis added).

     (A)  such loan first became due before five years before the date of the filing of the petition; or

     (B)  excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

Bankruptcy Reform Act of 1978, Pub. L. No. 95–598 § 523(a)(8) (H.R. 8200), Nov. 6, 1978, 92 Stat. 2549, 2591 (1978).

     The term "educational benefit" first appeared in Section 523(a)(8) in 1990, when the statute was amended to except from discharge any debt:

for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend . . .

Crime Control Act of 1990, Pub. L. No. 101-647 § 3621(1), 104 Stat. 4789, 4965 (1990).  The amendment to Section 523(a)(8) by the Crime Control Act also extended the period of repayment in Section 523(a)(8)(A) to seven years.  *Id.*

     The *Campbell* court examined the sparse legislative history and hearing testimony behind the 1990 amendments to Section 523(a)(8).  *In re Campbell*, 547 B.R. at 55.  At the hearing, Bob Wortham, a United States attorney from the Eastern District of Texas, explained the amendments to Section 523(a)(8) added "to the list of non-dischargeable debts, obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends", citing *U.S. Dep't of Health and Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986) in his statement.  *See In re Campbell*, 547 B.R. at 55 (citing Federal Debt Collection Procedures of 1990: Hearing on P.L. 101-647 before the H. Subcomm. on Econ. and Commercial Law, H. Judiciary Committee 101st Cong. 74-75 (June 14, 1990) (Mr. Brooks' Questions for the Record for Mr. Wortham)).

     In *Smith*, the Eighth Circuit held the pre-1990 version of Section 523(a)(8) encompassed a federal tuition assistance grant to a medical student who had defaulted on its conditions.  *U.S. Dep't of Health and Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986).  In reaching its decision, the Eighth Circuit was mindful of the "background and purpose of 523(a)(8) of the Bankruptcy Code" to correct a significant problem "[u]nder the Bankruptcy Act, [i.e.,] educational loans were

dischargeable resulting in millions of dollars in *federally guaranteed loans* defaulted upon annually." *Smith*, 807 F.2d at 126 (emphasis added) (quoting *In re Shipman*, 33 B.R. 80, 82 (Bankr. W.D. Mo. 1983)).

Navient points out the sparse legislative history examined in *Campbell* is a single remark, not made by a legislator, regarding a prior version of the statute. Motion, p.31. However, that selfsame sparsity of legislative history regarding the addition of "educational benefit" to Section 523(a)(8) suggests the legislature did not intend to extensively expand nondischargeability to private educational loans. A subsequent amendment to the statute supports this conclusion. With the enactment of BAPCPA in 2005, subsection (B) was added to Section 523(a)(8), including as nondischargeable "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual". Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, S. 256, 109th Cong., § 220, 119 Stat. 23, 59 (2005). BAPCPA also separated subsection (A) into two subsections, (A)(i) and (A)(ii), without any changes to the text. If Section 523(a)(8)(A)(ii) expanded the statute to include all loans that confer educational benefits, subsection (B) – adding "qualified education loans" under 26 U.S.C. § 221(d)(1) as nondischargeable – would have been wholly unnecessary.

Even if this Court were to agree with Navient, it would be premature to dismiss Plaintiffs' Complaint under Section 523(a)(8)(A)(ii); at this stage in the litigation, the underlying facts are not sufficiently developed. But the Court is persuaded by Plaintiffs' view that Section 523(a)(8)(A)(ii) does not encompass the Tuition Answer Loans, based upon the plain language of the statute, and in addition, applicable canons of statutory interpretation and the legislative history.

### 4.    Claim for Violation of the Discharge Injunction.

The Discharge Order granted Plaintiffs a discharge under Section 1328(a). Section 1328(a) specifies that the bankruptcy discharge for Chapter 13 debtors is as to "*all debts* provided for by the plan or disallowed under section 502 of this title, except any debt – . . . of the kind specified in . . . [section 523(a)(8)]." 11 U.S.C. § 1328(a)(2) (emphasis added). Pursuant to the Bankruptcy Code, the Discharge Order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived". 11 U.S.C. § 524(a)(2).

Navient argues Plaintiffs' claim for violation of the discharge injunction is defective because there is no private right of action for such claim, and the Discharge Order was not specific enough to be enforced against Navient on

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

contempt grounds; the Discharge Order did not clearly identify prohibited conduct as the Order "lacked such a statement about their [Tuition Answer] Loans".  Reply, p.29.

While the Tenth Circuit has not determined whether there is a private right of action under Section 524(a)(2), it is clear the Court's equitable powers under Section 105(a) extend to decide claims "to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in 524(a)(2)."  *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1306 (10th Cir. 2008) (citations omitted).[8]  Thus, "Section 524(a)(2) operates as 'an equitable remedy precluding the creditor, on pain of contempt, from taking *any* actions to enforce the discharged debt.'"  *Gray v. Nussbeck (In re Gray)*, 586 B.R. 347, 353 (Bankr. D. Kan. 2018) (quoting *Espinosa v. United States Aid Funds, Inc.*, 553 F.3d 1193, 1200 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010) (emphasis in original)).

To be held in contempt, a court must find (1) the party violated a specific and definite order; (2) the party had notice of the order; and (3) the party did in fact violate the order.  *Lucre Mgmt. Grp., LLC v. Schempp Real Estate, LLC (In re Lucre Mgmt. Grp., LLC)*, 365 F. 3d 874, 875 (10th Cir. 2004).  In order to prevail in a civil contempt proceeding, Plaintiffs' burden is high; they must prove the alleged violation by clear and convincing evidence.  *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998).

The Court concludes Plaintiffs have stated a valid claim for contempt.  The Discharge Order and the statutory bases for its issuance and enforcement (Sections 1328 and 524(a)(2)) are broad and unequivocal.  *All* debts were discharged, except those enumerated in Section 1328(a).  There is no such thing as a personalized discharge order addressed to each creditor in a given bankruptcy case.  That neither party sought to determine the dischargeability of the Tuition Answer Loans until now does not alter whether or not the debts were discharged under Section 523(a)(8) at the time the Discharge Order was entered; thereafter they both proceeded at their own risk.  Any ambiguity in the law, or uncertainty as to the injunction's applicability to the Tuition Answer Loans, is relevant to the inquiry as to whether any contempt violation, if proven, was willful.  Accordingly, the Court will not dismiss the claim on that basis.  Whether or not the evidence at trial will support the claim is a matter for another day.

---

[8] The Court rejects the notion Plaintiff's claim would need to be dismissed on procedural grounds for failure to file a motion for contempt in the main bankruptcy case, as that requirement would elevate form over substance.  *See, e.g., Gray v. Nussbeck (In re Gray)*, 586 B.R. 347, n.19 (Bankr. D. Kan. 2018); *Montano v. First Light Fed. Credit Union (In re Montano)*, 398 B.R. 47, 55-56 (Bankr. D.N.M. 2008).

## B.    The Rule 12(f) Motion to Strike.

Rule 12(f) allows a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f); Fed.R.Bankr.P. 7012(b). But "[s]triking a portion of a pleading is a drastic remedy; the federal courts generally view motions to strike with disfavor and infrequently grant such requests." *Purzel Video GmbH v. Smoak*, 11 F.Supp.3d 1020, 1029 (D. Colo. 2014) (citing 5C Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1380 (3d ed. 2011)).

The purpose of Rule 12(f) "is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case." *Sierra Club v. Tri–State Generation & Transmission Ass'n,* 173 F.R.D. 275, 285 (D. Colo.1997) (citing *United States v. Smuggler–Durant Mining Corp.,* 823 F.Supp. 873, 875 (D. Colo.1993)). Accordingly, courts deny motions to strike immaterial and impertinent matter "unless it can be shown that no evidence in support of the allegation[s] would be admissible." *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1085 (D. Colo. 1985) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). "Only allegations 'so unrelated to plaintiff's claims as to be unworthy of any consideration' should be stricken." *Id.* (quoting *EEOC v. Ford Motor Co.*, 529 F.Supp. 643, 644 (D. Colo. 1982)). Further, "[i]rrelevant allegations will be stricken as scandalous only if they degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court." *Sierra Club*, 173 F.R.D. at 285 (citing *Nault's Auto. Sales v. American Honda Motor Co.,* 148 F.R.D. 25, 30 (D.N.H.1993) (further citation omitted)).

 "Even where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike." *Sierra Club*, 173 F.R.D. at 285. "Inappropriately hyperbolic allegations, ill-conceived attempts at levity, and other similar manifestations of bad judgment in drafting pleadings, by themselves, fall short of the threshold that Rule 12(f) contemplates." *Saylavee LLC v. Hockler,* 228 F.R.D. 425, 426 (D. Conn. 2005).

It is important to keep in mind Plaintiffs' allegations are made against a corporate entity in a matter that will be tried to the Court. Although Plaintiffs' allegations in paragraphs 1 and 9 through 19 may be hyperbolic, they are not so unrelated to Plaintiffs' claims as to be unworthy of any consideration. To the contrary, the allegations are relevant to Plaintiffs' claim for violation of the discharge injunction. The Court, therefore, denies Navient's motion to strike the allegations.

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

## VI.    CONCLUSION

For the reasons stated herein, the Court DENIES the Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6) and Motion to Strike Immaterial and Impertinent Matter Under Fed.R.Civ.P. 12(f) filed by Defendant Navient Solutions, LLC.

Dated:  September 24, 2018.

BY THE COURT:

_____
Kimberley H. Tyson
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

In re:                                    )
                                          )    Case No. 09-37480 (KHT)
BYRON PATTERSON MCDANIEL JR.              )
AND LAURA PAIGE MCDANIEL                  )    Chapter 13
                                          )
        Debtors.                          )
_____   )
                                          )
BYRON PATTERSON MCDANIEL JR.              )
AND LAURA PAIGE MCDANIEL,                 )
                                          )    Adversary Proceeding No. 17-01274-KHT
        Plaintiffs,                       )
v.                                        )
                                          )
NAVIENT SOLUTIONS, LLC,                   )
                                          )
        Defendant.                        )

_____

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

_____

**Part 1:  Identify the appellant(s)**

    1.     Name(s) of appellant(s):

         Navient Solutions, LLC

    2.     Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.    For appeals in a bankruptcy case and not in an adversary proceeding.

☐ Plaintiff                       ☐ Debtor
☒ Defendant                  ☐ Creditor
☐ Other (describe) _____   ☐ Trustee
                                       ☐ Other (describe) _____

**Part 2:  Identify the subject of this appeal**

      1.      Describe the judgment, order, or decree appealed from:

            Order on Motion to Dismiss and Motion to Strike (Dkt. No. 30) (Copy attached as Exhibit A)

      2.      State the date on which the judgment, order, or decree was entered:  September 24, 2018.

**Part 3:  Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attached additional pages if necessary):

|  |  |  |  |
|---|---|---|---|
| 1. | Byron Patterson McDaniel, Jr. (Appellee) | Attorney: | Austin Smith Smith Law Group 3 Mitchell Place New York, NY 10017 (917) 992-2121 austin@acsmithlawgroup.com |
| 2. | Laura Paige McDaniel (Appellee) | Attorney: | Austin Smith Smith Law Group 3 Mitchell Place New York, NY 10017 (917) 992-2121 austin@acsmithlawgroup.com |

**Part 4:  Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

      ☐ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel

2

**Part 5:  Sign below**

Dated this 9th day of October, 2018.

SHERMAN & HOWARD L.L.C.

*/s/ Eric E. Johnson*
Eric E. Johnson
Carla Martin
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 297-2900
E-Mail:  ejohnson@shermanhoward.com
           cmartin@shermanhoward.com

*Attorney for Navient Solutions, LLC*

49043187.1

**CERTIFICATE OF SERVICE**

     The undersigned hereby certifies the following parties received a true and correct copy of
the foregoing **NOTICE OF APPEAL AND STATEMENT OF ELECTION** via a Notice of
Electronic Filing transmitted by CM/ECF in accordance with Local Bankruptcy Rule 5005-4(a)
on the 9th day of October, 2018:

Austin Smith
austin@acsmithlawgroup.com

*/s/ Roberta Neal*
Roberta Neal

49043187.1

# Exhibit A

USBC 28

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

In re:

BYRON PATTERSON McDANIEL JR.
and LAURA PAIGE McDANIEL,

    Debtors.

Case No. 09-37480 KHT

Chapter 13

---

BYRON PATTERSON McDANIEL JR.
and LAURA PAIGE McDANIEL,

    Plaintiff,

v.

NAVIENT SOLUTIONS, LLC,

    Defendant.

Adversary No. 17-01274 KHT

---

**ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE**

THIS MATTER comes before the Court on a Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6) and Motion to Strike Immaterial and Impertinent Matter Under Fed.R.Civ.P. 12(f) (the "Motion") (Docket #8) filed by Defendant Navient Solutions, LLC ("Navient"), the Response (Docket #10) filed by Debtors Byron Patterson McDaniel Jr. and Laura Paige McDaniel (together, "Plaintiffs" or "Debtors"), and Navient's Reply (Docket #14). The Court heard oral argument on March 20, 2018 and has considered the pleadings, arguments, and supplemental authorities submitted. For the reasons stated herein, the Court denies the Motion.

**I.    JURISDICTION**

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Navient consents to entry of final orders or judgments of the Bankruptcy Court in this matter.

## II.    BACKGROUND

On December 24, 2009, Plaintiffs filed a voluntary Chapter 13 case and plan, using the standard form (Case No. 09-37480, Docket #2).

In their bankruptcy schedules, Plaintiffs listed debts to "Sallie Mae," described as "educational," and they also listed debts to "Great Lakes." (Case No. 09-37480, Docket #1). Nevertheless, Plaintiffs did not check the box in Section V.E. of the plan indicating they had student loans. The Chapter 13 Trustee objected to the plan on several grounds, including the plan "ma[de] no provision for debtor's non-dischargeable student loan." Case No. 09-37480, Docket #12.

On April 1, 2010, Plaintiffs filed an amended Chapter 13 plan (the "Plan"). This time, Plaintiffs indicated in Section V.E. of the Plan they had student loans and proposed to treat them "as an unsecured Class Four claim or as follows: deferred until end of plan." Case No. 09-37480, Docket #25. The Court confirmed the Plan on May 4, 2010. Case No. 09-37480, Docket #32.

A total of nine proofs of claim were filed by Sallie Mae entities and Great Lakes Higher Education Corp. Case No. 09-37480, Claims Register. The Great Lakes claims (Proofs of Claim Nos. 6 and 7) were subsequently assigned to Educational Credit Management Corp. and are based upon Federal Stafford Loans. At least five of the Sallie Mae claims (Proofs of Claim Nos. 25 through 29) were filed by or on behalf of Navient.

The Court entered an Order for Discharge of Plaintiffs on March 3, 2015, granting them a discharge under section 1328(a) of Title 11, United States Code ("Discharge Order"). Case No. 09-37480, Docket #54.

On June 30, 2017, the Court granted Plaintiffs' motion to reopen their Chapter 13 case. Thereafter, Plaintiffs filed this adversary proceeding against Navient, requesting a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Bankr.P. 7001(9) that certain "Tuition Answer Loans" held by Navient are not excepted from discharge under 11 U.S.C. § 523(a)(8) and were, therefore, discharged upon entry of the Discharge Order. They also seek damages for alleged willful violations of the discharge injunction by Navient pursuant to 11 U.S.C. §§ 105 and 524.

## III.    PLAINTIFFS' CLAIMS

The Complaint contains general allegations concerning the history of changes to 11 U.S.C. § 523(a)(8) and Navient's alleged efforts to deceive "student debtors and subvert the orderly working of the bankruptcy courts . . . [by] originating

and servicing dischargeable consumer loans and disguising them as non-dischargeable student loans." Complaint, ¶1. Navient seeks to strike many of these general allegations.

Plaintiffs allege Section 523(a)(8)[1], as originally enacted in 1978, prohibited discharge of federal student loans during the first five years of repayment absent undue hardship but "[t]hrough a series of amendments, which first lengthened and then eliminated the five-year non-dischargeability time frame, it has become increasingly difficult for debtors to attain discharges of their student loan debts." Complaint, ¶9. Prior to BAPCPA[2], Section 523(a)(8) was "easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of 'undue hardship.' [However, t]his fueled the belief that all student loans are non-dischargeable." Complaint, ¶13.

In 2005, the enactment of BAPCPA afforded *limited* protection to some private educational loan products "to the extent that such [lending] supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools solely for tuition, room, board, and books ('Qualified Education Loans')." Complaint, ¶11.

Plaintiffs allege Navient (formerly known as Sallie Mae or SLM Corporation) was not satisfied with the loan origination volume and restrictions associated with Qualified Educational Loans. Complaint, ¶12. Therefore, Navient created new loan products that are in essence dischargeable consumer loans, deceiving student borrowers by representing to them that "the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose." Complaint, ¶16 and ¶12.[3]

The problem was made worse because Section 523(a)(8) is self-executing, and "thus its correct application relies on the good faith and honesty of creditors." Complaint, ¶14. "Importantly, the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including 'debts for most student loans.'" *Id.*

---

[1] All Sections referred to herein are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

[2] Bankruptcy Abuse and Consumer Protection Act, Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereafter, "BAPCPA").

[3] While Navient was marketing these new loan products to student borrowers, Navient was also attempting to securitize the new loan products for sale on the secondary market. Plaintiffs allege to avoid securities violations, Navient disclosed to its potential (sophisticated) investors in student loan asset-backed securities prospectuses that "pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge." Complaint, ¶19.

Plaintiffs assert a creditor has the burden to prove its debt is encompassed by Section 523(a)(8) and is presumptively nondischargeable, then the burden shifts to the debtor to show undue hardship.   Complaint, ¶15.   "Absent an adversary proceeding, any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of law discharged upon entry of the discharge order.  Accordingly, it is left to the creditors to determine whether their particular educational loan is excepted from discharge by Section 523(a)(8) and, where confusion exists, seek clarity from the court.  The creditor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions."  *Id.*

In the Complaint, Plaintiffs also make specific allegations regarding the Tuition Answer Loans held by Navient.   Plaintiffs allege the Tuition Answer Program is a direct-to-consumer loan product outside the confines of the financial aid office and in excess of the school's published "Cost of Attendance" ("COA"). Complaint, ¶17.  From 2004-2007, Plaintiffs borrowed $107,467 in six (6) Sallie Mae Tuition Answer Loans.  Complaint, ¶20.  The total balance of these Tuition Answer Loans is now $245,264, "despite consistent monthly payments of more than $2,000 for several years."  Complaint, ¶21.

Plaintiff Laura Paige McDaniel attended Lakeland College from 2004 to 2007.  Complaint, ¶22.  Her COA for qualified tuition and related expenses for each year was:  $5,340 in 2004, $10,650 in 2005, $6,450 in 2006, and $6,390 in 2007, as reflected on Tuition Statements issued by Lakeland College to Ms. McDaniel attached to the Complaint as Exhibit A.  Complaint, ¶23.  Ms. McDaniel borrowed the COA in the form of federal student loans, as reflected on Federal Stafford Loan documentation attached to the Complaint as Exhibit C.  Complaint, ¶24.

Plaintiffs borrowed an additional $107,467 through the Tuition Answer Loans, "made outside the financial aid office and [not] for qualified education expenses."  Complaint, ¶25.  Attached as Exhibit B to the Complaint are copies of loan applications and promissory notes for the Tuition Answer Loans.  *Id.*  The Tuition Answer Loans were not made solely for the COA and accordingly, were not "qualified education loans" as defined in Section § 523(a)(8)(B).  Complaint, ¶26.[4]

Debtors listed the Tuition Answer Loans on their Bankruptcy Schedule F. Complaint, ¶27.  Debtors made payments totaling $26,782 on the Tuition Answer Loans during their Chapter 13 bankruptcy case.  Complaint, ¶28.

---

[4]  The Court notes, however, one of the loan documents in Exhibit B to the Complaint contains the following language:  "this loan is a qualified education loan as described in Section 221(d)(1) of the Internal Revenue Code of 1986."  Exhibit B to Complaint, p.14 of 40.

Navient was notified of the Discharge Order.  Complaint, ¶30.  Instead of charging the Tuition Answer Loans off, Navient demanded payments in violation of the Discharge Order and the Bankruptcy Code.  Complaint, ¶32.  Plaintiffs allege "owing to [Navient's] tactics, [P]laintiffs have repaid $37,460 on these discharged debts.  These payments were not made 'voluntarily' but were made solely based on Defendant Navient's material misrepresentations regarding the legal status and character of the Tuition Answer Loans."  Complaint, ¶33.  Navient's "abusive, deceptive and harassing collection efforts" after entry of the Discharge Order "were made knowingly and willfully in violation of this Court's discharge orders and must be sanctioned."  Complaint, ¶34.

## IV.   NAVIENT'S MOTION

Navient requests dismissal of the Complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) (Fed.R.Bankr.P. 7012(b)).  Navient also moves to strike certain allegations as immaterial and impertinent matter under Fed.R.Civ.P.12(f) (Fed.R.Bankr.P. 7012(b)).

Navient asserts the confirmed Plan distinguished the Tuition Answer Loans from Plaintiffs' other dischargeable unsecured debts in Class Four and treated them "as non-dischargeable."  Motion, p.16; *see also* Motion, p.17 ("[i]nstead of filing an adversary proceeding to seek a discharge of their loans, Debtors amended their [P]lan to expressly provide that their [Tuition Answer] Loans would *not be discharged* along with their other unsecured claims") (emphasis in original).  Accordingly, Navient argues principles of *res judicata* prohibit Plaintiffs from reversing their earlier position taken in the Plan, in light of the finality of the Plan confirmation order and the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).

Alternatively, Navient argues dismissal is warranted because the Complaint, on its face, establishes the Tuition Answer Loans are excepted from discharge as "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii).  Through the Tuition Answer Loans, Ms. McDaniel "received the funds that allowed [her] to attend Lakeland College.  Indeed, [Plaintiffs] certified to Navient 'all of the loan proceeds . . . are to pay expenses directly related to attending' Lakeland College."  Motion, p.19 (*quoting* Complaint, Exhibit B, pp.6, 31, 38 of 40).  Then, when they filed bankruptcy, Plaintiffs scheduled the debt as "educational" in nature.  Motion, p.19.  "By enabling Ms. McDaniel to enroll in and attend college and support her personal decision to improve her life through higher

education, the loans conferred 'educational benefits' on her and are therefore excepted from discharge in bankruptcy."  Motion, p.20.

In support, Navient cites cases holding private student loans are "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii).  Because the "Debtors do not, and cannot, allege that they used their [Tuition Answer] Loans for anything but educational purposes, nothing in Debtors' Complaint allows them to avoid the same result."  Motion, pp.22-23.  Navient contends the cases that hold otherwise are badly reasoned, and those courts misapply the principles of statutory interpretation they invoke.

Since the Tuition Answer Loans were not discharged, Navient asserts there can be no violation of the discharge injunction.  In any case, Navient argues this claim should be dismissed because the discharge injunction is enforceable only through contempt proceedings and there is no private right of action for violation of the discharge injunction.  Since Plaintiffs' claim must be construed as a claim for contempt, the order under which they seek contempt must be "clear and specific."  The Discharge Order is not "clear and specific" but rather, provides most student loans are *not* dischargeable.  Motion, p.35.

Navient also moves to strike paragraph 1 and paragraphs 9 through 19 of the Complaint because the allegations set forth in these twelve paragraphs constitute a "superfluous attack on [Navient's] character, inappropriate for a short and plain statement of the claim."  Motion, p.37 (citations omitted).  Navient contends the overblown and non-specific allegations in these paragraphs malign Navient, refer to "pervasive, systemic wrongdoing" and have no bearing on any issues in this case.  Motion, p.38.  Plaintiffs' "allegations of nonspecific fraud perpetrated by unnamed actors using unspecified means against unnamed victims are inflammatory, unnecessary, and irrelevant", and the Court should strike them as either a superfluous attack on character, or deficiently pleaded fraud claims.  *Id.*

## V.    DISCUSSION

### A.    The Rule 12(b)(6) Motion to Dismiss.

Rule 8 notice pleading "requires a short and plan statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2); Fed.R.Bankr.P. 7008.  "[H]eightened fact pleading of specifics" is not required; rather, a party must assert "only enough facts to state a claim to relief that is plausible on its face . . . to nudg[e his] claims across the line from conceivable to plausible . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

6

Failure to state a claim is a defense that may be presented by motion. Fed.R.Civ.P. 12(b)(6); Fed.R.Bankr.P. 7012(b). On a motion to dismiss, this Court must accept all well-pled facts in the Complaint as true and view them in the light most favorable to Plaintiff. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015) (citing *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City and Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citing *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (quotation omitted)).

The Court reviews Navient's Motion with the above principles in mind. Section 523(a)(8) provides a discharge under section 1328(b) does not discharge an individual debtor from any debt –

> (8) Unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –
>
> > (A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> >
> > > (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or
> >
> > (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . .

11 U.S.C. § 523(a)(8).

### 1. The Parties' Respective Burdens.

The parties agree Plaintiffs bear the burden of proving "undue hardship," but they disagree over who must bring an adversary proceeding to determine whether a student loan falls within the nondischargeable rubric of Section 523(a)(8) in the first place, as this section of the Bankruptcy Code is self-executing. This dispute

USBC 35

is academic; Plaintiffs did bring this adversary proceeding, and the Court finds it was not too late for them to do so. *Compare* Fed.R.Bankr.P. 4007(c) (complaints to determine dischargeability of a debt under Section 523(c) must be filed no later than 60 days after the first date set for the meeting of creditors) with *Gimbel v. U.S. Dep't of Educ. (In re Gimbel)*, Adv. No. 17-01048-j, 2018 WL 1229718, *4 (Bankr. D.N.M. March 8, 2018) ("there is no deadline expressly imposed by the Code or Rules for filing an adversary proceeding to determine whether a student loan debt should be excepted from the discharge under § 523(a)(8)").

As to the burden of proof, it remains on the creditor to show its debt is excepted from discharge under Section 523. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). Thus Navient, "as a creditor, must prove, by a preponderance of the evidence, that a debt exists and the debt is the type excepted from discharge under § 523(a)(8)." *Hoffman v. Educ. Credit Mgmt. Corp. (In re Hoffman)*, 557 B.R. 177, 184 (Bankr. D. Colo. 2016) (citations omitted).

## 2. Principles of Res Judicata and *Espinosa*.

*Res judicata* applies when the following three elements exist: "(1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002) (as amended Jan. 14, 2003) (quoting *King v. Union Oil Co.*, 117 F.2d 443, 445 (10th Cir. 1997)).

Navient's *res judicata* argument suffers from a fatal flaw: the Plan does not say what Navient says it does. It is true the confirmed Plan is final and binds Plaintiffs and all of their creditors, including Navient. But the Plan did not specify one way or the other whether the Tuition Answer Loans were – or were not – discharged; the Plan is simply not instructive on this point. Section V.E. of the Plan only specifies Plaintiffs' student loans – of which they had several, including Federal Stafford Loans owing to Great Lakes or its assigns – were "to be treated as an unsecured Class Four claim or as follows: deferred until end of plan." Case No. 09-37480, Docket #25. The Plan is silent as to the dischargeability or non-dischargeability of the Tuition Answer Loans vis-à-vis Plaintiffs' other educational loans, or other unsecured debts. Nowhere in the Plan does it state the Tuition Answer Loans, or *any* of Plaintiffs' student loans, were nondischargeable; Navient relies upon a mischaracterization of the terms of the Plan.

Nor does Plaintiffs' description of Navient's debt on their Bankruptcy Schedules as "educational" influence its dischargeability. "Educational" loans, or "student" loans, are not nondischargeable simply because they are labeled as such; they must meet one or more of the criteria set forth in Section 523(a)(8). "A construction so broad would be incompatible with the 'well-known' guide that

8

exceptions to discharge 'should be confined to those plainly expressed.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)).

In *Espinosa*, the Supreme Court held the lender was bound by the terms of the debtors' confirmed plan even though confirmation of that plan was legal error. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010). The Chapter 13 plan in *Espinosa* expressly provided the debtors' student loans were discharged for undue hardship, and the creditor had actual notice of the plan and did not object. *Id.* at 264-265.

Navient contends *Espinosa* applies in the reverse and mandates the conclusion Plaintiffs' claims are barred on account of their confirmed Plan. But the true reverse of *Espinosa* would be a plan that expressly provided the Tuition Answer Loans, or any of Plaintiffs' student loans, were *not* dischargeable. Here, the Plan contains no explicit statement or determination as to the dischargeability of any of Plaintiffs' student loans. Navient's reliance upon *Espinosa* as controlling authority over the outcome of this case is misplaced.

Because the confirmed Plan is not a final determination on the merits, the Court will not dismiss Plaintiffs' Section 523(a)(8) claim on the basis of *res judicata* or application of *Espinosa*.

## 3. Section 523(a)(8)(A)(ii).

Absent undue hardship, Section 523(a)(8)(A)(ii) excepts from discharge "an obligation to repay funds received as an educational benefit, scholarship or stipend." 11 U.S.C. 523(a)(8)(A)(ii). The crux of the dispute is whether the Tuition Answer Loans fall within the ambit of this subsection as a matter of law. Courts in other jurisdictions are divided on the issue, with some courts holding private loans that provide an educational benefit to the borrower fit within Section 523(a)(8)(A)(ii) (the view espoused by Navient), and other courts embracing a much narrower view, holding such educational loans are not included within this particular subsection (Plaintiffs' position).[5] There is no controlling authority on point within the Tenth Circuit.

The Court's inquiry "begins where all such inquiries must begin: with the language of the statute itself." *Unites States v. Ron Pair Enterprises, Inc.*, 489

---

[5] While the parties dispute whose side is in the majority, the recent trend is clearly in favor of Plaintiffs' position. In their Response, Plaintiffs indicate there are 18 cases that support Navient's position, and cite 18 cases that support their own position, including 8 of the last 9 cases decided since 2016. Since the time the parties' briefs were submitted, additional decisions have been rendered in other districts also supporting Plaintiffs' view of Section 523(a)(8)(A)(ii).

U.S. 235, 241 (1989). If the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Id.* (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

"When interpreting statutory language, this court 'must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.'" *Office of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)*, 236 F.3d 1246, 1252 (10th Cir. 2001) (citing *True Oil Co. v. Comm'r of Internal Revenue*, 170 F.3d 1294, 1299 (10th Cir.1999) (quotation marks and citation omitted)). Section 523(a)(8)(A)(ii) cannot be read in isolation; it is necessary to read Section 523(a)(8) as a whole. "The meaning – or ambiguity – of certain words or phrases may only become evident when placed in context." *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 54 (Bankr. E.D.N.Y. 2016) (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994)).

Section 523(a)(8)(A)(ii) is sandwiched in between Sections 523(a)(8)(A)(i) and (B). Notably absent from Section 523(a)(8)(A)(ii) is the word "loan" which is used in both Sections 523(a)(8)(A)(i) and 523(a)(8)(B). In Section 523(a)(8)(A)(i), Congress excepted from discharge "an educational benefit overpayment *or* loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution". 11 U.S.C. § 523(a)(8)(A)(i) (emphasis added). The disjunctive "or" in Section 523(a)(8)(A)(i) is significant, because it distinguishes an "educational benefit overpayment" from a "loan." *See, e.g., Loughrin v. United States*, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (in reviewing the language of the federal bank fraud statute in which elements of the crime were separated by the word "or," the Supreme Court considered what "or" customarily means: "th[e] term's 'ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings'") (quoting *United States v. Woods,* 571 U.S. 31, 45 (2013)).

The word "loan" is also used in Section 523(a)(8)(B), which excepts from discharge "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual". 11 U.S.C. 523(a)(8)(B).

Navient argues the fact Congress did not use the word "loan" in Section 523(a)(8)(A)(ii) does not matter because an "obligation to repay funds received" *is* a loan; this phrase could not possibly fail to include loans – it is just more inclusive and expansive. Motion, pp.29-30. But given the specific language employed by Congress in Sections 523(a)(8)(A)(i) and (B) and the absence of the word "loan" from Section 523(a)(8)(A)(ii), the Court concludes "an obligation to repay funds received as an educational benefit, scholarship or stipend" does not include a loan. "[W]hen 'Congress includes particular language in one section of a statute but

omits it in another' — *let alone in the very next provision* — this Court 'presume[s]' that Congress intended a difference in meaning." *Loughrin v. United States*, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (emphasis added) (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983) (further citation omitted)).

Moreover, another critical little word appearing in Section 523(a)(8)(A)(ii) is the word "*as*." "As" is a qualifier; it denotes how the funds were received. In a recent decision, the Bankruptcy Court for the Southern District of Texas examined the word "as" in Section 523(a)(8)(A)(ii):

> The use of the word "as" denotes "in the character or under the name of." [T]o the contrary, "for" denotes "in consideration for . . . in exchange for." [T]he Court concludes that 523(a)(8)(A)(ii) created a new category of nondischargeable debts specifically tailored to address a perceived need. That need did not include all loans that were in some way used by a debtor for education.

*Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830, 836 (Bankr. S.D. Tex. 2018) (quoting Black's Law Dictionary (6th ed. 1990)). This Court agrees. The language of the statute sets an educational benefit apart from a loan, and excepts from discharge a category of obligations in Section 523(a)(8)(A)(ii) that does not include loans but rather, "educational benefit[s]", "scholarship[s]", and "stipend[s]."[6]

If Navient's interpretation of Section 523(a)(8)(A)(ii) is correct – i.e., obligations that confer educational benefits are excepted from discharge – there would be no need for a separate provision excepting from discharge benefit overpayments or loans made, insured, or guaranteed by governmental units, or under programs funded by governmental units or nonprofit institutions (Section 523(a)(8)(A)(i)). Nor would there be any need for a separate provision excepting from discharge "qualified education loans" (Section 523(a)(8)(B)). Navient's interpretation offends a "cardinal principle" of statutory construction, that courts have a "duty to give effect, if possible, to every clause and word of a statute." *United States v. Smith*, 756 F.3d 1179, 1187 (10th Cir. 2014) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks and brackets omitted)).

---

[6] Like the court in *Campbell*, it is not necessary for this Court to decide whether the educational benefits, scholarships, and stipends referred to in Section 523(a)(8)(A)(ii) include only those made insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; the crux of the issue here is whether an "educational benefit" in Section 523(a)(8)(A)(ii) encompasses a private loan such as the Tuition Answer Loans. *See Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 59 (Bankr. E.D.N.Y. 2016) (comparing *Sensient Technologies Corp. v. Baiocchi (In re Baiocchi),* 389 B.R. 828, 831–32 (Bankr. E.D. Wis. 2008) with *In re Nunez*, 527 B.R. 410, 415 (Bankr. D. Or. 2015)).

USBC 39

In *Campbell*, decided in 2016, the Bankruptcy Court for the Eastern District of New York denied a lender's motion to dismiss debtor's complaint to determine dischargeability of a private bar study loan, holding Section 523(a)(8)(A)(ii) did not encompass such a loan.  *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016).   The *Campbell* court reasoned that if Section 523(a)(8)(A)(ii) applied to loans, it would "swallow" the other sections of 523(a)(8). *In re Campbell*, 547 B.R. at 55.

Navient argues *Campbell* was wrongly decided; Section 523(a)(8)(A)(ii) does not render other provisions of Section 523 superfluous but rather, that subsection provides "limited overlapping coverage" consistent with Supreme Court precedent, *In Husky Int'l Elec., Inc. v. Ritz*, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016) (concluding some overlap in coverage regarding the definition of "actual fraud" did not render Section 523(a) redundant).  Reply, p.24.  In other words, Section 523(a)(8)(A)(ii) catches instances of nondischargeability that other subparts of 523(a)(8) might miss, "reinforc[ing] the broad scope of the discharge exception for student loans."  Motion, p.26.  Unlike other subsections, Navient points out that Section 523(a)(8)(A)(ii) requires funds to be "received," so "both a private bar-study loan and a judgment debt to a co-signor on a defaulted government-backed university loan that the co-signor paid in full would be exempt from discharge under 523(a)(8)(A)(ii) but not § 523(a)(8)(A)(i) or (B), respectively."  Motion, pp.25-26. The Court is not persuaded by this somewhat circular argument.  If the legislature intended Section 523(a)(8)(A)(ii) to address potential liability to a co-signor, it could have done so explicitly; for example, Section 523 expressly includes separate categories of nondischargeable debt "incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1)" and "incurred to pay a tax to a governmental unit, other than the United States, that would be nondischargeable under paragraph (1)."  11 U.S.C. 523(a)(14), (14A).

