FILED
**United States Court of Appeals**
**Tenth Circuit**

<u>PUBLISH</u>

**August 31, 2020**

UNITED STATES COURT OF APPEALS

**Christopher M. Wolpert**
**Clerk of Court**

**TENT H CIRCUIT**

---

In re: BYRON PATTERSON
MCDANIEL, JR.; LAURA PAIGE
MCDANIEL,

      Debtors.

------------------------------

BYRON PATTERSON MCDANIEL,
JR.; LAURA PAIGE MCDANIEL,

      Plaintiffs - Appellees,

v.

NAVIENT SOLUTIONS, LLC,

      Defendant - Appellant.

No. 18-1445

---

**Appeal from the United States Bankruptcy Court**
**for the District of Colorado**
**(Nos. 1:17-BK-01274-KHT & 1:17-BK-01274-KHT)**

---

Thomas M. Farrell, McGuireWoods LLP, Houston, Texas (K. Elizabeth Sieg,
McGuireWoods LLP, Richmond, Virginia; Eric E. Johnson and Carla R. Martin,
Sherman & Howard LLC, Denver, Colorado, on the briefs), for Defendant-
Appellant.

Austin C. Smith, Smith Law Group LLP, New York, New York, for Plaintiffs-
Appellees.

---

Before **BRISCOE**, **HOLMES**, and **EID**, Circuit Judges.

_____

**HOLMES**, Circuit Judge.

_____

The Bankruptcy Code excepts from discharge "an obligation to repay funds received as an educational benefit," unless doing so imposes undue hardship on the debtors and their dependents.  11 U.S.C. § 523(a)(8)(A)(ii).  Plaintiffs-Appellees Byron and Laura McDaniel claim that they discharged some private student loans in their Chapter 13 bankruptcy.  Defendant-Appellant Navient Solutions, LLC ("Navient"), the loans' creditor, moved to dismiss the McDaniels' claim under Federal Rule of Civil Procedure 12(b)(6), contending that the loans are excepted from discharge under § 523(a)(8)(A)(ii).  This case raises a question of first impression in this circuit: does an educational loan constitute "an obligation to repay funds received as an educational benefit," within the meaning of § 523(a)(8)(A)(ii)?[1]  We conclude that it does not.  Exercising jurisdiction under 28 U.S.C. § 158(d)(2)(A), we **affirm** the bankruptcy court's interlocutory order denying Navient's motion and **remand** the case for further proceedings.

_____

[1]     We use the terms "student loan" and "educational loan" interchangeably in this opinion because—at least under the circumstances of this case—we see no material distinction between them.

2

# I

The McDaniels filed a voluntary Chapter 13 bankruptcy petition in 2009. They acknowledged that they had, among other debts, eleven accounts with Sallie Mae, owing about $200,000 on them.  They categorized their debts to Sallie Mae as "[e]ducational."  Aplt.'s App., Vol. I, at 41–43 (Ch. 13 Pet., filed Dec. 24, 2009).  It is undisputed that those Sallie Mae accounts covered six private student loans ("Tuition Answer Loans") that Laura McDaniel had used to pay her college expenses.  Despite disclosing those loans in their petition, the McDaniels asserted in their proposed Chapter 13 plan that they had "[n]o student loans."[2]  *Id.* at 71 (Ch. 13 Plan, filed Dec. 24, 2009).

The Chapter 13 Trustee objected to the McDaniels' proposed bankruptcy plan on several grounds, including that it made "no provision for [their] non-dischargeable student loan."  *Id.* at 75 (Ch. 13 Trustee's Obj. to Confirmation of Ch. 13 Plan, filed Jan. 28, 2010)  Whether or not the Tuition Answer Loans were nondischargeable, the parties do not dispute that the McDaniels had other,

---

[2]     "Chapter 13 of the Bankruptcy Code affords individuals receiving regular income an opportunity to obtain some relief from their debts while retaining their property.  To proceed under Chapter 13, a debtor must propose a plan to use future income to repay a portion (or in the rare case all) of his debts over the next three to five years.  If the bankruptcy court confirms the plan and the debtor successfully carries it out, he receives a discharge of his debts according to the plan."  *Bullard v. Blue Hills Bank*, 575 U.S. ----, 135 S. Ct. 1686, 1690 (2015).

federally insured student loans that were nondischargeable.

The bankruptcy court never had occasion to take up the merits of the Trustee's objections.  A little more than one month after the objections were filed, in a hearing, the McDaniels told the court—without mentioning the Trustee's objections—that they needed to amend their plan: more specifically, through review of documents, they were learning that the numbers reflected in their proposed plan for charitable contributions and other matters were not completely accurate.  *See* Tr. of Mar. 11, 2010 Continued Confirmation Hr'g & the Ch. 13 Trustee's Obj. Thereto at 3, *In re McDaniel*, No. 09-37480 (Bankr. D. Colo. Oct. 17, 2018) [hereinafter Tr. of Continued Confirmation Hr'g] ("[B]ased on the information we received even as late as this week, it's clear that we're going to have to file an amended plan. . . . We've got numbers going both ways . . . .").[3] Consequently, the bankruptcy court denied the McDaniels' original proposed plan, granted them time to file an amended plan, and deemed the Trustee's

---

[3]     We take judicial notice of the transcript of this hearing and other documents in the bankruptcy court's files—even though not found in Navient's appendix—that are directly relevant to our disposition of this appeal.  *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (observing that we may "take judicial notice of court records in the underlying proceedings"); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (recognizing that "we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand"); *see also United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of . . . the records of inferior courts.").

objections to their original plan "moot."  Aplt.'s App., Vol. I, at 77 (Minutes of Mar. 11, 2010 Continued Confirmation Hr'g & Ch. 13 Trustee's Obj. Thereto, filed Mar. 11, 2010).

In their amended proposed Chapter 13 plan, the McDaniels changed how much they would pay towards certain classes of debt claims.  And they no longer alleged they had no student loans.  Their amended plan provided instead, "[s]tudent loans are to be treated as an unsecured Class Four claim or as follows: deferred until end of plan."  *Id.* at 83 (Am. Ch. 13 Plan, filed Apr. 1, 2010).  The plan, as amended, defined Class Four claims as "[a]llowed unsecured claims not otherwise referred to in the Plan."  *Id.* at 82.  It did not indicate whether certain Class Four claims, deferred claims, or educational-loan debts were excepted from discharge.  No one objected to the amended plan on a ground relevant to the issues before us.  Sallie Mae, Inc.—which later became Navient—then filed several debt claims against the McDaniels, and the bankruptcy court allowed them all in full.

The bankruptcy court confirmed the McDaniels' amended Chapter 13 plan in 2010.  In early 2015, the McDaniels certified that they had carried out all of their plan's payments and obligations.  According to the Trustee's final report and account, the McDaniels had paid nearly $27,000 in principal towards Navient's debt claims under their confirmed plan.

In March 2015, the bankruptcy court granted the McDaniels a discharge of their debts under 11 U.S.C. § 1328(a).  Its brief order, however, did not identify which of their debts were thereby discharged.  As relevant here, it simply stated that "[d]ebts for most student loans" were not discharged.  *Id.* at 98 (Order Providing Discharge of Debtor After Completion of Ch. 13 Plan, filed Mar. 3, 2015).  In June 2015, the court deemed the McDaniels' bankruptcy estate "fully administered" and closed their case.  Order, *In re McDaniel*, No. 09-37480 (Bankr. D. Colo. June 2, 2015).  Over the next two years, however, the McDaniels paid Navient an additional $37,460 on their Tuition Answer Loans.

In June 2017, the McDaniels moved the bankruptcy court to reopen their case.  After the court did so, the McDaniels filed a complaint against Navient, seeking 1) a declaratory judgment that their Tuition Answer Loans were discharged in bankruptcy, and 2) damages based on Navient's collection activities on those loans in violation of 11 U.S.C. § 524(a).  The McDaniels stated that the loans "were not 'qualified education loans'" under 11 U.S.C. § 523(a)(8)(B) because they "were not made solely for the 'cost of attendance'" at Laura McDaniel's college.  Aplt.'s App., Vol. II, at 142 (Pls.' Compl., filed July 12, 2017).  Although the McDaniels' complaint repeatedly classified the loans as mere "consumer loans," *see, e.g.*, *id.* at 144, they have since acknowledged that the loans were also "student loans," Aplees.' Resp. Br. at 5.  The bankruptcy

6

court docketed the McDaniels' complaint as a new action—i.e., under its own docket number, No. 17-01274—instead of as a new proceeding within the docket number for their earlier Chapter 13 bankruptcy, No. 09-37480.

