## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 09-37480-KHT |
| BYRON PATTERSON McDANIEL JR. | ) | |
| AND LAURA PAIGE McDANIEL | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| BYRON PATTERSON McDANIEL JR. | ) | |
| AND LAURA PAIGE McDANIEL, | ) | |
| | ) | Adversary Proceeding No. 17-01274-KHT |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| NAVIENT SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

---

### DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT
---

COMES NOW Defendant NAVIENT SOLUTIONS, LLC ("**NSL**"), by and through its undersigned counsel, and hereby files this Answer to Plaintiffs' Complaint as follows:[1]

### I.
### PRELIMINARY STATEMENT

1.      For the last ten years, Defendant has been engaged in a massive effort to defraud student debtors and subvert the orderly working of the bankruptcy courts. Specifically, Navient (formerly known as Sallie Mae or SLM Corporation, collectively referred to as "Defendant") has been originating and servicing dischargeable consumer loans and disguising them as non-dischargeable student loans. Defendant has done this in order to discourage debtors from seeking their constitutional right to relief under Title 11 and to allow creditors to continue to collect on discharged loans after a debtor's bankruptcy. In order to effectuate this illegality, Defendant has appropriated a legal presumption for a class of debt that it knows is not entitled to that presumption, thereby using the authority of the bankruptcy courts to cloak its fraud in the color of law and escape detection. Defendant is willfully and maliciously engaged in a pattern and practice that it know

---

[1]      For the convenience of the Court, NSL's answers are listed below each paragraph of Plaintiff's Complaint.

defiles the proper workings of the bankruptcy process. Plaintiffs bring this action to enforce their rights under law.

**RESPONSE:** This Paragraph of Plaintiffs' Complaint contains mixed, generalized, and nonspecific allegations of fact and conclusions of law, to which no response is required; out of an abundance of caution, those allegations are denied directly and/or for lack of information sufficient to respond more fully.  NSL responds further to Plaintiffs' specific factual allegations below.  NSL specifically denies any fraudulent or malicious conduct.

## II.
## PARTIES

2.     BYRON PATTERSON MCDANIEL is an individual and a resident of this district who filed for relief under Title 11 in this Court in 2009.

**RESPONSE:** NSL admits that Byron McDaniel filed for relief under title 11 in this Court in 2009.  NSL is without information or knowledge sufficient to form a belief as to the truth of the remaining averments contained within this paragraph of Plaintiffs' Complaint, and therefore, denies same.

3.     LAURA PAIGE MCDANIEL is an individual and a resident of this district who filed for relief under Title 11 in this Court in 2009.

**RESPONSE:** NSL admits that Laura McDaniel filed for relief under title 11 in this Court in 2009.  NSL is without information or knowledge sufficient to form a belief as to the truth of the remaining averments contained within this paragraph of Plaintiff's Complaint, and therefore, denies same.

4.     NAVIENT SOLUTIONS, LLC is a business entity that in the ordinary course of business regularly, on behalf of itself or others, engages in the servicing and collection of consumer debt. NAVIENT SOLUTIONS, LLC is a national company with its principal place of business in Wilkes-Barre, Pennsylvania.

2

**RESPONSE:**  It is admitted that NSL has one of its places of business in Wilkes-Barre, PA, and

that NSL is an educational loan servicer.  NSL denies the remainder of Plaintiffs' allegations.

### III.

### JURISDICTION AND VENUE

5.      This Adversary Proceeding is brought under Case Number 09-37480.

**RESPONSE:**     It is admitted that the case number listed in this paragraph corresponds to the

Chapter 13 bankruptcy case in which the two named Plaintiffs herein are debtors.

6.      This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b) and 1332. This is a core proceeding under Title 11 because it concerns a determination as to the dischargeability of a debt. Furthermore, this Court has supplemental jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1367 because the additional claims are related to the core proceeding.

**RESPONSE:**  Subject matter jurisdiction over Plaintiffs' claims, under 11 U.S.C. §§ 523(a)(8)

and 524 only, is admitted.  Supplemental jurisdiction over any other causes of action not arising

under the U.S. Bankruptcy Code, Title 11 U.S.C. (the "Code"), arising in the Plaintiffs'

bankruptcy cases, or related to the Plaintiffs' bankruptcy cases, is denied.