Accordingly, based upon the plain language of the statute, this Court embraces the trending narrower view of Section 523(a)(8)(A)(ii) espoused in *Campbell.  See, e.g.*, *Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830 (Bankr. S.D. Tex. 2018); *Nypaver v. Nypaver (In re Nypaver)*, 581 B.R. 431 (Bankr. W.D. Pa. 2018); *Essangui v. SLF V-2015 Trust (In re Essangui)*, 573 B.R. 614 (Bankr. D. Md. 2017); *Dufrane v. Navient Solutions, Inc. (In re Dufrane)*, 566 B.R. 28 (Bankr. C.D. Ca. 2017); *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016).

To the extent there is any ambiguity in Section 523(a)(8)(A)(ii), the doctrine of *noscitur a sociis* and the legislative history both support the narrower view. Employing the doctrine of *noscitur a sociis*, the *Campbell* court considered the meaning of "educational benefit" in the context of its surrounding words:

"scholarship" and "stipend." *In re Campbell*, 547 B.R. at 55. Under this doctrine, "when a statute contains a list, each word in that list presumptively has a 'similar' meaning." *Id.* (citing *Yates v. United States*, 135 S.Ct. 1074, 1089, 191 L.Ed.2d 64 (2015) (Alito, J., concurring in the judgment) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 576 (1995)). The *Campbell* court noted "'[s]cholarship' and 'stipend' both refer to funds which are not generally required to be repaid by the recipient" and concluded "educational benefit" may be understood the same way; they are all forms of conditional grants, not loans. *In re Campbell*, 547 B.R. at 55. This Court agrees. A "scholarship" is a "grant of financial aid to a student." The American Heritage College Dictionary, 1220 (3ᵈ ed. 1997). A "stipend" is a "fixed and regular payment, such as a salary." *Id.*, at 1335. A "benefit" is a "payment made or an entitlement available in accordance with a wage agreement, an insurance policy, or a public assistance program." *Id.*, at 127. These words all signify granting, not borrowing.[7]

Navient argues *noscitur a sociis* was misapplied in *Campbell*, given the broader context of Section 523(a)(8). But in this Court's opinion, as discussed above, the broader context of Section 523(a)(8) – in which the words "loan" and "or" appear in its neighboring subsections – supports a narrow construction of Section 523(a)(8)(A)(ii). Navient's argument that a loan used for educational purposes confers an educational benefit on the borrower, just like scholarships and stipends do, strays from both the text of the statute and the context in which it was enacted.

As to the context, Section 523(a)(8) was enacted to safeguard "the solvency of government education loan programs" for "future students". *In re Campbell*, 547 B.R. at 59-60 (citing *In re Pelkowski*, 990 F.2d 737, 742 (3ʳᵈ Cir. 1993) (quoting 124 Cong. Rec. 1791-9 Representative Ertel) (further citations omitted)). Section 523(a)(8) of the Bankruptcy Reform Act of 1978 excepted from discharge any debt –

> to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless –

---

[7] Navient complains a list of three items is insufficient to employ the doctrine, citing *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 288 (2010). But in that case, unlike here, the Supreme Court declined to employ *noscitur a sociis* to a list of three *disparate* terms: "congressional," "administrative," and "Governmental Accounting Office." *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. at 288 (finding each of the three terms "*quite distinct from the other no matter how construed*) (emphasis added).

(A) such loan first became due before five years before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

Bankruptcy Reform Act of 1978, Pub. L. No. 95–598 § 523(a)(8) (H.R. 8200), Nov. 6, 1978, 92 Stat. 2549, 2591 (1978).

The term "educational benefit" first appeared in Section 523(a)(8) in 1990, when the statute was amended to except from discharge any debt:

for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend . . .

Crime Control Act of 1990, Pub. L. No. 101-647 § 3621(1), 104 Stat. 4789, 4965 (1990). The amendment to Section 523(a)(8) by the Crime Control Act also extended the period of repayment in Section 523(a)(8)(A) to seven years. *Id.*

The *Campbell* court examined the sparse legislative history and hearing testimony behind the 1990 amendments to Section 523(a)(8). *In re Campbell*, 547 B.R. at 55. At the hearing, Bob Wortham, a United States attorney from the Eastern District of Texas, explained the amendments to Section 523(a)(8) added "to the list of non-dischargeable debts, obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends", citing *U.S. Dep't of Health and Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986) in his statement. *See In re Campbell*, 547 B.R. at 55 (citing Federal Debt Collection Procedures of 1990: Hearing on P.L. 101-647 before the H. Subcomm. on Econ. and Commercial Law, H. Judiciary Committee 101st Cong. 74-75 (June 14, 1990) (Mr. Brooks' Questions for the Record for Mr. Wortham)).

In *Smith*, the Eighth Circuit held the pre-1990 version of Section 523(a)(8) encompassed a federal tuition assistance grant to a medical student who had defaulted on its conditions. *U.S. Dep't of Health and Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986). In reaching its decision, the Eighth Circuit was mindful of the "background and purpose of 523(a)(8) of the Bankruptcy Code" to correct a significant problem "[u]nder the Bankruptcy Act, [i.e.,] educational loans were

dischargeable resulting in millions of dollars in *federally guaranteed loans* defaulted upon annually." *Smith*, 807 F.2d at 126 (emphasis added) (quoting *In re Shipman*, 33 B.R. 80, 82 (Bankr. W.D. Mo. 1983)).

Navient points out the sparse legislative history examined in *Campbell* is a single remark, not made by a legislator, regarding a prior version of the statute. Motion, p.31. However, that selfsame sparsity of legislative history regarding the addition of "educational benefit" to Section 523(a)(8) suggests the legislature did not intend to extensively expand nondischargeability to private educational loans. A subsequent amendment to the statute supports this conclusion. With the enactment of BAPCPA in 2005, subsection (B) was added to Section 523(a)(8), including as nondischargeable "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual". Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, S. 256, 109th Cong., § 220, 119 Stat. 23, 59 (2005). BAPCPA also separated subsection (A) into two subsections, (A)(i) and (A)(ii), without any changes to the text. If Section 523(a)(8)(A)(ii) expanded the statute to include all loans that confer educational benefits, subsection (B) – adding "qualified education loans" under 26 U.S.C. § 221(d)(1) as nondischargeable – would have been wholly unnecessary.

Even if this Court were to agree with Navient, it would be premature to dismiss Plaintiffs' Complaint under Section 523(a)(8)(A)(ii); at this stage in the litigation, the underlying facts are not sufficiently developed. But the Court is persuaded by Plaintiffs' view that Section 523(a)(8)(A)(ii) does not encompass the Tuition Answer Loans, based upon the plain language of the statute, and in addition, applicable canons of statutory interpretation and the legislative history.

## 4.  Claim for Violation of the Discharge Injunction.

The Discharge Order granted Plaintiffs a discharge under Section 1328(a). Section 1328(a) specifies that the bankruptcy discharge for Chapter 13 debtors is as to "*all debts* provided for by the plan or disallowed under section 502 of this title, except any debt – . . . of the kind specified in . . . [section 523(a)(8)]." 11 U.S.C. § 1328(a)(2) (emphasis added). Pursuant to the Bankruptcy Code, the Discharge Order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived". 11 U.S.C. § 524(a)(2).

Navient argues Plaintiffs' claim for violation of the discharge injunction is defective because there is no private right of action for such claim, and the Discharge Order was not specific enough to be enforced against Navient on

contempt grounds; the Discharge Order did not clearly identify prohibited conduct as the Order "lacked such a statement about their [Tuition Answer] Loans".  Reply, p.29.

While the Tenth Circuit has not determined whether there is a private right of action under Section 524(a)(2), it is clear the Court's equitable powers under Section 105(a) extend to decide claims "to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in 524(a)(2)."  *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1306 (10th Cir. 2008) (citations omitted).[8]  Thus, "Section 524(a)(2) operates as 'an equitable remedy precluding the creditor, on pain of contempt, from taking *any* actions to enforce the discharged debt.'"  *Gray v. Nussbeck (In re Gray)*, 586 B.R. 347, 353 (Bankr. D. Kan. 2018) (quoting *Espinosa v. United States Aid Funds, Inc.*, 553 F.3d 1193, 1200 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010) (emphasis in original)).

To be held in contempt, a court must find (1) the party violated a specific and definite order; (2) the party had notice of the order; and (3) the party did in fact violate the order.  *Lucre Mgmt. Grp., LLC v. Schempp Real Estate, LLC (In re Lucre Mgmt. Grp., LLC)*, 365 F. 3d 874, 875 (10th Cir. 2004).  In order to prevail in a civil contempt proceeding, Plaintiffs' burden is high; they must prove the alleged violation by clear and convincing evidence.  *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998).

The Court concludes Plaintiffs have stated a valid claim for contempt.  The Discharge Order and the statutory bases for its issuance and enforcement (Sections 1328 and 524(a)(2)) are broad and unequivocal.  *All* debts were discharged, except those enumerated in Section 1328(a).  There is no such thing as a personalized discharge order addressed to each creditor in a given bankruptcy case.  That neither party sought to determine the dischargeability of the Tuition Answer Loans until now does not alter whether or not the debts were discharged under Section 523(a)(8) at the time the Discharge Order was entered; thereafter they both proceeded at their own risk.  Any ambiguity in the law, or uncertainty as to the injunction's applicability to the Tuition Answer Loans, is relevant to the inquiry as to whether any contempt violation, if proven, was willful.  Accordingly, the Court will not dismiss the claim on that basis.  Whether or not the evidence at trial will support the claim is a matter for another day.

---

[8] The Court rejects the notion Plaintiff's claim would need to be dismissed on procedural grounds for failure to file a motion for contempt in the main bankruptcy case, as that requirement would elevate form over substance.  *See, e.g., Gray v. Nussbeck (In re Gray)*, 586 B.R. 347, n.19 (Bankr. D. Kan. 2018); *Montano v. First Light Fed. Credit Union (In re Montano)*, 398 B.R. 47, 55-56 (Bankr. D.N.M. 2008).

### B. The Rule 12(f) Motion to Strike.

Rule 12(f) allows a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f); Fed.R.Bankr.P. 7012(b). But "[s]triking a portion of a pleading is a drastic remedy; the federal courts generally view motions to strike with disfavor and infrequently grant such requests." *Purzel Video GmbH v. Smoak*, 11 F.Supp.3d 1020, 1029 (D. Colo. 2014) (citing 5C Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1380 (3d ed. 2011)).

The purpose of Rule 12(f) "is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case." *Sierra Club v. Tri–State Generation & Transmission Ass'n,* 173 F.R.D. 275, 285 (D. Colo.1997) (citing *United States v. Smuggler–Durant Mining Corp.,* 823 F.Supp. 873, 875 (D. Colo.1993)). Accordingly, courts deny motions to strike immaterial and impertinent matter "unless it can be shown that no evidence in support of the allegation[s] would be admissible." *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1085 (D. Colo. 1985) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). "Only allegations 'so unrelated to plaintiff's claims as to be unworthy of any consideration' should be stricken." *Id.* (quoting *EEOC v. Ford Motor Co.*, 529 F.Supp. 643, 644 (D. Colo. 1982)). Further, "[i]rrelevant allegations will be stricken as scandalous only if they degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court." *Sierra Club*, 173 F.R.D. at 285 (citing *Nault's Auto. Sales v. American Honda Motor Co.,* 148 F.R.D. 25, 30 (D.N.H.1993) (further citation omitted)).

"Even where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike." *Sierra Club*, 173 F.R.D. at 285. "Inappropriately hyperbolic allegations, ill-conceived attempts at levity, and other similar manifestations of bad judgment in drafting pleadings, by themselves, fall short of the threshold that Rule 12(f) contemplates." *Saylavee LLC v. Hockler,* 228 F.R.D. 425, 426 (D. Conn. 2005).

It is important to keep in mind Plaintiffs' allegations are made against a corporate entity in a matter that will be tried to the Court. Although Plaintiffs' allegations in paragraphs 1 and 9 through 19 may be hyperbolic, they are not so unrelated to Plaintiffs' claims as to be unworthy of any consideration. To the contrary, the allegations are relevant to Plaintiffs' claim for violation of the discharge injunction. The Court, therefore, denies Navient's motion to strike the allegations.

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

## VI.     CONCLUSION

For the reasons stated herein, the Court DENIES the Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6) and Motion to Strike Immaterial and Impertinent Matter Under Fed.R.Civ.P. 12(f) filed by Defendant Navient Solutions, LLC.

Dated:  September 24, 2018.

BY THE COURT:

_____
Kimberley H. Tyson
United States Bankruptcy Judge

18

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                                    )
                                          )     Case No. 09-37480 (KHT)
BYRON PATTERSON MCDANIEL JR.              )
AND LAURA PAIGE MCDANIEL                  )     Chapter 13
                                          )
        Debtors.                          )
_____         )
                                          )
BYRON PATTERSON MCDANIEL JR.              )
AND LAURA PAIGE MCDANIEL,                 )
                                          )     Adversary Proceeding No. 17-01274-KHT
        Plaintiffs,                       )
v.                                        )
                                          )
NAVIENT SOLUTIONS, LLC,                   )
                                          )
        Defendant.                        )

_____

## CERTIFICATION TO COURT OF APPEALS BY ALL PARTIES

_____

A notice of appeal having been filed in the above-captioned matter on October 9, 2018, Plaintiffs Byron Patterson McDaniel Jr. and Laura Paige McDaniel, and Defendant Navient Solutions, LLC ("NSL," and with Plaintiffs, the "Parties"), who are all of the parties in this case acting jointly, hereby certify to the court under 28 U.S.C. § 158(d)(2)(A) and Fed. R. Bankr. P. 8006(c) that a circumstance specified in 28 U.S.C. § 158(d)(2) exists as stated below.

Leave to appeal in this matter:

☒       is required under 28 U.S.C. § 158(a)

☐       is not required under 28 U.S.C. § 158(a)

This certification arises in an appeal from this Court's Order on Motion to Dismiss and Motion to Strike (the "Order"), dated September 24, 2018 (Dkt. No. 30), which is an

49043190.2

interlocutory order or decree.  Accordingly, the Parties hereby request leave to appeal as required

by 28 U.S.C. § 158(a).

In accordance with 28 U.S.C. § 158(d)(2)(A)(i)-(iii), the Parties hereby certify that:

> i.  the judgment, order or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

> ii.  the judgment, order or decree involves a question of law requiring resolution of conflicting decisions; and

> iii.  an immediate appeal from the judgment, order or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

Dated this 9th day of October, 2018.

SHERMAN & HOWARD L.L.C.

*/s/ Eric E. Johnson*
Eric E. Johnson
Carla R. Martin
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 297-2900
E-Mail:  ejohnson@shermanhoward.com
　　　　 cmartin@shermanhoward.com

*Counsel for Navient Solutions, LLC*


—and—


*/s/ Austin Smith*
Austin Smith
SMITH LAW GROUP
3 Mitchell Place
New York, New York 10017
Tel:  (917) 992-2121
E-mail:  austin@acsmithlawgroup.com

*Counsel for Plaintiffs Byron Patterson*
*McDaniel Jr. and Laura Paige McDaniel*

3

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies the following parties received a true and correct copy of the foregoing **CERTIFICATION TO COURT OF APPEALS BY ALL PARTIES** via a Notice of Electronic Filing transmitted by CM/ECF in accordance with Local Bankruptcy Rule 5005-4(a) on the 9th day of October, 2018:

Austin Smith
austin@acsmithlawgroup.com

*/s/ Roberta Neal* _____

49043190.2

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 09-37480 (KHT) |
| BYRON PATTERSON MCDANIEL JR. | ) | |
| AND LAURA PAIGE MCDANIEL | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| BYRON PATTERSON MCDANIEL JR. | ) | |
| AND LAURA PAIGE MCDANIEL, | ) | |
| | ) | Adversary Proceeding No. 17-01274-KHT |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| NAVIENT SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## UNOPPOSED MOTION FOR INTERLOCUTORY APPEAL

_____

Defendant Navient Solutions, LLC ("NSL"), hereby moves the Court on an unopposed basis under Fed. R. Bankr. P. 8004(a) and (b) for leave to take an interlocutory appeal of the *Order on Motion to Dismiss and Motion to Strike*, Dkt. No. 30 (the "Order"), a copy of which is attached as Exhibit A hereto.  In support, NSL states as follows:

### CERTIFICATION OF NON-OPPOSITION

NSL is authorized to certify to the Court that Plaintiffs do not oppose the request for leave to take an interlocutory appeal requested in this motion, in the interest of efficiency and economy. Plaintiffs oppose NSL's substantive position in the appeal.

### ARGUMENT

On September 24, 2018, the Court issued the Order denying NSL's motion to dismiss Plaintiffs' complaint.  (Dkt. No. 30.)  In relevant part, the Court found that Plaintiffs' amended

49046622.2

chapter 13 plan did not operate as res judicata to bar Plaintiffs' claims in this adversary proceeding (*id.* at 8–9), and that Plaintiffs' Educational Loans (as defined in NSL's motion to dismiss, Dkt. No. 8) were not excepted from discharge as "obligations to repay funds received as educational benefits" under § 523(a)(8)(A)(ii) of the Bankruptcy Code.  (Dkt. No. 30 at 9–15.)

On October 9, 2018, NSL filed a notice of appeal of the Order.  In addition, NSL and Plaintiffs filed a *Certification to Court of Appeals by All Parties* pursuant to 28 U.S.C. § 158(d)(2) and Federal Rule of Bankruptcy Procedure 8006(c), in which they certified that grounds exists for a direct, interlocutory appeal of the Order to the U.S. Court of Appeals for the Tenth Circuit.  NSL is contemporaneously filing with the Tenth Circuit the attached petition (*see* Exhibit B hereto) for direct, interlocutory appeal of the Order under 28 U.S.C. § 158(d)(2).

Federal Rule of Bankruptcy Procedure 8004(e) provides that, "[i]f leave to appeal an interlocutory order or decree is required under 28 U.S.C. § 158(a)(3), an authorization of a direct appeal by the court of appeals under 28 U.S.C. § 158(d)(2) satisfies the requirement."  Thus, if the Tenth Circuit accepts NSL's petition for direct, interlocutory appeal of the Order, leave is not required.  However, to the extent that the Tenth Circuit does *not* accept NSL's petition for direct, interlocutory appeal of the Order, NSL respectfully requests leave to appeal under 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004(a) and (b).  The grounds for this request are set forth in the petition attached to this motion as Exhibit B, which NSL respectfully incorporates by reference and requests be treated as a motion for interlocutory appeal under Federal Rule of Bankruptcy Procedure 8004(a)(2) and (b)(1), to the extent that such motion is necessary.

49046622.2

<u>**CONCLUSION**</u>

For the reasons described above and in the attached Exhibit B, NSL respectfully requests leave on an unopposed basis to pursue an interlocutory appeal of the Order to the Bankruptcy Appellate Panel to the extent the Tenth Circuit does not accept the appeal for direct review.

Dated this 9th day of October, 2018.

SHERMAN & HOWARD L.L.C.

*/s/ Eric E. Johnson*_____
Eric E. Johnson
Carla R. Martin
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 297-2900
E-Mail:  ejohnson@shermanhoward.com
          cmartin@shermanhoward.com

*Counsel for Navient Solutions, LLC*

49046622.2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies the following parties received a true and correct copy of the foregoing **UNOPPOSED MOTION FOR INTERLOCUTORY APPEAL** via a Notice of Electronic Filing transmitted by CM/ECF in accordance with Local Bankruptcy Rule 5005-4(a) on the 9th day of October, 2018:

Austin Smith
austin@acsmithlawgroup.com

*/s/ Roberta Neal*

49046622.2

**Exhibit A**

**Order on Motion to Dismiss and Motion to Strike**

5

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:

BYRON PATTERSON McDANIEL JR.
and LAURA PAIGE McDANIEL,

    Debtors.

Case No. 09-37480 KHT

Chapter 13

---

BYRON PATTERSON McDANIEL JR.
and LAURA PAIGE McDANIEL,

    Plaintiff,

v.

NAVIENT SOLUTIONS, LLC,

    Defendant.

Adversary No. 17-01274 KHT

## ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE

THIS MATTER comes before the Court on a Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6) and Motion to Strike Immaterial and Impertinent Matter Under Fed.R.Civ.P. 12(f) (the "Motion") (Docket #8) filed by Defendant Navient Solutions, LLC ("Navient"), the Response (Docket #10) filed by Debtors Byron Patterson McDaniel Jr. and Laura Paige McDaniel (together, "Plaintiffs" or "Debtors"), and Navient's Reply (Docket #14). The Court heard oral argument on March 20, 2018 and has considered the pleadings, arguments, and supplemental authorities submitted. For the reasons stated herein, the Court denies the Motion.

## I.   JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Navient consents to entry of final orders or judgments of the Bankruptcy Court in this matter.

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

## II.    BACKGROUND

On December 24, 2009, Plaintiffs filed a voluntary Chapter 13 case and plan, using the standard form (Case No. 09-37480, Docket #2).

In their bankruptcy schedules, Plaintiffs listed debts to "Sallie Mae," described as "educational," and they also listed debts to "Great Lakes."  (Case No. 09-37480, Docket #1).  Nevertheless, Plaintiffs did not check the box in Section V.E. of the plan indicating they had student loans.  The Chapter 13 Trustee objected to the plan on several grounds, including the plan "ma[de] no provision for debtor's non-dischargeable student loan."  Case No. 09-37480, Docket #12.

On April 1, 2010, Plaintiffs filed an amended Chapter 13 plan (the "Plan"). This time, Plaintiffs indicated in Section V.E. of the Plan they had student loans and proposed to treat them "as an unsecured Class Four claim or as follows: deferred until end of plan."  Case No. 09-37480, Docket #25.  The Court confirmed the Plan on May 4, 2010.  Case No. 09-37480, Docket #32.

A total of nine proofs of claim were filed by Sallie Mae entities and Great Lakes Higher Education Corp.  Case No. 09-37480, Claims Register.  The Great Lakes claims (Proofs of Claim Nos. 6 and 7) were subsequently assigned to Educational Credit Management Corp. and are based upon Federal Stafford Loans.  At least five of the Sallie Mae claims (Proofs of Claim Nos. 25 through 29) were filed by or on behalf of Navient.

The Court entered an Order for Discharge of Plaintiffs on March 3, 2015, granting them a discharge under section 1328(a) of Title 11, United States Code ("Discharge Order").  Case No. 09-37480, Docket #54.

On June 30, 2017, the Court granted Plaintiffs' motion to reopen their Chapter 13 case.  Thereafter, Plaintiffs filed this adversary proceeding against Navient, requesting a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Bankr.P. 7001(9) that certain "Tuition Answer Loans" held by Navient are not excepted from discharge under 11 U.S.C. § 523(a)(8) and were, therefore, discharged upon entry of the Discharge Order.  They also seek damages for alleged willful violations of the discharge injunction by Navient pursuant to 11 U.S.C. §§ 105 and 524.

## III.    PLAINTIFFS' CLAIMS

The Complaint contains general allegations concerning the history of changes to 11 U.S.C. § 523(a)(8) and Navient's alleged efforts to deceive "student debtors and subvert the orderly working of the bankruptcy courts . . . [by] originating

USBC 57

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

and servicing dischargeable consumer loans and disguising them as non-dischargeable student loans." Complaint, ¶1. Navient seeks to strike many of these general allegations.

Plaintiffs allege Section 523(a)(8)[1], as originally enacted in 1978, prohibited discharge of federal student loans during the first five years of repayment absent undue hardship but "[t]hrough a series of amendments, which first lengthened and then eliminated the five-year non-dischargeability time frame, it has become increasingly difficult for debtors to attain discharges of their student loan debts." Complaint, ¶9. Prior to BAPCPA[2], Section 523(a)(8) was "easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of 'undue hardship.' [However, t]his fueled the belief that all student loans are non-dischargeable." Complaint, ¶13.

In 2005, the enactment of BAPCPA afforded *limited* protection to some private educational loan products "to the extent that such [lending] supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools solely for tuition, room, board, and books ('Qualified Education Loans')." Complaint, ¶11.

Plaintiffs allege Navient (formerly known as Sallie Mae or SLM Corporation) was not satisfied with the loan origination volume and restrictions associated with Qualified Educational Loans. Complaint, ¶12. Therefore, Navient created new loan products that are in essence dischargeable consumer loans, deceiving student borrowers by representing to them that "the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose." Complaint, ¶16 and ¶12.[3]

The problem was made worse because Section 523(a)(8) is self-executing, and "thus its correct application relies on the good faith and honesty of creditors." Complaint, ¶14. "Importantly, the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including 'debts for most student loans.'" *Id.*

---

[1] All Sections referred to herein are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

[2] Bankruptcy Abuse and Consumer Protection Act, Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereafter, "BAPCPA").

[3] While Navient was marketing these new loan products to student borrowers, Navient was also attempting to securitize the new loan products for sale on the secondary market. Plaintiffs allege to avoid securities violations, Navient disclosed to its potential (sophisticated) investors in student loan asset-backed securities prospectuses that "pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge." Complaint, ¶19.

USBC 58

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

Plaintiffs assert a creditor has the burden to prove its debt is encompassed by Section 523(a)(8) and is presumptively nondischargeable, then the burden shifts to the debtor to show undue hardship. Complaint, ¶15. "Absent an adversary proceeding, any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of law discharged upon entry of the discharge order. Accordingly, it is left to the creditors to determine whether their particular educational loan is excepted from discharge by Section 523(a)(8) and, where confusion exists, seek clarity from the court. The creditor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions." *Id.*

In the Complaint, Plaintiffs also make specific allegations regarding the Tuition Answer Loans held by Navient. Plaintiffs allege the Tuition Answer Program is a direct-to-consumer loan product outside the confines of the financial aid office and in excess of the school's published "Cost of Attendance" ("COA"). Complaint, ¶17. From 2004-2007, Plaintiffs borrowed $107,467 in six (6) Sallie Mae Tuition Answer Loans. Complaint, ¶20. The total balance of these Tuition Answer Loans is now $245,264, "despite consistent monthly payments of more than $2,000 for several years." Complaint, ¶21.

Plaintiff Laura Paige McDaniel attended Lakeland College from 2004 to 2007. Complaint, ¶22. Her COA for qualified tuition and related expenses for each year was: $5,340 in 2004, $10,650 in 2005, $6,450 in 2006, and $6,390 in 2007, as reflected on Tuition Statements issued by Lakeland College to Ms. McDaniel attached to the Complaint as Exhibit A. Complaint, ¶23. Ms. McDaniel borrowed the COA in the form of federal student loans, as reflected on Federal Stafford Loan documentation attached to the Complaint as Exhibit C. Complaint, ¶24.

Plaintiffs borrowed an additional $107,467 through the Tuition Answer Loans, "made outside the financial aid office and [not] for qualified education expenses." Complaint, ¶25. Attached as Exhibit B to the Complaint are copies of loan applications and promissory notes for the Tuition Answer Loans. *Id.* The Tuition Answer Loans were not made solely for the COA and accordingly, were not "qualified education loans" as defined in Section § 523(a)(8)(B). Complaint, ¶26.[4]

Debtors listed the Tuition Answer Loans on their Bankruptcy Schedule F. Complaint, ¶27. Debtors made payments totaling $26,782 on the Tuition Answer Loans during their Chapter 13 bankruptcy case. Complaint, ¶28.

---

[4] The Court notes, however, one of the loan documents in Exhibit B to the Complaint contains the following language: "this loan is a qualified education loan as described in Section 221(d)(1) of the Internal Revenue Code of 1986." Exhibit B to Complaint, p.14 of 40.

4

Navient was notified of the Discharge Order. Complaint, ¶30. Instead of charging the Tuition Answer Loans off, Navient demanded payments in violation of the Discharge Order and the Bankruptcy Code. Complaint, ¶32. Plaintiffs allege "owing to [Navient's] tactics, [P]laintiffs have repaid $37,460 on these discharged debts. These payments were not made 'voluntarily' but were made solely based on Defendant Navient's material misrepresentations regarding the legal status and character of the Tuition Answer Loans." Complaint, ¶33. Navient's "abusive, deceptive and harassing collection efforts" after entry of the Discharge Order "were made knowingly and willfully in violation of this Court's discharge orders and must be sanctioned." Complaint, ¶34.

## IV. NAVIENT'S MOTION

Navient requests dismissal of the Complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) (Fed.R.Bankr.P. 7012(b)). Navient also moves to strike certain allegations as immaterial and impertinent matter under Fed.R.Civ.P.12(f) (Fed.R.Bankr.P. 7012(b)).

Navient asserts the confirmed Plan distinguished the Tuition Answer Loans from Plaintiffs' other dischargeable unsecured debts in Class Four and treated them "as non-dischargeable." Motion, p.16; *see also* Motion, p.17 ("[i]nstead of filing an adversary proceeding to seek a discharge of their loans, Debtors amended their [P]lan to expressly provide that their [Tuition Answer] Loans would *not be discharged* along with their other unsecured claims") (emphasis in original). Accordingly, Navient argues principles of *res judicata* prohibit Plaintiffs from reversing their earlier position taken in the Plan, in light of the finality of the Plan confirmation order and the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).

Alternatively, Navient argues dismissal is warranted because the Complaint, on its face, establishes the Tuition Answer Loans are excepted from discharge as "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii). Through the Tuition Answer Loans, Ms. McDaniel "received the funds that allowed [her] to attend Lakeland College. Indeed, [Plaintiffs] certified to Navient 'all of the loan proceeds . . . are to pay expenses directly related to attending' Lakeland College." Motion, p.19 (*quoting* Complaint, Exhibit B, pp.6, 31, 38 of 40). Then, when they filed bankruptcy, Plaintiffs scheduled the debt as "educational" in nature. Motion, p.19. "By enabling Ms. McDaniel to enroll in and attend college and support her personal decision to improve her life through higher

USBC 60

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

education, the loans conferred 'educational benefits' on her and are therefore excepted from discharge in bankruptcy." Motion, p.20.

In support, Navient cites cases holding private student loans are "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii). Because the "Debtors do not, and cannot, allege that they used their [Tuition Answer] Loans for anything but educational purposes, nothing in Debtors' Complaint allows them to avoid the same result." Motion, pp.22-23. Navient contends the cases that hold otherwise are badly reasoned, and those courts misapply the principles of statutory interpretation they invoke.

Since the Tuition Answer Loans were not discharged, Navient asserts there can be no violation of the discharge injunction. In any case, Navient argues this claim should be dismissed because the discharge injunction is enforceable only through contempt proceedings and there is no private right of action for violation of the discharge injunction. Since Plaintiffs' claim must be construed as a claim for contempt, the order under which they seek contempt must be "clear and specific." The Discharge Order is not "clear and specific" but rather, provides most student loans are *not* dischargeable. Motion, p.35.

Navient also moves to strike paragraph 1 and paragraphs 9 through 19 of the Complaint because the allegations set forth in these twelve paragraphs constitute a "superfluous attack on [Navient's] character, inappropriate for a short and plain statement of the claim." Motion, p.37 (citations omitted). Navient contends the overblown and non-specific allegations in these paragraphs malign Navient, refer to "pervasive, systemic wrongdoing" and have no bearing on any issues in this case. Motion, p.38. Plaintiffs' "allegations of nonspecific fraud perpetrated by unnamed actors using unspecified means against unnamed victims are inflammatory, unnecessary, and irrelevant", and the Court should strike them as either a superfluous attack on character, or deficiently pleaded fraud claims. *Id.*

## V.   DISCUSSION

### A.   The Rule 12(b)(6) Motion to Dismiss.

Rule 8 notice pleading "requires a short and plan statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); Fed.R.Bankr.P. 7008. "[H]eightened fact pleading of specifics" is not required; rather, a party must assert "only enough facts to state a claim to relief that is plausible on its face . . . to nudg[e] his claims across the line from conceivable to plausible . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

6

Failure to state a claim is a defense that may be presented by motion. Fed.R.Civ.P. 12(b)(6); Fed.R.Bankr.P. 7012(b). On a motion to dismiss, this Court must accept all well-pled facts in the Complaint as true and view them in the light most favorable to Plaintiff. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015) (citing *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City and Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citing *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (quotation omitted)).

The Court reviews Navient's Motion with the above principles in mind. Section 523(a)(8) provides a discharge under section 1328(b) does not discharge an individual debtor from any debt –

> (8) Unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –
>
> > (A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> >
> > > (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or
> >
> > (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . .

11 U.S.C. § 523(a)(8).

### 1. The Parties' Respective Burdens.

The parties agree Plaintiffs bear the burden of proving "undue hardship," but they disagree over who must bring an adversary proceeding to determine whether a student loan falls within the nondischargeable rubric of Section 523(a)(8) in the first place, as this section of the Bankruptcy Code is self-executing. This dispute

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

is academic; Plaintiffs did bring this adversary proceeding, and the Court finds it was not too late for them to do so. *Compare* Fed.R.Bankr.P. 4007(c) (complaints to determine dischargeability of a debt under Section 523(c) must be filed no later than 60 days after the first date set for the meeting of creditors) with *Gimbel v. U.S. Dep't of Educ. (In re Gimbel)*, Adv. No. 17-01048-j, 2018 WL 1229718, *4 (Bankr. D.N.M. March 8, 2018) ("there is no deadline expressly imposed by the Code or Rules for filing an adversary proceeding to determine whether a student loan debt should be excepted from the discharge under § 523(a)(8)").

As to the burden of proof, it remains on the creditor to show its debt is excepted from discharge under Section 523. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). Thus Navient, "as a creditor, must prove, by a preponderance of the evidence, that a debt exists and the debt is the type excepted from discharge under § 523(a)(8)." *Hoffman v. Educ. Credit Mgmt. Corp. (In re Hoffman)*, 557 B.R. 177, 184 (Bankr. D. Colo. 2016) (citations omitted).

## 2. Principles of Res Judicata and *Espinosa*.

*Res judicata* applies when the following three elements exist: "(1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002) (as amended Jan. 14, 2003) (quoting *King v. Union Oil Co.*, 117 F.2d 443, 445 (10th Cir. 1997)).

Navient's *res judicata* argument suffers from a fatal flaw: the Plan does not say what Navient says it does. It is true the confirmed Plan is final and binds Plaintiffs and all of their creditors, including Navient. But the Plan did not specify one way or the other whether the Tuition Answer Loans were − or were not − discharged; the Plan is simply not instructive on this point. Section V.E. of the Plan only specifies Plaintiffs' student loans − of which they had several, including Federal Stafford Loans owing to Great Lakes or its assigns − were "to be treated as an unsecured Class Four claim or as follows: deferred until end of plan." Case No. 09-37480, Docket #25. The Plan is silent as to the dischargeability or non-dischargeability of the Tuition Answer Loans vis-à-vis Plaintiffs' other educational loans, or other unsecured debts. Nowhere in the Plan does it state the Tuition Answer Loans, or *any* of Plaintiffs' student loans, were nondischargeable; Navient relies upon a mischaracterization of the terms of the Plan.

Nor does Plaintiffs' description of Navient's debt on their Bankruptcy Schedules as "educational" influence its dischargeability. "Educational" loans, or "student" loans, are not nondischargeable simply because they are labeled as such; they must meet one or more of the criteria set forth in Section 523(a)(8). "A construction so broad would be incompatible with the 'well-known' guide that

USBC 63

exceptions to discharge 'should be confined to those plainly expressed.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (quoting *Gleason v. Thaw,* 236 U.S. 558, 562 (1915)).

In *Espinosa*, the Supreme Court held the lender was bound by the terms of the debtors' confirmed plan even though confirmation of that plan was legal error. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010). The Chapter 13 plan in *Espinosa* expressly provided the debtors' student loans were discharged for undue hardship, and the creditor had actual notice of the plan and did not object. *Id.* at 264-265.

Navient contends *Espinosa* applies in the reverse and mandates the conclusion Plaintiffs' claims are barred on account of their confirmed Plan. But the true reverse of *Espinosa* would be a plan that expressly provided the Tuition Answer Loans, or any of Plaintiffs' student loans, were *not* dischargeable. Here, the Plan contains no explicit statement or determination as to the dischargeability of any of Plaintiffs' student loans. Navient's reliance upon *Espinosa* as controlling authority over the outcome of this case is misplaced.