Navient moved the bankruptcy court to dismiss the McDaniels' complaint under Rule 12(b)(6), arguing 1) it is res judicata that their Tuition Answer Loans are excepted from discharge because their confirmed plan provided as much, and 2) the loans in any event are nondischargeable under 11 U.S.C. § 523(a)(8)(A)(ii) because they constitute "an obligation to repay funds received as an educational benefit." Aplt.'s App., Vol. II, at 219–40 (Def.'s Mot. to Dismiss, filed Oct. 10, 2017) (quoting § 523(a)(8)(A)(ii)). The McDaniels opposed Navient's motion.

The court denied the motion in a written order, rejecting Navient's res judicata argument because the McDaniels' confirmed plan "did not specify one way or the other whether the Tuition Answer Loans were—or were not—discharged" and rejecting Navient's statutory argument because "the plain language of [§ 523(a)(8)(A)(ii)]" establishes that educational loans are not obligations to repay funds received as an educational benefit. *Id.*, Vol. III, at 605, 612 (Order on Mot. to Dismiss, filed Sept. 24, 2018).

Navient timely filed a notice of appeal from the bankruptcy court's order denying its motion. Navient and the McDaniels then jointly certified under 28 U.S.C. § 158(d)(2)(A) that this appeal warrants this court's direct, interlocutory

7

review.  The bankruptcy court also certified that we should grant Navient leave to appeal its interlocutory order directly.  We granted Navient leave to appeal the order and now affirm and remand for further proceedings.

## II

Navient contends that the McDaniels' confirmed Chapter 13 plan makes it res judicata that its Tuition Answer Loan are excepted from discharge.  We discern nothing in that plan, however, showing that their Tuition Answer Loans are excepted from discharge.  Navient maintains next that these student loans are nondischargeable because, under 11 U.S.C. § 523(a)(8)(A)(ii), they constitute "an obligation to repay funds received as an educational benefit."  We agree, however, with the bankruptcy court's contrary view: *viz.*, it is plain to us from the unambiguous language of § 523(a)(8)(A)(ii) that educational loans do not constitute such an obligation.  Reviewing de novo the bankruptcy court's denial of Navient's motion to dismiss for failure to state a claim, *Cohen v. Chernushin* (*In re Chernushin*), 911 F.3d 1265, 1269 (10th Cir. 2018); *see also Lewis v. BNC Mortg., Inc.* (*In re Lewis*), 247 F. App'x 999, 1002 (10th Cir. 2007) (unpublished), we thus reject both arguments and affirm the bankruptcy court's interlocutory order.

**A**

**1**

By statute, "[t]he provisions of a confirmed plan bind the debtor and each creditor."  11 U.S.C. § 1327(a).  Because a bankruptcy court's "order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties," a confirmed plan, once final, "is *res judicata* and its terms are not subject to collateral attack."  *United States v. Richman* (*In re Talbot*), 124 F.3d 1201, 1209 (10th Cir. 1997) (quoting 8 COLLIER ON BANKRUPTCY ¶ 1327.02[1] (Lawrence P. King ed., 15th ed. 1996)); *see Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (stating that "once the [confirmation orders] became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata to the 'parties and those in privity with them'" (quoting *Nevada v. United States*, 463 U.S. 110, 130 (1983))); *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946) ("This Court has also required that effect be given in both state and federal courts to a plea of res judicata arising from decrees of a bankruptcy court.").  The doctrine of res judicata, as relevant here, "precludes a party from relitigating an issue actually decided in a prior case." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, --- U.S. ----, 140 S.

9

Ct. 1589, 1594 (2020).[4]

We review de novo the bankruptcy court's determination that res judicata does not preclude the McDaniels' dischargeability claim. *Clark v. Zwanziger* (*In re Zwanziger*), 741 F.3d 74, 77 (10th Cir. 2014); *accord City of Eudora v. Rural*

---

[4]        "[R]es judicata" is "a term that now comprises two distinct doctrines regarding the preclusive effect of prior litigation." *Lucky Brand Dungarees*, 140 S. Ct. at 1594 (citing 18 Charles Alan Wright et al, FEDERAL PRACTICE AND PROCEDURE § 4402 (3d ed. 2016)).  The first doctrine, issue preclusion, "precludes a party from relitigating an issue *actually decided* in a prior case." *Id.* (emphasis added).  And the second doctrine, claim preclusion, "prevents parties from raising issues that *could have been raised and decided* in a prior action." *Id.* (emphasis added); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) ("Res judicata is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.'  Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. . . . Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." (citation omitted)).  Parties sometimes confuse and conflate the two doctrines. *See, e.g.*, *Campbell v. City of Spencer*, 777 F.3d 1073, 1079 (10th Cir. 2014) ("Campbell conflates the doctrines of claim preclusion and issue preclusion."); *Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209 (10th Cir. 2001) ("Matosantos confuses res judicata (also known as 'claim preclusion') with collateral estoppel (also known as 'issue preclusion').").

Similarly, here, although Navient argues that the nondischargeability of the Tuition Answer Loans is res judicata because the McDaniels' confirmed Chapter 13 plan actually "determin[ed]" they are "non-dischargeable," Aplt.'s Opening Br. at 17, Navient supports that issue-preclusion argument with caselaw regarding claim preclusion, *id.* at 16 (setting forth the elements of claim preclusion).  Since Navient clearly is arguing that the confirmed plan determined that the McDaniels' student loans are excepted from discharge, we interpret Navient to be invoking the doctrine of issue preclusion. *See id.* at 17 ("As it reflects a determination that the Educational Loans are non-dischargeable, the Confirmation Order, which is undisputedly a final judgment, is a final judgment *on the merits*.").

*Water Dist. No. 4*, 875 F.3d 1030, 1035 (10th Cir. 2017).

## 2

The bankruptcy court held that the McDaniels' confirmed Chapter 13 plan did not decide whether their student loans are nondischargeable under 11 U.S.C. § 523(a)(8)(A)(ii) because it "did not specify one way or the other whether [those loans] were—or were not—discharged."  Aplt.'s App., Vol. III, at 605; *see id.* ("Nowhere in the Plan does it state the Tuition Answer Loans, or *any* of [the McDaniels'] student loans, were nondischargeable . . . .").  The court, thus, held that whether the McDaniels' educational loans were discharged in bankruptcy is not res judicata under their confirmed plan.  *Id.* at 606.  We agree.

The McDaniels' confirmed Chapter 13 plan contains a single provision for educational loans: "[s]tudent loans are to be treated as an unsecured Class Four claim or as follows: deferred until end of plan."  Aplt.'s App., Vol. I, at 83.  We agree with the bankruptcy court that the provision "contains no explicit statement or determination as to the dischargeability of any of [the McDaniels'] student loans."[5]  *Id.*, Vol. III, at 606.  Although the provision asserts that student loans

---

[5]     Because the bankruptcy court was interpreting a provision of the plan that it had adopted in its confirmation order, we consider what standard of review applies here.  The McDaniels assert that the bankruptcy court's interpretation of the plan "contains a factual finding . . . (i.e., that the Confirmed Plan did not say the [student loans] were non-dischargeable) and thus should only be overturned if made in clear error."  Aplees' Resp. Br. at 27 n.21.  Navient, however, intimates

(continued...)

may "be treated as an unsecured Class Four claim," *id.*, Vol. I, at 83, the plan

defines those claims as "[a]llowed unsecured claims not otherwise referred to in

the Plan," *id.* at 82.  Nothing in that definition indicates that any Class Four

claims are excepted from discharge, and Navient, itself, consistently informs us

that Class Four claims are "dischargeable."  *See* Aplt.'s Opening Br. at 4–5, 14,

21–22.

To be sure, the confirmed plan's single-sentence, student-loan provision

also asserts that student loans may be "deferred until end of plan."  Aplt.'s App.,

Vol. I, at 83.  But the mere fact that the bankruptcy court allowed the McDaniels

to defer their student-loan payments until then does not naturally mean that the

---

⁵(...continued)
that we review de novo the bankruptcy court's reading of the plan.  *See* Aplt.'s
Opening Br. at 21 (arguing that the court's interpretation "cannot be correct").