7.      This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), 15 U.S.C § 105 and Federal Rules of Bankruptcy Procedure Rule 7001(9).

**RESPONSE:**     Admitted as to the nature of Plaintiffs claims in this adversary proceeding only.

8.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

**RESPONSE:**     This paragraph of Plaintiffs' Complaint is a conclusion of law, to which no

Answer is required, but in an abundance of caution, is denied.

# IV.

## STATEMENT OF FACTS

### A.  Section 523(a)(8) Of The Bankruptcy Code.

9.      In 1978, there was a growing concern that students were taking advantage of the Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon after graduation. In response, Congress enacted section 523(a)(8) of the Bankruptcy Code to prohibit the discharge of federal student loans during the first five years of repayment (unless payment would constitute an undue hardship). Through a series of amendments, which first lengthened and then eliminated the five-year non-dischargeability time frame, it has become increasingly difficult for debtors to attain discharges of their student loan debts.

**RESPONSE:**    The allegations in this paragraph represent conclusions of law, which do not

require a response.  To the extent a response is required, NSL (a) respectfully refers the Court to

11 U.S.C. § 523(a)(8), which speaks for itself, (b) denies any allegation inconsistent therewith,

and (c) lacks knowledge or information sufficient to form a belief as to the truth or accuracy of

any of the remaining allegations in this paragraph and therefore denies the same.

10.      Although the rationale behind section 523(a)(8) has been questioned by many scholars,[2] the justification for excepting federal student loan debt from discharge was not without some merit. In fact, in the age of soaring tuition costs, the original justification has become more compelling. Section 523(a)(8) serves not only to protect the taxpayers, but also to preserve the solvency of student lending programs for the next generation of students.

**RESPONSE:**    NSL (a) denies the allegations in this paragraph to the extent they relate to NSL

and (b) lacks knowledge or information sufficient to form a belief as to the truth or accuracy of

the allegations in this paragraph to the extent they relate to other persons or entities and therefore

denies the same.

11.      In 2005, after extensive lobbying, private education lenders and debt collectors won *limited* protection in bankruptcy *for some of their educational loan products*.[3] Specifically, Congress limited protection for private education loan instruments to the extent that such money

---

[2] *See* Rafel I. Pardo & Michelle R. Lacey, THE REAL STUDENT-LOAN SCANDAL: UNDUE

[3] Bankruptcy Abuse and Consumer Protection Act Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereinafter "BAPCPA").

supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools solely for tuition, room, board, and books ("Qualified Education Loans").

**RESPONSE:**   The allegations in this paragraph represent conclusions of law, which do not require a response.  To the extent a response is required, NSL (a) respectfully refers the Court to 11 U.S.C. § 523(a)(8), which speaks for itself, (b) denies any allegation inconsistent therewith, and (c) lacks knowledge or information sufficient to form a belief as to the truth or accuracy of any of the remaining allegations in this paragraph and therefore denies the same.

12.     But Defendant was not satisfied with the origination volume of Qualified Education Loans. The paperwork was burdensome, schools would not certify sums in excess of tuition, and it prevented lending to thousands of for-profit colleges and high schools that had not obtained Title IV accreditation. Thereafter, Defendant initiated new programs that lent money directly to students in excess of the "Cost of Attendance" ("Consumer Education Loans" or "Non-Qualified Education Loans"). Consumer Education Loans were much easier to originate because they bypassed the certification requirements codified in the Higher Education Act. These loans were not and are not Qualified Education Loans under the Tax Code or Bankruptcy Code. Like student credit card debt, they are simply unsecured consumer debts and are discharged automatically upon entry of a discharge injunction.

**RESPONSE:** NSL (a) denies the allegations in this paragraph to the extent they relate to NSL and (b) lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in this paragraph to the extent they relate to other persons or entities and therefore denies the same.

**B.   The Application Of Section 523(a)(8).**

13.     Prior to 2005, section 523(a)(8) was easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of "undue hardship." This fueled the belief that all student loans are non-dischargeable. But Defendant and other private student lenders were only given *qualified* protection in 2005 such that section 523(a)(8)(B) only excepts *some* private education loans from discharge.[4] This created an opportunity for Defendant to exploit the application of section 523(a)(8) and deceive debtors into thinking that all private student loans, like their federal cousins, were excepted from discharge.