Because the confirmed Plan is not a final determination on the merits, the Court will not dismiss Plaintiffs' Section 523(a)(8) claim on the basis of *res judicata* or application of *Espinosa*.

### 3.    Section 523(a)(8)(A)(ii).

Absent undue hardship, Section 523(a)(8)(A)(ii) excepts from discharge "an obligation to repay funds received as an educational benefit, scholarship or stipend." 11 U.S.C. 523(a)(8)(A)(ii). The crux of the dispute is whether the Tuition Answer Loans fall within the ambit of this subsection as a matter of law. Courts in other jurisdictions are divided on the issue, with some courts holding private loans that provide an educational benefit to the borrower fit within Section 523(a)(8)(A)(ii) (the view espoused by Navient), and other courts embracing a much narrower view, holding such educational loans are not included within this particular subsection (Plaintiffs' position).[5] There is no controlling authority on point within the Tenth Circuit.

The Court's inquiry "begins where all such inquiries must begin:  with the language of the statute itself." *Unites States v. Ron Pair Enterprises, Inc.*, 489

---

[5] While the parties dispute whose side is in the majority, the recent trend is clearly in favor of Plaintiffs' position.  In their Response, Plaintiffs indicate there are 18 cases that support Navient's position, and cite 18 cases that support their own position, including 8 of the last 9 cases decided since 2016.  Since the time the parties' briefs were submitted, additional decisions have been rendered in other districts also supporting Plaintiffs' view of Section 523(a)(8)(A)(ii).

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

U.S. 235, 241 (1989). If the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Id.* (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

"When interpreting statutory language, this court 'must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.'" *Office of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)*, 236 F.3d 1246, 1252 (10th Cir. 2001) (citing *True Oil Co. v. Comm'r of Internal Revenue,* 170 F.3d 1294, 1299 (10th Cir.1999) (quotation marks and citation omitted)). Section 523(a)(8)(A)(ii) cannot be read in isolation; it is necessary to read Section 523(a)(8) as a whole. "The meaning – or ambiguity – of certain words or phrases may only become more evident when placed in context." *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 54 (Bankr. E.D.N.Y. 2016) (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994)).

Section 523(a)(8)(A)(ii) is sandwiched in between Sections 523(a)(8)(A)(i) and (B). Notably absent from Section 523(a)(8)(A)(ii) is the word "loan" which is used in both Sections 523(a)(8)(A)(i) and 523(a)(8)(B). In Section 523(a)(8)(A)(i), Congress excepted from discharge "an educational benefit overpayment *or* loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution". 11 U.S.C. § 523(a)(8)(A)(i) (emphasis added). The disjunctive "or" in Section 523(a)(8)(A)(i) is significant, because it distinguishes an "educational benefit overpayment" from a "loan." *See, e.g., Loughrin v. United States*, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (in reviewing the language of the federal bank fraud statute in which elements of the crime were separated by the word "or," the Supreme Court considered what "or" customarily means: "th[e] term's 'ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings'") (quoting *United States v. Woods,* 571 U.S. 31, 45 (2013)).

The word "loan" is also used in Section 523(a)(8)(B), which excepts from discharge "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual". 11 U.S.C. 523(a)(8)(B).

Navient argues the fact Congress did not use the word "loan" in Section 523(a)(8)(A)(ii) does not matter because an "obligation to repay funds received" *is* a loan; this phrase could not possibly fail to include loans – it is just more inclusive and expansive. Motion, pp.29-30. But given the specific language employed by Congress in Sections 523(a)(8)(A)(i) and (B) and the absence of the word "loan" from Section 523(a)(8)(A)(ii), the Court concludes "an obligation to repay funds received as an educational benefit, scholarship or stipend" does not include a loan. "[W]hen 'Congress includes particular language in one section of a statute but

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

omits it in another' — *let alone in the very next provision* — this Court 'presume[s]' that Congress intended a difference in meaning." *Loughrin v. United States*, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (emphasis added) (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983) (further citation omitted)).

Moreover, another critical little word appearing in Section 523(a)(8)(A)(ii) is the word "*as.*" "As" is a qualifier; it denotes how the funds were received. In a recent decision, the Bankruptcy Court for the Southern District of Texas examined the word "as" in Section 523(a)(8)(A)(ii):

> The use of the word "as" denotes "in the character or under the name of." [T]o the contrary, "for" denotes "in consideration for . . . in exchange for." [T]he Court concludes that 523(a)(8)(A)(ii) created a new category of nondischargeable debts specifically tailored to address a perceived need. That need did not include all loans that were in some way used by a debtor for education.

*Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830, 836 (Bankr. S.D. Tex. 2018) (quoting Black's Law Dictionary (6th ed. 1990)). This Court agrees. The language of the statute sets an educational benefit apart from a loan, and excepts from discharge a category of obligations in Section 523(a)(8)(A)(ii) that does not include loans but rather, "educational benefit[s]", "scholarship[s]", and "stipend[s]."[6]

If Navient's interpretation of Section 523(a)(8)(A)(ii) is correct – i.e., obligations that confer educational benefits are excepted from discharge – there would be no need for a separate provision excepting from discharge benefit overpayments or loans made, insured, or guaranteed by governmental units, or under programs funded by governmental units or nonprofit institutions (Section 523(a)(8)(A)(i)). Nor would there be any need for a separate provision excepting from discharge "qualified education loans" (Section 523(a)(8)(B)). Navient's interpretation offends a "cardinal principle" of statutory construction, that courts have a "duty to give effect, if possible, to every clause and word of a statute." *United States v. Smith*, 756 F.3d 1179, 1187 (10th Cir. 2014) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks and brackets omitted)).

---

[6] Like the court in *Campbell*, it is not necessary for this Court to decide whether the educational benefits, scholarships, and stipends referred to in Section 523(a)(8)(A)(ii) include only those made insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; the crux of the issue here is whether an "educational benefit" in Section 523(a)(8)(A)(ii) encompasses a private loan such as the Tuition Answer Loans. *See Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 59 (Bankr. E.D.N.Y. 2016) (comparing *Sensient Technologies Corp. v. Baiocchi (In re Baiocchi)*, 389 B.R. 828, 831–32 (Bankr. E.D. Wis. 2008) with *In re Nunez*, 527 B.R. 410, 415 (Bankr. D. Or. 2015)).

USBC 66

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

In *Campbell*, decided in 2016, the Bankruptcy Court for the Eastern District of New York denied a lender's motion to dismiss debtor's complaint to determine dischargeability of a private bar study loan, holding Section 523(a)(8)(A)(ii) did not encompass such a loan. *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016). The *Campbell* court reasoned that if Section 523(a)(8)(A)(ii) applied to loans, it would "swallow" the other sections of 523(a)(8). *In re Campbell*, 547 B.R. at 55.

Navient argues *Campbell* was wrongly decided; Section 523(a)(8)(A)(ii) does not render other provisions of Section 523 superfluous but rather, that subsection provides "limited overlapping coverage" consistent with Supreme Court precedent, *In Husky Int'l Elec., Inc. v. Ritz*, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016) (concluding some overlap in coverage regarding the definition of "actual fraud" did not render Section 523(a) redundant). Reply, p.24. In other words, Section 523(a)(8)(A)(ii) catches instances of nondischargeability that other subparts of 523(a)(8) might miss, "reinforc[ing] the broad scope of the discharge exception for student loans." Motion, p.26. Unlike other subsections, Navient points out that Section 523(a)(8)(A)(ii) requires funds to be "received," so "both a private bar-study loan and a judgment debt to a co-signor on a defaulted government-backed university loan that the co-signor paid in full would be exempt from discharge under 523(a)(8)(A)(ii) but not § 523(a)(8)(A)(i) or (B), respectively." Motion, pp.25-26. The Court is not persuaded by this somewhat circular argument. If the legislature intended Section 523(a)(8)(A)(ii) to address potential liability to a co-signor, it could have done so explicitly; for example, Section 523 expressly includes separate categories of nondischargeable debt "incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1)" and "incurred to pay a tax to a governmental unit, other than the United States, that would be nondischargeable under paragraph (1)." 11 U.S.C. 523(a)(14), (14A).

Accordingly, based upon the plain language of the statute, this Court embraces the trending narrower view of Section 523(a)(8)(A)(ii) espoused in *Campbell*. *See, e.g.*, *Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830 (Bankr. S.D. Tex. 2018); *Nypaver v. Nypaver (In re Nypaver)*, 581 B.R. 431 (Bankr. W.D. Pa. 2018); *Essangui v. SLF V-2015 Trust (In re Essangui)*, 573 B.R. 614 (Bankr. D. Md. 2017); *Dufrane v. Navient Solutions, Inc. (In re Dufrane)*, 566 B.R. 28 (Bankr. C.D. Ca. 2017); *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016).

To the extent there is any ambiguity in Section 523(a)(8)(A)(ii), the doctrine of *noscitur a sociis* and the legislative history both support the narrower view. Employing the doctrine of *noscitur a sociis*, the *Campbell* court considered the meaning of "educational benefit" in the context of its surrounding words:

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

"scholarship" and "stipend." *In re Campbell*, 547 B.R. at 55. Under this doctrine, "when a statute contains a list, each word in that list presumptively has a 'similar' meaning." *Id.* (citing *Yates v. United States*, 135 S.Ct. 1074, 1089, 191 L.Ed.2d 64 (2015) (Alito, J., concurring in the judgment) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 576 (1995)). The *Campbell* court noted "'[s]cholarship' and 'stipend' both refer to funds which are not generally required to be repaid by the recipient" and concluded "educational benefit" may be understood the same way; they are all forms of conditional grants, not loans. *In re Campbell*, 547 B.R. at 55. This Court agrees. A "scholarship" is a "grant of financial aid to a student." The American Heritage College Dictionary, 1220 (3d ed. 1997). A "stipend" is a "fixed and regular payment, such as a salary." *Id.*, at 1335. A "benefit" is a "payment made or an entitlement available in accordance with a wage agreement, an insurance policy, or a public assistance program." *Id.*, at 127. These words all signify granting, not borrowing.[7]

Navient argues *noscitur a sociis* was misapplied in *Campbell*, given the broader context of Section 523(a)(8). But in this Court's opinion, as discussed above, the broader context of Section 523(a)(8) – in which the words "loan" and "or" appear in its neighboring subsections – supports a narrow construction of Section 523(a)(8)(A)(ii). Navient's argument that a loan used for educational purposes confers an educational benefit on the borrower, just like scholarships and stipends do, strays from both the text of the statute and the context in which it was enacted.

As to the context, Section 523(a)(8) was enacted to safeguard "the solvency of government education loan programs" for "future students". *In re Campbell*, 547 B.R. at 59-60 (citing *In re Pelkowski*, 990 F.2d 737, 742 (3rd Cir. 1993) (quoting 124 Cong. Rec. 1791-9 Representative Ertel) (further citations omitted)). Section 523(a)(8) of the Bankruptcy Reform Act of 1978 excepted from discharge any debt –

> to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless –

---

[7] Navient complains a list of three items is insufficient to employ the doctrine, citing *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 288 (2010). But in that case, unlike here, the Supreme Court declined to employ *noscitur a sociis* to a list of three *disparate* terms: "congressional," "administrative," and "Governmental Accounting Office." *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. at 288 (finding each of the three terms "*quite distinct from the other no matter how construed*") (emphasis added).

13

USBC 68

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

    (A) such loan first became due before five years before the date of the filing of the petition; or

    (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

Bankruptcy Reform Act of 1978, Pub. L. No. 95–598 § 523(a)(8) (H.R. 8200), Nov. 6, 1978, 92 Stat. 2549, 2591 (1978).

The term "educational benefit" first appeared in Section 523(a)(8) in 1990, when the statute was amended to except from discharge any debt:

for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend . . .

Crime Control Act of 1990, Pub. L. No. 101-647 § 3621(1), 104 Stat. 4789, 4965 (1990). The amendment to Section 523(a)(8) by the Crime Control Act also extended the period of repayment in Section 523(a)(8)(A) to seven years. *Id.*

The *Campbell* court examined the sparse legislative history and hearing testimony behind the 1990 amendments to Section 523(a)(8). *In re Campbell*, 547 B.R. at 55. At the hearing, Bob Wortham, a United States attorney from the Eastern District of Texas, explained the amendments to Section 523(a)(8) added "to the list of non-dischargeable debts, obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends", citing *U.S. Dep't of Health and Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986) in his statement. *See In re Campbell*, 547 B.R. at 55 (citing Federal Debt Collection Procedures of 1990: Hearing on P.L. 101-647 before the H. Subcomm. on Econ. and Commercial Law, H. Judiciary Committee 101st Cong. 74-75 (June 14, 1990) (Mr. Brooks' Questions for the Record for Mr. Wortham)).

In *Smith*, the Eighth Circuit held the pre-1990 version of Section 523(a)(8) encompassed a federal tuition assistance grant to a medical student who had defaulted on its conditions. *U.S. Dep't of Health and Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986). In reaching its decision, the Eighth Circuit was mindful of the "background and purpose of 523(a)(8) of the Bankruptcy Code" to correct a significant problem "[u]nder the Bankruptcy Act, [i.e.,] educational loans were

14

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

dischargeable resulting in millions of dollars in *federally guaranteed loans* defaulted upon annually." *Smith*, 807 F.2d at 126 (emphasis added) (quoting *In re Shipman*, 33 B.R. 80, 82 (Bankr. W.D. Mo. 1983)).

Navient points out the sparse legislative history examined in *Campbell* is a single remark, not made by a legislator, regarding a prior version of the statute. Motion, p.31. However, that selfsame sparsity of legislative history regarding the addition of "educational benefit" to Section 523(a)(8) suggests the legislature did not intend to extensively expand nondischargeability to private educational loans. A subsequent amendment to the statute supports this conclusion. With the enactment of BAPCPA in 2005, subsection (B) was added to Section 523(a)(8), including as nondischargeable "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual". Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, S. 256, 109th Cong., § 220, 119 Stat. 23, 59 (2005). BAPCPA also separated subsection (A) into two subsections, (A)(i) and (A)(ii), without any changes to the text. If Section 523(a)(8)(A)(ii) expanded the statute to include all loans that confer educational benefits, subsection (B) – adding "qualified education loans" under 26 U.S.C. § 221(d)(1) as nondischargeable – would have been wholly unnecessary.

Even if this Court were to agree with Navient, it would be premature to dismiss Plaintiffs' Complaint under Section 523(a)(8)(A)(ii); at this stage in the litigation, the underlying facts are not sufficiently developed. But the Court is persuaded by Plaintiffs' view that Section 523(a)(8)(A)(ii) does not encompass the Tuition Answer Loans, based upon the plain language of the statute, and in addition, applicable canons of statutory interpretation and the legislative history.

### 4.     Claim for Violation of the Discharge Injunction.

The Discharge Order granted Plaintiffs a discharge under Section 1328(a). Section 1328(a) specifies that the bankruptcy discharge for Chapter 13 debtors is as to "*all debts* provided for by the plan or disallowed under section 502 of this title, except any debt – . . . of the kind specified in . . . [section 523(a)(8)]." 11 U.S.C. § 1328(a)(2) (emphasis added). Pursuant to the Bankruptcy Code, the Discharge Order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived". 11 U.S.C. § 524(a)(2).

Navient argues Plaintiffs' claim for violation of the discharge injunction is defective because there is no private right of action for such claim, and the Discharge Order was not specific enough to be enforced against Navient on

USBC 70

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

contempt grounds; the Discharge Order did not clearly identify prohibited conduct as the Order "lacked such a statement about their [Tuition Answer] Loans". Reply, p.29.

While the Tenth Circuit has not determined whether there is a private right of action under Section 524(a)(2), it is clear the Court's equitable powers under Section 105(a) extend to decide claims "to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in 524(a)(2)." *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1306 (10th Cir. 2008) (citations omitted).[8] Thus, "Section 524(a)(2) operates as 'an equitable remedy precluding the creditor, on pain of contempt, from taking *any* actions to enforce the discharged debt.'" *Gray v. Nussbeck (In re Gray)*, 586 B.R. 347, 353 (Bankr. D. Kan. 2018) (quoting *Espinosa v. United States Aid Funds, Inc.*, 553 F.3d 1193, 1200 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010) (emphasis in original)).

To be held in contempt, a court must find (1) the party violated a specific and definite order; (2) the party had notice of the order; and (3) the party did in fact violate the order. *Lucre Mgmt. Grp., LLC v. Schempp Real Estate, LLC (In re Lucre Mgmt. Grp., LLC)*, 365 F. 3d 874, 875 (10th Cir. 2004). In order to prevail in a civil contempt proceeding, Plaintiffs' burden is high; they must prove the alleged violation by clear and convincing evidence. *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998).

The Court concludes Plaintiffs have stated a valid claim for contempt. The Discharge Order and the statutory bases for its issuance and enforcement (Sections 1328 and 524(a)(2)) are broad and unequivocal. *All* debts were discharged, except those enumerated in Section 1328(a). There is no such thing as a personalized discharge order addressed to each creditor in a given bankruptcy case. That neither party sought to determine the dischargeability of the Tuition Answer Loans until now does not alter whether or not the debts were discharged under Section 523(a)(8) at the time the Discharge Order was entered; thereafter they both proceeded at their own risk. Any ambiguity in the law, or uncertainty as to the injunction's applicability to the Tuition Answer Loans, is relevant to the inquiry as to whether any contempt violation, if proven, was willful. Accordingly, the Court will not dismiss the claim on that basis. Whether or not the evidence at trial will support the claim is a matter for another day.

---

[8] The Court rejects the notion Plaintiff's claim would need to be dismissed on procedural grounds for failure to file a motion for contempt in the main bankruptcy case, as that requirement would elevate form over substance. *See, e.g., Gray v. Nussbeck (In re Gray)*, 586 B.R. 347, n.19 (Bankr. D. Kan. 2018); *Montano v. First Light Fed. Credit Union (In re Montano)*, 398 B.R. 47, 55-56 (Bankr. D.N.M. 2008).

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

### B.    The Rule 12(f) Motion to Strike.

Rule 12(f) allows a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f); Fed.R.Bankr.P. 7012(b). But "[s]triking a portion of a pleading is a drastic remedy; the federal courts generally view motions to strike with disfavor and infrequently grant such requests." *Purzel Video GmbH v. Smoak*, 11 F.Supp.3d 1020, 1029 (D. Colo. 2014) (citing 5C Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1380 (3d ed. 2011)).

The purpose of Rule 12(f) "is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case." *Sierra Club v. Tri–State Generation & Transmission Ass'n,* 173 F.R.D. 275, 285 (D. Colo.1997) (citing *United States v. Smuggler–Durant Mining Corp.,* 823 F.Supp. 873, 875 (D. Colo.1993)).    Accordingly, courts deny motions to strike immaterial and impertinent matter "unless it can be shown that no evidence in support of the allegation[s] would be admissible." *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1085 (D. Colo. 1985) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). "Only allegations 'so unrelated to plaintiff's claims as to be unworthy of any consideration' should be stricken." *Id.* (quoting *EEOC v. Ford Motor Co.*, 529 F.Supp. 643, 644 (D. Colo. 1982)).    Further, "[i]rrelevant allegations will be stricken as scandalous only if they degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court." *Sierra Club*, 173 F.R.D. at 285 (citing *Nault's Auto. Sales v. American Honda Motor Co.,* 148 F.R.D. 25, 30 (D.N.H.1993) (further citation omitted)).

"Even where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike." *Sierra Club*, 173 F.R.D. at 285.    "Inappropriately hyperbolic allegations, ill-conceived attempts at levity, and other similar manifestations of bad judgment in drafting pleadings, by themselves, fall short of the threshold that Rule 12(f) contemplates." *Saylavee LLC v. Hockler,* 228 F.R.D. 425, 426 (D. Conn. 2005).

It is important to keep in mind Plaintiffs' allegations are made against a corporate entity in a matter that will be tried to the Court.    Although Plaintiffs' allegations in paragraphs 1 and 9 through 19 may be hyperbolic, they are not so unrelated to Plaintiffs' claims as to be unworthy of any consideration.    To the contrary, the allegations are relevant to Plaintiffs' claim for violation of the discharge injunction.    The Court, therefore, denies Navient's motion to strike the allegations.

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

## VI. CONCLUSION

For the reasons stated herein, the Court DENIES the Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6) and Motion to Strike Immaterial and Impertinent Matter Under Fed.R.Civ.P. 12(f) filed by Defendant Navient Solutions, LLC.

Dated: September 24, 2018.

BY THE COURT:

*Kimberley H. Tyson*

Kimberley H. Tyson
United States Bankruptcy Judge

USBC 73

## EXHIBIT B

**PETITION FOR DIRECT, INTERLOCUTORY
APPEAL TO THE TENTH CIRCUIT**

49046622.2

USBC 74

No. _____

### In the
# United States Court of Appeals
### For the Tenth Circuit

---

*In re* Byron Patterson McDaniel Jr. and Laura Paige McDaniel,

*Debtors.*

---

Byron Patterson McDaniel Jr. and Laura Paige McDaniel,

*Appellees-Plaintiffs,*

v.

Navient Solutions, LLC,

*Appellant-Defendant.*

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF COLORADO

---

**UNOPPOSED PETITION FOR DIRECT, INTERLOCUTORY APPEAL**

---

Eric E. Johnson
Sherman & Howard LLC
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Telephone: 303.297.2900

*Counsel for Appellant-Defendant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1, Appellant Navient Solutions, LLC discloses that the following entity owns 10% or more of its equity interests:

Navient Corporation

/s/ Eric E. Johnson
*Counsel for Appellant-Defendant*

i

USBC 76

**DISCLOSURE OF OPPONENTS' POSITION**

Pursuant to Local Rule 27.1, the undersigned counsel of record certifies that he has contacted counsel for the Appellees-Plaintiffs, who indicated that Appellees-Plaintiffs do not oppose the Tenth Circuit accepting this direct, interlocutory appeal (without prejudice to or waiver of their rights or arguments on the merits).

/s/ Eric E. Johnson
*Counsel for Appellants-Defendants*

USBC 77

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

DISCLOSURE OF OPPONENTS' POSITION ..................................................... ii

TABLE OF CONTENTS ................................................................................ iii

TABLE OF AUTHORITIES ........................................................................... v

SUMMARY OF ARGUMENT .......................................................................... 1

I.   BACKGROUND NECESSARY TO UNDERSTAND THE QUESTIONS
     PRESENTED ........................................................................................ 3

     A.   Appellees-Plaintiffs contend that they discharged their
          obligations to repay their private student loans in bankruptcy ............ 3

II.  LEGAL BACKGROUND NECESSARY FOR THE QUESTIONS PRESENTED ............. 7

     A.   Res judicata and Supreme Court precedent bar Plaintiffs'
          claims .......................................................................................... 7

     B.   Congress excepted student loans from discharge in
          bankruptcy .................................................................................... 9

III. THE BANKRUPTCY COURT'S DECISION BELOW ........................................ 13

     A.   The bankruptcy court denied Navient's motion to dismiss,
          which decision the parties agree is appropriate for direct,
          interlocutory appeal to this Court ................................................... 13

IV.  JURISDICTIONAL STATEMENT ............................................................... 14

V.   QUESTIONS PRESENTED ...................................................................... 15

VI.  RELIEF REQUESTED ............................................................................ 15

VII. REASONS THE APPEAL SHOULD BE ALLOWED .......................................... 15

     A.   The Court has jurisdiction to accept a direct, interlocutory
          appeal of the order ........................................................................ 15

     B.   The Court should accept a direct, interlocutory appeal of the
          order ............................................................................................ 17

          1.   The order involves questions of law on which no
               controlling precedent exists, resolution of conflicting
               decisions, and matters of public importance ............................. 18

          2.   Direct, immediate appeal of the order would materially
               advance the suit below and the public's interest ...................... 20

USBC 78

CONCLUSION .......................................................................................................21

CERTIFICATE OF COMPLIANCE ...............................................................................23

CERTIFICATE OF SERVICE........................................................................................24

     EX. A—ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE

     EX. B—JOINT CERTIFICATION FOR DIRECT, INTERLOCUTORY APPEAL

     EX. C—FIFTH CIRCUIT ORDER GRANTING MOTION FOR LEAVE TO APPEAL, *NAVIENT SOLUTIONS, LLC V. CROCKER*

     EX. D—TRANSCRIPT FROM HEARING ON MOTION FOR SUMMARY JUDGMENT, *CROCKER V. NAVIENT SOLUTIONS, LLC*

USBC 79

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accounts Mgmt. v. Vasa*,
   No. 14–40109, 2014 WL 6607512 (Bankr. D.S.D. Nov. 19, 2014)...................11

*Am. Airlines Fed. Credit Union v. Cardona*,
   No. 15–16365, 2015 WL 9459883 (Bankr. S.D. Fla. Dec. 23,
   2015) ........................................................................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................3

*Beesley v. Royal Bank of Canada*,
   No. 12–24194, 2013 WL 5134404 (Bankr. W.D. Pa. Sept. 13,
   2013) ........................................................................................................................11

*Benson v. Corbin*,
   506 B.R. 287 (Bankr. W.D. Wash. 2014)...........................................................11

*Brown v. CitiBank, N.A.*,
   539 B.R. 853 (Bankr. C.D. Cal. 2015) ...................................................10, 11, 19

*Brown v. Rust*,
   510 B.R. 562 (Bankr. E.D. Ky. 2014) ................................................................11

*Campbell v. Citibank, N.A.*,
   547 B.R. 49 (Bankr. E.D.N.Y. 2016) .....................................................11, 12, 19

*Carow v. Chase Loan Serv.*,
   No. 10–30264, 2011 WL 802847 (Bankr. D.N.D. Mar. 2, 2011) ......................11

*Chicago Patrolmen's Fed. Credit Union v. Daymon*,
   490 B.R. 331 (Bankr. N.D. Ill. 2013) .................................................................11

*Citizens Bank v. Decena*,
   549 B.R. 11 (Bankr. E.D.N.Y. 2016), *rev'd and remanded on other*
   *grounds*, 562 B.R. 202 (E.D.N.Y. 2016) ...........................................................12

v

USBC 80

*Crocker et al. v. Navient Solutions, LLC et al.,*
   No. 18–20254 (5th Cir.)...............................................................*passim*

*De la Rosa v. Kelly,*
   —B.R.—, No. 17–3320, 2018 WL 1474890 (Bankr. S.D. Tex.
   Mar. 23, 2018) ........................................................................11

*Desormes v. United States,*
   569 F. App'x 42 (2d Cir. 2014)............................................10, 11, 19

*Dufrane v. Navient Solutions, Inc.,*
   566 B.R. 28 (Bankr. C.D. Cal. 2017) ................................................12

*In re Essangui,*
   573 B.R. 614 (Bankr. D. Md. 2017).................................................12

*Ford v. Ford Motor Corp.,*
   574 F.3d 1279 (10th Cir. 2009) ......................................1, 14, 16, 18

*Ghadimi v. Ashai,*
   211 F. Supp. 3d 1215 (C.D. Cal. 2016)..............................................16

*Grogan v. Garner,*
   498 U.S. 279 (1991)....................................................................9

*Harwell v. Dalton,*
   298 F. App'x 733 (10th Cir. 2008)....................................................2

*Inst. Of Imaginal Studies v. Christoff,*
   527 B.R. 624 (B.A.P. 9th Cir. 2015) ................................................12

*Kashikar v. Turnstiel Capital Mgmt., LLC,*
   567 B.R. 160 (B.A.P. 9th Cir. 2017) ................................................12

*Liberty Bay Credit Union v. Belforte,*
   No. 10–22742, 2012 WL 4620987 (Bankr. D. Mass. Oct. 1, 2012) .................11

*London-Marble v. Sterling,*
   No. 06–274, 2008 WL 2705374 (D. Ariz. July 9, 2008)..........................11, 12

*Maas v. Northstar Educ. Fin., Inc.,*
   514 B.R. 866 (W.D. Mich. 2014) ....................................................11

vi

*MACTEC Inc. v. Gorelick*,
   427 F.3d 821 (10th Cir. 2005) ............................................................... 7

*McDaniel*,
   No. 17–1274, Dkt. No. 30
   (Bankr. D. Colo. Sept. 24, 2018) ..................................................... 12

*In re Meyer*,
   No. 15–13193, 2016 WL 3251622
   (Bankr. N.D. Ohio June 6, 2016) ..................................................... 12

*Micko v. Student Loan Fin. Corp.*,
   356 B.R. 210 (Bankr. D. Ariz. 2006) ......................................... 11, 12

*Nunez v. Key Educ. Res./GLESI*,
   527 B.R. 410 (Bankr. D. Or. 2015) ................................................. 12

*Nypaver v. Nypaver*,
   581 B.R. 431 (Bankr. W.D. Pa. 2018) ................................... 11, 12, 19

*Rabbi Harry H. Epstein School, Inc. v. Goldstein*,
   No. 11–81255, 2012 WL 7009707
   (Bankr. N.D. Ga. Nov. 26, 2012) ..................................................... 11

*Rizor v. Acapita Educ. Fin. Corp.*,
   553 B.R. 144 (Bankr. D. Alaska 2016) ............................................ 11

*Roy v. Sallie Mae, Inc.*,
   No. 08–33318, 2010 WL 1523996 (Bankr. D.N.J. Apr. 15, 2010) .................... 12

*Rumer v. Am. Educ. Servs.*,
   469 B.R. 553 (Bankr. M.D. Pa. 2012) .............................................. 11

*In re Schultz*,
   No. 16–3042, 2016 WL 8808073 (Bankr. D. Minn. Dec. 13, 2016) ................ 12

*Sensient Techs. Corp. v. Baiocchi*,
   389 B.R. 828 (Bankr. E.D. Wis. 2008) ..................................... 10, 12, 19

*Shaw v. EduCap, Inc.*,
   No. 08–30319, 2015 WL 1000213 (Bankr. S.D. Tex. Mar. 3, 2015) ............... 11

USBC 82

*Skipworth v. Citibank Student Loan Corp.*,
No. 09–83982, 2010 WL 1417964 (Bankr. N.D. Ala. Apr. 1, 2010)...............12

*Swenson v. Swenson*,
No. 16–10016, 2016 WL 4480719 (Bankr. W.D. Wis. Aug. 23,
2016) ........................................................................................................12

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010)......................................................................*passim*

*Wiley v. Wells Fargo Bank, N.A.*,
579 B.R. 1 (Bankr. D. Me. 2017) ....................................................12

*Woolsey v. Citibank, N.A.*,
696 F.3d 1266 (10th Cir. 2012) (Gorsuch, J.) ..................................16

**STATUTES**

11 U.S.C. § 523 .........................................................................*passim*

11 U.S.C. § 727, 1328 ..........................................................................9

11 U.S.C. § 1328 .................................................................................9

28 U.S.C. § 158 .................................................................1, 14, 16, 17, 20

28 U.S.C. § 1292 .......................................................................1, 14

**RULES**

Fed. R. App. P. 5 .................................................................................1

Fed. R. App. P. 6 .................................................................................1

Fed. R. Bankr. P. 8004 ........................................................................2

Fed. R. Bankr. P. 8006 ........................................................................2

Fed. R. Civ. P. 60 ...........................................................................8, 9

USBC 83

## SUMMARY OF ARGUMENT

This appeal presents two important questions about the discharge order entered at the conclusion of a bankruptcy case. First, must a Chapter 13 plan or the order confirming it contain an express finding on the dischargeability of student loans to operate as res judicata? And second, are private student loans excepted from discharge as "obligations to repay funds received as educational benefits" under § 523(a)(8)(A)(ii) of the Bankruptcy Code?

Appellant-Defendant Navient Solutions, LLC ("Navient") raised these issues in a motion to dismiss the adversary proceeding below. The bankruptcy court denied Navient's motion, concluding (1) that Plaintiffs' Chapter 13 plan did not contain an "explicit statement or determination as to the dischargeability of any of Plaintiffs' student loans[,]" so was not a final determination on the merits of that question, and (2) that private student loans are not excepted from discharge under § 523(a)(8)(A)(ii). *See* Ex. A at 8–15.

Navient seeks permission to appeal the bankruptcy court's order, attached as Exhibit A. This Court has jurisdiction and discretion to accept the appeal under 28 U.S.C. § 158 and the Federal Rules of Bankruptcy Procedure (as incorporated by the Federal Rules of Appellate Procedure). 28 U.S.C. § 158(a)(3), (d)(2)(A)(i), (iii); Fed. R. App. P. 5(a)(2), 6(c); Fed. R. Bankr. P. 8004(a), (e), 8006(e), (g). The parties

1

agree about the need for this Court's guidance, and therefore jointly certified the matter for direct, interlocutory appeal pursuant to 28 U.S.C. § 158(d)(2)(A). Ex. B.

This Court should accept the appeal. First, this Court has not spoken to the precise issue of whether the treatment of student loans in a confirmed Chapter 13 plan operates as res judicata as to the dischargeability of such loans—or whether an express finding as to dischargeability is required. It should do so now, particularly given that a question exists as to whether the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), controls the case. In that case, the Supreme Court held that a plan's treatment of student loans *does* operate as res judicata, but the bankruptcy court held that *Espinosa* is inapplicable here because it purportedly requires a level of "express finding" that the plan in this case lacks (and Plaintiffs claim that *Espinosa* is limited to federal loans).

Second, neither the Supreme Court nor this Court has considered whether private student loans are excepted from discharge under § 523(a)(8)(A)(ii) of the Bankruptcy Code. Other courts are split on the question. The majority, including the Second Circuit (in an unpublished decision) and the Western District of Michigan (in an appellate capacity), find that private student loans *are* excepted from discharge under § 523(a)(8)(A)(ii). The minority, including the bankruptcy court below, the Bankruptcy Appellate Panel for the Ninth Circuit, and the Bankruptcy

2

Court for the Eastern District of New York, do not.  Binding guidance from this
Court is thus needed.

Finally, direct, immediate review by this Court will materially advance the
case.  This petition presents gating questions that this Court has not previously
considered.  Judicial economy favors early appellate guidance, which will save the
bankruptcy court and the parties the considerable resources that discovery,
subsequent dispositive motions, and (possibly) trial will consume.  In addition, the
public interest also favors direct, interlocutory review by this Court.  Navient's
petition presents questions that arise with relative frequency in bankruptcy cases.
Early, authoritative guidance from this Court would thus benefit more than just the
parties here; it would benefit the public at large.

## I.  BACKGROUND NECESSARY TO UNDERSTAND THE QUESTIONS PRESENTED[1]

### A.  Appellees-Plaintiffs contend that they discharged their obligations to repay their private student loans in bankruptcy.

All facts necessary to resolve the questions presented are undisputed.
Between 2004 and July 2007, Plaintiffs borrowed over $100,000 in six Sallie Mae
Tuition Answer Loans (the "Educational Loans") for Laura Paige McDaniel to
attend Lakeland College.  Adversary Proceeding No. 17–1274, Dkt. No. 1 ¶¶ 20, 22,

---

[1] Because this appeal proceeds from the denial of Navient's motion to
dismiss, the following facts are taken from Plaintiffs' complaint, Plaintiff's
bankruptcy schedules, and documents of which the Court can take judicial notice.
*See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

25. 26 (Bankr. D. Colo. July 12, 2017) (the "AP"). Navient is the current servicer for Plaintiffs' Educational Loans.

In their promissory notes, Plaintiffs certified that "all of the loan proceeds are to pay expenses directly related to attending" Lakeland College. AP, Dkt. No. 1, Ex. B at 6, 31, 38. Plaintiffs also certified that they "must immediately repay any funds that [they] receive which cannot reasonably be attributed to meeting . . . educational expenses related to attendance at" Lakeland College. *Id.* at 6, 14, 31, 38.

Plaintiffs further agreed that any undisbursed funds obtained through the Educational Loans could be canceled if Ms. McDaniel "ceas[ed] to be enrolled at" Lakeland College." *Id.* at 5, 31, 37. And in at least one promissory note Plaintiffs certified that the relevant Educational Loan "is a qualified education loan as described in Section 221(d)(1) of the Internal Revenue Code of 1986 . . . and . . . therefore is not dischargeable in bankruptcy[.]" *Id.* at 14.