We have concluded that because a "bankruptcy court surely knows more
about the meaning of its own order than we do, . . . its interpretation of its order .
. . is entitled to substantial deference."  *William B. Schnach Ret. Tr. v. Unified
Capital Corp.* (*In re Bono Dev., Inc.*), 8 F.3d 720, 721–22 (10th Cir. 1993);
*accord Taumoepeau v. Mfrs. & Traders Tr. Co.* (*In re Taumoepeau*), 523 F.3d
1213, 1218 (10th Cir. 2008).  Although we did not pronounce that conclusion in
the context of reviewing a bankruptcy court's construction of the terms of a
bankruptcy plan it had confirmed, several of our sister circuits have done so,
concluding that abuse of discretion is the appropriate standard of review.  *See,
e.g.*, *In re Shenango Grp. Inc.*, 501 F.3d 338, 346 (3rd Cir. 2007); *Gen. Elec.
Capital Corp. v. Dial Bus. Forms, Inc.* (*In re Dial Bus. Forms, Inc.*), 341 F.3d
738, 744 (8th Cir. 2003); *In re Weber*, 25 F.3d 413, 416 (7th Cir. 1994).  We need
not decide on the appropriate standard of review here, however, "for we would
affirm even under the *de novo* review advocated by [Navient]."  *See In re
Taumoepeau*, 523 F.3d at 1218.

loans are excepted: it simply means that at least some of the McDaniels' student-loan creditors might not receive payments until the end of the plan.  The record, moreover, supports a finding that, instead of having its debt claims deferred, "Navient was paid as a Class Four claims holder" under the confirmed plan. Aplees.' Resp. Br. at 27 (emphasis omitted); *see also* Ch. 13 Standing Trustee's Final Report & Account at 2, *In re McDaniel*, No. 09-37480 (Bankr. D. Colo. May 30, 2015) (indicating that, under the plan, the McDaniels paid nearly $27,000 in principal on Navient's debt claims); Aplt.'s App., Vol. II, at 400 (Navient informing the bankruptcy court that the McDaniels paid off some of its "unsecured claims" during their "plan period").

In sum, we agree with the bankruptcy court that because the McDaniels' confirmed Chapter 13 plan does not say whether their students loans are excepted from discharge, the issue is not res judicata under that plan.  The McDaniels may still litigate their claim that those loans were discharged in bankruptcy.

### 3

To be sure, Navient argues vigorously to the contrary.  It insists that the bankruptcy court erred in its res-judicata decision because the McDaniels' confirmed Chapter 13 plan provided that "all of [their] student loans (both federal and private) are non-dischargeable and will be 'deferred until end of plan.'" Aplt.'s Opening Br. at 21.  Navient's construction of the plan, moreover, ignores

both its plain language and its provision that the McDaniels' student loans may

"be treated as an unsecured Class Four claim." *See* Aplt.'s App., Vol. I, at 83.

Navient asserts that we should ignore the plan's "operative language" in that

respect because the plan's student-loan provision was drafted in response to "the

bankruptcy court['s] sustain[ing] the Trustee's objection to the Original Plan."

Aplt.'s Opening Br. at 21.  Navient asserts that the Trustee had objected that the

McDaniels' original plan "impermissibly treated their non-dischargeable student

loans as dischargeable by attempting to treat them as unsecured Class Four

claims." *Id.* (emphasis omitted).

    The record, however, does not support Navient's factual assertions about

the Trustee's objections to the McDaniels' original plan or the bankruptcy court's

resolution of them.  First, the Trustee did not object to the original plan "on the

ground that it impermissibly treated their non-dischargeable student loans as

dischargeable." *Id.* (emphasis omitted); *see id.* at 10 (asserting that the Trustee

"object[ed] that the Original Plan could not be confirmed until it was revised to

treat the Educational Loans as non-dischargeable").  Rather, the Trustee objected

that the original plan made "*no provision* for [the McDaniels'] non-dischargeable

student loan." Aplt.'s App., Vol. I, at 75 (emphasis added).  Put another way, the

objection's language indicates that the Trustee recognized that at least some of

the McDaniels' student loans were excepted from discharge—a fact that the

14

parties do not dispute here.  The Trustee's objection was simply that the McDaniels' plan did not account for those loans at all.  And that, of course, was true because their original plan erroneously claimed that they had "[n]o student loans." *Id.* at 71.  Navient, therefore, misconstrues the record in alleging that the McDaniels' original plan treated the Tuition Answer Loans as Class Four claims and that the Trustee then objected that the plan should treat them instead as excepted from discharge.

Navient further misconstrues the record in contending that the bankruptcy court sustained the Trustee's objection in this regard.  The court did no such thing.  The court was quite clear that it had dismissed the Trustee's objections as "moot" because it was denying the original plan anyway.  *Id.* at 77.  More specifically, the record indicates that the court denied the original plan for reasons unrelated to the Trustee's objections.  Tr. of Continued Confirmation Hr'g, *supra*, at 3 (the McDaniels acknowledging, without any mention of the Trustee's objections, that they would need to amend their plan in any event because the numbers reflected in their plan for charitable contributions and other matters were not completely accurate).[6]

In sum, we agree with the bankruptcy court that the McDaniels' confirmed

---

[6]     Thus, we reject Navient's argument that the McDaniels "conceded the issue" of the nondischargeability of their Tuition Answer Loans by obtaining confirmation of their amended plan.  *See* Aplt.'s Opening Br. at 17.

Chapter 13 plan did not decide whether their educational loans are excepted from discharge.[7]  Navient has failed to shoulder its burden of establishing that the plan actually decided that issue.  *See Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297–98 (10th Cir. 2014).  We, thus, uphold the bankruptcy court's decision that res judicata does not preclude the McDaniels from litigating whether their student loans were discharged in bankruptcy.[8]

**B**

Because res judicata does not preclude the McDaniels from litigating their dischargeability claim, we must consider the merits of Navient's argument that 11 U.S.C. § 523(a)(8)(A)(ii) excepts their Tuition Answer Loans from discharge in bankruptcy.  "We review a bankruptcy court's construction of the Bankruptcy

---

[7]     Relatedly, we reject Navient's contention that we should interpret the confirmed plan as providing that the McDaniels' student loans are nondischargeable because the McDaniels continued to pay off those loans "for two years after the discharge of their other unsecured debts," *see* Aplt.'s Opening Br. at 23; *see also* Aplt.'s Reply Br. at 9; irrespective of the McDaniels' post-confirmation conduct, that is not what the confirmed plan said.

[8]     Navient devotes significant briefing to arguing that, under *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), the McDaniels may no longer challenge their confirmed bankruptcy plan's determination that their student loans are excepted from discharge in bankruptcy.  Aplt.'s Opening Br. at 14–15, 18–25; *see also* Aplt.'s Reply Br. at 6 (stating that "*Espinosa*'s central holding" is that "a confirmed Chapter 13 plan's treatment of the dischargeability of student loan debt is binding on the debtor and all creditors").  Because we hold that the McDaniels' confirmed plan did not decide whether their student loans are nondischargeable, we have no occasion to consider whether the rule of *Espinosa* would now bar the McDaniels from challenging such a decision.

16

Code de novo." *Jubber v. SMC Elec. Prods., Inc.* (*In re C.W. Mining Co.*), 798 F.3d 983, 986 (10th Cir. 2015); *accord Connolly v. Morreale* (*In re Morreale*), 959 F.3d 1002, 1005 (10th Cir. 2020).  "The burden is on the creditor to show a debt is nondischargeable under § 523(a)." *Okla. Dep't of Sec., ex. rel. Faught v. Wilcox*, 691 F.3d 1171, 1174 (10th Cir. 2012); *see also Roth v. Educ. Credit Mgmt. Corp.* (*In re Roth*), 490 B.R. 908, 916 (B.A.P. 9th Cir. 2013) ("Under § 523(a)(8), the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters.").

Like the bankruptcy court, we conclude that the Tuition Answer Loans are not covered by the discharge exception set forth in § 523(a)(8)(A)(ii) because, as student loans, they are not "obligations to repay funds received as an educational benefit."  We thus affirm the court's statutory-construction holding.

## 1

A "'main purpose[]' of the federal bankruptcy system is 'to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character.'" *Lamar, Archer & Cofrin, LLP v. Appling*, --- U.S. ----, 138 S. Ct. 1752, 1758 (2018) (quoting *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918)). "A discharge under Chapter 13 'is broader than the discharge received in any other chapter [of the Bankruptcy Code].'" *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 268 (2010) (quoting 8 COLLIER ON BANKRUPTCY

17

¶ 1328.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008)).

Certain types of debt, however, are excepted from a Chapter 13 discharge. *Id.*

The Bankruptcy Code provides, as relevant here, that "any debt" specified "in

paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of [11 U.S.C. §] 523(a)"

shall be excepted from discharge. 11 U.S.C. § 1328(a)(2). Among the types of

debt § 523(a)(8) excepts from discharge are the following: "an educational benefit

overpayment or loan made, insured, or guaranteed by a governmental unit"; "any

other educational loan that is a qualified education loan"; and—the exception at

issue here—"an obligation to repay funds received as an educational benefit,

scholarship, or stipend." *Id.* § 523(a)(8).[9] "[S]o as to give maximum effect to the

---

[9]     11 U.S.C. § 523(a)(8) provides in full:

>       **(8)** unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
>       >       **(A)(i)** an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
>       >       **(ii)** an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
>       >       **(B)** any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986 [26 U.S.C. §

(continued...)