---

[4] 11 U.S.C. § 523(a)(8)(B).

**RESPONSE:**   Certain of the allegations in this paragraph are conclusions of law, to which no response is required.  To the extent a response is required, NSL (a) denies the allegations in this paragraph to the extent they relate to NSL and (b) lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations in this paragraph to the extent they relate to other persons or entities and therefore denies the same.

14.   This problem was made worse because section 523(a)(8) is "self-executing" and thus its correct application relies on the good faith and honesty of creditors. When a debtor files a bankruptcy petition, the debtor includes all unsecured debts on a Schedule F form, listing only the amount of the debt, the name of the creditor, and the consideration received. After demonstrating compliance with the Bankruptcy Code, a court then issues an order discharging all pre-petition debts listed on the bankruptcy petition except for those listed in section 523(a).[5]  Importantly, the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including "debts for most student loans."

**RESPONSE:**   Certain of the allegations in this paragraph are conclusions of law, to which no response is required.  To the extent a response is required, NSL (a) denies the allegations in this paragraph to the extent they relate to NSL and (b) lacks knowledge or information sufficient to form a belief as to the truth or accuracy of any of the remaining allegations in this paragraph and therefore denies the same.

15.   If a creditor believes that a debt they hold is excepted from discharge, it is their legal burden to prove that the debt is encompassed by section 523(a)(8).[6]  Once the creditor proves the debt is presumptively non-dischargeable, the burden then shifts to the debtor to prove that repaying the debt would constitute an "undue hardship."[7]  Absent an adversary proceeding, any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of

---

[5] 11 U.S.C.A. § 727(b) ("Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter.").

[6] *In re Kashikar*, 567 B.R. 160, 168 (9th Cir. BAP 2017) ("[O]nce the question is put at issue by an appropriate party, '[u]nder § 523(a)(8), the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters . . . [t]he burden then shifts to the debtor to prove [undue hardship] by a preponderance of the evidence.'").

[7] *In re Haroon*, 313 B.R. 686, 689 (Bankr. E.D. Va. 2004) ("A student loan creditor is not required to seek a dischargeability determination during the pendency of the bankruptcy case. The failure to seek a dischargeability determination does not alter the fact that the debt is or is not discharged upon entry of the discharge order. It merely avoids a judicial declaration of that fact at that time . . . The parties' rights were fixed at that time and, if the debt was discharged, the creditor was barred from collecting it.")

law discharged upon entry of the discharge order.[8]  Accordingly, it is left to the creditors to determine whether their particular educational loan is excepted from discharge by section 523(a)(8), and, where confusion exists, seek clarity from the court. The creditor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions.

**RESPONSE:**   The allegations in this paragraph represent conclusions of law which do not

require a response.  NSL (a) respectfully refers the Court to 11 U.S.C. § 523(a)(8), which speaks

for itself, (b) denies any allegations inconsistent therewith, and (c) lacks knowledge or

information sufficient to form a belief as to the truth or accuracy of any of the remaining

allegations in this paragraph and therefore denies the same.

   1. **Defendant Manipulates The Application Of Section 523(a)(8) And Deceives Debtors Into Believing Their Non-Qualified Student Loans Were Not Discharged.**

   16.    Not content with the protections won from Congress in 2005, Defendant soon devised a scheme to manipulate this presumption of non-dischargeability and deceive debtors and the bankruptcy courts into thinking that all private student loans, both qualified and non-qualified, both accredited and unaccredited, were excepted from discharge. To effectuate this fraud, Defendant represented to student debtors that the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose.

**RESPONSE:**   Denied.

   17.    Defendant provided Consumer Education Loans, *inter alia*, through the Tuition Answer loan program. This lending program was a "Direct-to-Consumer" loan program that originated money to consumers outside the confines of the financial office and were made in excess of the school's published "Cost of Attendance."