In December 2009, Plaintiffs filed a voluntary Chapter 13 bankruptcy petition in the U.S. Bankruptcy Court for the District of Colorado. *Id.* at ¶ 27. Plaintiffs listed eleven Navient loans in their bankruptcy schedules. Case No. 09–37480, Dkt. No. 1 at 31–33 (Bankr. D. Colo. Dec. 24, 2009) (the "Bankruptcy Case). In their schedules—which they signed under penalty of perjury— Plaintiffs labeled all of the Navient loans as "Educational." *Id.* Plaintiffs scheduled their obligations under all of their Educational Loans as non-contingent, liquidated, and undisputed. *Id.*

4

With their petition, Plaintiffs also filed their original Chapter 13 plan (the "Original Plan"). Bankruptcy Case, Dkt. No. 2 at 7. In their Original Plan, Plaintiffs indicated they had "no student loans," despite listing eleven "Educational" loans in Schedule F. *Id.* *Compare* Bankruptcy Case, Dkt. No. 1 at 31–33.

In January 2010, the Chapter 13 Trustee objected to confirmation of Plaintiffs' Original Plan because, among other things, it made "no provision for debtor's [*sic*] non-dischargeable student loan [*sic*]. 1322(b)(10) [*sic*]." Bankruptcy Case, Dkt. No. 12. Two months later, following a hearing, the bankruptcy court sustained the Chapter 13 Trustee's objection, denied confirmation of the Original Plan, and ordered Plaintiffs to file a new plan. Bankruptcy Case, Dkt. No. 18.

As the Court required, Plaintiffs filed their Amended Plan on April 1, 2010. Bankruptcy Case, Dkt. No. 25. Rather than omitting their Educational Loans as they did in their Original Plan, in the Amended Plan Plaintiffs indicated that they had "Student Loans." *Id.* at 6. Further, Plaintiffs expressly stated that their "student loans" would not be treated as "an unsecured Class Four claim," *id.*, thereby distinguishing their Educational Loans from their other dischargeable "Class Four" unsecured claims.

Next, far from seeking to discharge their Educational Loans, Plaintiffs drafted into their plan unique language providing that the Educational Loans would be "deferred until end of plan." *Id.* Nothing in the Amended Plan indicated that

5

Plaintiffs sought to discharge any portion of the Educational Loans. To the contrary, Plaintiffs expressly distinguished their Educational Loans from their other dischargeable Class Four unsecured claims.

The Amended Plan also provided that Debtors would make collective payments to all unsecured creditors, including Navient, totaling $40,134.10 during the five-year plan period. *Id.* at 6. Thus, the Amended Plan provided that all student-loan creditors would receive their *pro rata* share of plan payments as unsecured creditors during the plan payment period, deferring all other amounts to be paid under the terms of the respective non-discharged loans until the "end of plan," at which time those loans would be paid in full according to their terms. *Id.* at 6, ¶ IV.D.2.a.

The same day that they filed it, April 1, 2010, Plaintiffs served on Navient a copy of the Amended Plan. Bankruptcy Case, Dkt. No. 26. On May 4, 2010, the bankruptcy court entered its order confirming the Amended Plan (the "Confirmation Order"). Bankruptcy Case, Dkt. No. 32. Plaintiffs allege they paid Navient $26,782 as its share of the $40,134.10 total paid to unsecured creditors during the five-year payment period under the Amended Plan. AP. Dkt. No. 1 ¶ 28.

Five years after confirmation, Plaintiffs certified to the Court that they completed all plan payments and requested a discharge. Bankruptcy Case, Dkt. No. 53. The bankruptcy court issued its general discharge order (the "Discharge Order")

6

on March 3, 2015. Bankruptcy Case, Dkt. No. 54. The Discharge Order states that among the "[d]ebts that are not [d]ischarged" are "[d]ebts for most student loans." *Id.* at 2.

For two years following their discharge from their other unsecured claims, Plaintiffs allege they continued to make monthly payments to Navient on their Educational Loans, totaling $37,460. AP, Dkt. No. 1 ¶ 33. But in June 2017, more than two years after the discharge of their other claims, more than seven years after they confirmed their Amended Plan, and nearly eight years after they filed for bankruptcy listing eleven "Educational" loans as undisputed debts—all the while remaining silent about any intent to seek to discharge their Educational Loans— Plaintiffs sued Navient, contending that their Educational Loans are dischargeable and were discharged by the general Discharge Order. *Id.* ¶¶ 35-41.

## II. LEGAL BACKGROUND NECESSARY FOR THE QUESTIONS PRESENTED

### A. Res judicata and Supreme Court precedent bar Plaintiffs' claims.

"Claim preclusion [res judicata] applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *MACTEC Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). If a party demonstrates these elements, "res judicata is appropriate unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit." *Id.*

7

The Supreme Court considered these principles in the Chapter 13 bankruptcy context in *Espinosa*. There, a debtor filed a Chapter 13 plan that proposed to (impermissibly) discharge a portion of his student loan debt. 559 U.S. at 268–69. Although the debtor did not initiate the required adversary proceeding to obtain a dischargeability determination, the court confirmed his plan. *Id.* Before confirmation, the lender didn't object to the proposed discharge of part of the debtor's student loan. *Id.* at 265.

Years later, the lender sought to collect on its student loan. The debtor resisted on the basis of his confirmed plan. The lender sought to set aside the confirmation order as void under Federal Rule of Civil Procedure 60(b)(4) because, the creditor argued, the order violated the Bankruptcy Code and Rules due to the debtor's failure to commence an adversary proceeding and obtain a determination of dischargeability. *Id.*

The Supreme Court first held that "a Chapter 13 plan that proposes to discharge a student loan debt without [a dischargeability determination] violates §§ 1328(a)(2) and 523(a)(8)." *Id.* at 276. "Failure to comply with this self-executing requirement[,]" the Court went on, "should prevent confirmation of the plan even if the creditor fails to object, or to appear in the proceeding at all." *Id.* at 276–77. The Court then admonished the bankruptcy court that "to comply with § 523(a)(8)'s directive, [it] must make an independent determination of [dischargeability] before

8

a plan is confirmed, even if the creditor fails to object or appear in the adversary proceeding." *Id.* at 277–78 (internal quotations and citations omitted).

The Court also held, however, that the lender's failure to object to confirmation or to take proper action required by Federal Rule of Civil Procedure 60 precluded relief from the bankruptcy court's improper confirmation order. It wrote that, "[g]iven the [Bankruptcy] Code's clear and self-executing requirement for [a dischargeability determination before a student loan debt can be discharged], the Bankruptcy Court's failure to make a [dischargeability determination] before confirming Espinosa's plan was a legal error." *Id.* at 275. "But[,]" the Court went on, "the order remains enforceable and binding on [the lender] because [the lender] had notice of the error and failed to object or timely appeal." *Id.* at 275 (internal citation omitted). In other words, *Espinosa* held that where a plan addresses dischargeability of student loans, it operates as res judicata even if the parties and the bankruptcy court did not undertake a separate adversary proceeding before making a dischargeability determination.

## B.    Congress excepted student loans from discharge in bankruptcy.

When a debtor completes his or her bankruptcy case, the court issues an order discharging the debtor from liability on properly scheduled debts. *See, e.g.*, 11 U.S.C. §§ 727, 1328. That statutory right is qualified. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) ("We have previously held that a debtor has no constitutional

9

or 'fundamental' right to a discharge in bankruptcy."). Specifically, Congress has

excepted certain categories of debts from discharge in bankruptcy. *Id.*; 11 U.S.C.

§ 523. Chief among them are debts for student loans. 11 U.S.C. § 523(a)(8).

Specifically, § 523(a)(8) of the Bankruptcy Code provides that a discharge

does not apply to:

> (A)(i)   an educational benefit overpayment or loan made,
> insured, or guaranteed by a governmental unit, or
> made under any program funded in whole or in
> part by a governmental unit or nonprofit
> institution; or
>
> (A)(ii)  an obligation to repay funds received as an
> educational benefit, scholarship, or stipend; or
>
> (B)      any other educational loan that is a qualified
> education loan, as defined in section 221(d)(1) of
> the Internal Revenue Code of 1986, incurred by a
> debtor who is an individual[.]

11 U.S.C. § 523(a)(8).[2] Congress most recently revised § 523(a)(8) in April 2005,

when it passed the Bankruptcy Abuse Prevention and Consumer Protection Act

("BAPCPA") amendments to the Bankruptcy Code. Pub. L. No. 109–08, § 220, 119

Stat. 23, 59 (Apr. 20, 2005).

Since the enactment of the BAPCPA amendments, a majority of courts have

concluded that private student loans are excepted from discharge as "obligations to

---

[2]  This exception to discharge does not apply if it would cause an "undue
hardship on the debtor and the debtor's dependents[.]"  11 U.S.C.  § 523(a)(8).
Plaintiffs have not alleged undue hardship in this case.

USBC 93

repay funds received as educational benefits" under § 523(a)(8)(A)(ii). *See, e.g.,*

*Desormes v. United States*, 569 F. App'x 42, 43 (2d Cir. 2014); *Brown v. CitiBank,*

*N.A.*, 539 B.R. 853, 857–59 (Bankr. C.D. Cal. 2015); *Sensient Techs. Corp. v.*

*Baiocchi*, 389 B.R. 828, 829–32 (Bankr. E.D. Wis. 2008).[3] A number of decisions

from other bankruptcy courts, however, have concluded that § 523(a)(8)(A)(ii) does

not encompass obligations to repay private student loans. *See, e.g., Nypaver v.*

*Nypaver*, 581 B.R. 431 (Bankr. W.D. Pa. 2018) and *Campbell v. Citibank, N.A.*, 547

B.R. 49 (Bankr. E.D.N.Y. 2016).

Approximately twenty decisions have adopted the legal position that Navient

advocates here.[4] And approximately fifteen decisions, including the bankruptcy

---

[3] A 2008 decision from the District of Arizona concluded that private student loans were not excepted from discharge under the pre-BAPCPA version of § 523(a)(8), and thus does not apply here. *London-Marble v. Sterling*, No. 06–274, 2008 WL 2705374, at *3–4 (D. Ariz. July 9, 2008). Further, *London-Marble* diverged from the earlier finding in *Micko v. Student Loan Fin. Corp.* that student loans are excepted from discharge. 356 B.R. 210, 213–17 (Bankr. D. Ariz. 2006). *Micko* also applied the pre-BAPCPA version of § 523(a)(8), but it analyzed the amended language at length in doing so.

[4] *See, e.g., Desormes*, 569 F. App'x 42 (2d Cir. 2014); *Maas v. Northstar Educ. Fin., Inc.*, 514 B.R. 866 (W.D. Mich. 2014) (sitting in an appellate capacity); *De la Rosa v. Kelly*, —B.R.—, No. 17–3320, 2018 WL 1474890, at *3–7 (Bankr. S.D. Tex. Mar. 23, 2018) *Rizor v. Acapita Educ. Fin. Corp.*, 553 B.R. 144 (Bankr. D. Alaska 2016); *Shaw v. EduCap, Inc.*, No. 08–30319, 2015 WL 1000213, at *2–3 (Bankr. S.D. Tex. Mar. 3, 2015); *Am. Airlines Fed. Credit Union v. Cardona*, No. 15–16365, 2015 WL 9459883 (Bankr. S.D. Fla. Dec. 23, 2015); *Brown*, 539 B.R. at 853; *Brown v. Rust*, 510 B.R. 562 (Bankr. E.D. Ky. 2014); *Benson v. Corbin*, 506 B.R. 287 (Bankr. W.D. Wash. 2014); *Accounts Mgmt. v. Vasa*, No. 14–40109, 2014 WL 6607512 (Bankr. D.S.D. Nov. 19, 2014); *Beesley v. Royal Bank of Canada*, No.

11

court below, have adopted the legal position asserted by Plaintiffs.[5]  The question is

now before the Fifth Circuit on direct, interlocutory appeal.  *Crocker et al. v. Navient*

*Solutions, LLC et al.*, No. 18–20254 (5th Cir.).  That appeal is fully briefed and

awaiting calendaring of oral argument, if any, and resolution.

---

12–24194, 2013 WL 5134404 (Bankr. W.D. Pa. Sept. 13, 2013); *Chicago Patrolmen's Fed. Credit Union v. Daymon*, 490 B.R. 331 (Bankr. N.D. Ill. 2013); *Rumer v. Am. Educ. Servs.*, 469 B.R. 553 (Bankr. M.D. Pa. 2012); *Liberty Bay Credit Union v. Belforte*, No. 10–22742, 2012 WL 4620987 (Bankr. D. Mass. Oct. 1, 2012); *Rabbi Harry H. Epstein School, Inc. v. Goldstein*, No. 11–81255, 2012 WL 7009707 (Bankr. N.D. Ga. Nov. 26, 2012); *Carow v. Chase Loan Serv.*, No. 10–30264, 2011 WL 802847 (Bankr. D.N.D. Mar. 2, 2011); *Skipworth v. Citibank Student Loan Corp.*, No. 09–83982, 2010 WL 1417964 (Bankr. N.D. Ala. Apr. 1, 2010); *Roy v. Sallie Mae, Inc.*, No. 08–33318, 2010 WL 1523996 (Bankr. D.N.J. Apr. 15, 2010); *Baiocchi*, 389 B.R. at 828; *Micko*, 356 B.R. at 216 (discussing BAPCPA amendment, but applying pre-BAPCPA statute).

[5]  *See, e.g., McDaniel*, No. 17–1274, Dkt. No. 30 (Bankr. D. Colo. Sept. 24, 2018); *Kashikar v. Turnstiel Capital Mgmt., LLC*, 567 B.R. 160 (B.A.P. 9th Cir. 2017); *Inst. Of Imaginal Studies v. Christoff*, 527 B.R. 624 (B.A.P. 9th Cir. 2015); *Crocker*, Ex. A; *Nypaver*, 481 B.R. at 431; *Wiley v. Wells Fargo Bank, N.A.*, 579 B.R. 1 (Bankr. D. Me. 2017); *In re Essangui*, 573 B.R. 614 (Bankr. D. Md. 2017); *Dufrane v. Navient Solutions, Inc.*, 566 B.R. 28 (Bankr. C.D. Cal. 2017); *In re Schultz*, No. 16–3042, 2016 WL 8808073 (Bankr. D. Minn. Dec. 13, 2016) (interlocutory ruling not reduced to order, which is now a nullity because the case settled); *Campbell*, 547 B.R. at 28; *Citizens Bank v. Decena*, 549 B.R. 11 (Bankr. E.D.N.Y. 2016), *rev'd and remanded on other grounds*, 562 B.R. 202 (E.D.N.Y. 2016); *In re Meyer*, No. 15–13193, 2016 WL 3251622 (Bankr. N.D. Ohio June 6, 2016); *Swenson v. Swenson*, No. 16–10016, 2016 WL 4480719 (Bankr. W.D. Wis. Aug. 23, 2016); *Nunez v. Key Educ. Res./GLESI*, 527 B.R. 410 (Bankr. D. Or. 2015); *London-Marble*, 2008 WL 2705374 at *3–4 (applying pre-BAPCPA statute).

## III.   THE BANKRUPTCY COURT'S DECISION BELOW

### A.   The bankruptcy court denied Navient's motion to dismiss, which decision the parties agree is appropriate for direct, interlocutory appeal to this Court.

Navient moved to dismiss Plaintiffs' claims on October 10, 2017.  The motion asserted two arguments.  First, that principles of res judicata bar Plaintiffs' claims, as the treatment of their Educational Loans in their Chapter 13 plan was litigated to final determination—i.e., that the Loans would *not* be discharged, but would be "deferred until end of plan."  And second, that Plaintiffs' student loans were excepted from discharge as "obligations to repay funds received as educational benefits" under § 523(a)(8)(A)(ii).  The bankruptcy court heard the motion on March 20, 2018 and denied it roughly six months later.  *See* Exs. A, C.

On res judicata, the bankruptcy court noted that Plaintiffs' Amended Plan "is final and binds Plaintiffs and all of their creditors, including" Navient.  Ex. A. at 8.  But res judicata does not bar Plaintiffs' claims here, the court reasoned, because the Amended Plan "did not specify one way or the other whether [Plaintiffs' Educational Loans] were—or were not—discharged."  *Id.*  More to the point, the bankruptcy court emphasized that the Amended Plan does not state whether Plaintiffs' Educational Loans were non-dischargeable.  *Id.*  And the court distinguished *Espinosa* on that basis.  *Id.* at 9.  In so doing, the court ignored that it had sustained the trustee's objection and ruled that the Educational Loans were non-dischargeable,

13

USBC 96

which resulted in the filing and confirmation of the Amended Plan treating the loans as non-dischargeable.

On dischargeability, the bankruptcy court adopted the minority position by interpreting § 523(a)(8)(A)(ii) to exclude private loans. *Id.* Among other things, the bankruptcy court focused on the use of the phrase "obligation to repay funds" in § 523(a)(8)(A)(ii), as opposed to the use of the term "loan" in § 523(a)(8)(A)(i) and (B). *Id.* The bankruptcy court also focused on the use of the phrase "received *as* educational benefits" in § 523(a)(8)(A)(ii), which the court found "sets an educational benefit apart from a loan, and excepts from discharge a category of obligations in Section 523(a)(8)(A)(ii) that does not include loans but rather, 'educational benefit[s]', 'scholarships', and 'stipends.'" *Id.* at 11.

## IV. JURISDICTIONAL STATEMENT

As discussed more fully below, this Court has jurisdiction to hear a direct appeal from an interlocutory order if the parties acting jointly certify: (1) the order involves a question for which no controlling circuit court or Supreme Court precedent exists, or a matter of public importance; (2) the order involves a legal question requiring resolution of conflicting decisions; or (3) an immediate appeal may materially advance the case. 28 U.S.C. § 158(a)(3), (d)(2)(A). *See, e.g., Ford*, 574 F.3d at 1281–82.

USBC 97

The parties agree that this matter satisfies all three conditions for direct, interlocutory appeal, and therefore made such a certification. This Court thus has jurisdiction under 28 U.S.C. § 158(d)(2)(A).

## V. QUESTIONS PRESENTED

Navient's appeal will present the following legal questions:

1.     Did the bankruptcy court err in denying NSL's motion to dismiss on res judicata grounds?

2.     Did the bankruptcy err in concluding that private student loans are not excepted from discharge as "obligations to repay funds received as educational benefits" under § 523(a)(8)(A)(ii) of the Bankruptcy Code?

## VI. RELIEF REQUESTED

Navient will ask this Court to (a) reverse the bankruptcy court's order denying its motion to dismiss, (b) hold that Plaintiffs' claims are barred by principles of res judicata under *Espinosa* and its progeny, (c) hold, in the alternative, that private student loans are excepted from discharge as "obligations to repay funds received as educational benefits" under § 523(a)(8)(A)(ii) of the Bankruptcy Code, and (d) remand the case for dismissal of the adversary proceeding with prejudice.

USBC 98

## VII.  REASONS THE APPEAL SHOULD BE ALLOWED

### A.  The Court has jurisdiction to accept a direct, interlocutory appeal of the order.

Before the BAPCPA amendments, no direct route of appeal from the bankruptcy court to the circuit court existed. Instead, a party appealed first to the district court or bankruptcy appellate panel and then to the circuit court if needed. Two flaws plagued this structure. First, the extra layer of review brought attendant expense. Second, decisions by a district court or bankruptcy appellate panel are generally not binding and lack *stare decisis* value. *See, e.g., Ghadimi v. Ashai*, 211 F. Supp. 3d 1215, 1220–21 (C.D. Cal. 2016). Further, the first problem compounded the second: the cost of proceeding through two layers of review meant that many appeals stopped at the district court or bankruptcy appellate panel.

For these reasons, Congress provided fast-track access to the circuit courts of appeals in the BAPCPA amendments. 28 U.S.C. § 158(d). *See, e.g., Ford*, 574 F.3d at 1281–82; *see also Woolsey v. Citibank, N.A.*, 696 F.3d 1266, 1268 (10th Cir. 2012) (Gorsuch, J.) (discussing direct, interlocutory appeals). Now, the parties acting jointly may certify matters for direct appeal to the circuit courts where the following circumstances exist:

> i.  the judgment, order or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

16

      ii.      the judgment, order or decree involves a question of law requiring resolution of conflicting decisions; or

      iii.     an immediate appeal from the judgment, order or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A).[6]   The parties agree that all three bases for direct, interlocutory appeal exist here, giving the Court jurisdiction to accept a direct, interlocutory appeal of the bankruptcy court's order.

**B.**    **The Court should accept a direct, interlocutory appeal of the order.**

As discussed more fully below, the Court should accept a direct, interlocutory appeal of the bankruptcy court's order because it: (a) involves questions of law for which no controlling precedent exists and matters of public importance; (b) involves resolutions of conflicting decisions; and (c) will materially advance the litigation below.  Among other things, the Court can provide guidance on whether a Chapter 13 plan must contain an explicit finding of non-dischargeability to operate as res judicata.  The Court can also provide guidance for a question of broad concern on which other courts are split: the non-dischargeability of private student loans in bankruptcy.  These issues are not fact-intensive.  Finally, direct, immediate appeal will materially advance the litigation below: it will conserve the bankruptcy court's and the parties' resources by authoritatively ruling on threshold issues that will

---

[6] The Court's acceptance of a direct appeal satisfies the requirement that Navient obtain leave to appeal an interlocutory order.  Fed. R. Bankr. P. 8004(e).

USBC 100

entirely dispose of the case if Navient prevails. *See, e.g., Ford*, 574 F.3d at 1281–82 (accepting direct, interlocutory appeal).

> **1.    *The order involves questions of law on which no controlling precedent exists, resolution of conflicting decisions, and matters of public importance.***

This Court has not spoken to whether a Chapter 13 plan must contain an explicit finding of non-dischargeability to operate as res judicata. The bankruptcy court concluded that it must—even where the issue is litigated prior to confirmation of the plan and the plan is amended to comport with the bankruptcy court's ruling on a trustee's objection that the plan could not be confirmed until it provided appropriate treatment for Plaintiffs' non-dischargeable loans. The parties dispute the extent to which the Supreme Court's *Espinosa* decision controls this question. Navient asserts that, under *Espinosa*: (1) if a debtor wishes to discharge student loans in a Chapter 13 plan, he or she must seek and obtain a dischargeability order before or as a precondition of plan confirmation; and (2) the treatment of student loans in a confirmed chapter 13 plan binds the debtors and creditors—even if the parties and the bankruptcy court do not undertake a separate adversary proceeding on dischargeability before confirming the plan. Plaintiffs, on the other hand, argue that the Supreme Court in *Espinosa* "never held (or even addressed) that the question of dischargeability was *res judicata*[,]" and that its decision was limited to "federally insured loans" in any event. Dkt. No. 10 at 7, 10 n.23.

18

Further, neither this Court nor the Supreme Court has determined whether private student loans are excepted from discharge as "obligations to repay funds received as educational benefits" under § 523(a)(8)(A)(ii) of the Bankruptcy Code. Other courts are split. Since the passage of the BAPCPA amendments, a majority of courts have held that private student loans are excepted from discharge under § 523(a)(8)(A)(ii). *See, e.g.*, *Desormes*, 569 F. App'x at 43; *Brown*, 539 B.R. at 857–59; *Baiocchi*, 389 B.R. at 829–32. But a number of other bankruptcy decisions—including by the bankruptcy court below—have found that § 523(a)(8)(A)(ii) does not encompass obligations to repay private student loans. *See, e.g.*, *Nypaver*, 581 B.R. at 431 and *Campbell*, 547 B.R. at 49. The only decision from a circuit court of appeals—the Second Circuit's *Desormes* opinion, which adopted the majority position—is unpublished.[7]

Finally, both issues involve matters of public concern. The first, res judicata, addresses the extent to which public documents approved by a court bind debtors and creditors in a bankruptcy case. It also addresses the extent to which Supreme Court precedent controls that question. And the second, the dischargeability of student loans, addresses a question that arises with relative frequency in bankruptcy cases and similarly affects debtors and creditors alike.

---

[7] The Fifth Circuit accepted a direct, interlocutory appeal to resolve whether § 523(a)(8)(A)(ii) encompasses private student loans. *Crocker et al. v. Navient Solutions, LLC et al.*, No. 18–20254 (5th Cir.). This Court should do the same.

USBC 102

## 2. Direct, immediate appeal of the order would materially advance the suit below and the public's interest.

When the bankruptcy court denied Navient's motion to dismiss, it made threshold findings about the viability of Plaintiffs' claims and causes of action. Those findings concern questions that this Court does not appear to have previously considered. Because Navient has other fact-intensive defenses available to Plaintiffs' claims, economy favors appellate review of the bankruptcy court's ruling on its motion to dismiss before the parties engage in potentially unnecessary, expensive, and disruptive discovery—not to mention motions practice and trial.

The public also has an interest in prompt, conclusive guidance from the Tenth Circuit. The questions that Navient's motion presented concern the treatment of student loans in bankruptcy. How the Tenth Circuit resolves them will affect numerous parties—both debtors and creditors—throughout the Circuit. As with the parties, the public at large has an interest in a speedy answer to pressing questions of the treatment of student loans in bankruptcy that garner significant media attention and affect many debtors in this Circuit and around the country.

Faced with questions similar to those at issue here, the Fifth Circuit accepted a direct, interlocutory appeal from the U.S. Bankruptcy Court for the Southern District of Texas. *Navient Solutions, LLC v. Crocker*, No. 18-90016 (5th Cir. April 25, 2018) (copy attached hereto as Exhibit C). The bankruptcy court in that case *sua sponte* certified under 28 U.S.C. § 158(d) its resolution of a motion for summary

judgment raising the same 11 U.S.C. § 523(a)(8)(A)(ii) issues as in this case because that would be the "most efficient way" of obtaining conclusive appellate review of dispositive, gating questions. *See Haas a/k/a Crocker v. Navient, Inc.*, Adv. Case No. 16-03175, Dkt. No. 197 at 12 (Bankr. S.D. Tex. March 5 2018) (copy attached as Ex. D hereto). Further to this point, given the uncertainty and divided opinions on the legal questions, the bankruptcy court in *Crocker* noted that it did not "want to go through a long, drawn out, complicated . . . hearing if [it] turn[ed] out to be wrong on" the potentially dispositive legal questions. *Id.* And, in addition to serving the interests of the parties and the court, certification would serve the greater public interest, given that "the issue regarding the statutory interpretation question [i.e., whether § 523(a)(8)(A)(ii) encompasses private student loans] . . . comes up a lot." *Id.* The matter is now fully briefed and under advisement by the Fifth Circuit.

**CONCLUSION**

For the reasons described above, the Court should accept this matter for direct, interlocutory appeal under 28 U.S.C. § 158(d)(2).

*[Signature follows on next page.]*

USBC 104

Dated: October 9, 2018                   Respectfully submitted,

                                           */s/ Eric E. Johnson*

                                           Eric E. Johnson
                                           633 Seventeenth Street, Suite 3000
                                           Denver, Colorado 80202
                                           Telephone: 303.297.2900
                                           E-Mail: ejohnson@shermanhoward.com

                                           *Counsel for Appellant*

USBC 105

### CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because:

- It contains 5,178 words.

- I relied on my word processor to obtain the count and it is Word Version 2010.

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E) because:

- It has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.


Dated:  October 9, 2018.

/s/ *Eric E. Johnson*
*Counsel for Appellant*

USBC 106

## CERTIFICATIONS

1.    I hereby certify all required privacy redactions have been made.

2.    I hereby certify that the hard paper copies of this brief which are being submitted to the Court are exact copies of the PDF version of this brief which was filed electronically via the Court's ECF system.

3.    I hereby certify that a copy of the **foregoing UNOPPOSED PETITION FOR DIRECT, INTERLOCUTORY APPEAL**, as submitted in Digital Form via the court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the most recent version of a commercial virus scanning program (Kaspersky Security for Virtualization 3.0 Light Agent Service Pack 1), updated October 9, 2018), and according to the program are free of viruses.

Dated:  October 9, 2018.

*/s/ Eric E. Johnson*
*Counsel for Appellant*

USBC 107

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2018, I electronically filed the foregoing

Petition with the Clerk of this Court using the CM/ECF System, which will send a

notification of electronic filing to all counsel of record who are registered CM/ECF

users, and that I served a copy on counsel for Appellees-Plaintiffs by email and U.S.

Mail, as follows:

Austin Smith,
Smith Law Group
3 Mitchell Place
New York, New York 10017
Austin@acsmithlawgroup.com

/s/ *Eric E. Johnson*
*Counsel for Appellant*

USBC 108

## Ex. A

**ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE**

USBC 109

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>BYRON PATTERSON McDANIEL JR.<br>and LAURA PAIGE McDANIEL,<br><br>    Debtors. | Case No. 09-37480 KHT<br><br>Chapter 13 |
| BYRON PATTERSON McDANIEL JR.<br>and LAURA PAIGE McDANIEL,<br><br>    Plaintiff,<br><br>v.<br><br>NAVIENT SOLUTIONS, LLC,<br><br>    Defendant. | Adversary No. 17-01274 KHT |

## ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE

THIS MATTER comes before the Court on a Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6) and Motion to Strike Immaterial and Impertinent Matter Under Fed.R.Civ.P. 12(f) (the "Motion") (Docket #8) filed by Defendant Navient Solutions, LLC ("Navient"), the Response (Docket #10) filed by Debtors Byron Patterson McDaniel Jr. and Laura Paige McDaniel (together, "Plaintiffs" or "Debtors"), and Navient's Reply (Docket #14). The Court heard oral argument on March 20, 2018 and has considered the pleadings, arguments, and supplemental authorities submitted. For the reasons stated herein, the Court denies the Motion.

## I.    JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Navient consents to entry of final orders or judgments of the Bankruptcy Court in this matter.

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

## II.    BACKGROUND

On December 24, 2009, Plaintiffs filed a voluntary Chapter 13 case and plan, using the standard form (Case No. 09-37480, Docket #2).

In their bankruptcy schedules, Plaintiffs listed debts to "Sallie Mae," described as "educational," and they also listed debts to "Great Lakes." (Case No. 09-37480, Docket #1).   Nevertheless, Plaintiffs did not check the box in Section V.E. of the plan indicating they had student loans.  The Chapter 13 Trustee objected to the plan on several grounds, including the plan "ma[de] no provision for debtor's non-dischargeable student loan." Case No. 09-37480, Docket #12.

On April 1, 2010, Plaintiffs filed an amended Chapter 13 plan (the "Plan"). This time, Plaintiffs indicated in Section V.E. of the Plan they had student loans and proposed to treat them "as an unsecured Class Four claim or as follows: deferred until end of plan." Case No. 09-37480, Docket #25.  The Court confirmed the Plan on May 4, 2010.  Case No. 09-37480, Docket #32.

A total of nine proofs of claim were filed by Sallie Mae entities and Great Lakes Higher Education Corp.  Case No. 09-37480, Claims Register.  The Great Lakes claims (Proofs of Claim Nos. 6 and 7) were subsequently assigned to Educational Credit Management Corp. and are based upon Federal Stafford Loans.  At least five of the Sallie Mae claims (Proofs of Claim Nos. 25 through 29) were filed by or on behalf of Navient.

The Court entered an Order for Discharge of Plaintiffs on March 3, 2015, granting them a discharge under section 1328(a) of Title 11, United States Code ("Discharge Order").  Case No. 09-37480, Docket #54.

On June 30, 2017, the Court granted Plaintiffs' motion to reopen their Chapter 13 case.  Thereafter, Plaintiffs filed this adversary proceeding against Navient, requesting a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Bankr.P. 7001(9) that certain "Tuition Answer Loans" held by Navient are not excepted from discharge under 11 U.S.C. § 523(a)(8) and were, therefore, discharged upon entry of the Discharge Order.  They also seek damages for alleged willful violations of the discharge injunction by Navient pursuant to 11 U.S.C. §§ 105 and 524.

## III.    PLAINTIFFS' CLAIMS

The Complaint contains general allegations concerning the history of changes to 11 U.S.C. § 523(a)(8) and Navient's alleged efforts to deceive "student debtors and subvert the orderly working of the bankruptcy courts . . . [by] originating

2

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

and servicing dischargeable consumer loans and disguising them as non-dischargeable student loans." Complaint, ¶1. Navient seeks to strike many of these general allegations.

Plaintiffs allege Section 523(a)(8)[1], as originally enacted in 1978, prohibited discharge of federal student loans during the first five years of repayment absent undue hardship but "[t]hrough a series of amendments, which first lengthened and then eliminated the five-year non-dischargeability time frame, it has become increasingly difficult for debtors to attain discharges of their student loan debts." Complaint, ¶9. Prior to BAPCPA[2], Section 523(a)(8) was "easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of 'undue hardship.' [However, t]his fueled the belief that all student loans are non-dischargeable." Complaint, ¶13.

In 2005, the enactment of BAPCPA afforded *limited* protection to some private educational loan products "to the extent that such [lending] supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools solely for tuition, room, board, and books ('Qualified Education Loans')." Complaint, ¶11.

Plaintiffs allege Navient (formerly known as Sallie Mae or SLM Corporation) was not satisfied with the loan origination volume and restrictions associated with Qualified Educational Loans. Complaint, ¶12. Therefore, Navient created new loan products that are in essence dischargeable consumer loans, deceiving student borrowers by representing to them that "the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose." Complaint, ¶16 and ¶12.[3]

The problem was made worse because Section 523(a)(8) is self-executing, and "thus its correct application relies on the good faith and honesty of creditors." Complaint, ¶14. "Importantly, the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including 'debts for most student loans.'" *Id.*

---

[1] All Sections referred to herein are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

[2] Bankruptcy Abuse and Consumer Protection Act, Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereafter, "BAPCPA").

[3] While Navient was marketing these new loan products to student borrowers, Navient was also attempting to securitize the new loan products for sale on the secondary market. Plaintiffs allege to avoid securities violations, Navient disclosed to its potential (sophisticated) investors in student loan asset-backed securities prospectuses that "pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge." Complaint, ¶19.

USBC 112

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

Plaintiffs assert a creditor has the burden to prove its debt is encompassed by Section 523(a)(8) and is presumptively nondischargeable, then the burden shifts to the debtor to show undue hardship. Complaint, ¶15. "Absent an adversary proceeding, any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of law discharged upon entry of the discharge order. Accordingly, it is left to the creditors to determine whether their particular educational loan is excepted from discharge by Section 523(a)(8) and, where confusion exists, seek clarity from the court. The creditor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions." *Id*.

In the Complaint, Plaintiffs also make specific allegations regarding the Tuition Answer Loans held by Navient. Plaintiffs allege the Tuition Answer Program is a direct-to-consumer loan product outside the confines of the financial aid office and in excess of the school's published "Cost of Attendance" ("COA"). Complaint, ¶17. From 2004-2007, Plaintiffs borrowed $107,467 in six (6) Sallie Mae Tuition Answer Loans. Complaint, ¶20. The total balance of these Tuition Answer Loans is now $245,264, "despite consistent monthly payments of more than $2,000 for several years." Complaint, ¶21.

Plaintiff Laura Paige McDaniel attended Lakeland College from 2004 to 2007. Complaint, ¶22. Her COA for qualified tuition and related expenses for each year was: $5,340 in 2004, $10,650 in 2005, $6,450 in 2006, and $6,390 in 2007, as reflected on Tuition Statements issued by Lakeland College to Ms. McDaniel attached to the Complaint as Exhibit A. Complaint, ¶23. Ms. McDaniel borrowed the COA in the form of federal student loans, as reflected on Federal Stafford Loan documentation attached to the Complaint as Exhibit C. Complaint, ¶24.

Plaintiffs borrowed an additional $107,467 through the Tuition Answer Loans, "made outside the financial aid office and [not] for qualified education expenses." Complaint, ¶25. Attached as Exhibit B to the Complaint are copies of loan applications and promissory notes for the Tuition Answer Loans. *Id*. The Tuition Answer Loans were not made solely for the COA and accordingly, were not "qualified education loans" as defined in Section § 523(a)(8)(B). Complaint, ¶26.[4]

Debtors listed the Tuition Answer Loans on their Bankruptcy Schedule F. Complaint, ¶27. Debtors made payments totaling $26,782 on the Tuition Answer Loans during their Chapter 13 bankruptcy case. Complaint, ¶28.

---

[4] The Court notes, however, one of the loan documents in Exhibit B to the Complaint contains the following language: "this loan is a qualified education loan as described in Section 221(d)(1) of the Internal Revenue Code of 1986." Exhibit B to Complaint, p.14 of 40.