18

---

[9](...continued)

> 221(d)(1)], incurred by a debtor who is an individual[.]

In very general terms, this provision

> applies only to three categories of educational debt: (1) government and nonprofit-backed loans and educational benefit overpayments, (2) obligations to repay funds received as an educational benefit, scholarship, or stipend, and (3) qualified education loans. Unless an educational debt falls within one of these classifications, it is dischargeable through the normal bankruptcy process.

Jason Iuliano, *Student Loan Bankruptcy and the Meaning of Educational Benefit*, 93 AM. BANKR. L.J. 277, 281–82 (2019) (footnotes omitted); *see also id.* at 283–88 (providing a more extensive overview of these provisions). To further clarify the statutory context of § 523(a)(8)(A)(ii), subsection (B)'s arguably opaque language—though not directly at issue in this interlocutory appeal—warrants further brief discussion:

> Subsection (B) requires a journey through multiple statutes to understand its meaning. A partial explanation is that the referenced Internal Revenue Code section defines a "qualified education loan" as, among other things, "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses," along with other conditions. 26 U.S.C. § 221(d). The qualified expenses are "the cost of attendance" at the eligible education institution, reduced by scholarships and other payments. *Id.* An eligible institution is defined, with exceptions, in Internal Revenue Code Section 25A(f)(2), as one "which is eligible to participate in a program under Title IV" of the Higher Education Act.

*Crocker v. Navient Sols., L.L.C.* (*In re Crocker*), 941 F.3d 206, 217–18

(continued...)

policy of the bankruptcy code to provide debtors with a 'fresh start,'" *Geiger v. Kawaauhau* (*In re Geiger*), 113 F.3d 848, 853 (8th Cir. 1997) (en banc), *aff'd*, 523 U.S. 57 (1998), we limit those exceptions to discharge only "to those plainly expressed" in the statute, *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013) (quoting *Kawaauhau*, 523 U.S. at 62); *accord Affordable Bail Bonds, Inc. v. Sandoval* (*In re Sandoval*), 541 F.3d 997, 1001 (10th Cir. 2008).[10]

## 2

The bankruptcy court held that the McDaniels' Tuition Answer Loans are not "an obligation to repay funds received as an educational benefit" within the meaning of 11 U.S.C. § 523(a)(8)(A)(ii). Aplt.'s App., Vol. III, at 606–12. The court noted first that an adjoining subsection of the statute excepts from discharge "an educational benefit overpayment *or* loan made, insured, or guaranteed by a

---

[9](...continued)
(5th Cir. 2019).

[10]    Navient cites *Benson v. Corbin* (*In re Corbin*), 506 B.R. 287 (Bankr. W.D. Wash. 2014), for the proposition that the exception to discharge set forth in 11 U.S.C. § 523(a)(8)(A)(ii) "is interpreted very broadly." Aplt.'s Opening Br. at 42 n.23 (quoting *In re Corbin*, 506 B.R. at 296). The bankruptcy court in *In re Corbin* derived that proposition from its review of published decisions in cases like *Sensient Technologies Corp. v. Baiocchi* (*In re Baiocchi*), 389 B.R. 828 (Bankr. E.D. Wis. 2008). *See In re Corbin*, 506 B.R. at 296 (construing *In re Baiocchi*). Regardless of whether the bankruptcy court properly construed those decisions, we have long held that "[e]xceptions to discharge are to be narrowly construed." *In re Sandoval*, 541 F.3d at 1001 (quoting *Bellco First Fed. Credit Union v. Kaspar* (*In re Kaspar*), 125 F.3d 1358, 1361 (10th Cir. 1997)). And our precedent of course binds us here.

governmental unit." *Id.* at 607 (quoting 11 U.S.C. § 523(a)(8)(A)(i)).  The court

then determined that the statute's use of "[t]he disjunctive 'or' . . . distinguishes

an 'educational benefit overpayment' from a 'loan.'" *Id.*; *see Loughrin v. United

States*, 573 U.S. 351, 357 (2014) (observing that the "ordinary use [of 'or'] is

almost always disjunctive, that is, the words it connects are to be given separate

meanings" (quoting *United States v. Woods*, 571 U.S. 31, 45–46 (2013))).

The bankruptcy court also noted that because § 523(a)(8)'s exceptions from

discharge under subsections (A)(i) and (B) expressly mention the word "loans,"

*see* 11 U.S.C. § 523(a)(8)(A)(i), (B), Congress presumably did not intend the

exception set forth in § 523(a)(8)(A)(ii)—which does not mention the word

"loan" at all—to also cover them, Aplt.'s App., Vol. III, at 607–08; *see Loughrin*,

573 U.S. at 358 (observing that "when 'Congress includes particular language in

one section of a statute but omits it in another'—let alone in the very next

provision—this Court 'presume[s]' that Congress intended a difference in

meaning" (alteration in original) (quoting *Russello v. United States*, 464 U.S. 16,

23 (1983))).  The court concluded that were it to read the phrase "an obligation to

repay funds received as an educational benefit" as encompassing student loans, it

would violate the canon against surplusage because then "there would be no need

for a separate provision excepting from discharge" specific categories of student

loans.  Aplt.'s App., Vol. III, at 608; *see Nielsen v. Preap*, --- U.S. ----, 139 S. Ct.

21

954, 969 (2019) (observing that when interpreting a statute "every word and every provision is to be given effect [and that n]one should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence" (alteration in original) (quoting Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012))).

Finally, the bankruptcy court, applying the interpretative canon of *noscitur a sociis*, determined that the phrase "funds received as an educational benefit" does not include student loans because each of the terms in the series "educational benefit, scholarship, or stipend" signify conditional grants of money that generally need not be repaid by their recipients, whereas loaned money must be repaid.  Aplt.'s App., Vol. III, at 609–10; *see Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (noting that the canon of *noscitur a sociis*, which provides that "a word is known by the company it keeps," is a "rule we rely upon to avoid ascribing one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress'" (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961))).  After noting the "sparsity of legislative history" regarding 11 U.S.C. § 523(a)(8)(A)(ii), the court concluded that the section's exception "does not encompass the [McDaniels'] Tuition Answer Loans."  Aplt.'s App., Vol. III, at 612.

22

**3**

As relevant here, the bankruptcy court's reasoning is sound.  It is clear to us that the statutory terms "obligation to repay funds received as an educational benefit" and "educational loan" mean separate things.  *See* 11 U.S.C. § 523(a)(8).  Congress, as the bankruptcy court noted, used both terms in defining the scope of 11 U.S.C. § 523(a)(8)'s exceptions to discharge.  *See* Aplt.'s App., Vol. III, at 607–08.  Congress, moreover, expressly contrasted those terms in § 523(a)(8)(A)(i) by connecting them with a disjunctive "or," indicating that they refer to different things and have "separate meanings."  *Loughrin*, 573 U.S. at 357 (quoting *Woods*, 571 U.S. at 45–46).  And since the exception at issue here—that is, § 523(a)(8)(A)(ii)—does not include the term "educational loan," we presume it does not reach such loans.  *See Babb v. Wilkie*, --- U.S. ----, 140. S. Ct. 1168, 1177 (2020) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion[.]" (alteration in original) (quoting *Russello*, 464 U.S. at 23)); *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 456 (2012) ("We generally seek to respect Congress' decision to use different terms to describe different categories of people or things."); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (concluding that "[t]he Government's request that we read [a specific] phrase into

[a statutory] exception, when it is clear that Congress knew how to specify [those words] when it wanted to, runs afoul of the usual rule that 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended'" (quoting 2A Norman J. Singer, STATUTES AND STATUTORY CONSTRUCTION § 46:06 (6th ed. 2000))).