**RESPONSE:**   Denied.

   18.    And so, a law that was originally designed to prevent students from taking advantage of the bankruptcy system enabled Defendant and other student loan creditors to take advantage of the bankruptcy system. These loans are disproportionately issued to low-income students who lack the resources and knowledge to seek relief in an adversary proceeding, which is an expensive and time-consuming undertaking. In fact, only one tenth of one percent (0.1%) of

---

[8] *In re Meyer*, No. 15-13193, 2016 WL 3251622, at *2 (Bankr. N.D. Ohio June 6, 2016) ("For the reasons stated in the debtor's motions and the *Decena* decision, the Court finds that the debtor's student loans were discharged on September 16, 2015, because they do not fall within 11 U.S.C. § 523(a)(8). The Court further finds that the student loan servicers violated the discharge injunction of § 524(a)(2) by attempting to collect on the student loan accounts after the date of the debtor's discharge.").

debtors in bankruptcy seek to discharge their student debts.[9]  In the rare event a debtor has filed an adversary proceeding, creditors often settle or forgive student debts that were already legally discharged, thereby preventing courts from discovering that these debts were never entitled to a presumption of non-dischargeability in the first instance, and ensuring that they are able to continue collecting on 99.9% of other discharged debts without consequence.

**RESPONSE:**    NSL (a) denies the allegations in this paragraph to the extent they relate to NSL

and (b) lacks knowledge or information sufficient to form a belief as to the truth or accuracy of

any of the remaining allegations in this paragraph and therefore denies the same as they relate to

other persons or entities.

### 2.  Sallie Mae and Navient Reveal Their Bad Faith By Relaying Different Information To The SEC And Sophisticated Investors.

19.    During the same time, Defendant was securitizing these debts for sale on the secondary market. Defendant was rightfully concerned that if it represented to investors that all private student loans were non-dischargeable in bankruptcy, sophisticated investors would easily enough discover the misrepresentation (based on a plain reading of the statute), and Defendant would be liable for securities violations.[10]  Defendant thereafter included in student loan asset-backed securities' prospectuses language warning investors that, pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge.[11]

**RESPONSE:**    NSL (a) denies the allegations in this paragraph to the extent they relate to NSL

and (b) lacks knowledge or information sufficient to form a belief as to the truth or accuracy of

any of the remaining allegations in this paragraph and therefore denies the same as they relate to

other persons or entities.

---

[9] Jason Iuliano, AN EMPIRICAL ASSESSMENT OF STUDENT LOAN DISCHARGES AND THE UNDUE HARDSHIP STANDARD, 86 Am. Bankr. L.J. 495, 505 (2012) (stating that in 2007, at least, only .01% of all debtors in bankruptcy with student loans filed an adversary proceeding seeking discharge).

[10] *See, e.g.*, 15 U.S.C. § 78j.

[11] *See* SLM Loan Trust 2008-1 Prospectus Supplement dated January 10, 2008, at 33 ("Risk of Bankruptcy Discharge of Private Credit Student Loans: Private credit student loans ***made for qualified education expenses*** are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including their certification of the cost of attendance for their education. This process does not involve school certification as an additional control and, therefore, may be subject to some additional risk that ***the loans are not used for qualified education expenses***. If you own any notes, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan to the extent the amount of the default is not covered by the trust's credit enhancement.") (emphasis added).

C. **Plaintiffs Borrow More than $100,000 in Tuition Answer Loans And Seek Relief Under Title 11.**

      20.    From 2004-2007, Plaintiffs borrowed $107,467 in six (6) Sallie Mae Tuition Answer Loans.

**RESPONSE:**   NSL is without information or knowledge sufficient to form a belief as to the

truth of the averments contained within this paragraph of Plaintiffs' Complaint, and therefore,

denies same.

      21.    The total balance of these loans now stands at $245,264 despite consistent monthly payments of more than $2,000 for several years.

**RESPONSE:**   NSL is without information or knowledge sufficient to form a belief as to the

truth of the averments contained within this paragraph of Plaintiffs' Complaint, and therefore,

denies same.

      22.    Paige McDaniel attended Lakeland College from 2004-2007.

**RESPONSE:**   NSL is without information or knowledge sufficient to form a belief as to the

truth of the averments contained within this paragraph of Plaintiffs' Complaint, and therefore,

denies same.