4

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

Navient was notified of the Discharge Order. Complaint, ¶30. Instead of charging the Tuition Answer Loans off, Navient demanded payments in violation of the Discharge Order and the Bankruptcy Code. Complaint, ¶32. Plaintiffs allege "owing to [Navient's] tactics, [P]laintiffs have repaid $37,460 on these discharged debts. These payments were not made 'voluntarily' but were made solely based on Defendant Navient's material misrepresentations regarding the legal status and character of the Tuition Answer Loans." Complaint, ¶33. Navient's "abusive, deceptive and harassing collection efforts" after entry of the Discharge Order "were made knowingly and willfully in violation of this Court's discharge orders and must be sanctioned." Complaint, ¶34.

## IV.   NAVIENT'S MOTION

Navient requests dismissal of the Complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) (Fed.R.Bankr.P. 7012(b)). Navient also moves to strike certain allegations as immaterial and impertinent matter under Fed.R.Civ.P.12(f) (Fed.R.Bankr.P. 7012(b)).

Navient asserts the confirmed Plan distinguished the Tuition Answer Loans from Plaintiffs' other dischargeable unsecured debts in Class Four and treated them "as non-dischargeable." Motion, p.16; *see also* Motion, p.17 ("[i]nstead of filing an adversary proceeding to seek a discharge of their loans, Debtors amended their [P]lan to expressly provide that their [Tuition Answer] Loans would *not be discharged* along with their other unsecured claims") (emphasis in original). Accordingly, Navient argues principles of *res judicata* prohibit Plaintiffs from reversing their earlier position taken in the Plan, in light of the finality of the Plan confirmation order and the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).

Alternatively, Navient argues dismissal is warranted because the Complaint, on its face, establishes the Tuition Answer Loans are excepted from discharge as "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii). Through the Tuition Answer Loans, Ms. McDaniel "received the funds that allowed [her] to attend Lakeland College. Indeed, [Plaintiffs] certified to Navient 'all of the loan proceeds . . . are to pay expenses directly related to attending' Lakeland College." Motion, p.19 (*quoting* Complaint, Exhibit B, pp.6, 31, 38 and 40). Then, when they filed bankruptcy, Plaintiffs scheduled the debt as "educational" in nature. Motion, p.19. "By enabling Ms. McDaniel to enroll in and attend college and support her personal decision to improve her life through higher

5

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

education, the loans conferred 'educational benefits' on her and are therefore excepted from discharge in bankruptcy." Motion, p.20.

In support, Navient cites cases holding private student loans are "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii). Because the "Debtors do not, and cannot, allege that they used their [Tuition Answer] Loans for anything but educational purposes, nothing in Debtors' Complaint allows them to avoid the same result." Motion, pp.22-23. Navient contends the cases that hold otherwise are badly reasoned, and those courts misapply the principles of statutory interpretation they invoke.

Since the Tuition Answer Loans were not discharged, Navient asserts there can be no violation of the discharge injunction. In any case, Navient argues this claim should be dismissed because the discharge injunction is enforceable only through contempt proceedings and there is no private right of action for violation of the discharge injunction. Since Plaintiffs' claim must be construed as a claim for contempt, the order under which they seek contempt must be "clear and specific." The Discharge Order is not "clear and specific" but rather, provides most student loans are *not* dischargeable. Motion, p.35.

Navient also moves to strike paragraph 1 and paragraphs 9 through 19 of the Complaint because the allegations set forth in these twelve paragraphs constitute a "superfluous attack on [Navient's] character, inappropriate for a short and plain statement of the claim." Motion, p.37 (citations omitted). Navient contends the overblown and non-specific allegations in these paragraphs malign Navient, refer to "pervasive, systemic wrongdoing" and have no bearing on any issues in this case. Motion, p.38. Plaintiffs' "allegations of nonspecific fraud perpetrated by unnamed actors using unspecified means against unnamed victims are inflammatory, unnecessary, and irrelevant", and the Court should strike them as either a superfluous attack on character, or deficiently pleaded fraud claims. *Id.*

## V.   DISCUSSION

### A.   The Rule 12(b)(6) Motion to Dismiss.

Rule 8 notice pleading "requires a short and plan statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); Fed.R.Bankr.P. 7008. "[H]eightened fact pleading of specifics" is not required; rather, a party must assert "only enough facts to state a claim to relief that is plausible on its face . . . to nudg[e his] claims across the line from conceivable to plausible . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

Failure to state a claim is a defense that may be presented by motion. Fed.R.Civ.P. 12(b)(6); Fed.R.Bankr.P. 7012(b). On a motion to dismiss, this Court must accept all well-pled facts in the Complaint as true and view them in the light most favorable to Plaintiff. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015) (citing *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City and Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citing *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (quotation omitted)).

The Court reviews Navient's Motion with the above principles in mind. Section 523(a)(8) provides a discharge under section 1328(b) does not discharge an individual debtor from any debt –

> (8) Unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –
>
> > (A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> >
> > (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . .

11 U.S.C. § 523(a)(8).

### 1. The Parties' Respective Burdens.

The parties agree Plaintiffs bear the burden of proving "undue hardship," but they disagree over who must bring an adversary proceeding to determine whether a student loan falls within the nondischargeable rubric of Section 523(a)(8) in the first place, as this section of the Bankruptcy Code is self-executing. This dispute

USBC 116

Case:17-01274-KHT   Doc#:30   Filed:09/24/18   Entered:09/24/18 15:34:11   Page8 of 18

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

is academic; Plaintiffs did bring this adversary proceeding, and the Court finds it was not too late for them to do so.  *Compare* Fed.R.Bankr.P. 4007(c) (complaints to determine dischargeability of a debt under Section 523(c) must be filed no later than 60 days after the first date set for the meeting of creditors) with *Gimbel v. U.S. Dep't of Educ. (In re Gimbel)*, Adv. No. 17-01048-j, 2018 WL 1229718, *4 (Bankr. D.N.M. March 8, 2018) ("there is no deadline expressly imposed by the Code or Rules for filing an adversary proceeding to determine whether a student loan debt should be excepted from the discharge under § 523(a)(8)").

As to the burden of proof, it remains on the creditor to show its debt is excepted from discharge under Section 523.  *Grogan v. Garner,* 498 U.S. 279, 287 (1991).  Thus Navient, "as a creditor, must prove, by a preponderance of the evidence, that a debt exists and the debt is the type excepted from discharge under § 523(a)(8)." *Hoffman v. Educ. Credit Mgmt. Corp. (In re Hoffman)*, 557 B.R. 177, 184 (Bankr. D. Colo. 2016) (citations omitted).

### 2.    Principles of Res Judicata and *Espinosa*.

*Res judicata* applies when the following three elements exist: "(1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002) (as amended Jan. 14, 2003) (quoting *King v. Union Oil Co.*, 117 F.2d 443, 445 (10th Cir. 1997)).

Navient's *res judicata* argument suffers from a fatal flaw:  the Plan does not say what Navient says it does.  It is true the confirmed Plan is final and binds Plaintiffs and all of their creditors, including Navient.  But the Plan did not specify one way or the other whether the Tuition Answer Loans were – or were not – discharged; the Plan is simply not instructive on this point.  Section V.E. of the Plan only specifies Plaintiffs' student loans – of which they had several, including Federal Stafford Loans owing to Great Lakes or its assigns – were "to be treated as an unsecured Class Four claim or as follows:  deferred until end of plan."  Case No. 09-37480, Docket #25.  The Plan is silent as to the dischargeability or non-dischargeability of the Tuition Answer Loans vis-à-vis Plaintiffs' other educational loans, or other unsecured debts.  Nowhere in the Plan does it state the Tuition Answer Loans, or *any* of Plaintiffs' student loans, were nondischargeable; Navient relies upon a mischaracterization of the terms of the Plan.

Nor does Plaintiffs' description of Navient's debt on their Bankruptcy Schedules as "educational" influence its dischargeability.  "Educational" loans, or "student" loans, are not nondischargeable simply because they are labeled as such; they must meet one or more of the criteria set forth in Section 523(a)(8).  "A construction so broad would be incompatible with the 'well-known' guide that

8

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

exceptions to discharge 'should be confined to those plainly expressed.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (quoting *Gleason v. Thaw,* 236 U.S. 558, 562 (1915)).

In *Espinosa*, the Supreme Court held the lender was bound by the terms of the debtors' confirmed plan even though confirmation of that plan was legal error. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010). The Chapter 13 plan in *Espinosa* expressly provided the debtors' student loans were discharged for undue hardship, and the creditor had actual notice of the plan and did not object. *Id*. at 264-265.

Navient contends *Espinosa* applies in the reverse and mandates the conclusion Plaintiffs' claims are barred on account of their confirmed Plan. But the true reverse of *Espinosa* would be a plan that expressly provided the Tuition Answer Loans, or any of Plaintiffs' student loans, were *not* dischargeable. Here, the Plan contains no explicit statement or determination as to the dischargeability of any of Plaintiffs' student loans. Navient's reliance upon *Espinosa* as controlling authority over the outcome of this case is misplaced.

Because the confirmed Plan is not a final determination on the merits, the Court will not dismiss Plaintiffs' Section 523(a)(8) claim on the basis of *res judicata* or application of *Espinosa*.

### 3. Section 523(a)(8)(A)(ii).

Absent undue hardship, Section 523(a)(8)(A)(ii) excepts from discharge "an obligation to repay funds received as an educational benefit, scholarship or stipend." 11 U.S.C. 523(a)(8)(A)(ii). The crux of the dispute is whether the Tuition Answer Loans fall within the ambit of this subsection as a matter of law. Courts in other jurisdictions are divided on the issue, with some courts holding private loans that provide an educational benefit to the borrower fit within Section 523(a)(8)(A)(ii) (the view espoused by Navient), and other courts embracing a much narrower view, holding such educational loans are not included within this particular subsection (Plaintiffs' position).[5] There is no controlling authority on point within the Tenth Circuit.

The Court's inquiry "begins where all such inquiries must begin: with the language of the statute itself." *Unites States v. Ron Pair Enterprises, Inc.*, 489

---

[5] While the parties dispute whose side is in the majority, the recent trend is clearly in favor of Plaintiffs' position. In their Response, Plaintiffs indicate there are 18 cases that support Navient's position, and cite 18 cases that support their own position, including 8 of the last 9 cases decided since 2016. Since the time the parties' briefs were submitted, additional decisions have been rendered in other districts also supporting Plaintiffs' view of Section 523(a)(8)(A)(ii).

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

U.S. 235, 241 (1989).  If the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Id.* (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

"When interpreting statutory language, this court 'must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.'" *Office of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)*, 236 F.3d 1246, 1252 (10th Cir. 2001) (citing *True Oil Co. v. Comm'r of Internal Revenue*, 170 F.3d 1294, 1299 (10th Cir.1999) (quotation marks and citation omitted)).  Section 523(a)(8)(A)(ii) cannot be read in isolation; it is necessary to read Section 523(a)(8) as a whole.  "The meaning – or ambiguity – of certain words or phrases may only become evident when placed in context." *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 54 (Bankr. E.D.N.Y. 2016) (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994)).

Section 523(a)(8)(A)(ii) is sandwiched in between Sections 523(a)(8)(A)(i) and (B).  Notably absent from Section 523(a)(8)(A)(ii) is the word "loan" which is used in both Sections 523(a)(8)(A)(i) and 523(a)(8)(B).  In Section 523(a)(8)(A)(i), Congress excepted from discharge "an educational benefit overpayment *or* loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution".  11 U.S.C. § 523(a)(8)(A)(i) (emphasis added).  The disjunctive "or" in Section 523(a)(8)(A)(i) is significant, because it distinguishes an "educational benefit overpayment" from a "loan." *See, e.g., Loughrin v. United States*, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (in reviewing the language of the federal bank fraud statute in which elements of the crime were separated by the word "or," the Supreme Court considered what "or" customarily means:  "th[e] term's 'ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings'") (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)).

The word "loan" is also used in Section 523(a)(8)(B), which excepts from discharge "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual".  11 U.S.C. 523(a)(8)(B).

Navient argues the fact Congress did not use the word "loan" in Section 523(a)(8)(A)(ii) does not matter because an "obligation to repay funds received" *is* a loan; this phrase could not possibly fail to include loans – it is just more inclusive and expansive.  Motion, pp.29-30.  But given the specific language employed by Congress in Sections 523(a)(8)(A)(i) and (B) and the absence of the word "loan" from Section 523(a)(8)(A)(ii), the Court concludes "an obligation to repay funds received as an educational benefit, scholarship or stipend" does not include a loan. "[W]hen 'Congress includes particular language in one section of a statute but

10

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

omits it in another' — *let alone in the very next provision* — this Court 'presume[s]' that Congress intended a difference in meaning." *Loughrin v. United States*, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (emphasis added) (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983) (further citation omitted)).

Moreover, another critical little word appearing in Section 523(a)(8)(A)(ii) is the word "*as*." "As" is a qualifier; it denotes how the funds were received. In a recent decision, the Bankruptcy Court for the Southern District of Texas examined the word "as" in Section 523(a)(8)(A)(ii):

> The use of the word "as" denotes "in the character or under the name of." [T]o the contrary, "for" denotes "in consideration for . . . in exchange for." [T]he Court concludes that 523(a)(8)(A)(ii) created a new category of nondischargeable debts specifically tailored to address a perceived need. That need did not include all loans that were in some way used by a debtor for education.

*Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830, 836 (Bankr. S.D. Tex. 2018) (quoting Black's Law Dictionary (6th ed. 1990)). This Court agrees. The language of the statute sets an educational benefit apart from a loan, and excepts from discharge a category of obligations in Section 523(a)(8)(A)(ii) that does not include loans but rather, "educational benefit[s]", "scholarship[s]", and "stipend[s]."[6]

If Navient's interpretation of Section 523(a)(8)(A)(ii) is correct – i.e., obligations that confer educational benefits are excepted from discharge – there would be no need for a separate provision excepting from discharge benefit overpayments or loans made, insured, or guaranteed by governmental units, or under programs funded by governmental units or nonprofit institutions (Section 523(a)(8)(A)(i)). Nor would there be any need for a separate provision excepting from discharge "qualified education loans" (Section 523(a)(8)(B)). Navient's interpretation offends a "cardinal principle" of statutory construction, that courts have a "duty to give effect, if possible, to every clause and word of a statute." *United States v. Smith*, 756 F.3d 1179, 1187 (10th Cir. 2014) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks and brackets omitted)).

---

[6] Like the court in *Campbell*, it is not necessary for this Court to decide whether the educational benefits, scholarships, and stipends referred to in Section 523(a)(8)(A)(ii) include only those made insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; the crux of the issue here is whether an "educational benefit" in Section 523(a)(8)(A)(ii) encompasses a private loan such as the Tuition Answer Loans. *See Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 59 (Bankr. E.D.N.Y. 2016) (comparing *Sensient Technologies Corp. v. Baiocchi (In re Baiocchi)*, 389 B.R. 828, 831–32 (Bankr. E.D. Wis. 2008) with *In re Nunez*, 527 B.R. 410, 415 (Bankr. D. Or. 2015)).

11

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

In *Campbell*, decided in 2016, the Bankruptcy Court for the Eastern District of New York denied a lender's motion to dismiss debtor's complaint to determine dischargeability of a private bar study loan, holding Section 523(a)(8)(A)(ii) did not encompass such a loan. *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016). The *Campbell* court reasoned that if Section 523(a)(8)(A)(ii) applied to loans, it would "swallow" the other sections of 523(a)(8). *In re Campbell*, 547 B.R. at 55.

Navient argues *Campbell* was wrongly decided; Section 523(a)(8)(A)(ii) does not render other provisions of Section 523 superfluous but rather, that subsection provides "limited overlapping coverage" consistent with Supreme Court precedent, *In Husky Int'l Elec., Inc. v. Ritz*, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016) (concluding some overlap in coverage regarding the definition of "actual fraud" did not render Section 523(a) redundant). Reply, p.24. In other words, Section 523(a)(8)(A)(ii) catches instances of nondischargeability that other subparts of 523(a)(8) might miss, "reinforc[ing] the broad scope of the discharge exception for student loans." Motion, p.26. Unlike other subsections, Navient points out that Section 523(a)(8)(A)(ii) requires funds to be "received," so "both a private bar-study loan and a judgment debt to a co-signor on a defaulted government-backed university loan that the co-signor paid in full would be exempt from discharge under 523(a)(8)(A)(ii) but not § 523(a)(8)(A)(i) or (B), respectively." Motion, pp.25-26. The Court is not persuaded by this somewhat circular argument. If the legislature intended Section 523(a)(8)(A)(ii) to address potential liability to a co-signor, it could have done so explicitly; for example, Section 523 expressly includes separate categories of nondischargeable debt "incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1)" and "incurred to pay a tax to a governmental unit, other than the United States, that would be nondischargeable under paragraph (1)." 11 U.S.C. 523(a)(14), (14A).

Accordingly, based upon the plain language of the statute, this Court embraces the trending narrower view of Section 523(a)(8)(A)(ii) espoused in *Campbell*. *See, e.g., Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830 (Bankr. S.D. Tex. 2018); *Nypaver v. Nypaver (In re Nypaver)*, 581 B.R. 431 (Bankr. W.D. Pa. 2018); *Essangui v. SLF V-2015 Trust (In re Essangui)*, 573 B.R. 614 (Bankr. D. Md. 2017); *Dufrane v. Navient Solutions, Inc. (In re Dufrane)*, 566 B.R. 28 (Bankr. C.D. Ca. 2017); *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016).

To the extent there is any ambiguity in Section 523(a)(8)(A)(ii), the doctrine of *noscitur a sociis* and the legislative history both support the narrower view. Employing the doctrine of *noscitur a sociis*, the *Campbell* court considered the meaning of "educational benefit" in the context of its surrounding words:

12

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

"scholarship" and "stipend." *In re Campbell*, 547 B.R. at 55. Under this doctrine, "when a statute contains a list, each word in that list presumptively has a 'similar' meaning." *Id.* (citing *Yates v. United States*, 135 S.Ct. 1074, 1089, 191 L.Ed.2d 64 (2015) (Alito, J., concurring in the judgment) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 576 (1995)). The *Campbell* court noted "'[s]cholarship' and 'stipend' both refer to funds which are not generally required to be repaid by the recipient" and concluded "educational benefit" may be understood the same way; they are all forms of conditional grants, not loans. *In re Campbell*, 547 B.R. at 55. This Court agrees. A "scholarship" is a "grant of financial aid to a student." The American Heritage College Dictionary, 1220 (3d ed. 1997). A "stipend" is a "fixed and regular payment, such as a salary." *Id.*, at 1335. A "benefit" is a "payment made or an entitlement available in accordance with a wage agreement, an insurance policy, or a public assistance program." *Id.*, at 127. These words all signify granting, not borrowing.[7]

Navient argues *noscitur a sociis* was misapplied in *Campbell*, given the broader context of Section 523(a)(8). But in this Court's opinion, as discussed above, the broader context of Section 523(a)(8) – in which the words "loan" and "or" appear in its neighboring subsections – supports a narrow construction of Section 523(a)(8)(A)(ii). Navient's argument that a loan used for educational purposes confers an educational benefit on the borrower, just like scholarships and stipends do, strays from both the text of the statute and the context in which it was enacted.

As to the context, Section 523(a)(8) was enacted to safeguard "the solvency of government education loan programs" for "future students". *In re Campbell*, 547 B.R. at 59-60 (citing *In re Pelkowski*, 990 F.2d 737, 742 (3rd Cir. 1993) (quoting 124 Cong. Rec. 1791-9 Representative Ertel) (further citations omitted)). Section 523(a)(8) of the Bankruptcy Reform Act of 1978 excepted from discharge any debt –

> to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless –

---

[7] Navient complains a list of three items is insufficient to employ the doctrine, citing *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 288 (2010). But in that case, unlike here, the Supreme Court declined to employ *noscitur a sociis* to a list of three *disparate* terms: "congressional," "administrative," and "Governmental Accounting Office." *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. at 288 (finding each of the three terms "*quite distinct from the other no matter how construed*") (emphasis added).

USBC 122

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

    (A) such loan first became due before five years before the date of the filing of the petition; or

    (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

Bankruptcy Reform Act of 1978, Pub. L. No. 95–598 § 523(a)(8) (H.R. 8200), Nov. 6, 1978, 92 Stat. 2549, 2591 (1978).

The term "educational benefit" first appeared in Section 523(a)(8) in 1990, when the statute was amended to except from discharge any debt:

for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend . . .

Crime Control Act of 1990, Pub. L. No. 101-647 § 3621(1), 104 Stat. 4789, 4965 (1990).   The amendment to Section 523(a)(8) by the Crime Control Act also extended the period of repayment in Section 523(a)(8)(A) to seven years.  *Id.*

The *Campbell* court examined the sparse legislative history and hearing testimony behind the 1990 amendments to Section 523(a)(8). *In re Campbell*, 547 B.R. at 55.  At the hearing, Bob Wortham, a United States attorney from the Eastern District of Texas, explained the amendments to Section 523(a)(8) added "to the list of non-dischargeable debts, obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends", citing *U.S. Dep't of Health and Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986) in his statement. *See In re Campbell*, 547 B.R. at 55 (citing Federal Debt Collection Procedures of 1990: Hearing on P.L. 101-647 before the H. Subcomm. on Econ. and Commercial Law, H. Judiciary Committee 101st Cong. 74-75 (June 14, 1990) (Mr. Brooks' Questions for the Record for Mr. Wortham)).

In *Smith*, the Eighth Circuit held the pre-1990 version of Section 523(a)(8) encompassed a federal tuition assistance grant to a medical student who had defaulted on its conditions.  *U.S. Dep't of Health and Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986).  In reaching its decision, the Eighth Circuit was mindful of the "background and purpose of 523(a)(8) of the Bankruptcy Code" to correct a significant problem "[u]nder the Bankruptcy Act, [i.e.,] educational loans were

14

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

dischargeable resulting in millions of dollars in *federally guaranteed loans* defaulted upon annually." *Smith*, 807 F.2d at 126 (emphasis added) (quoting *In re Shipman*, 33 B.R. 80, 82 (Bankr. W.D. Mo. 1983)).

Navient points out the sparse legislative history examined in *Campbell* is a single remark, not made by a legislator, regarding a prior version of the statute. Motion, p.31. However, that selfsame sparsity of legislative history regarding the addition of "educational benefit" to Section 523(a)(8) suggests the legislature did not intend to extensively expand nondischargeability to private educational loans. A subsequent amendment to the statute supports this conclusion. With the enactment of BAPCPA in 2005, subsection (B) was added to Section 523(a)(8), including as nondischargeable "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual". Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, S. 256, 109th Cong., § 220, 119 Stat. 23, 59 (2005). BAPCPA also separated subsection (A) into two subsections, (A)(i) and (A)(ii), without any changes to the text. If Section 523(a)(8)(A)(ii) expanded the statute to include all loans that confer educational benefits, subsection (B) – adding "qualified education loans" under 26 U.S.C. § 221(d)(1) as nondischargeable – would have been wholly unnecessary.

Even if this Court were to agree with Navient, it would be premature to dismiss Plaintiffs' Complaint under Section 523(a)(8)(A)(ii); at this stage in the litigation, the underlying facts are not sufficiently developed. But the Court is persuaded by Plaintiffs' view that Section 523(a)(8)(A)(ii) does not encompass the Tuition Answer Loans, based upon the plain language of the statute, and in addition, applicable canons of statutory interpretation and the legislative history.

### 4. Claim for Violation of the Discharge Injunction.

The Discharge Order granted Plaintiffs a discharge under Section 1328(a). Section 1328(a) specifies that the bankruptcy discharge for Chapter 13 debtors is as to "*all debts* provided for by the plan or disallowed under section 502 of this title, except any debt – . . . of the kind specified in . . . [section 523(a)(8)]." 11 U.S.C. § 1328(a)(2) (emphasis added). Pursuant to the Bankruptcy Code, the Discharge Order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived". 11 U.S.C. § 524(a)(2).

Navient argues Plaintiffs' claim for violation of the discharge injunction is defective because there is no private right of action for such claim, and the Discharge Order was not specific enough to be enforced against Navient on

USBC 124

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

contempt grounds; the Discharge Order did not clearly identify prohibited conduct as the Order "lacked such a statement about their [Tuition Answer] Loans". Reply, p.29.

While the Tenth Circuit has not determined whether there is a private right of action under Section 524(a)(2), it is clear the Court's equitable powers under Section 105(a) extend to decide claims "to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in 524(a)(2)." *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1306 (10th Cir. 2008) (citations omitted).[8] Thus, "Section 524(a)(2) operates as 'an equitable remedy precluding the creditor, on pain of contempt, from taking *any* actions to enforce the discharged debt.'" *Gray v. Nussbeck (In re Gray)*, 586 B.R. 347, 353 (Bankr. D. Kan. 2018) (quoting *Espinosa v. United States Aid Funds, Inc.*, 553 F.3d 1193, 1200 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010) (emphasis in original)).

To be held in contempt, a court must find (1) the party violated a specific and definite order; (2) the party had notice of the order; and (3) the party did in fact violate the order. *Lucre Mgmt. Grp., LLC v. Schempp Real Estate, LLC (In re Lucre Mgmt. Grp., LLC)*, 365 F. 3d 874, 875 (10th Cir. 2004). In order to prevail in a civil contempt proceeding, Plaintiffs' burden is high; they must prove the alleged violation by clear and convincing evidence. *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998).

The Court concludes Plaintiffs have stated a valid claim for contempt. The Discharge Order and the statutory bases for its issuance and enforcement (Sections 1328 and 524(a)(2)) are broad and unequivocal. *All* debts were discharged, except those enumerated in Section 1328(a). There is no such thing as a personalized discharge order addressed to each creditor in a given bankruptcy case. That neither party sought to determine the dischargeability of the Tuition Answer Loans until now does not alter whether or not the debts were discharged under Section 523(a)(8) at the time the Discharge Order was entered; thereafter they both proceeded at their own risk. Any ambiguity in the law, or uncertainty as to the injunction's applicability to the Tuition Answer Loans, is relevant to the inquiry as to whether any contempt violation, if proven, was willful. Accordingly, the Court will not dismiss the claim on that basis. Whether or not the evidence at trial will support the claim is a matter for another day.

---

[8] The Court rejects the notion Plaintiff's claim would need to be dismissed on procedural grounds for failure to file a motion for contempt in the main bankruptcy case, as that requirement would elevate form over substance. *See, e.g., Gray v. Nussbeck (In re Gray)*, 586 B.R. 347, n.19 (Bankr. D. Kan. 2018); *Montano v. First Light Fed. Credit Union (In re Montano)*, 398 B.R. 47, 55-56 (Bankr. D.N.M. 2008).

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

### B. The Rule 12(f) Motion to Strike.

Rule 12(f) allows a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f); Fed.R.Bankr.P. 7012(b). But "[s]triking a portion of a pleading is a drastic remedy; the federal courts generally view motions to strike with disfavor and infrequently grant such requests." *Purzel Video GmbH v. Smoak*, 11 F.Supp.3d 1020, 1029 (D. Colo. 2014) (citing 5C Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1380 (3d ed. 2011)).

The purpose of Rule 12(f) "is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case." *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo.1997) (citing *United States v. Smuggler–Durant Mining Corp.*, 823 F.Supp. 873, 875 (D. Colo.1993)). Accordingly, courts deny motions to strike immaterial and impertinent matter "unless it can be shown that no evidence in support of the allegation[s] would be admissible." *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1085 (D. Colo. 1985) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). "Only allegations 'so unrelated to plaintiff's claims as to be unworthy of any consideration' should be stricken." *Id.* (quoting *EEOC v. Ford Motor Co.*, 529 F.Supp. 643, 644 (D. Colo. 1982)). Further, "[i]rrelevant allegations will be stricken as scandalous only if they degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court." *Sierra Club*, 173 F.R.D. at 285 (citing *Nault's Auto. Sales v. American Honda Motor Co.*, 148 F.R.D. 25, 30 (D.N.H.1993) (further citation omitted)).

"Even where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike." *Sierra Club*, 173 F.R.D. at 285. "Inappropriately hyperbolic allegations, ill-conceived attempts at levity, and other similar manifestations of bad judgment in drafting pleadings, by themselves, fall short of the threshold that Rule 12(f) contemplates." *Saylavee LLC v. Hockler*, 228 F.R.D. 425, 426 (D. Conn. 2005).

It is important to keep in mind Plaintiffs' allegations are made against a corporate entity in a matter that will be tried to the Court. Although Plaintiffs' allegations in paragraphs 1 and 9 through 19 may be hyperbolic, they are not so unrelated to Plaintiffs' claims as to be unworthy of any consideration. To the contrary, the allegations are relevant to Plaintiffs' claim for violation of the discharge injunction. The Court, therefore, denies Navient's motion to strike the allegations.

17

USBC 126

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

## VI.  CONCLUSION

For the reasons stated herein, the Court DENIES the Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6) and Motion to Strike Immaterial and Impertinent Matter Under Fed.R.Civ.P. 12(f) filed by Defendant Navient Solutions, LLC.

Dated: September 24, 2018.

BY THE COURT:

Kimberley H. Tyson
United States Bankruptcy Judge

USBC 127

# Ex. B

**JOINT CERTIFICATION FOR DIRECT, INTERLOCUTORY APPEAL**

USBC 128

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re: )
)     Case No. 09-37480 (KHT)
BYRON PATTERSON MCDANIEL JR. )
AND LAURA PAIGE MCDANIEL )
)     Chapter 13
    Debtors. )
)
——————————————— )
)
BYRON PATTERSON MCDANIEL JR. )
AND LAURA PAIGE MCDANIEL, )
)     Adversary Proceeding No. 17-01274-KHT
    Plaintiffs, )
v. )
)
NAVIENT SOLUTIONS, LLC, )
)
    Defendant. )

---

## CERTIFICATION TO COURT OF APPEALS BY ALL PARTIES

A notice of appeal having been filed in the above-captioned matter on October 9, 2018, Plaintiffs Byron Patterson McDaniel Jr. and Laura Paige McDaniel, and Defendant Navient Solutions, LLC ("NSL," and with Plaintiffs, the "Parties"), who are all of the parties in this case acting jointly, hereby certify to the court under 28 U.S.C. § 158(d)(2)(A) and Fed. R. Bankr. P. 8006(c) that a circumstance specified in 28 U.S.C. § 158(d)(2) exists as stated below.

Leave to appeal in this matter:

☒     is required under 28 U.S.C. § 158(a)

☐     is not required under 28 U.S.C. § 158(a)

This certification arises in an appeal from this Court's Order on Motion to Dismiss and Motion to Strike (the "Order"), dated September 24, 2018 (Dkt. No. 30), which is an

49043190.2

interlocutory order or decree.  Accordingly, the Parties hereby request leave to appeal as required

by 28 U.S.C. § 158(a).

In accordance with 28 U.S.C. § 158(d)(2)(A)(i)-(iii), the Parties hereby certify that:

    i.    the judgment, order or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

    ii.    the judgment, order or decree involves a question of law requiring resolution of conflicting decisions; and

    iii.    an immediate appeal from the judgment, order or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

49043190.2

Dated this 9th day of October, 2018.

SHERMAN & HOWARD L.L.C.


*/s/ Eric E. Johnson*_____
Eric E. Johnson
Carla R. Martin
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 297-2900
E-Mail:  ejohnson@shermanhoward.com
            cmartin@shermanhoward.com

*Counsel for Navient Solutions, LLC*



—and—



*/s/ Austin Smith*_____
Austin Smith
SMITH LAW GROUP
3 Mitchell Place
New York, New York 10017
Tel:  (917) 992-2121
E-mail:  austin@acsmithlawgroup.com

*Counsel for Plaintiffs Byron Patterson*
*McDaniel Jr. and Laura Paige McDaniel*

49043190.2

USBC 131

## CERTIFICATE OF SERVICE

The undersigned hereby certifies the following parties received a true and correct copy of the foregoing **CERTIFICATION TO COURT OF APPEALS BY ALL PARTIES** via a Notice of Electronic Filing transmitted by CM/ECF in accordance with Local Bankruptcy Rule 5005-4(a) on the 9th day of October, 2018:

Austin Smith
austin@acsmithlawgroup.com

*/s/ Roberta Neal* _____

4

49043190.2

# Ex. C

**FIFTH CIRCUIT ORDER GRANTING MOTION FOR LEAVE TO APPEAL,**
***NAVIENT SOLUTIONS, LLC V. CROCKER***

USBC 133

## *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

April 25, 2018

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

    No. 18-90016   Navient Solutions, L.L.C., et al v. Evan
Crocker, et al
        No. 16-3175

Enclosed is an order entered in this case.

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    By:
                    Angelique B. Tardie, Deputy Clerk
                    504-310-7715

Mr. Jason W. Burge
Mr. George F. Carpinello
Mr. Thomas Miles Farrell
Mr. Dion W. Hayes
Mr. Kyle Hosmer
Ms. Karen Elizabeth Sieg
Ms. Lynn Elizabeth Swanson
Ms. Susan Tran

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 18-90016

---

In re: Evan Brian Crocker, also known as Crocker Legal, P.L.L.C.

        Debtor

NAVIENT SOLUTIONS, L.L.C.; NAVIENT CREDIT FINANCE
CORPORATION,

        Petitioners

v.

EVAN BRIAN CROCKER, also known as Crocker Legal, P.L.L.C., formerly
known as Evan Brian Haas; MICHAEL SHAHBAZI, formerly known as
Montana Shahbazi; WENDY L. LANDES; RAEGENA SEITZ-MOULDS,

        Respondents

---

Motion for Leave to Appeal
Pursuant to 28 U.S.C. § 158(d)

---

Before DAVIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:

     IT IS ORDERED that the unopposed motion for leave to appeal under
28 U.S.C. § 158(d) is GRANTED.