If Congress had wanted the exception set forth in § 523(a)(8)(A)(ii) to cover student loans, we presume it would have used the term "educational loan" or an iteration thereof in that provision, just as it used the term in defining the scope of the exceptions in the statute's adjoining subsections.  *Crocker v. Navient Sols., L.L.C.* (*In re Crocker*), 941 F.3d 206, 218–19 (5th Cir. 2019) ("An initial read of Subsection (A)(ii) does not suggest that Congress used the phrase 'obligation to repay funds received as an educational benefit' in order to include private student loans.  The immediately preceding Subsection (A)(i) exempts 'educational . . . loan[s].'  Subsection (B) exempts 'education loan[s].'  Subsection (A)(ii) makes no reference to loans, its focus seemingly elsewhere." (alterations in original) (omission in original)).[11]

---

[11]     *In re Crocker* appears to be the first precedential circuit court decision to specifically address whether student loans are "an obligation to repay funds received as an educational benefit," for purposes of § 523(a)(8)(A)(ii), and it persuasively answered that question in the negative.  More specifically, it held that § 523(a)(8)(A)(ii)'s term "'educational benefit' is limited to conditional payments with similarities to scholarships and stipends" and that, as a result,

(continued...)

Moreover, it is pellucid to us that no "normal speaker of English . . . in the circumstances" here would say that student loans are obligations to repay funds received as an educational benefit. *See Kisor v. Wilkie*, --- U.S. ----, 139 S. Ct. 2400, 2441 (2019) (Gorsuch, J., concurring) (omission in original) (quoting Oliver Wendell Holmes, Jr., *The Theory of Legal Interpretation*, 12 HARV. L. REV. 417, 417–18 (1899)); *accord Comm. of Concerned Midwest Flight Attendants for Fair & Equitable Seniority Integration v. Int'l Bhd. of Teamsters Airline Div.*, 662 F.3d 954, 956 (7th Cir. 2011) (quoting Holmes, *supra*, at 417–19); *see also Kan. State Bank & Tr. Co. v. Old Am. Ins. Co.*, 491 F.2d 307, 310 (10th Cir. 1974) (quoting Holmes, *supra*, at 419).

The first appearance of the discharge exception for "an obligation to repay funds received as an educational benefit"—indeed, of the term "educational benefit" itself—occurred in 1990. *In re Crocker*, 941 F.3d at 222 (emphasis omitted) (quoting Crime Control Act of 1990, Pub. L. No. 101-647, § 3621, 104 Stat. 4789, 4964–65 (codified as amended at 11 U.S.C. § 523(a)(8)(A))). And the Supreme Court has indicated that, around that time, the "ordinary sense" of the noun benefit was "'something that guards, aids, or promotes well-being: advantage, good'; 'useful aid'; 'payment, gift [such as] financial help in time of

---

[11](...continued)
student loans do not fall within the ambit of that exception to discharge because the "repayment [of such loans is] unconditional." 941 F.3d at 224.

sickness, old age, or unemployment'; or 'a cash payment or service provided for under an annuity, pension plan, or insurance policy.'" *Fischer v. United States*, 529 U.S. 667, 677 (2000) (alteration in original) (quoting *Benefit*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 204 (1971)).

It is clear to us that when § 523(a)(8) refers to an "educational benefit," just like when normal speakers of English refer to things like a health benefit, unemployment benefit, or retirement benefit, it is using a definition of "benefit" that implies a "payment," "gift," or "service" that ordinarily does not need to be repaid. *In re Crocker*, 941 F.3d at 220 (observing that such a benefit "generally does not need to be repaid"); *see* Jason Iuliano, *Student Loan Bankruptcy and the Meaning of Educational Benefit*, 93 AM. BANKR. L.J. 277, 292 (2019) (noting that "the term [educational benefit] denotes conditional educational grants—i.e., educational funds that a student receives in exchange for agreeing to perform services in the future"); *see also Am. Stores Co. & Subsidiaries v. Comm'r*, 170 F.3d 1267, 1279–80 (10th Cir. 1999) (describing an employee plan wherein employees "may take the full amount of vacation for the current year at any time during the calendar year" but "must repay [any] advance vacation benefits [they] received] *if* they terminate employment" (emphasis added)).

Indeed, if a person were to say that he is looking for a way to receive benefits so that he can attend college, we might reasonably infer that he is

interested in educational benefits like the GI Bill—not in applying for private student loans. *Cf. Cleland v. Nat'l Coll. of Bus.*, 435 U.S. 213, 213 n.1 (1978) (per curiam) ("While the term GI Bill is often used to describe veterans' benefits legislation generally, for purposes of this opinion it refers to legislation dealing specifically with veterans' educational assistance benefits."); *N.M. Inst. of Mining & Tech. v. Coole* (*In re Coole*), 202 B.R. 518, 519 (Bankr. D.N.M. 1996) ("Educational benefit overpayment [within the meaning of § 523(a)(8)(A)(i)] occurs in programs like the GI Bill, where students receive periodic payments upon their certification that they are attending school.  When a student receives funds but is not in school, this is a[n] educational benefit overpayment."). Likewise, no normal speaker of English would say that mortgages are housing benefits or that automobile loans qualify as transportation benefits.[12]  We, thus,

---

[12]     Navient asserts that "[p]lain English demonstrates that the word 'benefit' means a profit, gain, or advantage (e.g., the *benefit* of owning a car or the *benefit* of obtaining an education)."  Aplt.'s Opening Br. at 12; Aplt.'s Reply Br. at 14.  Although the word "benefit" can be used in that manner, we are construing it instead as used in 11 U.S.C. § 523(a)(8)(A)(ii)'s phrase "funds received as an educational benefit."  And, as just explained, we believe that no one would say that student-loan funds are "received as an educational benefit," just as no one would say that car-loan funds are "received as a transportation benefit."  That is especially true here, where an adjoining subsection distinguishes an "educational benefit overpayment" from a "loan."  *See* 11 U.S.C. § 523(a)(8)(A)(i) (using the phrase "an educational benefit overpayment *or* loan made" (emphasis added)); *see also Loughrin*, 573 U.S. at 357 (noting that the "ordinary use [of 'or'] is almost always disjunctive, that is, the words it connects are to be given separate meanings" (quoting *Woods*, 571 U.S. at 45–46)).

conclude that a student loan is not an educational benefit.

"[T]hat meaning is confirmed by the 'commonsense canon of *noscitur a sociis*.'" *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 634 (2012) (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008)).  This canon, which instructs that "a word is known by the company it keeps," helps us "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress.'" *Gustafson*, 513 U.S. at 575 (quoting *Jarecki*, 367 U.S. at 307).  We apply it by giving "words grouped in a list . . . [a] related meaning." *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 614 (10th Cir. 2018) (quoting Scalia & Garner, *supra*, at 195); *see Freeman*, 566 U.S. at 635 (indicating that the canon applies when Congress seeks "to invoke [a list of] words' common 'core of meaning'" (quoting *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 289 n.7 (2010))).  In this connection, we construe the list of words at issue as invoking their "most general quality—the least common denominator, so to speak—relevant to the context." *In re Crocker*, 941 F.3d at 219 (quoting Scalia & Garner, *supra*, at 196).

Congress defined the scope of the statutory exception to discharge at issue here as follows: "an obligation to repay funds received as an educational benefit, scholarship, or stipend." 11 U.S.C. § 523(a)(8)(A)(ii).  We observe first that the

language preceding the exception's three-item list—i.e., that we are dealing with "an obligation to repay"—"is superfluous when referring to loans," which must be repaid, "but it is quite relevant to payments with contingent obligations" to repay them. *In re Crocker*, 941 F.3d at 219. We also observe that a stipend, which is a "fixed and regular payment, such as a salary," and a scholarship, which is a "grant of financial aid to a student," are both grants of money that normally do not need to be repaid. *Id.* (quoting AMERICAN HERITAGE COLLEGE DICTIONARY 1220 (3d ed. 1997)). Finally, the noun "benefit" can be interpreted broadly as any "advantage [or] good," or more narrowly as a "payment [or] gift [such as] financial help in time of sickness, old age, or unemployment." *Fischer*, 529 U.S. at 677 (final alteration in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra*, at 204).

Applying the canon of *noscitur a sociis*, we believe it is clear that the "common quality" that the terms "educational benefit," "scholarship," and "stipend" share "is that [they] 'signify granting, not borrowing,'" and thus "*may not* need to be repaid." *In re Crocker*, 941 F.3d at 219 (quoting published version of R., Vol. III, at 610, *viz.*, bankruptcy court's motion-to-dismiss order in instant, underlying proceedings).

We, thus, conclude that the canon supports our determination that, read correctly, the language "an obligation to repay funds received as an educational

benefit" signifies a conditional grant of funding for education—akin to a stipend and scholarship—as opposed to a loan of funds for education.[13]  *Id.* at 224 (holding based in part on the *noscitur a sociis* canon that the term "'educational benefit' is limited to conditional payments with similarities to scholarships and stipends"); *see* Iuliano, *supra*, at 296–97 ("Congress' decision to group these terms together and preface them with the phrase 'obligation to repay funds received' makes complete sense.  The subsection was designed to except from discharge grants of money that are tied to service obligations—a category wholly distinct from loans.  In other words, the canon of *noscitur a sociis* provides further support for the Narrow Reading," which excludes student loans from the reach of § 523(a)(8)(A)(ii). (footnote omitted)).