      23.    The "Cost of Attendance" ("COA") for qualified tuition and related expenses at Lake College for each year was as follows (See attached **Exhibit A**):

         a.    In 2004, the COA was $5,340.
         b.    In 2005, the COA was $10,650.
         c.    In 2006, the COA was $6,450.
         d.    In 2007, the COA was $6,390.

**RESPONSE:**   NSL is unaware of, and cannot answer, what "Lake College" refers to.  NSL is

without information or knowledge sufficient to form a belief as to the truth of the averments

contained within this paragraph of Plaintiffs' Complaint, and therefore, denies same.

      24.    During this time, Paige borrowed the total "Cost of Attendance" in the form of federal student loans (see attached as **Exhibit C**).

**RESPONSE:**   NSL is without information or knowledge sufficient to form a belief as to the truth of the averments contained within this paragraph of Plaintiffs' Complaint, and therefore, denies same.

25.   In addition, between November 2005 and July 2007, Sallie Mae lent Paige McDaniel and her husband Byron McDaniel another $107,467 in six (6) "direct to consumer" Tuition Answer loans that were made outside the financial aid office and were not made for qualified education expenses (the "Tuition Answer Loans"). The six Tuition Answer Loans were originated as follows (See attached as **Exhibit B**):

   a)   Loan ending 9878, originated on November 15, 2004 in the amount of $21,978 to McDaniel;
   b)   Loan ending 9886, originated on July 1, 2005 in the amount of $21,978 to Byron McDaniel;
   c)   Loan ending 9894, originated on February 17, 2006, in the amount of $11,111 to Byron McDaniel;
   d)   Loan ending 7857, originated on December 9, 2005, in the amount of $11,111 to Laura Paige McDaniel;
   e)   Loan ending 7865, originated on July 25, 2006, in the amount of $31,200 to Laura Paige McDaniel;
   f)   Loan ending 7873, originated on July 24, 2007, in the amount of $21,200 to Laura Paige McDaniel.

**RESPONSE:**   NSL admits to servicing a number of Tuition Answer Loans in the name of Plaintiffs.  NSL is without information or knowledge sufficient to form a belief as to the truth of the remaining averments contained within this paragraph of Plaintiffs' Complaint, and therefore, denies same.

26.   These Tuition Answer Loans were not made solely for the "cost of attendance" accordingly were not "qualified education loans" as that term is defined in 11 U.S.C. § 523(a)(8)(B).

**RESPONSE:** NSL is without information or knowledge sufficient to form a belief as to the truth of the averments contained within these paragraphs of Plaintiff's Complaint, and therefore, denies same.

27.   In December 24, 2009, the McDaniels sought relief under Title 11 in this Court in Case No. 09-37480, *In re McDaniel*. Plaintiffs properly scheduled the Tuition Answer Loans on Schedule F of their petition.

**RESPONSE:**  NSL admits that Plaintiffs filed for relief under Title 11 in this Court in

Case No. 09-37480.  The remaining allegations in this paragraph refer to documents that are a

matter of public record, the contents of which speak for themselves.  Accordingly, NSL

respectfully refers the court to the docket for Case No. 09-37480.  To the extent that the

allegations of this paragraph differ from, or are intended to modify, interpret, or define the

contents of said writings, the allegations are denied.  NSL denies all allegations not expressly

admitted.

28.    During the course of the chapter 13 bankruptcy, Plaintiffs paid $26,782 towards the Tuition Answer Loans.

**RESPONSE:**   NSL is without information or knowledge sufficient to form a belief as to the

truth of the averments contained within these paragraphs of Plaintiffs' Complaint, and therefore,

denies same.

29.    On March 3, 2015, this Court ordered discharge of all Plaintiffs' properly scheduled pre-petition debt.

**RESPONSE:**   NSL admits the Court entered a general discharge order in the Plaintiffs'

chapter 13 bankruptcy case on this date and denies the remaining allegations in this paragraph.

30.    Defendant was duly notified of discharge.

**RESPONSE:**   NSL is without information or knowledge sufficient to form a belief as to the

truth of the averments contained within these paragraphs of Plaintiffs' Complaint, and therefore,

denies same.

31.    Despite its legal burden, Defendant did not file an adversary proceeding to contest the dischargeability of the Tuition Answer Loans.