## Ex. D

**TRANSCRIPT FROM HEARING ON MOTION FOR SUMMARY JUDGMENT,**
*CROCKER V. NAVIENT SOLUTIONS, LLC*

USBC 136

```
              UNITED STATES BANKRUPTCY COURT
               SOUTHERN DISTRICT OF TEXAS
                     HOUSTON DIVISION




EVAN BRIAN HAAS,            )      CASE NO:  16-03175
                           )      ADVERSARY
           Plaintiff,      )
                           )      Houston, Texas
    vs.                    )
                           )      Monday, March 5, 2018
NAVIENT, INC, ET AL,       )
                           )      (3:28 p.m. to 4:20 p.m.)
           Defendants.     )


                MOTION FOR SUMMARY JUDGMENT

        BEFORE THE HONORABLE DAVID R. JONES,
           UNITED STATES BANKRUPTCY JUDGE




Appearances:           See page 2

Court Reporter:        Recorded; FTR

Transcribed by:        Exceptional Reporting Services, Inc.
                       P.O. Box 18668
                       Corpus Christi, TX 78480-8668
                       361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

EXCEPTIONAL REPORTING SERVICES, INC

2

APPEARANCES FOR:

Plaintiff:                    JASON W. BURGE, ESQ.
                              Fishman Haygood
                              201 St. Charles Ave., Suite 4600
                              New Orleans, LA 70170

                              MARC D. MYERS, ESQ.
                              Ross Banks May Cron & Cavin
                              7700 San Felipe, Suite 550
                              Houston, TX 77063

                              LYNN E. SWANSON, ESQ.
                              Jones Swanson Huddell & Garrison
                              601 Poydras St., Suite 2655
                              New Orleans, LA 70130

                              CATHY JOHNSON, ESQ.

                              ADAM CORRAL, ESQ.
                              Corral Tran Singh
                              1010 Lamar St., Suite 1160
                              Houston, TX 77002

Defendants:                   THOMAS M. FARRELL, ESQ.
                              KAREN ELIZABETH SIEG, ESQ.
                              McGuire Woods
                              600 Travis, Suite 7500
                              Houston, TX 77002

3

1      Houston, Texas; Monday, March 5, 2018; 3:28 p.m.

2                        (Call to order)

3         (Hearing already in progress)

4              THE COURT:  -- 3175, *Haas versus Navient.*

5              MR. FARRELL:  Judge, our adversaries were not right

6    out there in the hall.  You want to go see if I can find them?

7              THE COURT:  Yes, I greatly appreciate that.

8    Hopefully they won't be far.

9         (Pause from 3:28 p.m. to 3:29 p.m.)

10             MR. FARRELL:  Your Honor, they are not out there.

11   They -- I saw them get in the elevator when we took the last

12   break but I don't know which direction they went.

13             THE COURT:  Got it, thank you.  Best laid plans, I

14   suppose.

15             MR. FARRELL:  But I'm sure they'll be right here.

16             THE COURT:  Oh, they went to the library?  All right,

17   okay, got it.  Hopefully it won't be long.

18        (Pause from 3:29 p.m. to 3:30 p.m.)

19             MR. SPEAKER:  Thank you, your Honor.

20             THE COURT:  Certainly.  All right, --

21             MR. SPEAKER:  Sorry, your Honor (indisc.)

22             THE COURT:  I -- it -- you're not late, it's exactly

23   3:30.  So called the case.  If you'd just go ahead and make

24   your appearances, please.  Mr. Farrell, we'll start with you.

25             //

EXCEPTIONAL REPORTING SERVICES, INC

12

1          MR. BURGE:  -- kicked the can who knows how far down

2    the road.

3          THE COURT:  Right.  Here's my view of the most

4    efficient way.  I've thought a lot about this if you haven't

5    figured that out.  I may be wrong about so many things but I've

6    thought about it a lot, is that if a party was going to appeal

7    the issue regarding the statutory interpretation question, it

8    would seem to me that I can immediately certify that for direct

9    appeal to the Fifth Circuit; because I agree quite honestly not

10   only in this case but this interpretation question comes up a

11   lot.  And it would be nice to have something nice, succinct, on

12   the point, not driven by something else, but only on this

13   issue.  And so my thought would be is that if I certified it

14   for a direct appeal, is that I would stay everything sufficient

15   to allow the losing party to go to the Fifth Circuit and seek a

16   stay.  Obviously if the circuit stayed it, then the answer is -

17   - I mean, there isn't going to be any decision by me that would

18   change that.  If the circuit refused the direct appeal, which

19   it certainly has the right to do, the I think that that would

20   dictate a different set of results.  I also think that a

21   decision to deny motion to stay by the circuit would send a

22   message not to me as to the merits of what they thought but as

23   to what they expected to occur in the litigation.  So that's

24   actually my thought.  Because I agree with you, I don't want to

25   go through a long, drawn out, complicated certification hearing

1   if I turn out to be wrong on this issue.  Or I don't want the

2   certification to fall apart because I got it wrong from the

3   Plaintiffs' point of view.  I just -- to me, it just made

4   sense.  Any -- either one of you have a reaction to that?

5        MR. FARRELL:  That was our thought when we filed the

6   motion, Judge.  And, you know, we didn't put explicitly in

7   papers that was the plan, but I came here today planning to

8   tell you --

9        THE COURT:  Sure.

10        MR. FARRELL:  -- exactly what I told you.  So we

11   think that makes sense.

12        THE COURT:  All right.  So what -- you agree?

13        MR. BURGE:  And, I mean, my only concern is that I

14   think that, you know, deferring time does harm to this class.

15   But I -- you know, I think --

16        THE COURT:  How so?

17        MR. BURGE:  Well, only because our class members,

18   these debts, the ones that are at issue in this case, it is

19   true that they are no longer getting discharge violations --

20        THE COURT:  Right.

21        MR. BURGE:  -- from what the reports we're hearing.

22   But these debts are still on their credit reports, they're

23   still impacting their access to credit.  It's still causing

24   problems for them as they move forward because these debts have

25   not formally been recognized as discharged by Navient.  I agree

<u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>March 8, 2018</u>

Signed                                              Dated

*TONI HUDSON, TRANSCRIBER*

EXCEPTIONAL REPORTING SERVICES, INC

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                                                )
                                                      )   Case No. 09-37480-KHT
BYRON PATTERSON McDANIEL JR.                          )
AND LAURA PAIGE McDANIEL                              )   Chapter 13
                                                      )
        Debtors.                                      )
                                                      )
_____                     )
                                                      )
BYRON PATTERSON McDANIEL JR.                          )
AND LAURA PAIGE McDANIEL,                             )
                                                      )   Adversary Proceeding No. 17-01274-KHT
        Plaintiffs,                                   )
v.                                                    )
                                                      )
NAVIENT SOLUTIONS, LLC,                               )
                                                      )
        Defendant.                                    )

_____

## DEFENDANT NAVIENT SOLUTIONS, LLC'S UNOPPOSED MOTION TO STAY ADVERSARY PROCEEDING PENDING INTERLOCUTORY APPEAL

_____

Defendant Navient Solutions, LLC ("NSL"), pursuant to 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 8007(a)(1) and (e), respectfully requests that the Court stay this adversary proceeding in its entirety, including the deadline to answer or otherwise respond to the complaint, pending resolution of NSL's appeal of this Court's *Order on Motion to Dismiss and Motion to Strike*, entered on September 24, 2018, Dkt. No. 30 (the "Order"). In support, NSL states as follows:

### CERTIFICATION OF NON-OPPOSITION

NSL is authorized to certify to the Court that Plaintiffs do not oppose the stay pending appeal requested in this motion, in the interest of efficiency and economy. Plaintiffs oppose NSL's substantive position in the appeal.

49044823.3

## BACKGROUND

Plaintiffs filed a joint chapter 13 bankruptcy proceeding in this Court on December 24, 2009. (Case No. 09–37480, Dkt. No. 1.) On July 12, 2017, Plaintiffs filed this Adversary Proceeding against NSL. (Dkt. No. 1.) In relevant part, they allege that certain loans they obtained for Laura Paige McDaniel to attend Lakeland College were discharged in their chapter 13 bankruptcy case. (*See id.* ¶¶ 20–34, 36.) Plaintiffs further allege that subsequent acts by NSL to collect on the loans violated their discharge injunction. (*See id.* ¶¶ 38–41.)

NSL moved to dismiss Plaintiffs' complaint on October 10, 2017. (*Id.*, Dkt. No. 8.) NSL asserted two primary arguments supporting the Court's dismissal of Plaintiffs' lawsuit. First, that res judicata (arising from their amended chapter 13 plan and the order confirming it) bars their claims. (*Id.* at 12–20.) And second, that Plaintiffs' loans are excepted from discharge as "obligation[s] to repay funds received as an educational benefit" under § 523(a)(8)(A)(ii) of the Bankruptcy Code. (*Id.* at 19–32.)

Through the Order, the Court denied NSL's motion on September 24, 2018. NSL is filing contemporaneously herewith a Certification to Court of Appeals by All Parties and Unopposed Petition for Direct, Interlocutory Appeal ("Petition for Direct Appeal"). In the Petition for Direct Appeal, a copy of which is attached as Exhibit A hereto, NSL seeks leave from the Tenth Circuit, on an unopposed basis, to present the following questions on direct, interlocutory appeal:

1.   Did the bankruptcy court err in denying NSL's motion to dismiss on res judicata grounds?

2.   Did Congress except student loans from discharge in bankruptcy as an "obligation to repay funds received as an educational benefit" under § 523(a)(8)(A)(ii) of the Bankruptcy Code?

49044823.3

For the reasons that follow, NSL now asks that the Court stay this matter pending the outcome of NSL's petition for direct, interlocutory appeal to the Tenth Circuit.[1]

## LEGAL STANDARDS

Under Bankruptcy Rule 8007, a party may move in the bankruptcy court for "the suspension … of proceedings in a case or other relief permitted by subdivision (e)." Fed. R. Bankr. P. 8007(a)(1)(D). In turn, 8007 (e) provides that a bankruptcy court may suspend proceedings in the case or issue other appropriate orders during the pendency of an appeal. Fed. R. Bankr. P. 8007(e).

In determining whether to grant a stay pending appeal, courts consider whether the applicant has made a strong showing of likelihood of success on the merits, whether the applicant will be irreparably harmed absent a stay, whether the stay will substantially injure the other parties and where the public interest lies. *Lang v. Lang (In re Lang)*, 414 F.3d 1191, 1201 (10th Cir. 2005) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Although the moving party has the burden on each of the elements, where the moving party establishes that the three "harm" factors favor a stay, the probability of success requirement is relaxed. *F.T.C. v. Mainstream Marketing Servs.*, 345 F.3d 850, 852 (10th Cir. 2003).

## II. THE COURT SHOULD STAY THE MATTER PENDING THE APPEAL

The Court should grant this unopposed motion and stay the adversary proceeding in its entirety pending NSL's appeal because all four stay considerations are met here. *See In re Lang*, 414 F.3d at 1201. Because a sufficient showing on the last three factors regarding the relative

---

[1] As a protective alternative measure, NSL is also filing contemporaneously herewith an unopposed motion for leave to appeal the Order to the Tenth Circuit Bankruptcy Appellate Panel, pending the Tenth Circuit's resolution of the Petition for Direct Appeal.

49044823.3

harms relaxes the first consideration of success on the merits, *F.T.C.*, 345 F.3d at 852, NSL first addresses the harm factors.

Without a stay, both sides will be harmed by having to expend time and money on litigation that may be mooted by the interlocutory appeal. Either of the issues that are the subject of the interlocutory appeal, if resolved in NSL's favor, would be dispositive of this matter. Accordingly, both sides will save the time and expense of litigation that may prove to have been unnecessary if NSL prevails in the appeal.

Plaintiffs also agree that a stay will best conserve the parties' time and expense of litigation and have stipulated to the direct, interlocutory appeal of these important issues. Thus, the stay will not substantially injure Plaintiffs.

The public interest in judicial efficiency and conservation of judicial resources also favors staying this matter pending the appeal. A stay will avoid the Court expending judicial resources on pre-trial matters, dispositive motions, and trial.

At least one other court, when faced with this same situation, stayed the adversary proceeding pending a direct, interlocutory appeal on the precise issue under § 523(a)(8) that is presented in NSL's appeal of this Court's Order.[2] *See Crocker v. Navient Solutions, LLC*, Adv. Pro. No. 16-03175 (DRJ) (Dkt. No. 220) at 1 (Bankr. S.D. Tex. April 6, 2018) (copy attached as Exhibit A to the Petition for Direct Appeal, Exhibit A hereto). The *Crocker* court reasoned that it did not "want to go through a long, drawn out, complicated … hearing if [it] turn[ed] out to be wrong on" the potentially dispositive legal questions. *Id.* at 12:24-13:1.

The three "harm" factors thus weigh in favor of a stay. Accordingly, the requirement for showing a probability of success on the merits is relaxed. *F.T.C.*, 345 F.3d 850, 852. Though the

---

[2] The Fifth Circuit accepted the direct, interlocutory appeal and the matter has been fully briefed and is awaiting potential oral argument before that Court.

4

Tenth Circuit has not spoken on the issues that are the subject of NSL's interlocutory appeal, this Court has noted that numerous other courts in the country have already decided that student loans are excepted from discharge as "obligations to repay funds received as educational benefits" under § 523(a)(8)(A)(ii) of the Bankruptcy Code. (*See* Order at 9 n. 5.). Accordingly, NSL has a sufficient probability of success on the merits of its appeal to warrant a stay.

CONCLUSION

For the reasons described, and with the consent of Plaintiffs, NSL respectfully requests that the Court enter an order staying this matter in its entirety pending NSL's appeal of the Order. A form of proposed order is submitted herewith.

Dated this 9th day of October, 2018.

SHERMAN & HOWARD L.L.C.

*/s/ Eric E. Johnson*
Eric E. Johnson
Carla R. Martin
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 297-2900
E-Mail: ejohnson@shermanhoward.com
cmartin@shermanhoward.com

*Counsel for Navient Solutions, LLC*

49044823.3

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies the following parties received a true and correct copy of the foregoing **DEFENDANT NAVIENT SOLUTIONS, LLC'S UNOPPOSED MOTION TO STAY ADVERSARY PROCEEDING PENDING INTERLOCUTORY APPEAL** via a Notice of Electronic Filing transmitted by CM/ECF in accordance with Local Bankruptcy Rule 5005-4(a) on the 9th day of October, 2018:

Austin Smith
austin@acsmithlawgroup.com


*/s/ Roberta Neal*

6

49044823.3

# EXHIBIT A

**No. _____**

In the
# United States Court of Appeals
### For the Tenth Circuit

*In re* Byron Patterson McDaniel Jr. and Laura Paige McDaniel,

*Debtors.*

Byron Patterson McDaniel Jr. and Laura Paige McDaniel,

*Appellees-Plaintiffs,*

v.

Navient Solutions, LLC,

*Appellant-Defendant.*

ON APPEAL FROM THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF COLORADO

**UNOPPOSED PETITION FOR DIRECT, INTERLOCUTORY APPEAL**

Eric E. Johnson
Sherman & Howard LLC
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Telephone:  303.297.2900

*Counsel for Appellant-Defendant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1, Appellant Navient Solutions, LLC discloses that the following entity owns 10% or more of its equity interests:

Navient Corporation

/s/ Eric E. Johnson
*Counsel for Appellant-Defendant*

i

USBC 151

**DISCLOSURE OF OPPONENTS' POSITION**

Pursuant to Local Rule 27.1, the undersigned counsel of record certifies that he has contacted counsel for the Appellees-Plaintiffs, who indicated that Appellees-Plaintiffs do not oppose the Tenth Circuit accepting this direct, interlocutory appeal (without prejudice to or waiver of their rights or arguments on the merits).

/s/ Eric E. Johnson
Counsel for Appellants-Defendants

USBC 152

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................................. i

DISCLOSURE OF OPPONENTS' POSITION ........................................................... ii

TABLE OF CONTENTS .................................................................................... iii

TABLE OF AUTHORITIES ................................................................................. v

SUMMARY OF ARGUMENT ............................................................................... 1

I.    BACKGROUND NECESSARY TO UNDERSTAND THE QUESTIONS
      PRESENTED ......................................................................................... 3

      A.    Appellees-Plaintiffs contend that they discharged their
            obligations to repay their private student loans in bankruptcy ........... 3

II.   LEGAL BACKGROUND NECESSARY FOR THE QUESTIONS PRESENTED ............ 7

      A.    Res judicata and Supreme Court precedent bar Plaintiffs'
            claims ....................................................................................... 7

      B.    Congress excepted student loans from discharge in
            bankruptcy ................................................................................ 9

III.  THE BANKRUPTCY COURT'S DECISION BELOW ......................................... 13

      A.    The bankruptcy court denied Navient's motion to dismiss,
            which decision the parties agree is appropriate for direct,
            interlocutory appeal to this Court ................................................ 13

IV.   JURISDICTIONAL STATEMENT ................................................................ 14

V.    QUESTIONS PRESENTED ....................................................................... 15

VI.   RELIEF REQUESTED ............................................................................. 15

VII.  REASONS THE APPEAL SHOULD BE ALLOWED ........................................ 15

      A.    The Court has jurisdiction to accept a direct, interlocutory
            appeal of the order ................................................................... 15

      B.    The Court should accept a direct, interlocutory appeal of the
            order ...................................................................................... 17

            1.    The order involves questions of law on which no
                  controlling precedent exists, resolution of conflicting
                  decisions, and matters of public importance .......................... 18

            2.    Direct, immediate appeal of the order would materially
                  advance the suit below and the public's interest ................... 20

USBC 153

CONCLUSION ....................................................................................................21

CERTIFICATE OF COMPLIANCE ...........................................................................23

CERTIFICATE OF SERVICE ..................................................................................24

    EX. A—ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE

    EX. B—JOINT CERTIFICATION FOR DIRECT, INTERLOCUTORY APPEAL

    EX. C—FIFTH CIRCUIT ORDER GRANTING MOTION FOR LEAVE TO APPEAL, *NAVIENT SOLUTIONS, LLC V. CROCKER*

    EX. D—TRANSCRIPT FROM HEARING ON MOTION FOR SUMMARY JUDGMENT, *CROCKER V. NAVIENT SOLUTIONS, LLC*

USBC 154

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Accounts Mgmt. v. Vasa,*
    No. 14–40109, 2014 WL 6607512 (Bankr. D.S.D. Nov. 19, 2014)...................11

*Am. Airlines Fed. Credit Union v. Cardona,*
    No. 15–16365, 2015 WL 9459883 (Bankr. S.D. Fla. Dec. 23,
    2015) ......................................................................................................................11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................3

*Beesley v. Royal Bank of Canada,*
    No. 12–24194, 2013 WL 5134404 (Bankr. W.D. Pa. Sept. 13,
    2013) ......................................................................................................................11

*Benson v. Corbin,*
    506 B.R. 287 (Bankr. W.D. Wash. 2014)...........................................................11

*Brown v. CitiBank, N.A.,*
    539 B.R. 853 (Bankr. C.D. Cal. 2015) ...................................................10, 11, 19

*Brown v. Rust,*
    510 B.R. 562 (Bankr. E.D. Ky. 2014) .................................................................11

*Campbell v. Citibank, N.A.,*
    547 B.R. 49 (Bankr. E.D.N.Y. 2016) .....................................................11, 12, 19

*Carow v. Chase Loan Serv.,*
    No. 10–30264, 2011 WL 802847 (Bankr. D.N.D. Mar. 2, 2011) ......................11

*Chicago Patrolmen's Fed. Credit Union v. Daymon,*
    490 B.R. 331 (Bankr. N.D. Ill. 2013) .................................................................11

*Citizens Bank v. Decena,*
    549 B.R. 11 (Bankr. E.D.N.Y. 2016), *rev'd and remanded on other*
    *grounds,* 562 B.R. 202 (E.D.N.Y. 2016)............................................................12

*Crocker et al. v. Navient Solutions, LLC et al.*,
  No. 18–20254 (5th Cir.)..............................................................*passim*

*De la Rosa v. Kelly*,
  —B.R.—, No. 17–3320, 2018 WL 1474890 (Bankr. S.D. Tex.
  Mar. 23, 2018)...........................................................................11

*Desormes v. United States*,
  569 F. App'x 42 (2d Cir. 2014) .........................................10, 11, 19

*Dufrane v. Navient Solutions, Inc.*,
  566 B.R. 28 (Bankr. C.D. Cal. 2017) ...............................................12

*In re Essangui*,
  573 B.R. 614 (Bankr. D. Md. 2017) .................................................12

*Ford v. Ford Motor Corp.*,
  574 F.3d 1279 (10th Cir. 2009) ......................................1, 14, 16, 18

*Ghadimi v. Ashai*,
  211 F. Supp. 3d 1215 (C.D. Cal. 2016) ............................................16

*Grogan v. Garner*,
  498 U.S. 279 (1991).....................................................................9

*Harwell v. Dalton*,
  298 F. App'x 733 (10th Cir. 2008) ....................................................2

*Inst. Of Imaginal Studies v. Christoff*,
  527 B.R. 624 (B.A.P. 9th Cir. 2015) ...............................................12

*Kashikar v. Turnstiel Capital Mgmt., LLC*,
  567 B.R. 160 (B.A.P. 9th Cir. 2017) ...............................................12

*Liberty Bay Credit Union v. Belforte*,
  No. 10–22742, 2012 WL 4620987 (Bankr. D. Mass. Oct. 1, 2012) ................11

*London-Marble v. Sterling*,
  No. 06–274, 2008 WL 2705374 (D. Ariz. July 9, 2008).......................11, 12

*Maas v. Northstar Educ. Fin., Inc.*,
  514 B.R. 866 (W.D. Mich. 2014) ....................................................11

vi

*MACTEC Inc. v. Gorelick,*
   427 F.3d 821 (10th Cir. 2005) ................................................................ 7

*McDaniel,*
   No. 17–1274, Dkt. No. 30
   (Bankr. D. Colo. Sept. 24, 2018) ........................................................ 12

*In re Meyer,*
   No. 15–13193, 2016 WL 3251622
   (Bankr. N.D. Ohio June 6, 2016) ........................................................ 12

*Micko v. Student Loan Fin. Corp.,*
   356 B.R. 210 (Bankr. D. Ariz. 2006) ............................................ 11, 12

*Nunez v. Key Educ. Res./GLESI,*
   527 B.R. 410 (Bankr. D. Or. 2015) .................................................... 12

*Nypaver v. Nypaver,*
   581 B.R. 431 (Bankr. W.D. Pa. 2018) ...................................... 11, 12, 19

*Rabbi Harry H. Epstein School, Inc. v. Goldstein,*
   No. 11–81255, 2012 WL 7009707
   (Bankr. N.D. Ga. Nov. 26, 2012) ........................................................ 11

*Rizor v. Acapita Educ. Fin. Corp.,*
   553 B.R. 144 (Bankr. D. Alaska 2016) .............................................. 11

*Roy v. Sallie Mae, Inc.,*
   No. 08–33318, 2010 WL 1523996 (Bankr. D.N.J. Apr. 15, 2010) .................... 12

*Rumer v. Am. Educ. Servs.,*
   469 B.R. 553 (Bankr. M.D. Pa. 2012) ................................................ 11

*In re Schultz,*
   No. 16–3042, 2016 WL 8808073 (Bankr. D. Minn. Dec. 13, 2016) ................ 12

*Sensient Techs. Corp. v. Baiocchi,*
   389 B.R. 828 (Bankr. E.D. Wis. 2008) ...................................... 10, 12, 19

*Shaw v. EduCap, Inc.,*
   No. 08–30319, 2015 WL 1000213 (Bankr. S.D. Tex. Mar. 3, 2015) ............... 11

USBC 157

*Skipworth v. Citibank Student Loan Corp.*,
    No. 09–83982, 2010 WL 1417964 (Bankr. N.D. Ala. Apr. 1, 2010) ................. 12

*Swenson v. Swenson*,
    No. 16–10016, 2016 WL 4480719 (Bankr. W.D. Wis. Aug. 23,
    2016) ........................................................................................................... 12

*United Student Aid Funds, Inc. v. Espinosa*,
    559 U.S. 260 (2010) ................................................................................... *passim*

*Wiley v. Wells Fargo Bank, N.A.*,
    579 B.R. 1 (Bankr. D. Me. 2017) ................................................................ 12

*Woolsey v. Citibank, N.A.*,
    696 F.3d 1266 (10th Cir. 2012) (Gorsuch, J.) ................................................ 16

**STATUTES**

11 U.S.C. § 523 ............................................................................................... *passim*

11 U.S.C. § 727, 1328 ........................................................................................ 9

11 U.S.C. § 1328 ................................................................................................ 9

28 U.S.C. § 158 ................................................................................... 1, 14, 16, 17, 20

28 U.S.C. § 1292 ............................................................................................... 1, 14

**RULES**

Fed. R. App. P. 5 ................................................................................................ 1

Fed. R. App. P. 6 ................................................................................................ 1

Fed. R. Bankr. P. 8004 ...................................................................................... 2

Fed. R. Bankr. P. 8006 ...................................................................................... 2

Fed. R. Civ. P. 60 .............................................................................................. 8, 9

USBC 158

## SUMMARY OF ARGUMENT

This appeal presents two important questions about the discharge order entered at the conclusion of a bankruptcy case. First, must a Chapter 13 plan or the order confirming it contain an express finding on the dischargeability of student loans to operate as res judicata? And second, are private student loans excepted from discharge as "obligations to repay funds received as educational benefits" under § 523(a)(8)(A)(ii) of the Bankruptcy Code?

Appellant-Defendant Navient Solutions, LLC ("Navient") raised these issues in a motion to dismiss the adversary proceeding below. The bankruptcy court denied Navient's motion, concluding (1) that Plaintiffs' Chapter 13 plan did not contain an "explicit statement or determination as to the dischargeability of any of Plaintiffs' student loans[,]" so was not a final determination on the merits of that question, and (2) that private student loans are not excepted from discharge under § 523(a)(8)(A)(ii). *See* Ex. A at 8–15.

Navient seeks permission to appeal the bankruptcy court's order, attached as Exhibit A. This Court has jurisdiction and discretion to accept the appeal under 28 U.S.C. § 158 and the Federal Rules of Bankruptcy Procedure (as incorporated by the Federal Rules of Appellate Procedure). 28 U.S.C. § 158(a)(3), (d)(2)(A)(i), (iii); Fed. R. App. P. 5(a)(2), 6(c); Fed. R. Bankr. P. 8004(a), (e), 8006(e), (g). The parties

agree about the need for this Court's guidance, and therefore jointly certified the matter for direct, interlocutory appeal pursuant to 28 U.S.C. § 158(d)(2)(A). Ex. B.

This Court should accept the appeal. First, this Court has not spoken to the precise issue of whether the treatment of student loans in a confirmed Chapter 13 plan operates as res judicata as to the dischargeability of such loans—or whether an express finding as to dischargeability is required. It should do so now, particularly given that a question exists as to whether the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), controls the case. In that case, the Supreme Court held that a plan's treatment of student loans *does* operate as res judicata, but the bankruptcy court held that *Espinosa* is inapplicable here because it purportedly requires a level of "express finding" that the plan in this case lacks (and Plaintiffs claim that *Espinosa* is limited to federal loans).

Second, neither the Supreme Court nor this Court has considered whether private student loans are excepted from discharge under § 523(a)(8)(A)(ii) of the Bankruptcy Code. Other courts are split on the question. The majority, including the Second Circuit (in an unpublished decision) and the Western District of Michigan (in an appellate capacity), find that private student loans *are* excepted from discharge under § 523(a)(8)(A)(ii). The minority, including the bankruptcy court below, the Bankruptcy Appellate Panel for the Ninth Circuit, and the Bankruptcy

2

Court for the Eastern District of New York, do not. Binding guidance from this Court is thus needed.

Finally, direct, immediate review by this Court will materially advance the case. This petition presents gating questions that this Court has not previously considered. Judicial economy favors early appellate guidance, which will save the bankruptcy court and the parties the considerable resources that discovery, subsequent dispositive motions, and (possibly) trial will consume. In addition, the public interest also favors direct, interlocutory review by this Court. Navient's petition presents questions that arise with relative frequency in bankruptcy cases. Early, authoritative guidance from this Court would thus benefit more than just the parties here; it would benefit the public at large.

## I.   BACKGROUND NECESSARY TO UNDERSTAND THE QUESTIONS PRESENTED[1]

### A.   Appellees-Plaintiffs contend that they discharged their obligations to repay their private student loans in bankruptcy.

All facts necessary to resolve the questions presented are undisputed. Between 2004 and July 2007, Plaintiffs borrowed over $100,000 in six Sallie Mae Tuition Answer Loans (the "Educational Loans") for Laura Paige McDaniel to attend Lakeland College. Adversary Proceeding No. 17–1274, Dkt. No. 1 ¶¶ 20, 22,

---

[1]   Because this appeal proceeds from the denial of Navient's motion to dismiss, the following facts are taken from Plaintiffs' complaint, Plaintiff's bankruptcy schedules, and documents of which the Court can take judicial notice. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

25. 26 (Bankr. D. Colo. July 12, 2017) (the "AP"). Navient is the current servicer for Plaintiffs' Educational Loans.

In their promissory notes, Plaintiffs certified that "all of the loan proceeds are to pay expenses directly related to attending" Lakeland College. AP, Dkt. No. 1, Ex. B at 6, 31, 38. Plaintiffs also certified that they "must immediately repay any funds that [they] receive which cannot reasonably be attributed to meeting . . . educational expenses related to attendance at" Lakeland College. *Id.* at 6, 14, 31, 38.

Plaintiffs further agreed that any undisbursed funds obtained through the Educational Loans could be canceled if Ms. McDaniel "ceas[ed] to be enrolled at" Lakeland College." *Id.* at 5, 31, 37. And in at least one promissory note Plaintiffs certified that the relevant Educational Loan "is a qualified education loan as described in Section 221(d)(1) of the Internal Revenue Code of 1986 . . . and . . . therefore is not dischargeable in bankruptcy[.]" *Id.* at 14.

In December 2009, Plaintiffs filed a voluntary Chapter 13 bankruptcy petition in the U.S. Bankruptcy Court for the District of Colorado. *Id.* at ¶ 27. Plaintiffs listed eleven Navient loans in their bankruptcy schedules. Case No. 09–37480, Dkt. No. 1 at 31–33 (Bankr. D. Colo. Dec. 24, 2009) (the "Bankruptcy Case). In their schedules—which they signed under penalty of perjury— Plaintiffs labeled all of the Navient loans as "Educational." *Id.* Plaintiffs scheduled their obligations under all of their Educational Loans as non-contingent, liquidated, and undisputed. *Id.*

4

With their petition, Plaintiffs also filed their original Chapter 13 plan (the "Original Plan"). Bankruptcy Case, Dkt. No. 2 at 7. In their Original Plan, Plaintiffs indicated they had "no student loans," despite listing eleven "Educational" loans in Schedule F. *Id. Compare* Bankruptcy Case, Dkt. No. 1 at 31–33.

In January 2010, the Chapter 13 Trustee objected to confirmation of Plaintiffs' Original Plan because, among other things, it made "no provision for debtor's [*sic*] non-dischargeable student loan [*sic*]. 1322(b)(10) [*sic*]." Bankruptcy Case, Dkt. No. 12. Two months later, following a hearing, the bankruptcy court sustained the Chapter 13 Trustee's objection, denied confirmation of the Original Plan, and ordered Plaintiffs to file a new plan. Bankruptcy Case, Dkt. No. 18.

As the Court required, Plaintiffs filed their Amended Plan on April 1, 2010. Bankruptcy Case, Dkt. No. 25. Rather than omitting their Educational Loans as they did in their Original Plan, in the Amended Plan Plaintiffs indicated that they had "Student Loans." *Id.* at 6. Further, Plaintiffs expressly stated that their "student loans" would not be treated as "an unsecured Class Four claim," *id.*, thereby distinguishing their Educational Loans from their other dischargeable "Class Four" unsecured claims.

Next, far from seeking to discharge their Educational Loans, Plaintiffs drafted into their plan unique language providing that the Educational Loans would be "deferred until end of plan." *Id.* Nothing in the Amended Plan indicated that

5

Plaintiffs sought to discharge any portion of the Educational Loans. To the contrary, Plaintiffs expressly distinguished their Educational Loans from their other dischargeable Class Four unsecured claims.

The Amended Plan also provided that Debtors would make collective payments to all unsecured creditors, including Navient, totaling $40,134.10 during the five-year plan period. *Id.* at 6. Thus, the Amended Plan provided that all student-loan creditors would receive their *pro rata* share of plan payments as unsecured creditors during the plan payment period, deferring all other amounts to be paid under the terms of the respective non-discharged loans until the "end of plan," at which time those loans would be paid in full according to their terms. *Id.* at 6, ¶ IV.D.2.a.

The same day that they filed it, April 1, 2010, Plaintiffs served on Navient a copy of the Amended Plan. Bankruptcy Case, Dkt. No. 26. On May 4, 2010, the bankruptcy court entered its order confirming the Amended Plan (the "Confirmation Order"). Bankruptcy Case, Dkt. No. 32. Plaintiffs allege they paid Navient $26,782 as its share of the $40,134.10 total paid to unsecured creditors during the five-year payment period under the Amended Plan. AP. Dkt. No. 1 ¶ 28.

Five years after confirmation, Plaintiffs certified to the Court that they completed all plan payments and requested a discharge. Bankruptcy Case, Dkt. No. 53. The bankruptcy court issued its general discharge order (the "Discharge Order")

6

on March 3, 2015.  Bankruptcy Case, Dkt. No. 54.  The Discharge Order states that among the "[d]ebts that are not [d]ischarged" are "[d]ebts for most student loans." *Id.* at 2.

For two years following their discharge from their other unsecured claims, Plaintiffs allege they continued to make monthly payments to Navient on their Educational Loans, totaling $37,460.  AP, Dkt. No. 1 ¶ 33.  But in June 2017, more than two years after the discharge of their other claims, more than seven years after they confirmed their Amended Plan, and nearly eight years after they filed for bankruptcy listing eleven "Educational" loans as undisputed debts—all the while remaining silent about any intent to seek to discharge their Educational Loans—Plaintiffs sued Navient, contending that their Educational Loans are dischargeable and were discharged by the general Discharge Order.  *Id.* ¶¶ 35-41.

## II.  LEGAL BACKGROUND NECESSARY FOR THE QUESTIONS PRESENTED

### A.  Res judicata and Supreme Court precedent bar Plaintiffs' claims.

"Claim preclusion [res judicata] applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."  *MACTEC Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).  If a party demonstrates these elements, "res judicata is appropriate unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit."  *Id.*

7

The Supreme Court considered these principles in the Chapter 13 bankruptcy context in *Espinosa*.  There, a debtor filed a Chapter 13 plan that proposed to (impermissibly) discharge a portion of his student loan debt.  559 U.S. at 268–69. Although the debtor did not initiate the required adversary proceeding to obtain a dischargeability determination, the court confirmed his plan.  *Id.*  Before confirmation, the lender didn't object to the proposed discharge of part of the debtor's student loan.  *Id.* at 265.

Years later, the lender sought to collect on its student loan.  The debtor resisted on the basis of his confirmed plan.  The lender sought to set aside the confirmation order as void under Federal Rule of Civil Procedure 60(b)(4) because, the creditor argued, the order violated the Bankruptcy Code and Rules due to the debtor's failure to commence an adversary proceeding and obtain a determination of dischargeability.  *Id.*

The Supreme Court first held that "a Chapter 13 plan that proposes to discharge a student loan debt without [a dischargeability determination] violates §§ 1328(a)(2) and 523(a)(8)." *Id.* at 276.  "Failure to comply with this self-executing requirement[,]" the Court went on, "should prevent confirmation of the plan even if the creditor fails to object, or to appear in the proceeding at all." *Id.* at 276–77.  The Court then admonished the bankruptcy court that "to comply with § 523(a)(8)'s directive, [it] must make an independent determination of [dischargeability] before

8

a plan is confirmed, even if the creditor fails to object or appear in the adversary proceeding." *Id.* at 277–78 (internal quotations and citations omitted).