---

[13]      This interpretation of "educational benefit" helps explain why Congress specifies in § 523(a)(8)(A)(i) that the exception covers "an educational benefit overpayment," but not an educational benefit itself.  Because educational benefits, unlike loans, do not normally need to be repaid, it would make no sense for Congress to except from discharge a debtor's educational benefits: it is only when such benefits need to be repaid that they are debts.  Section 523(a)(8)(A)(i), thus, covers benefit "overpayment[s]" because, although a debtor normally does not have to pay back the benefits he receives, he may have to pay back any excess benefits he should not have received.  *See Cazenovia Coll. v. Renshaw* (*In re Renshaw*), 229 B.R. 552, 556 n.8 (B.A.P. 2d Cir. 1999) (stating that "[a]n 'educational benefit overpayment' is an overpayment from a program such as the GI Bill where students receive periodic payments while they are enrolled in school, but if the students receive payments after they have left the school, that is an educational benefit overpayment").

**4**

Navient nonetheless maintains that § 523(a)(8)(A)(ii) excepts the McDaniels' Tuition Answer Loans from discharge.  We reject all of its arguments as meritless and thus conclude that Navient fails to shoulder its burden of proving that the bankruptcy court's construction of the statute was mistaken.

Navient argues first that Congress amended the statute's exceptions in 2005 "to specifically cover private student loans."  Aplt.'s Opening Br. at 30.  Navient, however, does not explain how those 2005 amendments modified the scope of the exception set forth in 11 U.S.C. § 523(a)(8)(A)(ii), which, as noted, first appeared in the statute in 1990.  *See In re Crocker*, 941 F.3d at 222.  Indeed, in *In re Crocker*, the Fifth Circuit persuasively rejected "Navient's assertion that the 2005 amendment made all private student loans nondischargeable":

> The significant change [of the 2005 amendment] was to make nondischargeable "any other . . . qualified educational loan," which Navient concedes the loans here are not, by adding Subsection (B).  Most importantly for us, Congress barely tweaked the 1990 language of "obligation to repay funds received as an educational benefit, scholarship or stipend"—it inserted a comma after "scholarship."

*Id.* at 222–23 (omission in original).  We likewise reject this argument.[14]

---

[14]     Navient relatedly asserts that we should construe § 523(a)(8)(A)(ii) as "encompass[ing] student loans" because it is "located in a statute that Congress unquestionably enacted to address student loans and that it has consistently expanded to cover ever greater numbers and types of loans."  Aplt.'s Opening Br.

(continued...)

Navient maintains next that the Second Circuit determined in *Desormes v. Infilaw Corp.* (*In re Desormes*), 569 F. App'x 42 (2d Cir. 2014) (unpublished), that "[11 U.S.C.] § 523(a)(8)(A)(ii) encompasses private student loans."  Aplt.'s Opening Br. at 31–32.  Putting aside the fact that *In re Desormes* reflects the views of only one panel of the Second Circuit in an unpublished decision, its summary analysis lacks the power to persuade.  *See McKenzie v. U.S. Citizenship & Immigration Servs., Dist. Dir.*, 761 F.3d 1149, 1158 (10th Cir. 2014) (stating that "[w]e do not consider these decisions persuasive in their application of § 334.16(b)" because they "state[] without analysis that § 334.16(b) governs").  Although the panel ruled in *In re Desormes* that "[t]he district court correctly held that the [student-loan] debt in question was excepted from discharge under 11 U.S.C. § 523(a)(8)(A)(ii)," 569 F. App'x at 43, the order does not indicate that the panel even considered whether a student loan constitutes "an obligation to

---

[14](...continued)
at 33.  We see no reason to ignore the statute's plain meaning—set forth in this opinion's preceding section—based on allegedly expansive congressional intent. *See Bostock v. Clayton Cty.*, --- U.S. ----, 140 S. Ct. 1731, 1738 (2020) ("[O]nly the words on the page constitute the law adopted by Congress and approved by the President.  If judges could add to . . . or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending the statutes outside the legislative process reserved for the people's representatives."); *United States v. Phillips*, 543 F.3d 1197, 1207 (10th Cir. 2008) ("[W]e do not look to congressional intent when the statute's language is plain.  'Going behind the plain language of a statute in search of a possible contrary congressional intent is a step to be taken cautiously even under the best of circumstances.'" (quoting *United States v. Locke*, 471 U.S. 84, 95–96 (1985))).

repay funds received as an educational benefit" for purposes of § 523(a)(8)(A)(ii),

*see In Re Crocker*, 941 F.3d at 222 n.12 (noting that "[t]he opinion [in *In re*

*Desormes*] was quite brief" and, more specifically, that "[t]here was no analysis

of how to interpret the three-item statutory list" of § 523(a)(8)(A)(ii)).   The only

challenge to the judgment that the panel expressly considered was the idea, which

it rejected, that, because the loan funds were not transferred to the debtor

"directly," that debtor could not be deemed to have"received" them "within the

meaning of the statute." *In re Desormes*, 569 F. App'x at 43.   Navient provides

us with no reason to conclude that *In re Desormes* actually considered whether

student loans fall under the language of § 523(a)(8)(A)(ii)'s exception for

obligations to repay funds received as an educational benefit, and we

independently discern none.

To be sure, the panel in *In re Desormes* stated, as a background principle of

law, that "[s]tudent loans are presumptively nondischargeable in bankruptcy." *Id.*

But the panel based that broad statement entirely on the Second Circuit's identical

statement in *Easterling v. Collecto, Inc.*, 692 F.3d 229, 231 (2d Cir. 2012) (per

curiam), which in turn was based entirely on the Supreme Court's broad statement

in *Espinosa* that "[s]ection 523(a)(8) renders student loan debt presumptively

nondischargeable 'unless' a determination of undue hardship is made." *Espinosa*,

559 U.S. at 277 n.13 (cited in *Easterling*, 692 F.3d at 231–32).   Yet that statement

33

in *Espinosa* was clearly intended as a shorthand, rather than a judicial declaration

that § 523(a)(8) excepts *all* educational loan debt from discharge—because the

Supreme Court was very clear in other parts of its opinion that § 523(a)(8)

excepts only "certain student loan debts" from discharge.  *Id.* at 268; *see id.* at

273 (noting in particular that "the text of § 523(a)(8) . . . provides that student

loan debts guaranteed by governmental units are not dischargeable"); *see also*

Iuliano, *supra*, at 281–82 ("[T]he most important point is that not all student

loans are excepted from discharge. . . . Unless an educational debt falls within

one of these classifications [enumerated in § 523(a)(8)], it is dischargeable

through the normal bankruptcy process." (footnotes omitted)).[15]

Navient also argues that, because every loan of money includes "an

obligation to repay" that money, we must hold that § 523(a)(8)(A)(ii)'s exception

from discharge "necessarily includes loans."  Aplt.'s Opening Br. at 32; *see id.* at

32–33 (listing other statutes and regulations where the words "obligation to

---

[15]     We, too, have occasionally used such shorthand when describing 11 U.S.C. § 523(a)(8)'s exceptions to discharge.  Navient, for example, points out that we once said that in enacting § 523(a)(8), "Congress evinced the unmistakable intent to make student loan debts presumptively non-dischargeable." Aplt.'s Opening Br. at 13 (quoting *Educ. Credit Mgmt. Corp. v. Mersmann* (*In re Mersmann*), 505 F.3d 1033, 1047–48 (10th Cir. 2007) (en banc), *abrogated on other grounds by Espinosa*, 559 U.S. at 268 n.5, 273–75).  However, at issue in *In re Mersmann* was the narrow question of whether the "practice . . . known as 'discharge-by-declaration' . . . [under which] the debtor is not required to prove undue hardship in an adversary proceeding" was in accord with "the Bankruptcy Code and rules."  505 F.3d at 1038.  By using the *Espinosa* shorthand, we clearly were not intimating that § 523(a)(8) excepts *all* student loans from discharge.

repay" or a variant thereof has been used in the context of a loan).  We are not,

however, construing the term "an obligation to repay" on its own.  As the Fifth

Circuit reasoned in *In re Crocker* in rejecting Navient's argument that "an

'obligation to repay funds received' is expansive and includes loans,"

> [t]he fact that an obligation to repay is one way to refer to loans
> is correct, but we are trying to discern the meaning in the context
> of a particular enactment. . . . Congress sandwiched Subsection
> (A)(ii), which does not mention loans at least by name, between
> two subsections that explicitly do.  That structure is at least a
> start to saying educational benefits are not loans.