**RESPONSE:**   Admitted only that NSL did not file an adversary proceeding, but rather, sought

to collect the balances on certain of the Tuition Answer Loans identified herein.  Otherwise

denied as a disputed conclusion of law.

32.     Instead of charging off the Tuition Answer Loans, Defendant Navient Solutions, LLC, demanded payments on these discharged debt in violation of this Court's Order and the Bankruptcy Code.

**RESPONSE:**  Admitted only that NSL has not discharged, but rather, sought to collect the

balances on certain Tuition Answer Loans identified herein.  Otherwise denied as a disputed

conclusion of law.

33.     This conduct was extremely abusive and owing to Defendant's tactics, and Plaintiffs have repaid $37,460 on these discharged debts. These payments were not made "voluntarily" but were made solely based on Defendant Navient's material misrepresentations regarding the legal status and character of the Tuition Answer Loans.

**RESPONSE:**    It is specifically denied that NSL's conduct is or was illegal, abusive, or

misleading.  As to the Plaintiffs' subjective beliefs, intent and payments, at this time NSL is

without information or knowledge sufficient to form a belief as to the truth of the averments

contained within this paragraph of Plaintiff's Complaint, and therefore, denies same.

34.     Defendant's abusive, deceptive and harassing collection efforts after the Plaintiffs bankruptcy discharges were made knowingly and willfully in violation of this Court's discharge orders and must be sanctioned.

**RESPONSE:**    Denied.


## V.

## CLAIMS FOR RELIEF

### Count One: Declaratory Judgment

35.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

**RESPONSE:**    This paragraph does not require a response; to the extent a response is required,

NSL incorporates its responses to the allegations in the preceding paragraphs of Plaintiffs'

Complaint.

36.     Plaintiffs request declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that Plaintiffs Tuition Answer Loans are not non-dischargeable student loans or qualified education loans, and were therefore discharged upon entry of the Plaintiffs' discharge order.

**RESPONSE:** This paragraph of Plaintiffs' Complaint is a request for relief and or conclusion of

law, to which no response is required, but in an abundance of caution, is denied.

**Count Two: Violations Of The Discharge Orders**

37.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

**RESPONSE:**    This paragraph does not require a response; to the extent a response is required,

NSL incorporates its responses to the allegations in the preceding paragraphs of Plaintiffs'

Complaint.

38.     The Tuition Answer Loans were discharged pursuant to the discharge Order entered by this Court because they were unsecured consumer loans and not non-dischargeable student loans under section 523(a)(8).

**RESPONSE:**    Denied.

39.     Defendant was notified of the Discharge Order pursuant to Federal Rule of Bankruptcy Procedure 4004(g).

**RESPONSE:**    NSL is without information or knowledge sufficient to form a belief as to the

truth of the averments contained within these paragraphs of Plaintiffs' Complaint, and therefore,

denies same.

40.     Defendant nonetheless sought to collect on these debts, either directly or indirectly, by use of dunning letters, phone calls, negative reports made to the major credit bureaus, failure to update these credit reports, and commencing or continuing legal action to recover the discharged debts in violation of 11 U.S.C § 524.[12]

---

[12] *In re Vogt*, 257 B.R. 65, 69 (Bkrtcy.D.Colo. 2000) ("This Court believes that this is clearly the better view and that the same reasoning applies when section 524(a) has been violated. The Court adopts the reasoning of the court in *Molloy v. Primus Automotive Financial Services*, 247 B.R. 804, 816–20 (C.D.Cal.2000), finding that section 524 carries with it an 'implied private right of action.'").

**RESPONSE:** NSL is without information or knowledge sufficient to form a belief as to the truth of the averments contained within these paragraphs of Plaintiffs' Complaint, and therefore, denies same.

41.    Plaintiffs request that Defendant be ordered to pay damages in an amount to be determined at trial for the willful violations of the discharge injunctions pursuant to 11 U.S.C § 105 and also request an award of attorneys' fees and costs.

**RESPONSE:**    This paragraph does not require a response; to the extent a response is required, NSL denies that Plaintiffs are entitled to any damages, attorneys' fees, costs, or other relief whatsoever.