The Court also held, however, that the lender's failure to object to confirmation or to take proper action required by Federal Rule of Civil Procedure 60 precluded relief from the bankruptcy court's improper confirmation order. It wrote that, "[g]iven the [Bankruptcy] Code's clear and self-executing requirement for [a dischargeability determination before a student loan debt can be discharged], the Bankruptcy Court's failure to make a [dischargeability determination] before confirming Espinosa's plan was a legal error." *Id.* at 275. "But[,]" the Court went on, "the order remains enforceable and binding on [the lender] because [the lender] had notice of the error and failed to object or timely appeal." *Id.* at 275 (internal citation omitted). In other words, *Espinosa* held that where a plan addresses dischargeability of student loans, it operates as res judicata even if the parties and the bankruptcy court did not undertake a separate adversary proceeding before making a dischargeability determination.

**B.     Congress excepted student loans from discharge in bankruptcy.**

When a debtor completes his or her bankruptcy case, the court issues an order discharging the debtor from liability on properly scheduled debts. *See, e.g.*, 11 U.S.C. §§ 727, 1328. That statutory right is qualified. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) ("We have previously held that a debtor has no constitutional

9

or 'fundamental' right to a discharge in bankruptcy."). Specifically, Congress has

excepted certain categories of debts from discharge in bankruptcy. *Id.*; 11 U.S.C.

§ 523. Chief among them are debts for student loans. 11 U.S.C. § 523(a)(8).

Specifically, § 523(a)(8) of the Bankruptcy Code provides that a discharge

does not apply to:

> (A)(i)   an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (A)(ii)   an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B)   any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8).[2] Congress most recently revised § 523(a)(8) in April 2005,

when it passed the Bankruptcy Abuse Prevention and Consumer Protection Act

("BAPCPA") amendments to the Bankruptcy Code. Pub. L. No. 109–08, § 220, 119

Stat. 23, 59 (Apr. 20, 2005).

Since the enactment of the BAPCPA amendments, a majority of courts have

concluded that private student loans are excepted from discharge as "obligations to

---

[2] This exception to discharge does not apply if it would cause an "undue hardship on the debtor and the debtor's dependents[.]" 11 U.S.C. § 523(a)(8). Plaintiffs have not alleged undue hardship in this case.

10

repay funds received as educational benefits" under § 523(a)(8)(A)(ii). *See, e.g.,*

*Desormes v. United States*, 569 F. App'x 42, 43 (2d Cir. 2014); *Brown v. CitiBank,*

*N.A.*, 539 B.R. 853, 857–59 (Bankr. C.D. Cal. 2015); *Sensient Techs. Corp. v.*

*Baiocchi*, 389 B.R. 828, 829–32 (Bankr. E.D. Wis. 2008).[3]  A number of decisions

from other bankruptcy courts, however, have concluded that § 523(a)(8)(A)(ii) does

not encompass obligations to repay private student loans.  *See, e.g., Nypaver v.*

*Nypaver*, 581 B.R. 431 (Bankr. W.D. Pa. 2018) and *Campbell v. Citibank, N.A.*, 547

B.R. 49 (Bankr. E.D.N.Y. 2016).

　　Approximately twenty decisions have adopted the legal position that Navient

advocates here.[4]  And approximately fifteen decisions, including the bankruptcy

---

[3]  A 2008 decision from the District of Arizona concluded that private student loans were not excepted from discharge under the pre-BAPCPA version of § 523(a)(8), and thus does not apply here. *London-Marble v. Sterling*, No. 06–274, 2008 WL 2705374, at *3–4 (D. Ariz. July 9, 2008). Further, *London-Marble* diverged from the earlier finding in *Micko v. Student Loan Fin. Corp.* that student loans are excepted from discharge.  356 B.R. 210, 213–17 (Bankr. D. Ariz. 2006). *Micko* also applied the pre-BAPCPA version of § 523(a)(8), but it analyzed the amended language at length in doing so.

[4]  *See, e.g., Desormes*, 569 F. App'x 42 (2d Cir. 2014); *Maas v. Northstar Educ. Fin., Inc.*, 514 B.R. 866 (W.D. Mich. 2014) (sitting in an appellate capacity); *De la Rosa v. Kelly*, —B.R.—, No. 17–3320, 2018 WL 1474890, at *3–7 (Bankr. S.D. Tex. Mar. 23, 2018) *Rizor v. Acapita Educ. Fin. Corp.*, 553 B.R. 144 (Bankr. D. Alaska 2016); *Shaw v. EduCap, Inc.*, No. 08–30319, 2015 WL 1000213, at *2–3 (Bankr. S.D. Tex. Mar. 3, 2015); *Am. Airlines Fed. Credit Union v. Cardona*, No. 15–16365, 2015 WL 9459883 (Bankr. S.D. Fla. Dec. 23, 2015); *Brown*, 539 B.R. at 853; *Brown v. Rust*, 510 B.R. 562 (Bankr. E.D. Ky. 2014); *Benson v. Corbin*, 506 B.R. 287 (Bankr. W.D. Wash. 2014); *Accounts Mgmt. v. Vasa*, No. 14–40109, 2014 WL 6607512 (Bankr. D.S.D. Nov. 19, 2014); *Beesley v. Royal Bank of Canada*, No.

11

court below, have adopted the legal position asserted by Plaintiffs.[5]  The question is

now before the Fifth Circuit on direct, interlocutory appeal.  *Crocker et al. v. Navient*

*Solutions, LLC et al.*, No. 18–20254 (5th Cir.).  That appeal is fully briefed and

awaiting calendaring of oral argument, if any, and resolution.

---

12–24194, 2013 WL 5134404 (Bankr. W.D. Pa. Sept. 13, 2013); *Chicago Patrolmen's Fed. Credit Union v. Daymon*, 490 B.R. 331 (Bankr. N.D. Ill. 2013); *Rumer v. Am. Educ. Servs.*, 469 B.R. 553 (Bankr. M.D. Pa. 2012); *Liberty Bay Credit Union v. Belforte*, No. 10–22742, 2012 WL 4620987 (Bankr. D. Mass. Oct. 1, 2012); *Rabbi Harry H. Epstein School, Inc. v. Goldstein*, No. 11–81255, 2012 WL 7009707 (Bankr. N.D. Ga. Nov. 26, 2012); *Carow v. Chase Loan Serv.*, No. 10–30264, 2011 WL 802847 (Bankr. D.N.D. Mar. 2, 2011); *Skipworth v. Citibank Student Loan Corp.*, No. 09–83982, 2010 WL 1417964 (Bankr. N.D. Ala. Apr. 1, 2010); *Roy v. Sallie Mae, Inc.*, No. 08–33318, 2010 WL 1523996 (Bankr. D.N.J. Apr. 15, 2010); *Baiocchi*, 389 B.R. at 828; *Micko*, 356 B.R. at 216 (discussing BAPCPA amendment, but applying pre-BAPCPA statute).

[5]  *See, e.g.*, *McDaniel*, No. 17–1274, Dkt. No. 30 (Bankr. D. Colo. Sept. 24, 2018); *Kashikar v. Turnstiel Capital Mgmt., LLC*, 567 B.R. 160 (B.A.P. 9th Cir. 2017); *Inst. Of Imaginal Studies v. Christoff*, 527 B.R. 624 (B.A.P. 9th Cir. 2015); *Crocker*, Ex. A; *Nypaver*, 481 B.R. at 431; *Wiley v. Wells Fargo Bank, N.A.*, 579 B.R. 1 (Bankr. D. Me. 2017); *In re Essangui*, 573 B.R. 614 (Bankr. D. Md. 2017); *Dufrane v. Navient Solutions, Inc.*, 566 B.R. 28 (Bankr. C.D. Cal. 2017); *In re Schultz*, No. 16–3042, 2016 WL 8808073 (Bankr. D. Minn. Dec. 13, 2016) (interlocutory ruling not reduced to order, which is now a nullity because the case settled); *Campbell*, 547 B.R. at 28; *Citizens Bank v. Decena*, 549 B.R. 11 (Bankr. E.D.N.Y. 2016), *rev'd and remanded on other grounds*, 562 B.R. 202 (E.D.N.Y. 2016); *In re Meyer*, No. 15–13193, 2016 WL 3251622 (Bankr. N.D. Ohio June 6, 2016); *Swenson v. Swenson*, No. 16–10016, 2016 WL 4480719 (Bankr. W.D. Wis. Aug. 23, 2016); *Nunez v. Key Educ. Res./GLESI*, 527 B.R. 410 (Bankr. D. Or. 2015); *London-Marble*, 2008 WL 2705374 at *3–4 (applying pre-BAPCPA statute).

USBC 170

## III.   THE BANKRUPTCY COURT'S DECISION BELOW

### A.   The bankruptcy court denied Navient's motion to dismiss, which decision the parties agree is appropriate for direct, interlocutory appeal to this Court.

Navient moved to dismiss Plaintiffs' claims on October 10, 2017. The motion asserted two arguments. First, that principles of res judicata bar Plaintiffs' claims, as the treatment of their Educational Loans in their Chapter 13 plan was litigated to final determination—i.e., that the Loans would *not* be discharged, but would be "deferred until end of plan." And second, that Plaintiffs' student loans were excepted from discharge as "obligations to repay funds received as educational benefits" under § 523(a)(8)(A)(ii). The bankruptcy court heard the motion on March 20, 2018 and denied it roughly six months later. *See* Exs. A, C.

On res judicata, the bankruptcy court noted that Plaintiffs' Amended Plan "is final and binds Plaintiffs and all of their creditors, including" Navient. Ex. A. at 8. But res judicata does not bar Plaintiffs' claims here, the court reasoned, because the Amended Plan "did not specify one way or the other whether [Plaintiffs' Educational Loans] were—or were not—discharged." *Id.* More to the point, the bankruptcy court emphasized that the Amended Plan does not state whether Plaintiffs' Educational Loans were non-dischargeable. *Id.* And the court distinguished *Espinosa* on that basis. *Id.* at 9. In so doing, the court ignored that it had sustained the trustee's objection and ruled that the Educational Loans were non-dischargeable,

13

which resulted in the filing and confirmation of the Amended Plan treating the loans as non-dischargeable.

On dischargeability, the bankruptcy court adopted the minority position by interpreting § 523(a)(8)(A)(ii) to exclude private loans. *Id.* Among other things, the bankruptcy court focused on the use of the phrase "obligation to repay funds" in § 523(a)(8)(A)(ii), as opposed to the use of the term "loan" in § 523(a)(8)(A)(i) and (B). *Id.* The bankruptcy court also focused on the use of the phrase "received *as* educational benefits" in § 523(a)(8)(A)(ii), which the court found "sets an educational benefit apart from a loan, and excepts from discharge a category of obligations in Section 523(a)(8)(A)(ii) that does not include loans but rather, 'educational benefit[s]', 'scholarships', and 'stipends.'" *Id.* at 11.

## IV.   JURISDICTIONAL STATEMENT

As discussed more fully below, this Court has jurisdiction to hear a direct appeal from an interlocutory order if the parties acting jointly certify: (1) the order involves a question for which no controlling circuit court or Supreme Court precedent exists, or a matter of public importance; (2) the order involves a legal question requiring resolution of conflicting decisions; or (3) an immediate appeal may materially advance the case. 28 U.S.C. § 158(a)(3), (d)(2)(A). *See, e.g., Ford*, 574 F.3d at 1281–82.

14

The parties agree that this matter satisfies all three conditions for direct, interlocutory appeal, and therefore made such a certification. This Court thus has jurisdiction under 28 U.S.C. § 158(d)(2)(A).

## V.   QUESTIONS PRESENTED

Navient's appeal will present the following legal questions:

1.     Did the bankruptcy court err in denying NSL's motion to dismiss on res judicata grounds?

2.     Did the bankruptcy err in concluding that private student loans are not excepted from discharge as "obligations to repay funds received as educational benefits" under § 523(a)(8)(A)(ii) of the Bankruptcy Code?

## VI.   RELIEF REQUESTED

Navient will ask this Court to (a) reverse the bankruptcy court's order denying its motion to dismiss, (b) hold that Plaintiffs' claims are barred by principles of res judicata under *Espinosa* and its progeny, (c) hold, in the alternative, that private student loans are excepted from discharge as "obligations to repay funds received as educational benefits" under § 523(a)(8)(A)(ii) of the Bankruptcy Code, and (d) remand the case for dismissal of the adversary proceeding with prejudice.

USBC 173

**VII.** **REASONS THE APPEAL SHOULD BE ALLOWED**

**A.** **The Court has jurisdiction to accept a direct, interlocutory appeal of the order.**

Before the BAPCPA amendments, no direct route of appeal from the bankruptcy court to the circuit court existed. Instead, a party appealed first to the district court or bankruptcy appellate panel and then to the circuit court if needed. Two flaws plagued this structure. First, the extra layer of review brought attendant expense. Second, decisions by a district court or bankruptcy appellate panel are generally not binding and lack *stare decisis* value. *See, e.g.*, *Ghadimi v. Ashai*, 211 F. Supp. 3d 1215, 1220–21 (C.D. Cal. 2016). Further, the first problem compounded the second: the cost of proceeding through two layers of review meant that many appeals stopped at the district court or bankruptcy appellate panel.

For these reasons, Congress provided fast-track access to the circuit courts of appeals in the BAPCPA amendments. 28 U.S.C. § 158(d). *See, e.g.*, *Ford*, 574 F.3d at 1281–82; *see also Woolsey v. Citibank, N.A.*, 696 F.3d 1266, 1268 (10th Cir. 2012) (Gorsuch, J.) (discussing direct, interlocutory appeals). Now, the parties acting jointly may certify matters for direct appeal to the circuit courts where the following circumstances exist:

> i.     the judgment, order or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

16

ii.   the judgment, order or decree involves a question of law requiring resolution of conflicting decisions; or

iii.   an immediate appeal from the judgment, order or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A).[6]   The parties agree that all three bases for direct, interlocutory appeal exist here, giving the Court jurisdiction to accept a direct, interlocutory appeal of the bankruptcy court's order.

**B.**    **The Court should accept a direct, interlocutory appeal of the order.**

As discussed more fully below, the Court should accept a direct, interlocutory appeal of the bankruptcy court's order because it: (a) involves questions of law for which no controlling precedent exists and matters of public importance; (b) involves resolutions of conflicting decisions; and (c) will materially advance the litigation below. Among other things, the Court can provide guidance on whether a Chapter 13 plan must contain an explicit finding of non-dischargeability to operate as res judicata. The Court can also provide guidance for a question of broad concern on which other courts are split: the non-dischargeability of private student loans in bankruptcy. These issues are not fact-intensive. Finally, direct, immediate appeal will materially advance the litigation below: it will conserve the bankruptcy court's and the parties' resources by authoritatively ruling on threshold issues that will

---

[6]   The Court's acceptance of a direct appeal satisfies the requirement that Navient obtain leave to appeal an interlocutory order. Fed. R. Bankr. P. 8004(e).

entirely dispose of the case if Navient prevails. *See, e.g., Ford*, 574 F.3d at 1281–82 (accepting direct, interlocutory appeal).

### 1. *The order involves questions of law on which no controlling precedent exists, resolution of conflicting decisions, and matters of public importance.*

This Court has not spoken to whether a Chapter 13 plan must contain an explicit finding of non-dischargeability to operate as res judicata. The bankruptcy court concluded that it must—even where the issue is litigated prior to confirmation of the plan and the plan is amended to comport with the bankruptcy court's ruling on a trustee's objection that the plan could not be confirmed until it provided appropriate treatment for Plaintiffs' non-dischargeable loans. The parties dispute the extent to which the Supreme Court's *Espinosa* decision controls this question. Navient asserts that, under *Espinosa*: (1) if a debtor wishes to discharge student loans in a Chapter 13 plan, he or she must seek and obtain a dischargeability order before or as a precondition of plan confirmation; and (2) the treatment of student loans in a confirmed chapter 13 plan binds the debtors and creditors—even if the parties and the bankruptcy court do not undertake a separate adversary proceeding on dischargeability before confirming the plan. Plaintiffs, on the other hand, argue that the Supreme Court in *Espinosa* "never held (or even addressed) that the question of dischargeability was *res judicata*[,]" and that its decision was limited to "federally insured loans" in any event. Dkt. No. 10 at 7, 10 n.23.

18

Further, neither this Court nor the Supreme Court has determined whether private student loans are excepted from discharge as "obligations to repay funds received as educational benefits" under § 523(a)(8)(A)(ii) of the Bankruptcy Code. Other courts are split. Since the passage of the BAPCPA amendments, a majority of courts have held that private student loans are excepted from discharge under § 523(a)(8)(A)(ii). *See, e.g., Desormes*, 569 F. App'x at 43; *Brown*, 539 B.R. at 857–59; *Baiocchi*, 389 B.R. at 829–32. But a number of other bankruptcy decisions—including by the bankruptcy court below—have found that § 523(a)(8)(A)(ii) does not encompass obligations to repay private student loans. *See, e.g., Nypaver*, 581 B.R. at 431 and *Campbell*, 547 B.R. at 49. The only decision from a circuit court of appeals—the Second Circuit's *Desormes* opinion, which adopted the majority position—is unpublished.[7]

Finally, both issues involve matters of public concern. The first, res judicata, addresses the extent to which public documents approved by a court bind debtors and creditors in a bankruptcy case. It also addresses the extent to which Supreme Court precedent controls that question. And the second, the dischargeability of student loans, addresses a question that arises with relative frequency in bankruptcy cases and similarly affects debtors and creditors alike.

---

[7] The Fifth Circuit accepted a direct, interlocutory appeal to resolve whether § 523(a)(8)(A)(ii) encompasses private student loans. *Crocker et al. v. Navient Solutions, LLC et al.*, No. 18–20254 (5th Cir.). This Court should do the same.

19

USBC 177

**2.** ***Direct, immediate appeal of the order would materially advance the suit below and the public's interest.***

When the bankruptcy court denied Navient's motion to dismiss, it made threshold findings about the viability of Plaintiffs' claims and causes of action. Those findings concern questions that this Court does not appear to have previously considered. Because Navient has other fact-intensive defenses available to Plaintiffs' claims, economy favors appellate review of the bankruptcy court's ruling on its motion to dismiss before the parties engage in potentially unnecessary, expensive, and disruptive discovery—not to mention motions practice and trial.

The public also has an interest in prompt, conclusive guidance from the Tenth Circuit. The questions that Navient's motion presented concern the treatment of student loans in bankruptcy. How the Tenth Circuit resolves them will affect numerous parties—both debtors and creditors—throughout the Circuit. As with the parties, the public at large has an interest in a speedy answer to pressing questions of the treatment of student loans in bankruptcy that garner significant media attention and affect many debtors in this Circuit and around the country.

Faced with questions similar to those at issue here, the Fifth Circuit accepted a direct, interlocutory appeal from the U.S. Bankruptcy Court for the Southern District of Texas. *Navient Solutions, LLC v. Crocker*, No. 18-90016 (5th Cir. April 25, 2018) (copy attached hereto as Exhibit C). The bankruptcy court in that case *sua sponte* certified under 28 U.S.C. § 158(d) its resolution of a motion for summary

20

judgment raising the same 11 U.S.C. § 523(a)(8)(A)(ii) issues as in this case because that would be the "most efficient way" of obtaining conclusive appellate review of dispositive, gating questions. *See Haas a/k/a Crocker v. Navient, Inc.*, Adv. Case No. 16-03175, Dkt. No. 197 at 12 (Bankr. S.D. Tex. March 5 2018) (copy attached as Ex. D hereto). Further to this point, given the uncertainty and divided opinions on the legal questions, the bankruptcy court in *Crocker* noted that it did not "want to go through a long, drawn out, complicated . . . hearing if [it] turn[ed] out to be wrong on" the potentially dispositive legal questions. *Id.* And, in addition to serving the interests of the parties and the court, certification would serve the greater public interest, given that "the issue regarding the statutory interpretation question [i.e., whether § 523(a)(8)(A)(ii) encompasses private student loans] . . . comes up a lot." *Id.* The matter is now fully briefed and under advisement by the Fifth Circuit.

## CONCLUSION

For the reasons described above, the Court should accept this matter for direct, interlocutory appeal under 28 U.S.C. § 158(d)(2).

*[Signature follows on next page.]*

USBC 179

Dated: October 9, 2018          Respectfully submitted,

_/s/ Eric E. Johnson_

Eric E. Johnson
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Telephone: 303.297.2900
E-Mail: ejohnson@shermanhoward.com

_Counsel for Appellant_

22

USBC 180

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because:

- It contains 5,178 words.

- I relied on my word processor to obtain the count and it is Word Version 2010.

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E) because:

- It has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.


Dated:  October 9, 2018.

/s/ *Eric E. Johnson*
*Counsel for Appellant*

USBC 181

## CERTIFICATIONS

1.      I hereby certify all required privacy redactions have been made.

2.      I hereby certify that the hard paper copies of this brief which are being submitted to the Court are exact copies of the PDF version of this brief which was filed electronically via the Court's ECF system.

3.      I hereby certify that a copy of the **foregoing UNOPPOSED PETITION FOR DIRECT, INTERLOCUTORY APPEAL**, as submitted in Digital Form via the court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the most recent version of a commercial virus scanning program (Kaspersky Security for Virtualization 3.0 Light Agent Service Pack 1), updated October 9, 2018), and according to the program are free of viruses.

Dated:  October 9, 2018.

/s/ *Eric E. Johnson*
*Counsel for Appellant*

24

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2018, I electronically filed the foregoing

Petition with the Clerk of this Court using the CM/ECF System, which will send a

notification of electronic filing to all counsel of record who are registered CM/ECF

users, and that I served a copy on counsel for Appellees-Plaintiffs by email and U.S.

Mail, as follows:

Austin Smith,
Smith Law Group
3 Mitchell Place
New York, New York 10017
Austin@acsmithlawgroup.com

/s/ *Eric E. Johnson*
*Counsel for Appellant*

USBC 183

**Ex. A**

**ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:

BYRON PATTERSON McDANIEL JR.
and LAURA PAIGE McDANIEL,

    Debtors.

Case No. 09-37480 KHT

Chapter 13

---

BYRON PATTERSON McDANIEL JR.
and LAURA PAIGE McDANIEL,

    Plaintiff,

v.

NAVIENT SOLUTIONS, LLC,

    Defendant.

Adversary No. 17-01274 KHT

## ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE

THIS MATTER comes before the Court on a Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6) and Motion to Strike Immaterial and Impertinent Matter Under Fed.R.Civ.P. 12(f) (the "Motion") (Docket #8) filed by Defendant Navient Solutions, LLC ("Navient"), the Response (Docket #10) filed by Debtors Byron Patterson McDaniel Jr. and Laura Paige McDaniel (together, "Plaintiffs" or "Debtors"), and Navient's Reply (Docket #14). The Court heard oral argument on March 20, 2018 and has considered the pleadings, arguments, and supplemental authorities submitted. For the reasons stated herein, the Court denies the Motion.

## I. JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Navient consents to entry of final orders or judgments of the Bankruptcy Court in this matter.

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

## II.    BACKGROUND

On December 24, 2009, Plaintiffs filed a voluntary Chapter 13 case and plan, using the standard form (Case No. 09-37480, Docket #2).

In their bankruptcy schedules, Plaintiffs listed debts to "Sallie Mae," described as "educational," and they also listed debts to "Great Lakes." (Case No. 09-37480, Docket #1). Nevertheless, Plaintiffs did not check the box in Section V.E. of the plan indicating they had student loans. The Chapter 13 Trustee objected to the plan on several grounds, including the plan "ma[de] no provision for debtor's non-dischargeable student loan." Case No. 09-37480, Docket #12.

On April 1, 2010, Plaintiffs filed an amended Chapter 13 plan (the "Plan"). This time, Plaintiffs indicated in Section V.E. of the Plan they had student loans and proposed to treat them "as an unsecured Class Four claim or as follows: deferred until end of plan." Case No. 09-37480, Docket #25. The Court confirmed the Plan on May 4, 2010. Case No. 09-37480, Docket #32.

A total of nine proofs of claim were filed by Sallie Mae entities and Great Lakes Higher Education Corp. Case No. 09-37480, Claims Register. The Great Lakes claims (Proofs of Claim Nos. 6 and 7) were subsequently assigned to Educational Credit Management Corp. and are based upon Federal Stafford Loans. At least five of the Sallie Mae claims (Proofs of Claim Nos. 25 through 29) were filed by or on behalf of Navient.

The Court entered an Order for Discharge of Plaintiffs on March 3, 2015, granting them a discharge under section 1328(a) of Title 11, United States Code ("Discharge Order"). Case No. 09-37480, Docket #54.

On June 30, 2017, the Court granted Plaintiffs' motion to reopen their Chapter 13 case. Thereafter, Plaintiffs filed this adversary proceeding against Navient, requesting a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Bankr.P. 7001(9) that certain "Tuition Answer Loans" held by Navient are not excepted from discharge under 11 U.S.C. § 523(a)(8) and were, therefore, discharged upon entry of the Discharge Order. They also seek damages for alleged willful violations of the discharge injunction by Navient pursuant to 11 U.S.C. §§ 105 and 524.

## III.   PLAINTIFFS' CLAIMS

The Complaint contains general allegations concerning the history of changes to 11 U.S.C. § 523(a)(8) and Navient's alleged efforts to deceive "student debtors and subvert the orderly working of the bankruptcy courts . . . [by] originating

2

USBC 186

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

and servicing dischargeable consumer loans and disguising them as non-dischargeable student loans." Complaint, ¶1. Navient seeks to strike many of these general allegations.

Plaintiffs allege Section 523(a)(8)[1], as originally enacted in 1978, prohibited discharge of federal student loans during the first five years of repayment absent undue hardship but "[t]hrough a series of amendments, which first lengthened and then eliminated the five-year non-dischargeability time frame, it has become increasingly difficult for debtors to attain discharges of their student loan debts." Complaint, ¶9. Prior to BAPCPA[2], Section 523(a)(8) was "easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of 'undue hardship.' [However, t]his fueled the belief that all student loans are non-dischargeable." Complaint, ¶13.

In 2005, the enactment of BAPCPA afforded *limited* protection to some private educational loan products "to the extent that such [lending] supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools solely for tuition, room, board, and books ('Qualified Education Loans')." Complaint, ¶11.

Plaintiffs allege Navient (formerly known as Sallie Mae or SLM Corporation) was not satisfied with the loan origination volume and restrictions associated with Qualified Educational Loans. Complaint, ¶12. Therefore, Navient created new loan products that are in essence dischargeable consumer loans, deceiving student borrowers by representing to them that "the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose." Complaint, ¶16 and ¶12.[3]

The problem was made worse because Section 523(a)(8) is self-executing, and "thus its correct application relies on the good faith and honesty of creditors." Complaint, ¶14. "Importantly, the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including 'debts for most student loans.'" *Id.*

---

[1] All Sections referred to herein are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

[2] Bankruptcy Abuse and Consumer Protection Act, Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereafter, "BAPCPA").

[3] While Navient was marketing these new loan products to student borrowers, Navient was also attempting to securitize the new loan products for sale on the secondary market. Plaintiffs allege to avoid securities violations, Navient disclosed to its potential (sophisticated) investors in student loan asset-backed securities prospectuses that "pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge." Complaint, ¶19.

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

Plaintiffs assert a creditor has the burden to prove its debt is encompassed by Section 523(a)(8) and is presumptively nondischargeable, then the burden shifts to the debtor to show undue hardship.  Complaint, ¶15.  "Absent an adversary proceeding, any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of law discharged upon entry of the discharge order.  Accordingly, it is left to the creditors to determine whether their particular educational loan is excepted from discharge by Section 523(a)(8) and, where confusion exists, seek clarity from the court.  The creditor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions." *Id.*

In the Complaint, Plaintiffs also make specific allegations regarding the Tuition Answer Loans held by Navient.  Plaintiffs allege the Tuition Answer Program is a direct-to-consumer loan product outside the confines of the financial aid office and in excess of the school's published "Cost of Attendance" ("COA"). Complaint, ¶17.  From 2004-2007, Plaintiffs borrowed $107,467 in six (6) Sallie Mae Tuition Answer Loans.  Complaint, ¶20.  The total balance of these Tuition Answer Loans is now $245,264, "despite consistent monthly payments of more than $2,000 for several years." Complaint, ¶21.

Plaintiff Laura Paige McDaniel attended Lakeland College from 2004 to 2007. Complaint, ¶22.  Her COA for qualified tuition and related expenses for each year was:  $5,340 in 2004, $10,650 in 2005, $6,450 in 2006, and $6,390 in 2007, as reflected on Tuition Statements issued by Lakeland College to Ms. McDaniel attached to the Complaint as Exhibit A.  Complaint, ¶23.  Ms. McDaniel borrowed the COA in the form of federal student loans, as reflected on Federal Stafford Loan documentation attached to the Complaint as Exhibit C.  Complaint, ¶24.

Plaintiffs borrowed an additional $107,467 through the Tuition Answer Loans, "made outside the financial aid office and [not] for qualified education expenses." Complaint, ¶25. Attached as Exhibit B to the Complaint are copies of loan applications and promissory notes for the Tuition Answer Loans.  *Id.*  The Tuition Answer Loans were not made solely for the COA and accordingly, were not "qualified education loans" as defined in Section § 523(a)(8)(B).  Complaint, ¶26.[4]

Debtors listed the Tuition Answer Loans on their Bankruptcy Schedule F. Complaint, ¶27.  Debtors made payments totaling $26,782 on the Tuition Answer Loans during their Chapter 13 bankruptcy case.  Complaint, ¶28.

---

[4] The Court notes, however, one of the loan documents in Exhibit B to the Complaint contains the following language: "this loan is a qualified education loan as described in Section 221(d)(1) of the Internal Revenue Code of 1986." Exhibit B to Complaint, p.14 of 40.

4

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

Navient was notified of the Discharge Order. Complaint, ¶30. Instead of charging the Tuition Answer Loans off, Navient demanded payments in violation of the Discharge Order and the Bankruptcy Code. Complaint, ¶32. Plaintiffs allege "owing to [Navient's] tactics, [P]laintiffs have repaid $37,460 on these discharged debts. These payments were not made 'voluntarily' but were made solely based on Defendant Navient's material misrepresentations regarding the legal status and character of the Tuition Answer Loans." Complaint, ¶33. Navient's "abusive, deceptive and harassing collection efforts" after entry of the Discharge Order "were made knowingly and willfully in violation of this Court's discharge orders and must be sanctioned." Complaint, ¶34.

## IV.    NAVIENT'S MOTION

Navient requests dismissal of the Complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) (Fed.R.Bankr.P. 7012(b)). Navient also moves to strike certain allegations as immaterial and impertinent matter under Fed.R.Civ.P.12(f) (Fed.R.Bankr.P. 7012(b)).

Navient asserts the confirmed Plan distinguished the Tuition Answer Loans from Plaintiffs' other dischargeable unsecured debts in Class Four and treated them "as non-dischargeable." Motion, p.16; *see also* Motion, p.17 ("[i]nstead of filing an adversary proceeding to seek a discharge of their loans, Debtors amended their [P]lan to expressly provide that their [Tuition Answer] Loans would *not be discharged* along with their other unsecured claims") (emphasis in original). Accordingly, Navient argues principles of *res judicata* prohibit Plaintiffs from reversing their earlier position taken in the Plan, in light of the finality of the Plan confirmation order and the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).

Alternatively, Navient argues dismissal is warranted because the Complaint, on its face, establishes the Tuition Answer Loans are excepted from discharge as "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii). Through the Tuition Answer Loans, Ms. McDaniel "received the funds that allowed [her] to attend Lakeland College. Indeed, [Plaintiffs] certified to Navient 'all of the loan proceeds . . . are to pay expenses directly related to attending' Lakeland College." Motion, p.19 (*quoting* Complaint, Exhibit B, pp.6, 31, 38 and 40). Then, when they filed bankruptcy, Plaintiffs scheduled the debt as "educational" in nature. Motion, p.19. "By enabling Ms. McDaniel to enroll in and attend college and support her personal decision to improve her life through higher

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

education, the loans conferred 'educational benefits' on her and are therefore excepted from discharge in bankruptcy." Motion, p.20.

In support, Navient cites cases holding private student loans are "obligation[s] to repay funds received as an educational benefit" under Section 523(a)(8)(A)(ii). Because the "Debtors do not, and cannot, allege that they used their [Tuition Answer] Loans for anything but educational purposes, nothing in Debtors' Complaint allows them to avoid the same result." Motion, pp.22-23. Navient contends the cases that hold otherwise are badly reasoned, and those courts misapply the principles of statutory interpretation they invoke.

Since the Tuition Answer Loans were not discharged, Navient asserts there can be no violation of the discharge injunction. In any case, Navient argues this claim should be dismissed because the discharge injunction is enforceable only through contempt proceedings and there is no private right of action for violation of the discharge injunction. Since Plaintiffs' claim must be construed as a claim for contempt, the order under which they seek contempt must be "clear and specific." The Discharge Order is not "clear and specific" but rather, provides most student loans are *not* dischargeable. Motion, p.35.

Navient also moves to strike paragraph 1 and paragraphs 9 through 19 of the Complaint because the allegations set forth in these twelve paragraphs constitute a "superfluous attack on [Navient's] character, inappropriate for a short and plain statement of the claim." Motion, p.37 (citations omitted). Navient contends the overblown and non-specific allegations in these paragraphs malign Navient, refer to "pervasive, systemic wrongdoing" and have no bearing on any issues in this case. Motion, p.38. Plaintiffs' "allegations of nonspecific fraud perpetrated by unnamed actors using unspecified means against unnamed victims are inflammatory, unnecessary, and irrelevant", and the Court should strike them as either a superfluous attack on character, or deficiently pleaded fraud claims. *Id.*

## V. DISCUSSION

### A. The Rule 12(b)(6) Motion to Dismiss.

Rule 8 notice pleading "requires a short and plan statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); Fed.R.Bankr.P. 7008. "[H]eightened fact pleading of specifics" is not required; rather, a party must assert "only enough facts to state a claim to relief that is plausible on its face . . . to nudg[e his] claims across the line from conceivable to plausible . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

USBC 190

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

Failure to state a claim is a defense that may be presented by motion. Fed.R.Civ.P. 12(b)(6); Fed.R.Bankr.P. 7012(b). On a motion to dismiss, this Court must accept all well-pled facts in the Complaint as true and view them in the light most favorable to Plaintiff. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015) (citing *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City and Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citing *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (quotation omitted)).

The Court reviews Navient's Motion with the above principles in mind. Section 523(a)(8) provides a discharge under section 1328(b) does not discharge an individual debtor from any debt –

(8) Unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –

(A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

(ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . .

11 U.S.C. § 523(a)(8).

### 1.     The Parties' Respective Burdens.

The parties agree Plaintiffs bear the burden of proving "undue hardship," but they disagree over who must bring an adversary proceeding to determine whether a student loan falls within the nondischargeable rubric of Section 523(a)(8) in the first place, as this section of the Bankruptcy Code is self-executing. This dispute

7

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

is academic; Plaintiffs did bring this adversary proceeding, and the Court finds it was not too late for them to do so. *Compare* Fed.R.Bankr.P. 4007(c) (complaints to determine dischargeability of a debt under Section 523(c) must be filed no later than 60 days after the first date set for the meeting of creditors) with *Gimbel v. U.S. Dep't of Educ. (In re Gimbel)*, Adv. No. 17-01048-j, 2018 WL 1229718, *4 (Bankr. D.N.M. March 8, 2018) ("there is no deadline expressly imposed by the Code or Rules for filing an adversary proceeding to determine whether a student loan debt should be excepted from the discharge under § 523(a)(8)").

As to the burden of proof, it remains on the creditor to show its debt is excepted from discharge under Section 523. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). Thus Navient, "as a creditor, must prove, by a preponderance of the evidence, that a debt exists and the debt is the type excepted from discharge under § 523(a)(8)." *Hoffman v. Educ. Credit Mgmt. Corp. (In re Hoffman)*, 557 B.R. 177, 184 (Bankr. D. Colo. 2016) (citations omitted).

### 2.  Principles of Res Judicata and *Espinosa.*

*Res judicata* applies when the following three elements exist: "(1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002) (as amended Jan. 14, 2003) (quoting *King v. Union Oil Co.*, 117 F.2d 443, 445 (10th Cir. 1997)).

Navient's *res judicata* argument suffers from a fatal flaw: the Plan does not say what Navient says it does. It is true the confirmed Plan is final and binds Plaintiffs and all of their creditors, including Navient. But the Plan did not specify one way or the other whether the Tuition Answer Loans were – or were not – discharged; the Plan is simply not instructive on this point. Section V.E. of the Plan only specifies Plaintiffs' student loans – of which they had several, including Federal Stafford Loans owing to Great Lakes or its assigns – were "to be treated as an unsecured Class Four claim or as follows: deferred until end of plan." Case No. 09-37480, Docket #25. The Plan is silent as to the dischargeability or non-dischargeability of the Tuition Answer Loans vis-à-vis Plaintiffs' other educational loans, or other unsecured debts. Nowhere in the Plan does it state the Tuition Answer Loans, or *any* of Plaintiffs' student loans, were nondischargeable; Navient relies upon a mischaracterization of the terms of the Plan.

Nor does Plaintiffs' description of Navient's debt on their Bankruptcy Schedules as "educational" influence its dischargeability. "Educational" loans, or "student" loans, are not nondischargeable simply because they are labeled as such; they must meet one or more of the criteria set forth in Section 523(a)(8). "A construction so broad would be incompatible with the 'well-known' guide that

8

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

exceptions to discharge 'should be confined to those plainly expressed.'"
*Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (quoting *Gleason v. Thaw,* 236 U.S. 558, 562 (1915)).