941 F.3d at 219; *see* Iuliano, *supra*, at 294 ("The key question, then, is as

follows: if Congress meant 'loan,' why did it not simply say 'loan' rather than

enact the clunky circumlocution 'obligation to repay funds received[]'[?]  After

all, Congress used the word 'loan' three times in section 523(a), so this is not an

instance of ignorance.  To the contrary, the evidence suggests that Congress'

choice to forego the term 'loan' in this portion of the statute represents a

considered decision.").

Indeed, in the context of the exception at issue here, the fact that the term

even appears in the exception indicates that the "educational benefit, scholarship,

or stipend" that a debtor must repay are not the kinds of things that must

normally be repaid.  *See In re Crocker*, 941 F.3d at 219–20.  That is because, as

previously noted, the term "'an obligation to repay' . . . . is superfluous when

referring to loans" that, by their very nature, must be repaid, "but it is quite

relevant to [transfers of money] with contingent obligations" to repay.  *Id.* at 219; *see also id.* at 220 (observing that courts have a "duty to give effect, if possible, to every clause and word of a statute" (quoting *Bennett v. Spear*, 520 U.S. 154, 173 (1997))).

Navient also says that because § 523(a)(8)(B) excepts from discharge "'any *other* educational loan[,]' . . . [t]he two subsections that precede it . . . must *also* refer to loans."  Aplt.'s Opening Br. at 33.  This does not necessarily follow.  The phrase "any other educational loan" in § 523(a)(8)(B) is naturally read as referring back to the term "loan" in § 523(a)(8)(A)(i)'s phrase, "educational benefit overpayment or loan"—not to the "funds received as an educational benefit" phrase in § 523(a)(8)(A)(ii) because, as explained, we do not generally say that a student loan is received as an educational benefit.

In any event, the discharge exception set forth in § 523(a)(8)(B) first appeared in the statute in 2005, Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (codified at, *inter alia*, 11 U.S.C. § 523(a)(8)(B)), long after the exception set forth in § 523(a)(8)(A)(ii) first appeared in 1990, *see* Crime Control Act of 1990 § 3621; *see also In re Crocker*, 941 F.3d at 222–23 (recognizing that the § 523(a)(8)(A)(ii) exception first appeared in 1990 and the § 523(a)(8)(B) exception first appeared in 2005).  So even if one could divine from the 2005 amendment the 109th

36

Congress's belief that the 101st Congress intended the exception set forth in § 523(a)(8)(A)(ii) to cover student loans, it would have very little, if any, significance because "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Marvin M. Brandt Revocable Tr. v. United States*, 572 U.S. 93, 109 (2014) (quoting *United States v. Price*, 361 U.S. 304, 313 (1960)); *see United States v. Sw. Cable Co.*, 392 U.S. 157, 170 (1968) (stating that "the views of one Congress as to the construction of a statute adopted many years before by another Congress have 'very little, if any, significance'" (quoting *Rainwater v. United States*, 356 U.S. 590, 593 (1958))).  We believe that the later addition of § 523(a)(8)(B) does not establish that Congress intended § 523(a)(8)(A)(ii) to cover educational loans and except them from discharge.

Navient further maintains that, despite "some overlap" between § 523(a)(8)(A)(ii) and § 523(a)(8)'s other subsections, construing § 523(a)(8)(A)(ii) to cover student loans "does not render any other portion of the statute superfluous" because the section so construed "catches instances of non-dischargeability that the other sub[sections] of § 523(a)(8) miss."  Aplt.'s Opening Br. at 39.  Under its reading, Navient maintains in particular that § 523(a)(8)(A)(ii) captures some student loans that § 523(a)(8)(A)(i) fails to reach because the former "doesn't require governmental or nonprofit participation," whereas the latter does.  *Id.*  Navient also contends that § 523(a)(8)(A)(ii) so

construed excepts from discharge "loans for students at [certain types of] schools .
. . that § 523(a)(8)(B) does not." *Id.* at 39–40.

Though Navient's interpretation gives § 523(a)(8)(A)(ii) a gap-filling role to
play in excepting student loans from discharge, Navient does not explain how its
reading of the statute leaves those adjoining "subsections serv[ing] much
purpose." *In re Crocker*, 941 F.3d at 220; *see id.* ("If an 'obligation to repay funds
including educational benefits' includes repaying private student loans, that
requires defining 'educational benefit' to include loans, which then means it also
covers the public loans that are the focus of Subsection 523(a)(8)(A)(i)."); *Nunez
v. Key Educ. Res.* (*In re Nunez*), 527 B.R. 410, 415 (Bankr. D. Or. 2015) ("I see no
basis to untether the language in § 523(a)(8)(A)(ii) to apply the student loan
exception to discharge to 'all obligations to repay funds received as an educational
benefit, scholarship or stipend,' without limitation. Such an interpretation would
render § 523(a)(8)(B) . . . superfluous and makes no sense. After all, if any
educational loans of any kind are excepted from discharge by § 523(a)(8)(A)(ii),
what addition does excepting qualified educational loans under the Internal
Revenue Code make to the discharge exception?"). And it is important to "resist a
reading" of a statute's language that "would render superfluous" other adjoining
portions of that statute. *Yates v. United States*, 574 U.S. 528, 543 (2015) (plurality
opinion); *see id.* (declining to adopt government's reading of a statute because

38

"[n]owhere does the Government explain what independent function [18 U.S.C.] § 1512(c)(1) would serve if the Government is right about the sweeping scope of § 1519").

Navient suggests, however, that § 523(a)(8)(B) still has work to do because it lacks the "'funds received' element" that § 523(a)(8)(A)(ii) has.  Aplt.'s Opening Br. at 39.  Navient cites *Wills v. Sallie Mae Servicing* (*In re Wills*), No. 08-80404-FJO-07, 2010 WL 1688221 (S.D. Ind. Apr. 23, 2010) (unpublished), as an example of a case where § 523(a)(8)(A)(ii) might not except the student loan from discharge, but § 523(a)(8)(B) does: there, the loan's debtor was not the student who received the funds to attend school—his grandson was.  *Id.*  Navient contends that because the debtor in that case "did not receive the benefit of the education or the benefit of the loan proceeds," his student-loan debt "likely would not have been covered by § 523(a)(8)(A)(ii)."  *Id.*  The bankruptcy court in *In re Wills* did not address that issue, however.  The court there simply determined that the debtor's loan constituted "a qualified education loan" under 11 U.S.C. § 523(a)(8)(B), without opining on whether it also constituted "an obligation to repay funds received as an educational benefit" for purposes of § 523(a)(8)(A)(ii). 2010 WL 1688221, at *7.  Navient, moreover, does not explain why we should conclude that § 523(a)(8)(A)(ii) requires the debtor to be the person who received

the funds as an educational benefit.  *See* Aplt.'s Opening Br. at 39.[16]  Therefore, Navient's argument is unpersuasive.

Navient finally argues that we may not properly apply the doctrine of *noscitur a sociis* only to § 523(a)(8)(A)(ii)'s series of "educational benefit, scholarship, or stipend," but must apply it instead to § 523(a)(8)'s entire list of discharge exceptions, which, Navient contends, "unquestionably apply to student loans."  Aplt.'s Opening Br. at 43.  Recall at the outset—as noted *supra* (Part II.B.3)—that, even though *noscitur a sociis* helpfully confirms our understanding of § 523(a)(8)(A)(ii), we would conclude in any event from that statute's text and context, that the Tuition Answer Loans are not an educational benefit and that, consequently, § 523(a)(8)(A)(ii) does not except them from discharge.  Yet, addressing Navient's argument head-on, we find no merit in it.

To be sure, in construing a word based on the company it keeps, we are not limited to comparing it "only to [its] immediately surrounding words," *Schindler Elevator Corp. v. U.S. el rel. Kirk*, 563 U.S. 401, 409 (2011), but must compare it instead to as much of the statute as "provide[s] interpretive guidance," *id.* (quoting

---

[16]  Indeed, *In re Desormes*—the Second Circuit panel decision that Navient has relied upon *supra* in arguing that student loans are nondischargeable under § 523(a)(8)(A)(ii)—has opined to the contrary.  *See* 569 F. App'x at 43 ("Contrary to Desormes's argument, if a transfer of funds directly to the debtor is not necessary for the creation of a loan, there is little reason to think such a transfer is necessary for the loan to be received within the meaning of the statute [i.e., § 523(a)(8)(A)(ii)].").  Under our reasoning and ultimate disposition, we have no need to opine on this matter and, therefore, do not do so.