## AFFIRMATIVE DEFENSES

Without admitting any of the facts alleged in the Complaint and subject to the reservations above, NSL hereby asserts and alleges the following separate and additional defenses, without assuming the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs, and without prejudice to NSL's right to argue that Plaintiffs bear the burden of proof as to any one or more of said defenses. Furthermore, NSL pleads all such defenses in the alternative, and they do not constitute an admission of liability or an admission that Plaintiffs are entitled to any relief whatsoever. NSL presently has insufficient knowledge or information as to whether it may have additional, as yet unasserted, defenses. NSL therefore reserve the right to assert additional defenses in the event discovery or further proceedings indicate such additional defense(s) would be appropriate. Such affirmative defenses include, without limitation:

1.    The Complaint and each and every claim against NSL is barred and precluded, in whole or in part, by the doctrines of waiver, estoppel, and/or ratification.

2.    The Complaint and each and every claim against NSL is barred and precluded, in whole or in part, by the doctrine of laches.

3. The Complaint and each and every claim against NSL is barred and precluded, in whole or in part, because Plaintiffs do not have standing in regard to all of the claims for relief.

4. The Complaint and each and every claim against NSL is barred and precluded, in whole or in part, by Plaintiffs' failure to mitigate any alleged loss, injury, or damages. To the extent that Plaintiffs failed to mitigate, minimize, or avoid any damages they allegedly sustained, recovery against NSL, if any, must be reduced by that amount.

5. The Complaint and each and every claim against NSL is barred and precluded, in whole or in part, under the doctrines of res judicata and/or collateral estoppel.

6. The Complaint and each and every claim against NSL is barred and precluded, in whole or in part, because Plaintiff's loan is non-dischargeable under 11 U.S.C. § 523(a)(8), including without limitation §§ 523(a)(8)(A)(ii) and 523(a)(8)(B).

7. The Complaint and each and every claim against NSL is barred and precluded, in whole or in part, because the loan(s) at issue were obtained: (a) by false pretenses, false representations, or actual fraud; and/or (b) through a statement in writing by Plaintiff (i) that was materially false, (ii) respected the Plaintiff's financial condition, (iii) on which NSL reasonably relied; and (iv) that the Plaintiff caused to be made or published with intent to deceive, and are therefore non-dischargeable under 11 U.S.C. § 523(a)(2). NSL's time to assert this defense under Bankruptcy Rule 4007(c) has either (a) not expired with respect to Plaintffs or (b) is subject to equitable extension under the doctrines of waiver, estoppel or equitable tolling.

8. The Complaint and each and every claim against NSL is barred and precluded, in whole or in part, because the loan(s) were not properly scheduled and are therefore non-dischargeable under 11 U.S.C. § 523(a)(3)(B).

9.      The Complaint, and Plaintiffs' claims for damages and other monetary and equitable relief are barred by *Taggart v. Lorenzen*, No. 18-489, ___ U.S. ___, 2019 WL 2331303 at *5 (S. Ct. June 3, 2019).  *Taggart*'s central holding was that a damages award for civil contempt, arising from a creditor's violation of the discharge injunction, "may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id.* at *2.  Here, NSL's conduct with respect to Plaintiffs was objectively reasonable, and it had an objectively reasonable basis for concluding that such conduct might be lawful.  Moreover, as set forth in *Taggart*, Plaintiffs' debt to NSL was not the kind of debt for which creditors were required to obtain advance determinations of dischargeability.  *Id*.

10.      To the extent that NSL becomes aware of additional defenses not cited to above, whether based upon facts currently known or facts discovered subsequent to the filing of this Answer, NSL reserves the right to assert additional affirmative defenses.

WHEREFORE, Navient Solutions, LLC respectfully requests judgment in its favor and against Plaintiffs, an award of its costs and attorneys' fees, and such other relief as is just and equitable.

Dated: December 7, 2020.

SHERMAN & HOWARD L.L.C.

*/s/ Eric E. Johnson*
Eric E. Johnson
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 297-2900
E-Mail:  ejohnson@shermanhoward.com

*Counsel for Navient Solutions, LLC*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies the following parties received a true and correct copy of the foregoing **DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT** via a Notice of Electronic Filing transmitted by CM/ECF in accordance with Local Bankruptcy Rule 5005-4(a) on the 7th day of December , 2020:

Austin Smith
austin@acsmithlawgroup.com

*/s/ Roberta Neal*_____

17