In *Espinosa*, the Supreme Court held the lender was bound by the terms of the debtors' confirmed plan even though confirmation of that plan was legal error. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010). The Chapter 13 plan in *Espinosa* expressly provided the debtors' student loans were discharged for undue hardship, and the creditor had actual notice of the plan and did not object. *Id.* at 264-265.

Navient contends *Espinosa* applies in the reverse and mandates the conclusion Plaintiffs' claims are barred on account of their confirmed Plan. But the true reverse of *Espinosa* would be a plan that expressly provided the Tuition Answer Loans, or any of Plaintiffs' student loans, were *not* dischargeable. Here, the Plan contains no explicit statement or determination as to the dischargeability of any of Plaintiffs' student loans. Navient's reliance upon *Espinosa* as controlling authority over the outcome of this case is misplaced.

Because the confirmed Plan is not a final determination on the merits, the Court will not dismiss Plaintiffs' Section 523(a)(8) claim on the basis of *res judicata* or application of *Espinosa*.

### 3. Section 523(a)(8)(A)(ii).

Absent undue hardship, Section 523(a)(8)(A)(ii) excepts from discharge "an obligation to repay funds received as an educational benefit, scholarship or stipend." 11 U.S.C. 523(a)(8)(A)(ii). The crux of the dispute is whether the Tuition Answer Loans fall within the ambit of this subsection as a matter of law. Courts in other jurisdictions are divided on the issue, with some courts holding private loans that provide an educational benefit to the borrower fit within Section 523(a)(8)(A)(ii) (the view espoused by Navient), and other courts embracing a much narrower view, holding such educational loans are not included within this particular subsection (Plaintiffs' position).[5] There is no controlling authority on point within the Tenth Circuit.

The Court's inquiry "begins where all such inquiries must begin: with the language of the statute itself." *Unites States v. Ron Pair Enterprises, Inc.*, 489

---

[5] While the parties dispute whose side is in the majority, the recent trend is clearly in favor of Plaintiffs' position. In their Response, Plaintiffs indicate there are 18 cases that support Navient's position, and cite 18 cases that support their own position, including 8 of the last 9 cases decided since 2016. Since the time the parties' briefs were submitted, additional decisions have been rendered in other districts also supporting Plaintiffs' view of Section 523(a)(8)(A)(ii).

9

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

U.S. 235, 241 (1989).  If the statute's language is plain, "the sole function of the courts is to enforce it according to its terms."  *Id.* (quoting *Caminetti v. United States,* 242 U.S. 470, 485 (1917)).

"When interpreting statutory language, this court 'must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.'"  *Office of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.),* 236 F.3d 1246, 1252 (10th Cir. 2001) (citing *True Oil Co. v. Comm'r of Internal Revenue,* 170 F.3d 1294, 1299 (10th Cir.1999) (quotation marks and citation omitted)).  Section 523(a)(8)(A)(ii) cannot be read in isolation; it is necessary to read Section 523(a)(8) as a whole.  "The meaning – or ambiguity – of certain words or phrases may only become evident when placed in context."  *Campbell v. Citibank, N.A. (In re Campbell),* 547 B.R. 49, 54 (Bankr. E.D.N.Y. 2016) (citing *Brown v. Gardner,* 513 U.S. 115, 118 (1994)).

Section 523(a)(8)(A)(ii) is sandwiched in between Sections 523(a)(8)(A)(i) and (B).  Notably absent from Section 523(a)(8)(A)(ii) is the word "loan" which is used in both Sections 523(a)(8)(A)(i) and 523(a)(8)(B).  In Section 523(a)(8)(A)(i), Congress excepted from discharge "an educational benefit overpayment *or loan* made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution".  11 U.S.C. § 523(a)(8)(A)(i) (emphasis added).  The disjunctive "or" in Section 523(a)(8)(A)(i) is significant, because it distinguishes an "educational benefit overpayment" from a "loan."  *See, e.g., Loughrin v. United States,* 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (in reviewing the language of the federal bank fraud statute in which elements of the crime were separated by the word "or," the Supreme Court considered what "or" customarily means:  "th[e] term's 'ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings'") (quoting *United States v. Woods,* 571 U.S. 31, 45 (2013)).

The word "loan" is also used in Section 523(a)(8)(B), which excepts from discharge "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual".  11 U.S.C. 523(a)(8)(B).

Navient argues the fact Congress did not use the word "loan" in Section 523(a)(8)(A)(ii) does not matter because an "obligation to repay funds received" *is* a loan; this phrase could not possibly fail to include loans – it is just more inclusive and expansive.  Motion, pp.29-30.  But given the specific language employed by Congress in Sections 523(a)(8)(A)(i) and (B) and the absence of the word "loan" from Section 523(a)(8)(A)(ii), the Court concludes "an obligation to repay funds received as an educational benefit, scholarship or stipend" does not include a loan.  "[W]hen 'Congress includes particular language in one section of a statute but

10

USBC 194

Case:17-01274-KHT   Doc#:30   Filed:09/24/18   Entered:09/24/18 15:34:11   Page11 of 18

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

omits it in another' — *let alone in the very next provision* — this Court 'presume[s]' that Congress intended a difference in meaning." *Loughrin v. United States*, 134 S.Ct. 2384, 2390, 189 L.Ed.2d 411 (2014) (emphasis added) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983) (further citation omitted)).

Moreover, another critical little word appearing in Section 523(a)(8)(A)(ii) is the word "*as*." "As" is a qualifier; it denotes how the funds were received. In a recent decision, the Bankruptcy Court for the Southern District of Texas examined the word "as" in Section 523(a)(8)(A)(ii):

> The use of the word "as" denotes "in the character or under the name of." [T]o the contrary, "for" denotes "in consideration for . . . in exchange for." [T]he Court concludes that 523(a)(8)(A)(ii) created a new category of nondischargeable debts specifically tailored to address a perceived need. That need did not include all loans that were in some way used by a debtor for education.

*Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830, 836 (Bankr. S.D. Tex. 2018) (quoting Black's Law Dictionary (6th ed. 1990)). This Court agrees. The language of the statute sets an educational benefit apart from a loan, and excepts from discharge a category of obligations in Section 523(a)(8)(A)(ii) that does not include loans but rather, "educational benefit[s]", "scholarship[s]", and "stipend[s]."[6]

If Navient's interpretation of Section 523(a)(8)(A)(ii) is correct — i.e., obligations that confer educational benefits are excepted from discharge — there would be no need for a separate provision excepting from discharge benefit overpayments or loans made, insured, or guaranteed by governmental units, or under programs funded by governmental units or nonprofit institutions (Section 523(a)(8)(A)(i)). Nor would there be any need for a separate provision excepting from discharge "qualified education loans" (Section 523(a)(8)(B)). Navient's interpretation offends a "cardinal principle" of statutory construction, that courts have a "duty to give effect, if possible, to every clause and word of a statute." *United States v. Smith*, 756 F.3d 1179, 1187 (10th Cir. 2014) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks and brackets omitted)).

---

[6] Like the court in *Campbell*, it is not necessary for this Court to decide whether the educational benefits, scholarships, and stipends referred to in Section 523(a)(8)(A)(ii) include only those made insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; the crux of the issue here is whether an "educational benefit" in Section 523(a)(8)(A)(ii) encompasses a private loan such as the Tuition Answer Loans. *See Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 59 (Bankr. E.D.N.Y. 2016) (comparing *Sensient Technologies Corp. v. Baiocchi (In re Baiocchi)*, 389 B.R. 828, 831–32 (Bankr. E.D. Wis. 2008) with *In re Nunez*, 527 B.R. 410, 415 (Bankr. D. Or. 2015)).

Case:17-01274-KHT    Doc#:30    Filed:09/24/18    Entered:09/24/18 15:34:11    Page12 of 18

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

In *Campbell*, decided in 2016, the Bankruptcy Court for the Eastern District of New York denied a lender's motion to dismiss debtor's complaint to determine dischargeability of a private bar study loan, holding Section 523(a)(8)(A)(ii) did not encompass such a loan. *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016). The *Campbell* court reasoned that if Section 523(a)(8)(A)(ii) applied to loans, it would "swallow" the other sections of 523(a)(8). *In re Campbell*, 547 B.R. at 55.

Navient argues *Campbell* was wrongly decided; Section 523(a)(8)(A)(ii) does not render other provisions of Section 523 superfluous but rather, that subsection provides "limited overlapping coverage" consistent with Supreme Court precedent, *In Husky Int'l Elec., Inc. v. Ritz*, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016) (concluding some overlap in coverage regarding the definition of "actual fraud" did not render Section 523(a) redundant). Reply, p.24. In other words, Section 523(a)(8)(A)(ii) catches instances of nondischargeability that other subparts of 523(a)(8) might miss, "reinforc[ing] the broad scope of the discharge exception for student loans." Motion, p.26. Unlike other subsections, Navient points out that Section 523(a)(8)(A)(ii) requires funds to be "received," so "both a private bar-study loan and a judgment debt to a co-signor on a defaulted government-backed university loan that the co-signor paid in full would be exempt from discharge under 523(a)(8)(A)(ii) but not § 523(a)(8)(A)(i) or (B), respectively." Motion, pp.25-26. The Court is not persuaded by this somewhat circular argument. If the legislature intended Section 523(a)(8)(A)(ii) to address potential liability to a co-signor, it could have done so explicitly; for example, Section 523 expressly includes separate categories of nondischargeable debt "incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1)" and "incurred to pay a tax to a governmental unit, other than the United States, that would be nondischargeable under paragraph (1)." 11 U.S.C. 523(a)(14), (14A).

Accordingly, based upon the plain language of the statute, this Court embraces the trending narrower view of Section 523(a)(8)(A)(ii) espoused in *Campbell*. *See, e.g., Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830 (Bankr. S.D. Tex. 2018); *Nypaver v. Nypaver (In re Nypaver)*, 581 B.R. 431 (Bankr. W.D. Pa. 2018); *Essangui v. SLF V-2015 Trust (In re Essangui)*, 573 B.R. 614 (Bankr. D. Md. 2017); *Dufrane v. Navient Solutions, Inc. (In re Dufrane)*, 566 B.R. 28 (Bankr. C.D. Ca. 2017); *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016).

To the extent there is any ambiguity in Section 523(a)(8)(A)(ii), the doctrine of *noscitur a sociis* and the legislative history both support the narrower view. Employing the doctrine of *noscitur a sociis*, the *Campbell* court considered the meaning of "educational benefit" in the context of its surrounding words:

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

"scholarship" and "stipend." *In re Campbell*, 547 B.R. at 55. Under this doctrine, "when a statute contains a list, each word in that list presumptively has a 'similar' meaning." *Id.* (citing *Yates v. United States*, 135 S.Ct. 1074, 1089, 191 L.Ed.2d 64 (2015) (Alito, J., concurring in the judgment) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 576 (1995)). The *Campbell* court noted "'[s]cholarship' and 'stipend' both refer to funds which are not generally required to be repaid by the recipient" and concluded "educational benefit" may be understood the same way; they are all forms of conditional grants, not loans. *In re Campbell*, 547 B.R. at 55. This Court agrees. A "scholarship" is a "grant of financial aid to a student." The American Heritage College Dictionary, 1220 (3$^{d}$ ed. 1997). A "stipend" is a "fixed and regular payment, such as a salary." *Id.*, at 1335. A "benefit" is a "payment made or an entitlement available in accordance with a wage agreement, an insurance policy, or a public assistance program." *Id.*, at 127. These words all signify granting, not borrowing.[7]

Navient argues *noscitur a sociis* was misapplied in *Campbell*, given the broader context of Section 523(a)(8). But in this Court's opinion, as discussed above, the broader context of Section 523(a)(8) – in which the words "loan" and "or" appear in its neighboring subsections – supports a narrow construction of Section 523(a)(8)(A)(ii). Navient's argument that a loan used for educational purposes confers an educational benefit on the borrower, just like scholarships and stipends do, strays from both the text of the statute and the context in which it was enacted.

As to the context, Section 523(a)(8) was enacted to safeguard "the solvency of government education loan programs" for "future students". *In re Campbell*, 547 B.R. at 59-60 (citing *In re Pelkowski*, 990 F.2d 737, 742 (3rd Cir. 1993) (quoting 124 Cong. Rec. 1791-9 Representative Ertel) (further citations omitted)). Section 523(a)(8) of the Bankruptcy Reform Act of 1978 excepted from discharge any debt –

> to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless –

---

[7] Navient complains a list of three items is insufficient to employ the doctrine, citing *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 288 (2010). But in that case, unlike here, the Supreme Court declined to employ *noscitur a sociis* to a list of three *disparate* terms: "congressional," "administrative," and "Governmental Accounting Office." *Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. at 288 (finding each of the three terms "*quite distinct from the other no matter how construed*") (emphasis added).

13

USBC 197

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

> (A) such loan first became due before five years before the date of the filing of the petition; or

> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

Bankruptcy Reform Act of 1978, Pub. L. No. 95–598 § 523(a)(8) (H.R. 8200), Nov. 6, 1978, 92 Stat. 2549, 2591 (1978).

The term "educational benefit" first appeared in Section 523(a)(8) in 1990, when the statute was amended to except from discharge any debt:

> for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend . . .

Crime Control Act of 1990, Pub. L. No. 101-647 § 3621(1), 104 Stat. 4789, 4965 (1990). The amendment to Section 523(a)(8) by the Crime Control Act also extended the period of repayment in Section 523(a)(8)(A) to seven years. *Id.*

The *Campbell* court examined the sparse legislative history and hearing testimony behind the 1990 amendments to Section 523(a)(8). *In re Campbell*, 547 B.R. at 55. At the hearing, Bob Wortham, a United States attorney from the Eastern District of Texas, explained the amendments to Section 523(a)(8) added "to the list of non-dischargeable debts, obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends", citing *U.S. Dep't of Health and Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986) in his statement. *See In re Campbell*, 547 B.R. at 55 (citing Federal Debt Collection Procedures of 1990: Hearing on P.L. 101-647 before the H. Subcomm. on Econ. and Commercial Law, H. Judiciary Committee 101st Cong. 74-75 (June 14, 1990) (Mr. Brooks' Questions for the Record for Mr. Wortham)).

In *Smith*, the Eighth Circuit held the pre-1990 version of Section 523(a)(8) encompassed a federal tuition assistance grant to a medical student who had defaulted on its conditions. *U.S. Dep't of Health and Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986). In reaching its decision, the Eighth Circuit was mindful of the "background and purpose of 523(a)(8) of the Bankruptcy Code" to correct a significant problem "[u]nder the Bankruptcy Act, [i.e.,] educational loans were

14

Case:17-01274-KHT    Doc#:30    Filed:09/24/18    Entered:09/24/18 15:34:11    Page15 of 18

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

dischargeable resulting in millions of dollars in *federally guaranteed loans* defaulted upon annually." *Smith*, 807 F.2d at 126 (emphasis added) (quoting *In re Shipman*, 33 B.R. 80, 82 (Bankr. W.D. Mo. 1983)).

Navient points out the sparse legislative history examined in *Campbell* is a single remark, not made by a legislator, regarding a prior version of the statute. Motion, p.31. However, that selfsame sparsity of legislative history regarding the addition of "educational benefit" to Section 523(a)(8) suggests the legislature did not intend to extensively expand nondischargeability to private educational loans. A subsequent amendment to the statute supports this conclusion. With the enactment of BAPCPA in 2005, subsection (B) was added to Section 523(a)(8), including as nondischargeable "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual". Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, S. 256, 109th Cong., § 220, 119 Stat. 23, 59 (2005). BAPCPA also separated subsection (A) into two subsections, (A)(i) and (A)(ii), without any changes to the text. If Section 523(a)(8)(A)(ii) expanded the statute to include all loans that confer educational benefits, subsection (B) – adding "qualified education loans" under 26 U.S.C. § 221(d)(1) as nondischargeable – would have been wholly unnecessary.

Even if this Court were to agree with Navient, it would be premature to dismiss Plaintiffs' Complaint under Section 523(a)(8)(A)(ii); at this stage in the litigation, the underlying facts are not sufficiently developed. But the Court is persuaded by Plaintiffs' view that Section 523(a)(8)(A)(ii) does not encompass the Tuition Answer Loans, based upon the plain language of the statute, and in addition, applicable canons of statutory interpretation and the legislative history.

### 4.    Claim for Violation of the Discharge Injunction.

The Discharge Order granted Plaintiffs a discharge under Section 1328(a). Section 1328(a) specifies that the bankruptcy discharge for Chapter 13 debtors is as to "*all debts* provided for by the plan or disallowed under section 502 of this title, except any debt – . . . of the kind specified in . . . [section 523(a)(8)]." 11 U.S.C. § 1328(a)(2) (emphasis added). Pursuant to the Bankruptcy Code, the Discharge Order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived". 11 U.S.C. § 524(a)(2).

Navient argues Plaintiffs' claim for violation of the discharge injunction is defective because there is no private right of action for such claim, and the Discharge Order was not specific enough to be enforced against Navient on

15

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

contempt grounds; the Discharge Order did not clearly identify prohibited conduct as the Order "lacked such a statement about their [Tuition Answer] Loans". Reply, p.29.

While the Tenth Circuit has not determined whether there is a private right of action under Section 524(a)(2), it is clear the Court's equitable powers under Section 105(a) extend to decide claims "to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in 524(a)(2)." *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1306 (10th Cir. 2008) (citations omitted).[8] Thus, "Section 524(a)(2) operates as 'an equitable remedy precluding the creditor, on pain of contempt, from taking *any* actions to enforce the discharged debt.'" *Gray v. Nussbeck (In re Gray)*, 586 B.R. 347, 353 (Bankr. D. Kan. 2018) (quoting *Espinosa v. United States Aid Funds, Inc.*, 553 F.3d 1193, 1200 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010) (emphasis in original)).

To be held in contempt, a court must find (1) the party violated a specific and definite order; (2) the party had notice of the order; and (3) the party did in fact violate the order. *Lucre Mgmt. Grp., LLC v. Schempp Real Estate, LLC (In re Lucre Mgmt. Grp., LLC)*, 365 F. 3d 874, 875 (10th Cir. 2004). In order to prevail in a civil contempt proceeding, Plaintiffs' burden is high; they must prove the alleged violation by clear and convincing evidence. *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998).

The Court concludes Plaintiffs have stated a valid claim for contempt. The Discharge Order and the statutory bases for its issuance and enforcement (Sections 1328 and 524(a)(2)) are broad and unequivocal. *All* debts were discharged, except those enumerated in Section 1328(a). There is no such thing as a personalized discharge order addressed to each creditor in a given bankruptcy case. That neither party sought to determine the dischargeability of the Tuition Answer Loans until now does not alter whether or not the debts were discharged under Section 523(a)(8) at the time the Discharge Order was entered; thereafter they both proceeded at their own risk. Any ambiguity in the law, or uncertainty as to the injunction's applicability to the Tuition Answer Loans, is relevant to the inquiry as to whether any contempt violation, if proven, was willful. Accordingly, the Court will not dismiss the claim on that basis. Whether or not the evidence at trial will support the claim is a matter for another day.

---

[8] The Court rejects the notion Plaintiff's claim would need to be dismissed on procedural grounds for failure to file a motion for contempt in the main bankruptcy case, as that requirement would elevate form over substance. *See, e.g., Gray v. Nussbeck (In re Gray)*, 586 B.R. 347, n.19 (Bankr. D. Kan. 2018); *Montano v. First Light Fed. Credit Union (In re Montano)*, 398 B.R. 47, 55-56 (Bankr. D.N.M. 2008).

USBC 200

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

## B. The Rule 12(f) Motion to Strike.

Rule 12(f) allows a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f); Fed.R.Bankr.P. 7012(b). But "[s]triking a portion of a pleading is a drastic remedy; the federal courts generally view motions to strike with disfavor and infrequently grant such requests." *Purzel Video GmbH v. Smoak*, 11 F.Supp.3d 1020, 1029 (D. Colo. 2014) (citing 5C Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1380 (3d ed. 2011)).

The purpose of Rule 12(f) "is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case." *Sierra Club v. Tri–State Generation & Transmission Ass'n,* 173 F.R.D. 275, 285 (D. Colo.1997) (citing *United States v. Smuggler–Durant Mining Corp.,* 823 F.Supp. 873, 875 (D. Colo.1993)). Accordingly, courts deny motions to strike immaterial and impertinent matter "unless it can be shown that no evidence in support of the allegation[s] would be admissible." *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1085 (D. Colo. 1985) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). "Only allegations 'so unrelated to plaintiff's claims as to be unworthy of any consideration' should be stricken." *Id.* (quoting *EEOC v. Ford Motor Co.*, 529 F.Supp. 643, 644 (D. Colo. 1982)). Further, "[i]rrelevant allegations will be stricken as scandalous only if they degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court." *Sierra Club*, 173 F.R.D. at 285 (citing *Nault's Auto. Sales v. American Honda Motor Co.,* 148 F.R.D. 25, 30 (D.N.H.1993) (further citation omitted)).

"Even where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike." *Sierra Club*, 173 F.R.D. at 285. "Inappropriately hyperbolic allegations, ill-conceived attempts at levity, and other similar manifestations of bad judgment in drafting pleadings, by themselves, fall short of the threshold that Rule 12(f) contemplates." *Saylavee LLC v. Hockler,* 228 F.R.D. 425, 426 (D. Conn. 2005).

It is important to keep in mind Plaintiffs' allegations are made against a corporate entity in a matter that will be tried to the Court. Although Plaintiffs' allegations in paragraphs 1 and 9 through 19 may be hyperbolic, they are not so unrelated to Plaintiffs' claims as to be unworthy of any consideration. To the contrary, the allegations are relevant to Plaintiffs' claim for violation of the discharge injunction. The Court, therefore, denies Navient's motion to strike the allegations.

ORDER ON MOTION TO DISMISS
Adversary No. 17-01274 KHT

## VI. CONCLUSION

For the reasons stated herein, the Court DENIES the Motion to Dismiss Plaintiffs' Claims Under Fed.R.Civ.P. 12(b)(6) and Motion to Strike Immaterial and Impertinent Matter Under Fed.R.Civ.P. 12(f) filed by Defendant Navient Solutions, LLC.

Dated: September 24, 2018.

BY THE COURT:

_Kimberley H. Tyson_

Kimberley H. Tyson
United States Bankruptcy Judge

# Ex. B

## JOINT CERTIFICATION FOR DIRECT, INTERLOCUTORY APPEAL

USBC 203

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) Case No. 09-37480 (KHT) |
| BYRON PATTERSON MCDANIEL JR. | ) |
| AND LAURA PAIGE MCDANIEL | ) Chapter 13 |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |
| BYRON PATTERSON MCDANIEL JR. | ) |
| AND LAURA PAIGE MCDANIEL, | ) |
| | ) Adversary Proceeding No. 17-01274-KHT |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| NAVIENT SOLUTIONS, LLC, | ) |
| | ) |
| Defendant. | ) |

## CERTIFICATION TO COURT OF APPEALS BY ALL PARTIES

A notice of appeal having been filed in the above-captioned matter on October 9, 2018,

Plaintiffs Byron Patterson McDaniel Jr. and Laura Paige McDaniel, and Defendant Navient

Solutions, LLC ("NSL," and with Plaintiffs, the "Parties"), who are all of the parties in this case

acting jointly, hereby certify to the court under 28 U.S.C. § 158(d)(2)(A) and Fed. R. Bankr. P.

8006(c) that a circumstance specified in 28 U.S.C. § 158(d)(2) exists as stated below.

Leave to appeal in this matter:

☒      is required under 28 U.S.C. § 158(a)

☐      is not required under 28 U.S.C. § 158(a)

This certification arises in an appeal from this Court's Order on Motion to Dismiss and

Motion to Strike (the "Order"), dated September 24, 2018 (Dkt. No. 30), which is an

49043190.2

interlocutory order or decree.  Accordingly, the Parties hereby request leave to appeal as required

by 28 U.S.C. § 158(a).

      In accordance with 28 U.S.C. § 158(d)(2)(A)(i)-(iii), the Parties hereby certify that:

    i.      the judgment, order or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

    ii.      the judgment, order or decree involves a question of law requiring resolution of conflicting decisions; and

    iii.      an immediate appeal from the judgment, order or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

49043190.2

USBC 205

Dated this 9th day of October, 2018.

SHERMAN & HOWARD L.L.C.

*/s/ Eric E. Johnson*
Eric E. Johnson
Carla R. Martin
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 297-2900
E-Mail: ejohnson@shermanhoward.com
              cmartin@shermanhoward.com

*Counsel for Navient Solutions, LLC*

—and—

*/s/ Austin Smith*
Austin Smith
SMITH LAW GROUP
3 Mitchell Place
New York, New York 10017
Tel: (917) 992-2121
E-mail: austin@acsmithlawgroup.com

*Counsel for Plaintiffs Byron Patterson
McDaniel Jr. and Laura Paige McDaniel*

49043190.2

# CERTIFICATE OF SERVICE

The undersigned hereby certifies the following parties received a true and correct copy of the foregoing **CERTIFICATION TO COURT OF APPEALS BY ALL PARTIES** via a Notice of Electronic Filing transmitted by CM/ECF in accordance with Local Bankruptcy Rule 5005-4(a) on the 9th day of October, 2018:

Austin Smith
austin@acsmithlawgroup.com

*/s/ Roberta Neal* _____

4

USBC 207

Ex. C

**FIFTH CIRCUIT ORDER GRANTING MOTION FOR LEAVE TO APPEAL,**
*NAVIENT SOLUTIONS, LLC V. CROCKER*

28

# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

April 25, 2018

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

    No. 18-90016   Navient Solutions, L.L.C., et al v. Evan Crocker, et al
       No. 16-3175

Enclosed is an order entered in this case.

        Sincerely,

        LYLE W. CAYCE, Clerk

        By: _____
        Angelique B. Tardie, Deputy Clerk
        504-310-7715

Mr. Jason W. Burge
Mr. George F. Carpinello
Mr. Thomas Miles Farrell
Mr. Dion W. Hayes
Mr. Kyle Hosmer
Ms. Karen Elizabeth Sieg
Ms. Lynn Elizabeth Swanson
Ms. Susan Tran

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 18-90016

---

In re: Evan Brian Crocker, also known as Crocker Legal, P.L.L.C.

        Debtor

NAVIENT SOLUTIONS, L.L.C.; NAVIENT CREDIT FINANCE CORPORATION,

        Petitioners

v.

EVAN BRIAN CROCKER, also known as Crocker Legal, P.L.L.C., formerly known as Evan Brian Haas; MICHAEL SHAHBAZI, formerly known as Montana Shahbazi; WENDY L. LANDES; RAEGENA SEITZ-MOULDS,

        Respondents

---

Motion for Leave to Appeal
Pursuant to 28 U.S.C. § 158(d)

---

Before DAVIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:

    IT IS ORDERED that the unopposed motion for leave to appeal under 28 U.S.C. § 158(d) is GRANTED.

# Ex. D

TRANSCRIPT FROM HEARING ON MOTION FOR SUMMARY JUDGMENT,
*CROCKER V. NAVIENT SOLUTIONS, LLC*

29

USBC 211

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


EVAN BRIAN HAAS,                )      CASE NO:  16-03175
                               )      ADVERSARY
            Plaintiff,         )
                               )      Houston, Texas
     vs.                       )
                               )      Monday, March 5, 2018
NAVIENT, INC, ET AL,           )
                               )      (3:28 p.m. to 4:20 p.m.)
            Defendants.        )


MOTION FOR SUMMARY JUDGMENT

BEFORE THE HONORABLE DAVID R. JONES,
UNITED STATES BANKRUPTCY JUDGE


Appearances:          See page 2

Court Reporter:       Recorded; FTR

Transcribed by:       Exceptional Reporting Services, Inc.
                      P.O. Box 18668
                      Corpus Christi, TX 78480-8668
                      361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

<u>APPEARANCES FOR:</u>

Plaintiff:

JASON W. BURGE, ESQ.
Fishman Haygood
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170

MARC D. MYERS, ESQ.
Ross Banks May Cron & Cavin
7700 San Felipe, Suite 550
Houston, TX 77063

LYNN E. SWANSON, ESQ.
Jones Swanson Huddell & Garrison
601 Poydras St., Suite 2655
New Orleans, LA 70130

CATHY JOHNSON, ESQ.

ADAM CORRAL, ESQ.
Corral Tran Singh
1010 Lamar St., Suite 1160
Houston, TX 77002

Defendants:

THOMAS M. FARRELL, ESQ.
KAREN ELIZABETH SIEG, ESQ.
McGuire Woods
600 Travis, Suite 7500
Houston, TX 77002

3

| | |
|---|---|
| 1 | **Houston, Texas; Monday, March 5, 2018; 3:28 p.m.** |
| 2 | (Call to order) |
| 3 | (Hearing already in progress) |
| 4 | THE COURT:  -- 3175, *Haas versus Navient*. |
| 5 | MR. FARRELL:  Judge, our adversaries were not right |
| 6 | out there in the hall.  You want to go see if I can find them? |
| 7 | THE COURT:  Yes, I greatly appreciate that. |
| 8 | Hopefully they won't be far. |
| 9 | (Pause from 3:28 p.m. to 3:29 p.m.) |
| 10 | MR. FARRELL:  Your Honor, they are not out there. |
| 11 | They -- I saw them get in the elevator when we took the last |
| 12 | break but I don't know which direction they went. |
| 13 | THE COURT:  Got it, thank you.  Best laid plans, I |
| 14 | suppose. |
| 15 | MR. FARRELL:  But I'm sure they'll be right here. |
| 16 | THE COURT:  Oh, they went to the library?  All right, |
| 17 | okay, got it.  Hopefully it won't be long. |
| 18 | (Pause from 3:29 p.m. to 3:30 p.m.) |
| 19 | MR. SPEAKER:  Thank you, your Honor. |
| 20 | THE COURT:  Certainly.  All right, -- |
| 21 | MR. SPEAKER:  Sorry, your Honor (indisc.) |
| 22 | THE COURT:  I -- it -- you're not late, it's exactly |
| 23 | 3:30.  So called the case.  If you'd just go ahead and make |
| 24 | your appearances, please.  Mr. Farrell, we'll start with you. |
| 25 | // |

EXCEPTIONAL REPORTING SERVICES, INC

12

1          MR. BURGE: -- kicked the can who knows how far down

2   the road.

3          THE COURT: Right. Here's my view of the most

4   efficient way. I've thought a lot about this if you haven't

5   figured that out. I may be wrong about so many things but I've

6   thought about it a lot, is that if a party was going to appeal

7   the issue regarding the statutory interpretation question, it

8   would seem to me that I can immediately certify that for direct

9   appeal to the Fifth Circuit; because I agree quite honestly not

10  only in this case but this interpretation question comes up a

11  lot. And it would be nice to have something nice, succinct, on

12  the point, not driven by something else, but only on this

13  issue. And so my thought would be is that if I certified it

14  for a direct appeal, is that I would stay everything sufficient

15  to allow the losing party to go to the Fifth Circuit and seek a

16  stay. Obviously if the circuit stayed it, then the answer is -

17  - I mean, there isn't going to be any decision by me that would

18  change that. If the circuit refused the direct appeal, which

19  it certainly has the right to do, the I think that that would

20  dictate a different set of results. I also think that a

21  decision to deny motion to stay by the circuit would send a

22  message not to me as to the merits of what they thought but as

23  to what they expected to occur in the litigation. So that's

24  actually my thought. Because I agree with you, I don't want to

25  go through a long, drawn out, complicated certification hearing

USBC 215

13

1    if I turn out to be wrong on this issue.  Or I don't want the

2    certification to fall apart because I got it wrong from the

3    Plaintiffs' point of view.  I just -- to me, it just made

4    sense.  Any -- either one of you have a reaction to that?

5            MR. FARRELL:  That was our thought when we filed the

6    motion, Judge.  And, you know, we didn't put explicitly in

7    papers that was the plan, but I came here today planning to

8    tell you --

9            THE COURT:  Sure.

10           MR. FARRELL:  -- exactly what I told you.  So we

11   think that makes sense.

12           THE COURT:  All right.  So what -- you agree?

13           MR. BURGE:  And, I mean, my only concern is that I

14   think that, you know, deferring time does harm to this class.

15   But I -- you know, I think --

16           THE COURT:  How so?

17           MR. BURGE:  Well, only because our class members,

18   these debts, the ones that are at issue in this case, it is

19   true that they are no longer getting discharge violations --

20           THE COURT:  Right.

21           MR. BURGE:  -- from what the reports we're hearing.

22   But these debts are still on their credit reports, they're

23   still impacting their access to credit.  It's still causing

24   problems for them as they move forward because these debts have

25   not formally been recognized as discharged by Navient.  I agree

## CERTIFICATION

I certify that the foregoing is a correct transcript from the
electronic sound recording of the proceedings in the above-
entitled matter.


_____                    March 8, 2018

        Signed                                    Dated


            *TONI HUDSON, TRANSCRIBER*


EXCEPTIONAL REPORTING SERVICES, INC

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

In re:                                          )
                                                )        Case No. 09-37480-KHT
BYRON PATTERSON McDANIEL JR.                     )
AND LAURA PAIGE McDANIEL                         )        Chapter 13
                                                )
        Debtors.                                )
                                                )
_____         )
                                                )
BYRON PATTERSON McDANIEL JR.                     )
AND LAURA PAIGE McDANIEL,                        )
                                                )        Adversary Proceeding No. 17-01274-KHT
        Plaintiffs,                             )
v.                                              )
                                                )
NAVIENT SOLUTIONS, LLC,                          )
                                                )
        Defendant.                              )
_____

**[PROPOSED] ORDER GRANTING UNOPPOSED MOTION TO STAY ADVERSARY
PROCEEDING PENDING INTERLOCUTORY APPEAL**
_____

THIS MATTER having come before the Court upon Defendant Navient Solutions, LLC's

Unopposed Motion to Stay Adversary Proceeding Pending Interlocutory Appeal (the "Motion"),

the Court having reviewed the Motion and the pleadings and files in this matter to the extent

deemed necessary by the Court, the Court noting that the Motion is unopposed by the Plaintiff,

and for other good cause appearing, now, therefore:

IT IS HEREBY ORDERED that, for the reasons set forth in the Motion, the Court hereby

stays this adversary proceeding in its entirety pending appeal pursuant to Fed. R. Bankr. P.

8007(a)(1)(D).

Dated: _____, 2018          _____
        Denver, Colorado              KIMBERLY H. TYSON
                                      UNITED STATES BANKRUPTCY JUDGE

49044823.3

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 09-37480-KHT |
| BYRON PATTERSON McDANIEL JR. | ) | |
| AND LAURA PAIGE McDANIEL | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| BYRON PATTERSON McDANIEL JR. | ) | |
| AND LAURA PAIGE McDANIEL, | ) | |
| | ) | Adversary Proceeding No. 17-01274-KHT |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| NAVIENT SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

---

**ORDER GRANTING UNOPPOSED MOTION TO STAY**

**ADVERSARY PROCEEDING PENDING INTERLOCUTORY APPEAL**

---

THIS MATTER having come before the Court upon Defendant Navient Solutions, LLC's Unopposed Motion to Stay Adversary Proceeding Pending Interlocutory Appeal (the "Motion"), the Court having reviewed the Motion and the pleadings and files in this matter to the extent deemed necessary by the Court, the Court noting that the Motion is unopposed by the Plaintiff, and for other good cause appearing, now, therefore:

IT IS HEREBY ORDERED that, for the reasons set forth in the Motion, the Court hereby stays this adversary proceeding in its entirety pending appeal pursuant to Fed. R. Bankr. P. 8007(a)(1)(D).

Dated: October 11, 2018.

Denver, Colorado

KIMBERLEY H. TYSON
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

In re:

BYRON PATTERSON McDANIEL JR.
and LAURA PAIGE McDANIEL,

     Debtors.

 

BYRON PATTERSON McDANIEL JR.
and LAURA PAIGE McDANIEL,

     Plaintiff,

v.

NAVIENT SOLUTIONS, LLC,

     Defendant.

Case No. 09-37480 KHT

Chapter 13

Adversary No. 17-01274 KHT

**CERTIFICATION PURSUANT TO 28 U.S.C. § 158(d)(2)**

A notice of appeal having been filed in the above-captioned matter on October 9, 2018, and a Joint Certification to the Court pursuant to 28 U.S.C. § 158(d)(2)(A) having been filed by Plaintiffs Byron Patterson McDaniel Jr. and Laura Paige McDaniel, and Defendant Navient Solutions, LLC ("NSL," and with Plaintiffs, the "Parties"), who are all of the parties in this case acting jointly, the Court hereby

CERTIFIES pursuant to 28 U.S.C. § 158(d)(2)(A) and (B) and Fed. R. Bankr. P. 8006(c) that a circumstance specified in 28 U.S.C. § 158(d)(2) exists as stated below.

This certification arises in an appeal from this Court's Order on Motion to Dismiss and Motion to Strike (the "Order"), dated September 24, 2018 (Dkt. No. 30), which is an interlocutory order or decree. Leave to appeal in this matter is required under 28 U.S.C. § 158(a). In accordance with 28 U.S.C. § 158(d)(2)(A)(i) and (iii), the Court hereby certifies that:

     i.    the judgment, order or decree involves a question of law as to which there is no controlling decision of the court of appeals

for the circuit or of the Supreme Court of the United States, or involves a matter of public importance; and

ii.    an immediate appeal from the judgment, order or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

The Clerk is directed to transmit this Order, and related notices along with a preliminary record to the Clerk of the Tenth Circuit Court of Appeals.

Dated this 11th day of October, 2018.

BY THE COURT:

_____
Kimberley H. Tyson
United States Bankruptcy Judge