*Graham Cty. Soil*, 559 U.S. at 289).  Navient, however, does not say why all of

§ 523(a)(8)—as opposed to only § 523(a)(8)(A)(ii)'s three-item list of

"educational benefit, scholarship, or stipend"—provides interpretive guidance

when interpreting just how broadly or narrowly Congress intended each item in

that list to be.  Aplt.'s Opening Br. at 43–45.

We, in any event, do not agree with Navient that the common quality

connecting the exceptions in § 523(a)(8) is that they all deal with "student loans."

*Id.* at 43.  The section, after all, also excepts from discharge "an obligation to

repay funds received as . . . [a] scholarship, or stipend."  11 U.S.C.

§ 523(a)(8)(A)(ii).  And those exceptions do not cover student loans of any kind.

Navient nonetheless asserts that scholarships and stipends are "similar" to loans

since they, too, assist their recipients "with meeting the costs of education."

Aplt.'s Opening Br. at 44.  But if any funds that help a person meet "the costs of

education" were to constitute funds received as an educational benefit, Navient's

reading of the statute would be exceedingly broad—swallowing, among other

things, any credit-card debt used to buy textbooks, as the McDaniels observe.

Aplees.' Resp. Br. at 1 n.2.

And if the exception set forth in 11 U.S.C. § 523(a)(8)(A)(ii) were actually

that expansive, "Congress could have just exempted from discharge any

'obligation to repay funds received as an educational benefit' and left it at that."

*In re Crocker*, 941 F.3d at 220; *see* Iuliano, *supra*, at 298 (noting that applying "the broad interpretation of educational benefit" to § 523(a)(8)(A)(ii) to encompass all loans "that recipients use to advance their educations" "render[s] irrelevant every other exception that Congress set forth in these three clauses" of § 523(a)(8)). We see no reason to adopt a construction of the exception that would render so much of the rest of § 523(a)(8) redundant. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

There is indeed a common quality linking together the items in the statutory phrase "educational benefit, scholarship, or stipend": they can all naturally be read to describe "conditional payments." *In re Crocker*, 941 F.3d at 224. We, thus, conclude that Congress grouped those words together in a list "to invoke [their] common 'core of meaning.'" *See Freeman*, 566 U.S. at 635 (quoting *Graham Cty. Soil*, 559 U.S. at 289 n.7). And we consider it quite permissible to interpret the term "educational benefit" in § 523(a)(8)(A)(ii) by applying the canon of *noscitur a sociis* to the three-item list in that subsection. *See In re Crocker*, 941 F.3d at 220 (applying the *noscitur a sociis* canon to the three-term list of § 523(a)(8)(A)(ii) and noting that "[t]he brevity of the list in the text we must review does not compel ignoring the relevant term's neighbors"); *see also* Scalia,

42

*supra*, at 196–97 (noting that "[t]he associated-words canon [i.e., *noscitur a*

*sociis*] has tremendous value in a broad array of cases," and illustrating the

canon's operation by discussing a state-court case with a three-term list).[17]

In sum, we conclude that Navient's arguments for reversal fail to withstand

scrutiny.  We, accordingly, uphold the bankruptcy court's determination that the

---

[17]      Navient quotes *Graham County Soil* for the proposition that "[a] list of three items . . . is too short to be particularly illuminating" under the doctrine of *noscitur a sociis*.  Aplt.'s Opening Br. at 43 (omission in original) (quoting *Graham Cty. Soil*, 559 U.S. at 288).  The text that Navient omits from that quote contains a critical qualification, however.  The full sentence reads as follows: "[a] list of three items, each quite distinct from the other no matter how construed, is too short to be particularly illuminating."  *Graham Cty. Soil*, 559 U.S. at 288. And, as we have explained, the three items listed in § 523(a)(8)(A)(ii) share a common quality and core of meaning and, thus, are not "each quite distinct from the other no matter how construed."  *Id.*  In *Graham County Soil*, moreover, the Court was perfectly clear that the doctrine of *noscitur a sociis* can be fruitfully applied to lists containing only three items.  It, for example, favorably cited the doctrine's application to a three-item list in *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303 (1961).  *See* 559 U.S. at 289 n.7 (recognizing that in *Jarecki* the doctrine helped the Court correctly construe the statutory phrase "[i]ncome resulting from exploration, discover, or prospecting" (quoting *Jarecki*, 367 U.S. at 305)). Further, since *Graham County Soil*, the Court has used the doctrine to construe yet another three-item list.  *See Freeman*, 566 U.S. at 634–35 (applying the doctrine to interpret the meaning of the words "portion" and "percentage" in 12 U.S.C. § 2607(b)'s phrase "any portion, split, or percentage of any charge made or received").  We recognize that—relying on *Graham County Soil*—we, too, have suggested that three terms may not be enough to properly apply the *noscitur a sociis* canon, *see United States v. Franklin*, 785 F.3d 1365, 1369 (10th Cir. 2015), but our comment there was dictum because "a list of two words" was at issue, *see id.*  We conclude, therefore, that it is quite permissible for us to use the doctrine of *noscitur a sociis* even though the list consists of only three items. And, lest we forget, even without reference to *noscitur a sociis*, we would conclude—from the statute's text and context—that the Tuition Answer Loans are not an educational benefit and that, consequently, § 523(a)(8)(A)(ii) does not except them from discharge.

statutory exception to discharge set forth in § 523(a)(8)(A)(ii) does not cover the McDaniels' Tuition Answer Loans.[18]

### III

In conclusion, we hold that the bankruptcy court did not err in ruling that the McDaniels' confirmed Chapter 13 plan did not decide whether their Tuition Answer Loans are excepted from discharge in bankruptcy. We hold further that the bankruptcy court did not err in ruling that § 523(a)(8)(A)(ii) does not except student loans from discharge and, consequently, that the exception does not cover the McDaniels' Tuition Answer Loans. We, therefore, **AFFIRM** the bankruptcy court's interlocutory order dismissing Navient's motion to dismiss the McDaniels' dischargeability claim and **REMAND** the case for further proceedings not

---

[18]     Navient challenges the bankruptcy court's construction of § 523(a)(8)(A)(ii) on other grounds as well. Navient asserts, for example, that the bankruptcy court should not have considered it important that the subsection "uses the phrase 'received *as* an educational benefit' rather than the phrase 'received *for* an educational benefit.'" Aplt.'s Opening Br. at 34 (citing Aplt.'s App., Vol. III, at 608). *But see In re Crocker*, 941 F.3d at 221 (agreeing that the decision to use "as," instead of "for," was "a minor word-choice," but holding that "the drafters' word choice does not support inclusion of private student loans"). Navient also says that § 523(a)(8)'s legislative history forms too thin of a reed to provide any clarification of any ambiguity the statute may contain. Aplt.'s Opening Br. at 45–46. We need not opine on the import of the section's use of "as," instead of "for," nor on its legislative history, in order to affirm the bankruptcy court's judgment. We, therefore, decline to reach these matters. *See Azar v. Allina Health Servs.*, --- U.S. ----, 139 S. Ct. 1804, 1814 (2019) ("We need not, however, go so far as to say that the . . . interpretation, adopted by the court of appeals, is correct in every particular. To affirm the judgment before us, it is enough to say the [appellant's] arguments for reversal fail to withstand scrutiny. Other questions about the statute's meaning can await other cases.").

inconsistent with this opinion.[19]

---

[19] The motion to file an amicus curiae brief (dated Arpil 18, 2019) is denied.

### UNITED STATES COURT OF APPEALS
### FOR THE TENTH CIRCUIT
### OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Christopher M. Wolpert
Clerk of Court

August 31, 2020

Jane K. Castro
Chief Deputy Clerk

Mr. Thomas M. Farrell
McGuire Woods
600 Travis Street, Suite 7500
Houston, TX 77002

Mr. Eric E. Johnson
Sherman & Howard
633 17th Street, Suite 3000
Denver, CO 80202

Ms. Courtney Alexa McCormick
McGuire Woods
50 North Laura Street, Suite 3300
Jacksonville, FL 32202

Ms. Karen Elizabeth Sieg
McGuire Woods
800 East Canal Street
Richmond, VA 23219

RE:     **18-1445, McDaniel, et al v. Navient Solutions**
        Dist/Ag docket: 1:09-BK-37480-KHT, 1:17-BK-01274-KHT

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If

requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of the Court

cc:     Austin C. Smith
        Tara A. Twomey

CMW/na